| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | FOR PUBLICATION |
|---|---|

| In re | |
|---|---|
| MF GLOBAL INC., | Case No. 11-2790 (MG) SIPA |
| Debtor. | |

**CORRECTED MEMORANDUM OPINION AND ORDER DENYING MOTION FOR ORDER AUTHORIZING THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF COMMODITY BROKER CUSTOMERS AND APPROVING COMPENSATION OF ALLOWED FEES AND EXPENSES OF COMMMITTEE PROFESSIONALS**

*A P P E A R A N C E S:*

HUGHES HUBBARD & REED LLP
*Counsel for James W. Giddens, Trustee for the SIPA Liquidation of MF Global Inc.*
One Battery Park Plaza
New York, New York  10004
By:   Anson Frelinghuysen, Esq.
        Christopher K. Kiplok, Esq.
        Jeffrey S. Margolin, Esq.
        Sarah K. Loomis Cave, Esq.

STROOCK & STROOCK & LAVAN LLP
*Counsel for Certain Commodity Broker Customers*
180 Maiden Lane
New York, New York  10038
By:   Lewis Kruger
        Andrew P. DeNatale
        Curtis C. Mechling
        Mark A. Speiser

DEWEY & LEBOEUF LLP
*Counsel for Statutory Creditors' Committee of MF Global Holdings Ltd., et al.*
1301 Avenue of the Americas
New York, New York 10019
By:   Martin Bienenstock, Esq.

TRACY HOPE DAVIS
*United States Trustee for Region 2*
22 Whitehall Street, 21st Floor
New York, New York 10004
By:   Linda Riffkin, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of certain commodity broker customers of MF Global Inc. ("MFGI"), requesting an Order Authorizing the Appointment of an Official Committee of Commodity Broker Customers and Approving Compensation of Allowed Fees and Expenses of Committee Professionals ("Steering Committee Motion," ECF # 161).[1] The Steering Committee Motion is opposed by (1) James W. Giddens (the "Trustee"), as Trustee for the liquidation of the business of MFGI under the Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. §§ 78aaa-78lll (2006) ("MFGI Liquidation") (ECF Doc. #357); (2) the Securities Investor Protection Corporation ("SIPC") (ECF Doc. #358); and (3) the Statutory Creditors' Committee of MF Global Holdings Ltd., et al.[2] (ECF Doc. #359). The United States Trustee ("UST") also filed the Comments of the United States Trustee, as *Amicus Curiae*, on Motion for Order Authorizing Appointment of an Official Committee of Commodity Brokers and Approving Compensation of Allowed Fees and Expenses of Committee Professionals (ECF Doc. #371). While the UST acknowledges that she has no official role in the

---

[1]    The reference is to the first of several similar motions—this one filed by a self-identified "Steering Committee" of 66 MFGI customers—seeking the appointment of an official committee of commodities customers and approval of compensation. Other similar motions, statements in support of the motion and letters from customers of MFGI seeking similar relief were also filed. *See, e.g.,* ECF Doc. #354; ECF Doc. #362, ECF Doc. #363. The arguments in support of the motions and requests for authorization of an official committee are the same. This opinion addresses the Steering Committee Motion, but in so doing it disposes of all similar motions and letter requests.

[2]    MF Global Holdings Ltd. and one of its unregulated affiliates are debtors in chapter 11 cases also filed in this Court. *See In re MF Global Holdings Ltd.*, Case No. 11-15059 (MG), filed on October 31, 2011.

2

administration of a SIPA liquidation—that role instead is played by SIPC—the UST is interested in the outcome of the Steering Committee Motion "because it seeks the formation of a creditors' committee by a means not permitted by 11 U.S.C. § 705 and seeks an order improperly providing that the fees and expenses of such a committee's professionals would be entitled to payment from the estate as administrative expenses under 11 U.S.C. §§ 503(b) and 105(a)." *Id.* 1-2.

The concerns expressed by customers in the MFGI Liquidation are real and substantial. The collapse of MFGI has given rise to a commodities broker liquidation of immense scope and complexity. Since this case was filed the Trustee (with the required approval from SIPC and the Commodity Futures Trading Commission ("CFTC")), after obtaining approval of the Court, has transferred (or is in the process of doing so) to other futures commissions merchants approximately 40,000 customer accounts containing close to $2 billion in customer cash or collateral, (ECF Doc. #14 & #316), giving those customers access to at least some of the value that had been in their MFGI accounts. Other customers have not yet been able to gain access to their funds or property.

While it was initially widely reported that approximately $600 million of customer collateral held with MFGI—which should have been maintained in segregated accounts—has not been located, the Trustee reported on November 22, 2011 that the actual shortfall may be in excess of $1.2 billion.[3] Although SIPC replaces missing stocks and other securities—that is, "money, stocks and other securities that are stolen by a broker or put at risk when a brokerage fails for other reasons"—where it is possible to do so, SIPC does not protect commodity futures

---

[3] Tiffany Kary & Linda Sandler, *MF Global's Shortfall May Exceed $1.2 Billion, Trustee Says*, BLOOMBERG BUSINESSWEEK, Nov. 22, 2011, http.www.businessweek.com/news/2011-11-22/mf-global-s-shortfall-may-exceed-1-2-billion-trustee-says.html.

3

contracts. *How SIPC Protects You*, SECURITIES INVESTOR PROTECTION CORPORATION, 3 (2011), http://www.sipc.org/pdf/HSPY_English_2011.pdf; *see also* What SIPC Covers. . .What It Does Not, http://www.sip.org/how/covers.cfm (last visited Nov. 22, 2011).  The Trustee is required by section 766(h) of the Bankruptcy Code "to distribute property ratably to customers on the basis and to the extent of such customers' allowed net equity claim . . . ." 11 U.S.C. § 766(h).  Unless the Trustee is able to recover the missing cash or property, MFGI's commodity broker customers face the prospect of very substantial losses.  The Trustee's reluctance to distribute a larger percentage of customer property until the magnitude of losses is known is understandable, even if it prolongs the financial distress of MFGI's customers.

MFGI's customers have been very vocal in this case, and appropriately so—many joining together to retain counsel for *ad hoc* groups, others separately represented by counsel and many others acting *pro se*.  The customers have played a useful role.  Despite customers' frustration, the Trustee has demonstrated that he is responsive to customers' concerns.  The issue before the Court, however, is whether SIPA or the Bankruptcy Code authorizes the appointment of an official committee in a SIPA liquidation, with compensation for a committee's professionals from estate property.  For the reasons explained below, the Court concludes that no such authority exists.  In the absence of statutory authority, the Court concludes that it does not have the power to grant the requested relief.  Furthermore, even if the Court had the discretion to authorize the appointment of an official committee in these circumstances, I would not do so.  Therefore, the Steering Committee Motion (and other motions seeking similar relief) is DENIED.

## BACKGROUND

On October 31, 2011, the Honorable Paul A. Engelmayer of the United States District Court for the Southern District of New York entered an Order Commencing Liquidation of MFGI pursuant to the provisions of SIPA, 15 U.S.C. § 78aaa-78lll. That Order (i) appointed James W. Giddens as Trustee for the liquidation of the business of MFGI pursuant to section 78eee(b)(3) of SIPA, (ii) appointed the law firm of Hughes Hubbard & Reed LLP as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA, and (iii) removed the case to this Court as required by section 78eee(b)(4) of SIPA.

On November 2, 2011, this Court approved the transfer by the Trustee of certain segregated customer commodity positions and authorized the Trustee to operate the business of MFGI in the ordinary course. (ECF Doc. #14). On November 4, 2011, the Court granted the Trustee the authority to issue subpoenas for the production of documents and the examination of MFGI's current and former officers, directors, employees and other related persons to facilitate its investigation into the alleged shortfall in customer-segregated property. (ECF Doc. #34). On November 17, 2011, the Court approved a second partial transfer of certain customers' cash-only accounts. (ECF Doc. #316). The Trustee has indicated that he hopes soon to make one or more additional motions to transfer cash or other customer property, with the goal of equalizing the distribution of customer property to all MFGI customers.

## DISCUSSION

The Steering Committee Motion asks the Court to authorize the appointment of an official committee comprised of commodity broker customers and to approve compensation of fees and expenses of committee professional as administrative expenses of the commodity customer property estate. The motion claims many potential benefits of such a committee during

5

the MFGI Liquidation, including (i) ensuring that the commodity customer priority is properly and fairly applied, (ii) representing the interests of commodity customers in any issues that may arise between the commodity customer and securities customer estates, (iii) and assisting in expediting distributions of commodity customer property.  *See* Steering Committee Motion ¶¶ 9-13.  Whether these supposed benefits are real or ephemeral is uncertain at best.  Each of these is clearly the responsibility of the Trustee, with oversight by SIPC and the CFTC, subject to approval of the Court.  There is no role to be played by an official committee.

What is principally lacking in the Steering Committee Motion is any legal authority supporting the requested relief.  The motion relies on sections 105 and 705 of the Bankruptcy Code.  But a plain reading of SIPA and the Bankruptcy Code shows a complete absence of authority for appointment of a customers' committee in a SIPA liquidation, and even more clearly the absence of authority for compensation from estate assets of committee professionals of a committee properly elected in a chapter 7 case.

The motion is premised upon the argument that the MFGI Liquidation is comprised of two separate matters:  (1) a SIPA liquidation of a securities broker-dealer and (2) a liquidation of a commodity broker under chapter 7 of the Bankruptcy Code.[4]  The customers argue that the dual-track nature of the proceedings means that provisions of chapter 7 apply and authorize a creditors' committee under chapter 7 to assist in the liquidation of the commodity broker arm of MFGI.  According to the motion, "[n]othing in SIPA prevents the appointment of an official committee in such a dual-track proceeding."  *Id*. ¶ 1.

---

[4]  Because MFGI deals in both securities and commodities, it is known as a "joint broker-dealer."

6

Section 705 of the Bankruptcy Code provides:

> (a) At the meeting under section 341(a) of this title, *creditors that may vote for a trustee under section 702(a) of this title may elect a committee* of not fewer than three, and not more than eleven, creditors, each of whom holds an allowable unsecured claim of a kind entitled to distribution under section 726(a)(2) of this title.
>
> (b) A committee elected under subsection (a) of this section may consult with the trustee or the United States trustee in connection with the administration of the estate, make recommendation to the trustee or the United States trustee respecting the performance of the trustee's duties, and submit the court or the United States trustee any question affecting the administration of the estate.

11 U.S.C. § 705 (emphasis added). Relying on section 705 and also citing section 702 (addressing the characteristics a creditor must possess to be eligible to vote for a trustee), the motion concludes: "Thus, commodity broker customers are entitled to elect a committee pursuant to section 705 of the Bankruptcy Code." Steering Committee Motion ¶ 8 n.8.

### A. Election of Committees in a SIPA Proceeding

The motion glosses over the actual language of section 705 and the interplay between the Bankruptcy Code and SIPA. *See* 15 U.S.C. § 78fff(b) ("[T]o the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3 and 5 of subchapters I and II of chapter 7 of title 11."). Section 705 provides that "creditors that may vote for a trustee . . . may elect a committee . . . ." 11 U.S.C. § 705(a). In a SIPA liquidation, however, no creditors may vote for a trustee; rather, selection of the SIPA Trustee is solely at the discretion of SIPC. *See* 15 U.S.C. § 78eee(b)(3); *see also* 6 COLLIER ON BANKRUPTCY ¶ 760.08 (Alan N. Resnick & Henry J. Somme eds., 16th ed. 2011) ("[I]n the event of the bankruptcy of a commodity broker that becomes the subject of a SIPA proceeding, there is a single bankruptcy trustee who is selected by the Securities Investor Protection Corporation."). The provisions of the Bankruptcy Code are

only applicable in a SIPA proceeding to the extent that they are consistent with the provisions of SIPA. *See* 15 U.S.C. § 78fff(b). Therefore, the Court concludes that section 705 of the Bankruptcy Code is not applicable in a SIPA liquidation and does not provide a basis for the election or appointment of a creditors' committee in this case.

Alternatively, the Steering Committee Motion argues that section 105(a) of the Bankruptcy Code provides the Court with equitable power to appoint a commodity customer committee. But section 105 cannot be used to expand the powers not otherwise provided in the Bankruptcy Code. *See In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 91-92 (2d Cir. 2003) ("This Court has long recognized that [s]ection 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code." (internal quotations and citation omitted)).

### B. Compensation of Committees in a SIPA Proceeding

Even if this Court could authorize election or appointment of a commodity customers creditors' committee in this case, the Court could not authorize compensation for the committee's professionals from estate property. In those chapter 7 cases where a creditors' committee is elected, section 705 does not contemplate the payment of fees and expenses of committee professionals as administrative expenses. *See In re Dominelli*, 788 F.2d 584, 586 (9th Cir. 1986); 6 COLLIER ON BANKRUPTCY ¶ 705.03[3] ("Section 705 does not provide for compensation or reimbursement to counsel to a chapter 7 creditors' committee. Legislative history accompanying section 705 confirms that the absence of any such provision was intentional.").

The Steering Committee Motion points to two cases in which compensation to creditors' committee professionals was approved. *See Sable, Makoroff & Gusky, P.C. v. White (In re*

8

*Lyons Transp. Lines, Inc.)*, 162 B.R. 460 (Bankr. W.D. Pa. 1994); *In re Wonder Corp. of Am.*, 72 B.R. 580, 583 n.3 (Bankr. D. Conn. 1987). The result in *Lyons* is questionable, but the case is in any event distinguishable. The committee in that case was formed while the debtor was attempting to reorganize under chapter 11. Upon conversion to chapter 7, the court found that committee participation and assistance in the case was necessary due to the complexities of the case and approved the continuance of fee payments pursuant to its discretionary authority under section 105(a). *Id*. at 463. An objection to counsel fees was pressed, arguably in bad faith, only after substantial services were performed in reliance on the order. *Lyons* can therefore be read as a case involving judicial estoppel.

*Wonder Corp.* is also distinguishable. A chapter 7 case was converted to chapter 11, and a chapter 11 plan was confirmed. Counsel for the chapter 11 creditors' committee, that was initially created when the case was administered under chapter 7, was awarded fees mostly for his work representing the chapter 11 creditors' committee, but also including a smaller amount for his work representing the committee when the case was under chapter 7. The court stated in a footnote that "[a]lthough the Code does not specifically provide for the employment of counsel by a creditors' committee elected pursuant to Code § 705(a), . . . upon application of the creditors' committee, this court authorized such employment in this case in accordance with Code § 105(a)." *Wonder Corp.*, 72 B.R. at 583 n.3. There is no indication whether anyone objected to the authorization to employ counsel for the chapter 7 committee. No objection was made and no analysis was provided for approving the payment of counsel's fees for work for the pre- or post-conversion committee. *Id.* at 586.

The *Lyons* court also acknowledged contrary authority. *See In re Dominelli*, 788 F.2d 584 (9th Cir. 1986); *In re Willbet Enters., Inc.*, 43 B.R. 90 (Bankr. E.D. Pa. 1984) (finding that

9

court did not have authority under section 105 to authorize committee professional fees, an issue which Congress had specifically considered and limited). The *Dominelli* court squarely rejected the argument made here, concluding that nothing in the Bankruptcy Code provides for payment of a chapter 7 creditors' committee's counsel, and pointing to the legislative history of section 705 as demonstrating that this omission was not an oversight. *Id.* at 586 (citing S. REP. NO. 989, 95th Cong., 2d Sess. 94 (1978) ("There is no provision for compensation or reimbursement of [committee] counsel.")). The *Dominelli* court held that a court could not use its general equitable power to authorize something that Congress considered and rejected. *Id.* The effort in the Steering Committee Motion to distinguish or explain those contrary authorities is unconvincing.

But even if the Court could authorize election or appointment of a creditors' committee, and further approve compensation for such a committee's professionals from estate property, I would not do so in the circumstances present in this case. Mr. Giddens is a very experienced SIPA Trustee, represented by very experienced counsel, with mandated oversight provided by SIPC and the CFTC, and, of course, by this Court. MFGI's customers can continue to participate actively in this case, as they have to date, with or without the assistance of counsel. There is no demonstrated need or justification to saddle this already heavily burdened estate with the expenses attendant to an official committee.

For all of these reasons, the Motion requesting the appointment of a commodity customer committee is DENIED.

Dated: November 23, 2011
      New York, New York.

                                              **/s/Martin Glenn**
                                              MARTIN GLENN
                                   United States Bankruptcy Judge