**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK** **FOR PUBLICATION**

| In re: | |
|---|---|
| MF GLOBAL INC., | Case No. 11-2790 (MG) SIPA |
| Debtor. | |

**MEMORANDUM OPINION AND ORDER GRANTING TRUSTEE'S APPLICATION FOR ENTRY OF AN ORDER REGARDING DISINTERESTEDNESS OF THE TRUSTEE AND COUNSEL TO THE TRUSTEE**

***A P P E A R A N C E S:***

HUGHES HUBBARD & REED LLP
*Counsel for James W. Giddens, Trustee for the SIPA Liquidation of MF Global Inc.*
One Battery Park Plaza
New York, New York 10004
By: Anson Frelinghuysen, Esq.
James B. Kobak, Esq.
Christopher K. Kiplok, Esq.
Jeffrey S. Margolin, Esq.

ROBERT MARTIN
*Pro Se*
3 Kenwood Road
Saddle River, New Jersey 07458

MITCH FINE
*Pro Se*
575 San Pablo Avenue
Emeryville, California 94608-3325

**MARTIN GLENN,**
**UNITED STATES BANKRUPTCY JUDGE**

James W. Giddens ("Giddens" or the "Trustee"), the liquidation trustee of MF Global Inc. ("MFGI"), filed an *Application for Entry of an Order Regarding the Disinterestedness of the Trustee and Counsel to the Trustee* (the "Application"). (ECF Doc. #45.) For the reasons explained below, the Court grants the Application, finding the Trustee and his counsel—the law

firm in which he is a partner, Hughes Hubbard & Reed LLC ("HHR")—to be "disinterested" pursuant to the Securities Investor Protection Act of 1970 ("SIPA"), as amended, 15 U.S.C. §§ 78eee(b)(3) & 78eee(b)(6)(A) (2006).

**BACKGROUND**

On October 31, 2011, the Honorable Paul A. Engelmayer of the United States District Court for the Southern District of New York entered an Order Commencing Liquidation of MF Global Inc. pursuant to the provisions of SIPA, 15 U.S.C. § 78aaa-78lll. *See Sec. Investor Protection Corp. v. MF Global Inc.*, No. 11-CIV-7750 (S.D.N.Y. Oct. 31, 2011). That Order (i) appointed Giddens as Trustee for the liquidation of the business of MFGI pursuant to section 78eee(b)(3) of SIPA, (ii) appointed HHR as counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA, and (iii) removed the case to the bankruptcy court as required by section 78eee(b)(4) of SIPA. *Id*. at 1.[1] Neither the Trustee nor the Securities Investor Protection Corporation ("SIPC") filed pleadings pertaining to the disinterestedness of the Trustee or his counsel before the district court.

Two *pro* se customers of MFGI (the "Objectors") filed objections in this Court, challenging the disinterestedness of Giddens and HHR, initially based on information contained on HHR's web site stating that HHR represented JP Morgan Chase Bank, N.A. and its affiliates ("JPMC") in other matters, and in a later-filed objection, additionally based on HHR's representation of Pricewaterhouse Coopers LLP ("PwC"). (ECF Doc. ## 202, 414 & 653.)

---

[1] Although the district court issued the order appointing Giddens as Trustee, and his law firm, HHR, as counsel to the Trustee, the selection of the Trustee and his counsel is at the sole discretion of SIPC. *See* 15 U.S.C. § 78eee(b)(3) ("If the court issues a protective decree under paragraph (1), such court shall forthwith appoint, as trustee for the liquidation of the business of the debtor and as attorney for the trustee, such persons as SIPC, in its sole discretion, specifies. The persons appointed as trustee and as attorney for the trustee may be associated with the same firm.").

The disinterestedness of the Trustee and HHR are important requirements under SIPA and the Bankruptcy Code, as well as under applicable rules of professional responsibility. As explained below, the nature and timing of SIPA liquidation proceedings, as well as the lack of access to pertinent information when such proceedings commence, may make it difficult at the outset of the case for a SIPA trustee and counsel to identify and disclose all potential connections that may give rise to disabling conflicts that can defeat the necessary findings of disinterestedness. That is certainly true in a case of this magnitude and complexity. HHR's initial disclosures in support of the Application (ECF Doc. # 45, Ex. A & B), and HHR's supplemental disclosure required by the Court (ECF Doc. # 509), lacked sufficient information for the Court to resolve the important issues raised by the objections. HHR's third disclosure statement (ECF Doc. # 732), however, has remedied those shortcomings. Based upon the record before the Court, the Court concludes that the Trustee and HHR are disinterested within the meaning of SIPA and the Bankruptcy Code, at least insofar as the parties and issues appear in this case at the present time. As SIPC, the Trustee, and HHR have recognized, in the event that additional issues, parties, or potential claims arise that raise conflict issues for the Trustee or HHR, SIPC may need to select conflicts counsel or a co-trustee to handle those specific matters.

Since this SIPA liquidation proceeding began, the Court has approved three transfers of customer property, totaling in excess of $4.2 billion, intended to return as much customer property as possible, as soon as possible, to as many former MFGI customers as possible. (ECF Doc. ##14, 316, 717 & 718.) The Trustee has reported an apparent shortfall of customer property that, while still subject to uncertainty, is currently estimated at $1.2 billion. Once completed, the three transfers approved by the Court are intended to return approximately 72% of each customer's property that should have been, but apparently was not, maintained in

segregated accounts with MFGI. Efforts by the Trustee and others to locate and recover missing property continue unabated. The Court has also approved the claims procedures, designed to determine the amounts and priorities of customers' claims and, hopefully, to approve further distributions of funds to customers. (ECF Doc. #423.)

The Trustee has acknowledged that he may need to bring legal action to recover missing funds or seek recovery of damages. The Objectors focus on the Trustee's ability to bring such actions, arguing that disabling conflicts prevent him from doing so, particularly as to JPMC and PwC. JPMC was the one of the principal outside banks for MFGI and its parent company, MF Global Holdings Ltd. ("MFGHL"); PwC has been the outside auditor for the MF Global entities. While no allegations of wrongdoing have been made against JPMC and PwC, numerous news stories and some Congressional testimony have raised questions about transfers of funds or property from MFGHL or MFGI to JPMC in the days before the company's collapse.[2] The Trustee's counsel has said the Trustee will examine the transactions.[3] Questions have not been raised at this point about PwC, but the conduct of auditors is frequently a subject for inquiry. The Objectors challenge Giddens' and HHR's ability to be adverse to JPMC or PwC.

Because HHR has represented JPMC and PwC, the Objectors argue that the Trustee and his counsel are not "disinterested" as defined by the section § 78eee(b)(6) of SIPA. Therefore,

---

2 *See, e.g.*, Ben Protess & Azam Ahmed, *Money Found in Britain May Belong to MF Global*, DEALBOOK, Nov. 28, 2011, http://dealbook.nytimes.com/2011/11/28/money-found-in-britain-may-belong-to-mf-global/ ("About $200 million in customer money that vanished from MF Global is believed to have surfaced at JPMorgan Chase in Britain, according to people briefed on the matter.").

3 *See, e.g.*, Silla Brush & Robert Schmidt, *Bank Funds Won't Cover MF Global Shortfall, Trustee Says*, BLOOMBERG BUSINESSWEEK, Dec. 1, 2011, http://www.businessweek.com/news/2011-12-02/bank-funds-won-t-cover-mf-global-shortfall-trustee-says.htm ("'There is no big pile of money we're going to find in the U.S. depositories now that we don't know about,' [spokesman for Trustee] said in a telephone interview today. 'When it comes to overseas assets that we believe we have a right to claim on behalf of our customers we will do everything we can to recover that.'").

the Objectors assert, the Trustee and HHR are prohibited from serving as Trustee and counsel under SIPA and the Bankruptcy Code.

The Court held oral argument regarding the Application on November 22, 2011, after which the Court ordered the Trustee and his counsel to provide supplemental disclosure to the Court, specifically addressing the issues raised in the objections. On November 29, 2011, the Trustee filed a *Supplemental Declaration of James B. Kobak, Jr. Regarding Disinterestedness* ("Supplemental Declaration"). (ECF Doc. #509.) One of the Objectors filed a response to the Supplemental Declaration. (ECF Doc. #653.) On December 7, 2011, after finding both attempts at disclosure by the Trustee and his counsel "sparse," the Court ordered the Trustee, his counsel, and, to the extent necessary, SIPC, to make further disclosures to the Court, specifically addressing questions of law and fact pertaining to the Trustee's and HHR's current and former representation of clients who are also creditors of MFGI. (ECF Doc. #660.) On December 12, 2011, the Trustee and his counsel filed a corrected *Statement in Further Support of Disinterestedness and In Response to Court Order Dated December 7, 2011* ("Third Disclosure Statement"), (ECF Doc. #732), with an accompanying *Declaration of James Kobak, Jr*. ("Third Kobak Declaration") (ECF Doc. #728). SIPC also filed a *Memorandum of the Securities Investor Protection Corporation in Response to the Court's Order Directing Trustee To File Further Disclosures Regarding Disinterestedness* (the "SIPC Memorandum"). (ECF Doc. #721).

## DISCUSSION

In a liquidation of a broker-dealer under SIPA, SIPA operates in conjunction with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. *See* 15 U.S.C. § 78fff(b) ("[T]o the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3 and 5 of subchapters I and II of chapter 7 of title 11."). The Application asks the Court to enter an order finding the Trustee and his counsel "disinterested" within the meaning of section 78eee(b)(6) of SIPA, as the statute specifies that "no person may be appointed to serve as trustee or attorney for the trustee [in a liquidation under SIPA] if such person is not disinterested." *See id*. § 78eee(b)(3).

### A. Disinterestedness Standard

Under SIPA, a person is not disinterested if

> (i) such person is a creditor (including a customer), stockholder, or partner of the debtor;
> (ii) such person is or was an underwriter of any of the outstanding securities of the debtor or within five years prior to the filing date was the underwriter of any securities of the debtor;
> (iii) such person is, or was within two years prior to the filing date, a director, partner, officer, or employee of the debtor or such an underwriter, or an attorney for the debtor or such an underwriter; or
> (iv) it appears that such person has, by reason of any other direct or indirect relationship to, connection with, or interest in the debtor or such an underwriter, or for any other reason, an interest materially adverse to the interests of any class of creditors (including customers) or stockholders,
>
> except that SIPC shall in all cases be deemed disinterested, and an employee of SIPC shall be deemed disinterested if such employee would, except for his association with SIPC, meet the standards set forth in this subparagraph.

*Id*. § 78eee(b)(6)(A).

SIPA does not define "disinterested"; however, the legislative history of SIPA clearly indicates congressional intent for courts to apply the same meaning as the same term is given in the Bankruptcy Code. *See* H.R. REP. No. 91-1613, at 20 (1970), *reprinted in* 1970 U.S.C.A.A.N. 5254, 5274 ("[T]he court would be authorized to appoint as trustee for liquidation of the [broker-dealer], such persons as SIPC would specify. However, such persons would have to be 'disinterested persons' within the meaning of section 158 of the Bankruptcy Act.").[4]

The Bankruptcy Code defines "disinterested person" as a person that

> (A) is not a creditor, an equity security holder, or an insider;
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

That definition of "disinterested person" under section 101(14) "overlaps with the adverse interest requirement of section 327(a), creating a single test for courts to employ when examining conflicts of interest." *In re Project Orange Assocs., LLC*, 431 B.R. 363, 370 (Bankr. S.D.N.Y. 2010) (citing section 101(14)(C)); *see also In re Granite Partners, L.P.*, 219 B.R. 22,

[4] The Bankruptcy Act of 1938, in effect at the time that Congress enacted SIPA, was superceded by section 101 of the Bankruptcy Reform Act of 1978 to become the current Bankruptcy Code. *See* Pub. L. No. 95-598, 92 Stat. 2549 (1978) (codified as amended at 11 U.S.C. § 101 *et seq*. (2006)). The current definition of "disinterested person" is located in section 101(14) of the Bankruptcy Code and "is adapted from section 158 of chapter X [corporate reorganization provisions of the Bankruptcy Act] [section 558 of former Title 11], though it is expanded and modified in some respects." 11 U.S.C.A. § 101 (historical and statutory notes). Nothing in the legislative history of SIPA indicates Congress has reversed its course on how courts should interpret the term "disinterested person." In light of evidence indicating congressional intent to apply the same meaning to "disinterested person" and subsequent case law involving SIPA liquidations to the contrary, *see* discussion *infra*, this Court is hard-pressed to accept SIPC's argument that the term "disinterested" should be accorded two separate meanings, one under SIPA and one under the Bankruptcy Code. *See* SIPC Memorandum, at 6 ("[T]he disinterestedness standards under SIPA should not be confused with those of the Bankruptcy Code.").

23 (Bankr. S.D.N.Y. 1998).[5] Although undefined by the Bankruptcy Code, courts have defined "adverse interest" as

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999) (quoting *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985), *aff'd in part and rev'd in part on other grounds*, 75 B.R. 402 (D. Utah 1987)); *see also Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 835–36 (7th Cir. 1998). "More generally, it includes any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." *In re Granite Partners, L.P.*, 219 B.R. at 33 (internal quotations and citations omitted). Although courts have distinguished between actual and potential conflicts, "a more recent trend elides the distinction and focuses on the concerns of divided loyalties and affected judgments." *Id.* Importantly, however, "[t]he test [for the presence of adverse interests] is not retrospective; courts only examine present interests when determining whether a party has an adverse interest." *In re Project Orange Assocs., LLC*, 431 B.R. at 370.[6]

---

[5] Section 327(a) of the Bankruptcy Code allows a trustee to retain professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Although the Court agrees with SIPC that section 327(a) does not apply in a SIPA liquidation, *see* SIPC Memorandum at 6, congressional intent to accord the meaning of the term "disinterested person" as it is defined by the Bankruptcy Code necessarily warrants an examination of the evolution of the term in the Bankruptcy Code and through courts' interpretations of the Bankruptcy Code.

[6] HHR added to the uncertainty whether its representation of JPMC presents a disabling conflict when its initial disclosure did not mention JPMC. The Objectors then offered the limited information on HHR's web site identifying JPMC as a client. In the Supplemental Disclosure, HHR focused on the minimal revenue HHR received from JPMC in 2009, 2010, and 2011, without clearly indicating whether JPMC is a *current* client of HHR. Finally,

(Footnote continued on next page)

In construing the disinterestedness standard, bankruptcy courts have held trustees and their retained professionals to a rigorous standard. *See, e.g.*, *In re Allegheny Int'l, Inc.*, 117 B.R. 171, 178–79 (W.D. Pa. 1990); *In re Realty Assocs. Sec. Corp.*, 56 F. Supp. 1007, 1007 (D.C.N.Y. 1944) ("The trustee must be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters."). Likewise, in SIPA liquidations, "courts take a strict view of the disinterestedness standard under SIPA." *Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co.)*, 131 B.R. 872, 878 (D. Colo. 1991). Because of the "orient[ation] toward the protection of the customer of the broker or dealer" particular to SIPA liquidations, *see SEC v. Schreiber Bosse & Co.*, 368 F. Supp. 24, 27 (N.D. Ohio 1973),[7] "it is not sufficient that the trustee and his counsel actually be disinterested; the appearance of disinterestedness must also be avoided . . . ." *In re Perry, Adams & Lewis Sec., Inc.*, 5 B.R. 63, 64 (Bankr. W.D. Mo. 1980). Indeed, "[i]t becomes the duty of the trustee and of his attorneys not only to be impartial and free from the influence of any [other party], but the other [parties] must have faith and confidence in their impartiality and independence." *Id*. "[U]nder the case law construing the SIPA and [Bankruptcy] Code disinterestedness standards, it is clear that even

---

(Footnote continued from prior page)
in its Third Disclosure Statement, HHR established that JPMC is *not* a current client of HHR, and its work for JMPC in the past has been limited. HHR also argued that Giddens and HHR have been adverse to JPMC in the Lehman Brothers SIPA liquidation. *See* Third Kobak Declaration ¶ 2.

[7] The *Schreiber Bosse* court articulated the special customer-focus principle underlying and guiding all SIPA liquidations:

> It is clear that the proceedings under the 1970 [Securities Investor Protection] Act are basically oriented toward the protection of the customer of the broker or dealer. This is in conformity with the basic purpose of the 1970 Act—that is, "to afford protection to public customers in the event broker-dealers with whom they transact business encounter financial difficulties and are unable to satisfy their obligations to their public customers."

*SEC v. Schreiber Bosse & Co*., 368 F. Supp. 24, 26 (N.D. Ohio 1973) (quoting *SEC v. Alan F. Hughes, Inc*., 461 F.2d 974, 977 (2d Cir. 1972)).

a potential conflict of interest is of serious concern." *In re Blinder, Robinson & Co.*, 131 B.R. at 880 (citing cases). "Thus, in determining whether the trustee or his counsel meet the requirements of § 78eee(b)(6), even the appearance of impropriety may merit disqualification." *Id*. at 878.

**B. Duty To Disclose**

"The court and parties police conflicts through mandatory disclosure." *In re Granite Partners, L.P.*, 219 B.R. at 34. While the Court agrees with SIPC that the *procedures* contained in section 327 of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules—governing disclosure by professionals retained under sections 327, 1103 or 1114, and requiring disclosure of "all of the person's connections with the debtor, creditors, any other party in interest, [and] their respective attorneys and accountants," FED. R. BANKR. P. 2014(a)—do not apply to selection of a SIPA trustee and counsel, the Court's determination of "disinterestedness" requires full disclosure of relevant connections between the Trustee, Trustee's counsel, and other parties in interest. HHR acknowledges that it must provide and update such disclosures as necessary. *See* Third Disclosure Statement ¶¶ 65–66.

Because SIPC's filing of a petition seeking liquidation of a broker-dealer—and its selection of a trustee and counsel to do so—may occur with little advanced planning or notice, often without access to information necessary for the proposed trustee and counsel to disclose, more time may be required to complete necessary disclosures and there may be a greater risk that disabling connections may subsequently come to light.[8] But SIPA's mandatory standard for

---

[8] The Court is cognizant of the chaotic events and need for prompt action in appointing a qualified trustee in the event that a broker-dealer requires liquidation under SIPA, such as occurred in this case. *See* SIPC Memorandum at 7–8. Nevertheless, the "paucity of information available [to SIPC] at the time SIPA counsel is

(Footnote continued on next page)

disinterestedness would be rendered lifeless without a corresponding duty to disclose potential adverse interests, and update the disclosures if and when more information becomes available. Proper, timely disclosure allows the court to make an informed decision whether the trustee and his retained professionals meet the standard for disinterestedness. *See Rome v. Braunstein*, 19 F.3d 54, 59 (1st Cir. 1994); *In re Leslie Fay Cos*., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994). Indeed, a lack of candidness in "disclosing [] potential problem[s] for independent court review before [a SIPA Trustee's and his counsel's] appointment . . . in itself, presents an appearance of impropriety." *In re Blinder, Robinson & Co*., 131 B.R. at 881. Although the Court agrees that disinterestedness under § 78eee(b)(6) "is determined at the time the trustee and counsel are appointed," *see id*. at 879, without adequate disclosure, both SIPC and the Court have no way of assessing a Trustee's disinterestedness.

Although the SIPA and Bankruptcy Code disinterestedness standards require a "materially adverse" interest for a trustee or his professionals to be disqualified, a trustee and his or her professionals may not "usurp the court's function by choosing, *ipse dixit*, which connections impact disinterestedness and which do not." *In re Granite Partners, L.P*., 219 B.R. at 35 (citing *In re Blinder, Robinson & Co*., 131 B.R. at 883). In determining what constitutes a "materially adverse" interest, the *Blinder* court recognized that "magnitude, amount, and materiality [of adverse relationships] are not synonyms." *In re Blinder, Robinson & Co*., 131 B.R. at 883. "While the amount involved might, in some cases, be determinative, more cases will be determined on the basis of communications made, knowledge derived from the representation and the length of the relationship involved." *Id*.

---

(Footnote continued from prior page)
selected," *see id*. at 6, does not relieve the Court of its statutory duty to evaluate the disinterestedness of the SIPA trustee and its counsel under sections 78eee(3) and (6).

In support of the Application, the Trustee and his counsel initially submitted declarations confirming that neither the Trustee nor anyone in his retained law firm was a current creditor, stockholder, or partner of MFGI; had not underwritten outstanding securities for MFGI or had not underwritten securities for MFGI within five years; and had not served in the capacity of director, partner, or employee of MFGI or its underwriters within two years prepetition, satisfying the first three prongs of section 78eee(b)(6)(A). *See* Application, Ex. A ¶ 5 & Ex. B ¶ 7. In addressing section 78eee(b)(6)(A)(iv), the declarations each denied any materially adverse interests by way of direct or indirect relationships with any class of creditors or stockholders. *Id*. Although the Trustee's declaration specifically disclosed litigation against MFGI in which he is involved in his role as Trustee in a separate SIPA liquidation, his counsel's declaration contained a brief, vague boilerplate disclosure:

> As a general practice firm of over 300 attorneys, the Firm represents many entities, including financial entities or investors, who may have been involved in the past with transactions in which MFGI, MFGI's parent, or some MFGI affiliate was involved or was the counterparty. Some of these entities which the Firm may from time to time represent on other, unrelated matters may be claimants in the MFGI estate or parties against which the estate may potentially have claims. In the event that actual, material disputes of an adversarial nature arise with any such entities at a time when they are still active Firm clients, [the Firm] will make such further disclosure and take such further steps as may be required to eliminate any potential conflict.

Application, Ex. B ¶ 8. But even "if boilerplate disclosure [at the start of the proceedings] covers, at most, inadvertent omissions of insignificant connections, boilerplate disclosure of prospective connections is rarely satisfactory." *In re Granite Partners, L.P.*, 219 B.R. at 36.

At the November 22, 2011 hearing, the Trustee's counsel acknowledged that HHR had represented JPMC in other matters; therefore, the Court ordered further disclosure. In his Supplemental Declaration, the Trustee's counsel identified two parties-in-interest, JPMC and

PwC, with which the Trustee's law firm has relationships. *See* Supplemental Declaration ¶ 2. While providing limited information regarding the percentage of fees generated through representation of JPMC, as a percentage of total firm revenue, the disclosure provided no details about (i) the nature of that representation; or (ii) whether the firm currently represents JPMC, PWC, or any other creditor of MFGI; or (iii) whether litigation between MFGI and JPMC, PWC, or any other creditor of MFGI who is also a client is foreseeable or inevitable; or (iv) any other information that would enable the Court to make a determination of the presence of materially adverse interests and the disinterestedness of the Trustee and his counsel.

After the Court ordered still further disclosure, the Trustee submitted additional information about the relationships between HHR, JPMC, PwC, and other current or former clients that may also be creditors of MFGI. *See* Third Disclosure Statement ¶¶ 68–78. Based upon the most recent disclosures, the Court now has sufficient information to make determinations regarding the presence of conflicts of interest and the disinterestedness of the Trustee and his counsel.

**C. Giddens' and HHR's Disinterestedness**

When assessing conflicts of interest, the rules regarding representation of current and former clients are clear. Generally,

> [u]nless all affected clients and other necessary persons consent to the representation . . . , a lawyer may not represent a client if the representation would involve a conflict of interest. A conflict of interest is involved if there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person.

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 121 (2000). Additionally, "[u]nless all affected clients consent to the representation . . . a lawyer in civil litigation may not . . .

represent one client to assert or defend a claim against or brought by another client currently represented by the lawyer, even if the matters are not related." *Id.* § 128.

In New York, the rules of professional conduct, adopted by the Appellate Divisions of the Supreme Court and based primarily on the American Bar Association's Model Rules of Professional Conduct, address conflicts of interest regarding current clients:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:
>
> (1) the representation will involve the lawyer in representing differing interests; or
>
> (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law; the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (3) each affected client gives informed consent, confirmed in writing.

JOINT RULES OF THE APPELLATE DIVISIONS OF THE SUPREME COURT, RULES OF PROF'L CONDUCT R. 1.7 (2009); *see also* MODEL RULES OF PROF'L CONDUCT R. 1.7 & cmt. (2010). Rule 1.9 addresses an attorney's duties to former clients. In pertinent part, the rule states:

> (a) a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

JOINT RULES OF THE APPELLATE DIVISIONS OF THE SUPREME COURT, RULES OF PROF'L CONDUCT R. 1.9(a) (2009); *see also* MODEL RULES OF PROF'L CONDUCT R. 1.9 & cmt. (2010).

In the Third Disclosure Statement, the Trustee unequivocally states that JPMC "is no longer a current client of HHR in any sense," and the nature of the past representation bore "no relationship to MFGI." Third Disclosure Statement ¶ 68. HHR's past representation of JPMC was also not material to the scope of HHR's practice and revenues. Evidencing a lack of conflict with JPMC, the Trustee's counsel noted:

> HHR has been adverse to JPM in disputes between financial entities. For example, in its role as counsel for the Trustee for the SIPA liquidation of Lehman Brothers Inc. ("LBI"), HHR investigated and actively pursued claims against JPM, resulting in a settlement that returned over $860 million in customer property to the LBI Estate.

Third Kobak Declaration ¶ 2.

The Trustee acknowledges that PwC, on the other hand, "is a current client and auditor of HHR," but that "[i]t is not yet known whether JPM or PwC are creditors of MFGI." Third Disclosure Statement ¶¶ 69 & 73. In addition to stating that "[t]wo of the ten secured credit facility lenders [of MFGI] are or may become current clients of HHR," the Trustee nevertheless maintains that he is "free to be adverse to most of the significant parties in this liquidation." *Id.* ¶¶ 70 & 80.

Consistent with the rules of professional conduct, as a remedy to potential conflicts, the Trustee states:

> HHR will not, without the consent of the adverse party and SIPC, represent a client in actual or threatened assertion (or defense) of disputed claims as against another client, even if the matters are unrelated. In appropriate cases, HHR will not handle matters involving client [sic] but will work with SIPC to have conflicts counsel appointed.

Third Disclosure Statement ¶ 25.[9]

SIPC also advanced the options of use of conflicts counsel, with the approval of the bankruptcy court, or SIPC's appointment of a co-trustee, to handle specific matters in the event a conflict arises. *See* SIPC Memorandum at 6, 9. Because the conduct of auditors, such as HHR's current client, PwC, is frequently a subject for scrutiny in matters such as this one, SIPC, in the first instance, and the Court if necessary, may have to explore remedial options concerning Giddens' and HHR's role with respect to PwC, or for that matter, other current clients of HHR.[10] Replacement of a trustee or counsel in the event of a serious conflict is also possible, but because of the disruption and delay that may result, it should be viewed as a last resort. *See, e.g.*, *In re Lee Way Holding Co.*, 102 B.R. 616, 625 (S.D. Ohio 1988) (declining to disqualify SIPA trustee's counsel because of risk of disruption in proceedings where there has been no deceptive conduct or behavior that shocks the conscience); *In re REA Holding Corp.*, 2 B.R. 733, 735 (S.D.N.Y. 1980) (finding removal of trustee appropriate only when the administration of the estate would suffer more from the discord created by the present trustee than from a change in

---

[9] Although the issue need not be decided at this time, the Court notes that in a retention approved pursuant to section 327 (which does not apply to SIPA trustee and counsel retention), conflicts waivers rarely suffice to trump the strict requirement of disinterestedness. *See, e.g.*, *In re Perry*, 194 B.R. 875, 880 (E.D. Cal. 1996); *In re Project Orange Assocs., LLC*, 431 B.R. at 374–75; *In re Granite Partners, L.P.*, 219 B.R. at 34. Because of the trustee and counsel selection and oversight roles played by SIPC in a SIPA liquidation, conflicts waivers may stand on a stronger footing.

[10] Again, although this issue need not be decided now, the fact that Giddens' role is that of a trustee and not an attorney may not shield him from the problem of conflicts of interest. "Ordinarily, a trustee must take reasonable steps to enforce all claims held in trust." 3 SCOTT & ASCHER ON TRUSTS § 17.9 (5th ed. 2006). Whether the Trustee or HHR can be adverse to PwC, or to other current clients of HHR, is questionable in light of the rules of professional conduct for attorneys regarding representation of current clients. Generally, "[a]n attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences." *Pierce & Weiss, LLP v. Subrogation Partners LLC*, 701 F. Supp. 2d 245, 257 (E.D.N.Y. 2010) (citations and quotations omitted). "There is a presumption that if one attorney is conflicted, then the entire firm is conflicted; this presumption may, however, be rebutted if a screen is in place or the conflicted attorney is only partially associated with the firm (i.e. has 'of counsel' status)." *Id*. Notably, at least one court has applied the rules of professional conduct of the forum state in determining that an attorney acting as a trustee had an impermissible conflict of interest. *See, e.g.*, *In re Grieb Printing Co.*, 297 B.R. 82, 87 (Bankr. W.D. Ky. 2003).

administration). SIPC has the responsibility for selecting a trustee and counsel, subject to the disinterestedness determination by the Court; it must be vigilant to assure that a trustee and counsel are and remain unconflicted. The integrity and credibility of the process depends upon it.

The Court is satisfied that the Trustee has presented sufficient information for the Court to conclude that the Trustee and his counsel are "disinterested" for the purpose of section 78eee(b)(6) of SIPA. The potential for conflicts nevertheless remains, particularly with respect to PwC or other "financial institutions" that are current clients of HHR and may be possible defendants in avoidance actions, but the risk is too attenuated at this time to require that Giddens or HHR step aside or that conflicts counsel or a co-trustee be appointed.

The two *pro se* Objectors raised important issues that were insufficiently addressed in the Trustee's and HHR's disclosures, until the Third Disclosure Statement filed in response to an order of the Court. *In re Blinder, Robinson & Co*. highlights the importance of disclosure: selective disclosure of information required for an objective determination of disinterestedness "fails to acknowledge the high fiduciary standard to which [the trustee] must abide to the point of punctilio." 131 B.R. at 883.

The Court concludes that the Trustee and his counsel have now made sufficient disclosures to permit an objective determination of their disinterestedness. This does not relieve SIPC, the Trustee, and HHR from an ongoing obligation to identify, evaluate, and disclose any additional "connections" or conflicts of which they become aware. "[E]arly, full disclosure of all potentially adverse interests should be a principle of first magnitude in all [SIPA liquidations]." *Id*. at 883. In some circumstances, at least, appointment of conflicts counsel or a co-trustee, with approval of the Court, to handle particular matters that Giddens and HHR cannot handle may

resolve the problems, but conflicts counsel may not cure conflicts in all cases. *See, e.g.*, *In re Perry, Adams & Lewis Sec., Inc.*, 5 B.R. at 65 (disqualifying SIPA Trustee after finding that use of conflicts counsel could not resolve problems of conflicts of interest).

**CONCLUSION**

For the reason stated above, the Application requesting the entry of an order regarding the disinterestedness of the Trustee and his counsel is GRANTED.

Dated: December 27, 2011
New York, New York.

**_____/s/Martin Glenn_______**
MARTIN GLENN
United States Bankruptcy Judge