**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    **NOT FOR PUBLICATION**

In re:

MF GLOBAL INC.,                    Case No. 11-2790 (MG) SIPA

                                    Debtor.

## MEMORANDUM OPINION AND ORDER DENYING EMERGENCY MOTION TO COMPEL JAMES W. GIDDENS, TRUSTEE, TO AVOID USING FUTURES COMMISSION MERCHANTS AND CLEARING EXCHANGES

*A P P E A R A N C E S:*

PAUL HAMANN
*Pro Se*
511 Beverly
Lake Forest, Illinois 60045

HUGHES HUBBARD & REED LLP
*Counsel for James W. Giddens, Trustee for the SIPA Liquidation of MF Global Inc.*
One Battery Park Plaza
New York, New York  10004
By:    James B. Kobak, Esq.
       Jeffrey S. Margolin, Esq.
       Josiah S. Trager, Esq.
       Dina R. Hoffer, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Paul Hamann ("Hamann"), *pro se*, filed an *Emergency Motion To Compel  James W. Giddens, Trustee, To Avoid Using Futures Commissions Merchants and Clearing Exchanges* (the "Motion").  (ECF Doc. #913.)   James W. Giddens, Trustee for the liquidation of MF Global Inc. ("MFGI"), (the "Trustee"), filed an opposition to the Motion.  (ECF Doc. #949.)  For the reasons explained below, the Court denies the Motion.

## BACKGROUND

The background of this case has already been discussed in numerous opinions of this Court and will not be repeated here.  On November 2, 2011, the Court approved the Trustee's initial request to complete a bulk transfer of customer accounts containing open U.S. commodity contracts and a percentage of the associated margining collateral to futures commissions merchants ("FCMs"), other than MFGI.  (ECF Doc. #14.)  On November 17, 2011, the Court approved a second partial transfer of certain customers' cash-only accounts.  (ECF Doc. #316) ("Second Bulk Transfer Order").  On November 23, 2011, the Court issued an order establishing parallel claims processes for customers' commodity futures claims and securities claims, which, among other things, established the Bar Date of January 31, 2012, to submit claims for former MFGI commodities and securities futures customers.  (ECF Doc. #423.)  On December 9, 2011, the Court approved a third bulk transfer of certain property of commodities futures customers, (ECF Doc. #717), and also a bulk transfer of certain property of securities customers, (ECF Doc. #718) (together, the "Third Bulk Transfer Order").

As of October 31, 2011, the filing date of MFGI's liquidation proceedings, Hamann's account at MFGI held physical property consisting of four palladium certificates, $16,389 in cash, and no open futures positions.  Through the Second Bulk Transfer, Hamann received $9,834 in cash.  After the Third Bulk Transfer, all eligible customer claimants had received a 72% *pro rata* distribution of their property.  Those customers claiming physical property had the opportunity to submit a deposit of 28% of the value of their property in order to receive their physical property; upon the receipt of the deposit, the Trustee arranged for the transfer of the physical property through an authorized derivatives clearing organization ("DCO") to a

participating FCM, which would then transfer the physical property to the customer.[1]  Hamann

elected to deposit 28% of the value of his physical property, or $28,460.66, and he received a

distribution of four palladium certificates via a DCO (specifically, the Chicago Mercantile

Exchange ("CME")) to an FCM (specifically, R.J. O'Brien & Associates).  In sum, Hamann has

received a 72% *pro rata* distribution along with all other eligible customers in accordance with

the bulk transfer orders of the Court.

## DISCUSSION

In his Motion, Hamann appears to request that the Court direct the Trustee to transfer

physical customer property either to the banks currently in possession of the property or directly

to the customers themselves.  *See* Motion, at 3.  He also requests the Court to direct the Trustee

to inform all former MF Global customers that the CME's credit rating has been downgraded.

*See id.*

Pursuant to section 78fff(b) of the Securities Investor Protection Act ("SIPA"), "to the

extent consistent with the provisions of [SIPA], a liquidation proceeding shall be conducted in

accordance with, and as though it were being conducted under chapters 1, 3 and 5 of subchapters

I and II of chapter 7 of title 11."  15 U.S.C. § 78fff(b).  The Trustee's duties include liquidating

the commodities broker arm of MFGI to the extent not inconsistent with SIPA.  *Id.* § 78fff-1(b).

The Trustee's liquidation of the commodities broker arm of MFGI is governed by subchapter IV

of chapter 7 of the Bankruptcy Code (the "Commodity Broker Liquidation Provisions"), as

supplemented by the Commodity Exchange Act, 7 U.S.C. § 1 *et seq*., and the regulations

---

[1]	The alternative was liquidation of the physical property, followed by a 72% distribution of the proceeds to the customer.

3

promulgated by the Commodities Futures Trading Commission thereunder, 17 C.F.R. §§
190.01–190.10 (the "Part 190 Regulations").

Under the Commodity Broker Liquidation Provisions, the Trustee is obligated to "return promptly **to a customer** any specifically identifiable security, property, or commodity contract to which such customer is entitled, **or shall transfer, on such customer's behalf**, such security, property, or commodity contract **to a commodity broker that is not a debtor under this title** . . . ." 11 U.S.C. § 766(c) (emphasis added).  The Bankruptcy Code defines a "commodity broker" as a "futures commission merchant, foreign futures commission merchant, clearing organization, leverage transaction merchant, or commodity options dealer. . . ." 11 U.S.C. § 105(5).  Similarly, under the Part 190 Regulations, a "commodity broker" is defined as "any person who is registered or required to register as a futures commission merchant under the Commodity Exchange Act." 17 C.F.R. § 190.01(f).

The Third Bulk Transfer Order expressly instructed the Trustee to make transfers to customers "in consultation with the Facilitating DCO and in conjunction with the transferee FCM (if one has been established for that customer)." Third Bulk Transfer Order, at 3.  That same order also provided that "the Trustee—upon advice and approval of SIPC—will seek and may use the assistance of the Chicago Mercantile Exchange Group, Inc., and other registered derivatives clearing organizations . . . that agree to facilitate the transfers." *Id.*

The instructions in section 766(c) are conjunctive.  The Trustee is instructed to return promptly specifically identifiable customer property either to the customer **or** to a commodity broker that is not a debtor on behalf of the customer.  The Third Bulk Transfer Order is permissive:  "[T]he Trustee will seek and *may* use the assistance of the Chicago Mercantile Exchange Group, Inc., and other registered derivatives clearing organizations."  To facilitate a

4

rapid transfer of money and property in the context of this large and complex case, the Trustee

proposed, and the Court approved, the Third Bulk Transfer Order that included the use of DCOs

and FCMs to effect transfers of customer property.  That procedure is permissible under the

applicable statutes and rules.  Neither Hamann nor other customers objected to the proposed

order on the grounds asserted in this Motion.  Hamann and all other eligible customers have

already received their *pro rata* 72% distributions under the three bulk transfer orders.  The

Trustee has also stated that he does not envision further bulk transfers and is now at the point of

settling individual claims through the parallel claims process established by this Court.  There is,

therefore, no live controversy whether a different procedure should now be ordered.  For those

reasons, Hamann's request that the Court direct the Trustee to refrain from utilizing DCOs and

FCMs is denied.

Hamann's request that the Trustee be directed to inform all former MFGI customers that

the CME's credit rating has been downgraded is likewise denied.  No legal basis for this

requested relief is provided.

## CONCLUSION

For the reason stated above, the Motion is DENIED.


Dated: March 7, 2012
       New York, New York.


                                        _____/s/Martin Glenn_____
                                              MARTIN GLENN
                                    United States Bankruptcy Judge