**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    **NOT FOR PUBLICATION**

In re

         MF GLOBAL INC.,                    Case No. 11-2790 (MG) SIPA

                         Debtor.

## MEMORANDUM OPINION APPROVING STIPULATION AND RESOLVING OBJECTIONS RELATING TO RELEASE OF CLAIMS FROM FUTURES CUSTOMERS AND GRANTING SIPA TRUSTEE'S MOTION TO APPROVE FIRST INTERIM DISTRIBUTION FOR ALLOWED COMMODITY FUTURES CLAIMS

*A P P E A R A N C E S:*

HUGHES HUBBARD & REED LLP
*Counsel for James W. Giddens, Trustee for the SIPA Liquidation of MF Global Inc.*
One Battery Park Plaza
New York, New York 10004
By:    James B. Kobak, Jr., Esq.
        Christopher K. Kiplok, Esq.
        Jeffrey S. Margolin, Esq.
        Josiah S. Trager, Esq.
        Anson B. Frelinghuysen, Esq.
        Meaghan C. Gragg, Esq.
        Dustin P. Smith, Esq.

COMMODITY FUTURES TRADING COMMMISSION
Three Lafayette Plaza
1155 21st Street N.W.
Washington, D.C.  20581
By:    Dan M. Berkovitz, Esq.
        Jonathan L. Marcus, Esq.
        Robert B. Wasserman, Esq.
        Martin B. White, Esq.
        Robert A. Schwartz, Esq.

ENTWISTLE & CAPPUCCI LLP
*Counsel for Paradigm Global Fund I Ltd., Paradigm Equities Ltd.,*
*Paradigm Asia Ltd., Augustus International Master Fund, L.P., Zybr*
*Holdings, LLC, William Schur, Futures Capital Management, LLC,*
*Ali A. Rangchi Bozorki, MTrust Co. FBO James M. Mayer, MTrust*
*FBO James Mayer*
280 Park Avenue, 26th Floor West
New York, New York 10017
By:     Andrew J. Entwistle, Esq.
        Joshua K. Porter, Esq.
        Jordan A. Cortez, Esq.


-and-


SUSMAN GODFREY LLP
*Counsel for Paradigm Global Fund I Ltd., Paradigm Equities Ltd.,*
*Paradigm Asia Ltd., Augustus International Master Fund, L.P., Zybr*
*Holdings, LLC, William Schur, Futures Capital Management, LLC,*
*Ali A. Rangchi Bozorki, MTrust Co. FBO James M. Mayer, MTrust*
*FBO James Mayer*
560 Lexington Avenue, 15th Floor
New York, New York 10022
By:     William Christopher Carmody, Esq.
        Jacob W. Buchdahl, Esq.


-and-


SUSMAN GODFREY LLP
*Counsel for Paradigm Global Fund I Ltd., Paradigm Equities Ltd.,*
*Paradigm Asia Ltd., Augustus International Master Fund, L.P., Zybr*
*Holdings, LLC, William Schur, Futures Capital Management, LLC,*
*Ali A. Rangchi Bozorki, MTrust Co. FBO James M. Mayer, MTrust*
*FBO James Mayer*
1901 Avenue of the Stars, Suite 950
Los Angeles, California  90067-6029
By:     Marc M. Seltzer


NISEN & ELLIOT, LLC
*Counsel for Henning-Carey Proprietary Trading, Charles Carey,*
*Joseph Niciforo, Robert Tierney, Brian Fisher, Shane McMahon,*
*Michael Mette, and Timothy Zaug*
200 West Adams Street
Chicago, Illinois 60606
By:     Michael H. Moirano, Esq.
        Claire E. Gorman, Esq.
        Brittany E. Kirk, Esq.

2

LOUIS F. BURKE P.C.
*Counsel for David Accomazzo and Roberto Calle Gracey*
460 Park Avenue, 21st Floor
New York, New York 10022
By:    Louis F. Burke, Esq.
       Leslie Wybiral, Esq.

FORD MARRIN ESPOSITO WITMEYER & GLESER, LLP
*Counsel for Sapere Wealth Management, LLC, Granite Asset Management,*
*and Sapere CTA Fund, LP*
Wall Street Plaza
New York, New York  10005
By:    John J. Witmeyer III, Esq.
       Jon R. Grabowski, Esq.
       Stephen R. Chuk, Esq.
-and-

HOWARD, STALLINGS, FROM & HUTSON, P.A.
*Counsel for Sapere Wealth Management, LLC, Granite Asset Management,*
*and Sapere CTA Fund, LP*
5410 Trinity Road, Suite 210
P.O. Box 12347
Raleigh, North Carolina  27605
By:    Joseph H. Stallings, Esq.

MCCARTER & ENGLISH, LLP
*Counsel for Occidental Energy Marketing Inc.*
245 Park Avenue
New York, New York  10167
By:    David J. Adler, Esq.


-and-

MCCARTER & ENGLISH, LLP
*Counsel for Occidental Energy Marketing Inc.*
405 North King Street, 8th Floor
Wilmington, Delaware  19801
By:    Katharine L. Mayer, Esq.

ZACH ZUNSHINE
*Counsel for Claimant Jill Zunshine*
P.O. Box 231398
New York, New York  10023
By:    Zach Zunshine, Esq.

BARNES & THORNBURG LLP
*Counsel for Patrick O'Malley, M.D., Matthew Johnson, and*
*Michael Dokupil*
One N. Wacker Drive, #4400
Chicago, Illinois  60606
By:    Vincent P. Schmeltz III, Esq.
       Deborah L. Thorne, Esq.


-and-


BARNES & THORNBURG LLP
*Counsel for Patrick O'Malley, M.D., Matthew Johnson, and*
*Michael Dokupil*
1000 N. West Street, Suite 1200
Wilmington, Delaware  19801
By:    David M. Powlen, Esq.


STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.
*Counsel for Lee B. Stern, Jeffrey Stern, Daniel Stern, Richard Stark,*
*Transcend Investments LLC, the Steven M. Abraham Revocable Trust,*
*Murray Wise, and Carl Berg*
2323 Bryan Street, Suite 2200
Dallas, Texas  75201-2689
By:    Sander L. Esserman, Esq.
       Robert T. Brousseau, Esq.
       Peter C. D'Apice, Esq.
       David A. Klingler, Esq.


MORRISON & FOERSTER LLP
*Counsel for Louis J. Freeh, Chapter 11 Trustee of MF Global Holdings Ltd.*
1290 Avenue of the Americas
New York, New York  10104
By:    Brett H. Miller, Esq.
       Lorenzo Marinuzzi, Esq.
       Melissa A. Hager, Esq.
       John A. Pinarelli, Esq.


FOLEY & LARDNER LLP
*Counsel for John Supple, Thomas Ritter, and Greenbriar Partners L.P.*
90 Park Avenue
New York, New York  10016
By:    Richard J. Bernard, Esq.
       Alissa M. Nann, Esq.


-and-

FOLEY & LARDNER LLP
*Counsel for John Supple, Thomas Ritter, and Greenbriar Partners L.P.*
321 N. Clark Street, Suite 2800
Chicago, Illinois  60654
By:    Geoffrey S. Goodman, Esq.

DEWEY & LEBOEUF LLP
*Counsel for the Statutory Creditors' Committee of*
*MF Global Holdings Ltd., et al.*
1301 Avenue of the Americas
New York, New York  10019
By:    Martin J. Bienenstock, Esq.
       Michael P. Kessler, Esq.
       Irena M. Goldstein, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are two related issues.  The first issue arises from the *Motion of James*

*W. Giddens, SIPA Trustee for Liquidation of MF Global Inc., To Approve First Interim*

*Distribution for Allowed Commodity Futures Claims* (the "Claim Distribution Motion").  (ECF

Doc. #1086.)  Objections or responses were filed by:  (1) the Commodities Futures Trading

Commission (ECF Doc. #1098); (2) Jill Zunshine ("Zunshine Objection") (ECF Doc. #1190); (3)

Patrick O'Malley, M.D., Matthew Johnson, and Michael Dokupil ("O'Malley Objection") (ECF

Doc. #1206); (4) Certain MF Global Inc. Claimants ("Stern Objection")[1] (ECF Doc. #1208); (5)

Louis J. Freeh, Chapter 11 Trustee of MF Global Holdings Ltd. (ECF Doc. #1215); (6) John

Supple, Thomas Ritter, and Greenbriar Partners, L.P. ("Greenbriar Objection") (ECF Doc.

#1216); (7) certain former futures accounts customers (the "Paradigm Objection 2")[2] (ECF Doc.

---

[1]    The Certain MF Global Inc. Claimants are Lee B. Stern, Jeffrey Stern, Daniel Stern, Richard Stark, Transcend Investments LLC, the Steven M. Abraham Revocable Trust, Murray Wise, and Carl Berg.

[2]    The objectors are Paradigm Global Fund I Ltd.; Paradigm Equities Ltd.; Paradigm Asia Fund Ltd.; Augustus International Master Fund, L.P.; Zybr Holdings, LLC; Futures Capital Management, LLC; Pollack Commodity Partners; MTrust Co. FBO James M. Mayer; MTrust FBO James Mayer; William Schur; Ali A. Rangchi Bozorki; Henning-Carey Proprietary Trading, LLC; Charles Carey; Joseph Niciforo; James Groth; Robert Teirney; Brian Fisher; and Shane McMahon.

#1217); and (8) the Statutory Creditors' Committee of MF Global Holdings Ltd. (ECF Doc. #1277).  The SIPA Trustee filed an Omnibus Reply addressing all of the objections and responses. (ECF Doc. #1297.)

The second issue arose initially from a notice of presentment—*Joint Notice of Presentment of Stipulation and Order Resolving Objection Relating to Assignment and Release of Claims from Futures Customers* (the "Stipulation").  (ECF Doc. #1050.)  Because two objections were filed in response by certain former commodities futures account customers (the "Paradigm Objection")[3] (ECF Doc. #1111) and Sapere Wealth Management, Granite Asset Management, and Sapere CTA Fund, L.P. (the "Sapere Objection") (ECF Doc. #1112), the matter was scheduled for hearing on April 12, 2012.  The SIPA Trustee filed a *Response in Further Support of the Stipulation* (the "Response"), which included an Amended Stipulation, drafted in coordination with some of the objectors.  (ECF Doc. #1274.)  On April 10, Occidental Energy Marketing Inc. submitted a reservation of rights in response to the SIPA Trustee's Response.  (ECF Doc. #1307.)

After the Court heard oral argument on April 12, 2012, the SIPA Trustee amended his request for relief, (i) withdrawing his request for Court approval of an assignment of claims by commodities customers against third parties in order for the customers to receive distributions on net equity claims and (ii) modifying the form of release required from commodities customers before receiving such distributions.  That withdrawal and modification were consolidated into

---

[3]      The objectors are Paradigm Global Fund I Ltd.; Paradigm Equities Ltd.; Paradigm Asia Fund Ltd.; Augustus International Master Fund, L.P.; Zybr Holdings, LLC; Futures Capital Management, LLC; Pollack Commodity Partners; MTrust Co. FBO James M. Mayer; MTrust FBO James Mayer; William Schur; Ali A. Rangchi Bozorki; Henning-Carey Proprietary Trading, LLC; Charles Carey; Joseph Niciforo; James Groth; Robert Teirney; Brian Fisher; and Shane McMahon.

one proposed order, the *Order in Furtherance of Claims Processing Order* (the "Third Amended

Release").

## BACKGROUND

The background of this case has been discussed in numerous opinions of this Court and

will not be repeated here.  On November 2, 2011, the Court approved the SIPA Trustee's initial

request to complete a bulk transfer of customer accounts containing open U.S. commodity

contracts and a percentage of the associated margining collateral to futures commissions

merchants ("FCMs") other than MFGI.  (ECF Doc. #14.)  On November 17, 2011, the Court

approved a second partial transfer of certain customers' cash-only accounts.  (ECF Doc. #316.)

On December 9, 2011, the Court approved a third bulk transfer of certain property of

commodities futures customers, including non-liquid assets such as warehouse receipts, precious

metal certificates, shipping certificates, and other certificates of title for commodities held by

MFGI for its customers (the "Physical Customer Property") (ECF Doc. #717), and also a bulk

transfer of certain property of securities customers (ECF Doc. #718) (together, the "Third Bulk

Transfer Order").  Through the bulk transfers, the SIPA Trustee was ultimately able to distribute

approximately 72% of the net liquidating value of each domestic account based on the unaudited

books and records of MFGI, rather than on individual claims filed by customers.

On November 23, 2011, the Court entered an order approving the *Trustee's Expedited*

*Application To Establish Parallel Customer Claims Processes* (the "Claims Process Order").

(ECF Doc. #423.)  That Order established a Bar Date for filing of claims by commodities and

securities customers and all other creditors against MFGI.  It also established the process for the

SIPA Trustee's determination of customer claims (a "Finalized Claim").[4]  The bulk transfers

allowed eligible customers to receive a 72% distribution of their property, except that those

transfers were subject to each claimant's Finalized Claim, which is the final resolution of the

estate's obligation to that customer.

## DISCUSSION

### A.    The Claims Distribution Motion

#### 1.    Requested Relief

Through the Claims Distribution Motion, the SIPA Trustee seeks authority to (i)

distribute up to approximately $600 million of "Segregated Funds";[5] (ii) distribute up to

approximately $50 million of "Secured Funds";[6] and (iii) establish a "Delivery Class" and

distribute up to approximately $35 million of "Delivery Funds" to claimants with allowed claims

for property within the Delivery Class (the "First Interim Claims Distribution").  The SIPA

Trustee proposes to establish a Delivery Class comprised of all Physical Customer Property

accounts, including Physical Customer Property that has been or will be reduced to cash in any

manner, either before or after the Petition Date.  This Delivery Class would include preexisting

"Delivery Credits"[7] as well as "Frozen Proceeds"[8] and funds obtained post-petition when

---

[4]      A claim is not finalized until a claimant either agrees with the determination of his claim by the SIPA Trustee or it has been resolved judicially.  The Claims Process Order sets forth the mechanism for a customer to object to the SIPA Trustee's determination of his claim and to seek orderly resolution by the Court of the claim.

[5]      "Segregated Funds" are funds within the class of assets used to support domestic futures trading, including suspended funds.  Segregated Funds are from the same pool of customer property that nearly exclusively made up the funds transferred for the benefit of customers through the bulk transfer process.

[6]      "Secured Funds" are funds within the class of assets used to support foreign futures trading.  Only a small portion of the Secured Funds has been recovered by the SIPA Trustee thus far, and no transfers or distributions from that pool of assets have been authorized to date.

[7]      As the Trustee explained in his moving papers:

> All Physical Customer Property was, in fact, prominently designated in the records of MFGI as associated with an "F/D" portion of the account.

Physical Customer Property was either (i) delivered against a customer's obligation to deliver via restricted delivery; (ii) transferred to customers to effect the 72% distribution of the combined value of their Physical Customer Property and other domestic assets (including cash deposits posted by some customers to enable them to receive Physical Customer Property with an aggregate value above the 72% *pro rata* distribution to which they were entitled); or (iii) otherwise liquidated.

The SIPA Trustee states that the First Interim Claims Distribution would be made on a rolling basis to customers with Finalized Claims. *See* Claim Distribution Mot., ¶ 19. The SIPA Trustee also contends that the amount of the First Interim Claims Distribution would not interfere with the SIPA Trustee's maintenance of contingency amounts for each class of customer property, ensuring fair treatment of all of MFGI's futures customers (including MFGI's former foreign affiliates on behalf of those affiliates' customers). *See id.* ¶ 8. The SIPA Trustee

> expects to maintain approximately $700 million in Segregated Funds (of which about one-half is claimed by foreign affiliates on behalf of their customers), approximately $10 million in Delivery Funds, and approximately $40 million in Secured Funds, in each case, to address potential disputes and, when practicable, make other interim distributions or a final distribution.

*Id.*

---

> Additionally, in the ordinary course, when a customer sought to deliver Physical Customer Property to fulfill a contractual obligation to sell, the proceeds of such sale (once cleared and posted to MFGI) were ultimately recorded in the "F/D" portion of the account. Indeed, some customers had pre-existing "F/D" credits as of the Filing Date ("Delivery Credits")—the result of previous proceeds from making delivery.

Claim Distribution Mot., ¶ 24.

[8]    "Frozen Proceeds" are the proceeds of delivery transactions that were processed in the days immediately around the Petition Date, but were suspended due to MFGI's liquidation and held at derivative clearing organizations.

### 2. The Objections

Objections were filed to the Claims Distribution Motion, primarily objecting to the SIPA Trustee's requirement that commodities customers assign to the SIPA Trustee their claims against third parties before receiving a distribution of customers' allowed claims.[9]  Because the SIPA Trustee has withdrawn his request for the assignments, the Court will first discuss the remaining objection to the Claims Distribution Motion.

The O'Malley Objection (ECF Doc. #1206) asserts that the SIPA Trustee incorrectly attempts to include Delivery Credits and Frozen Proceeds within the Delivery Class.  The objectors argue that because the Delivery Credits and Frozen Proceeds are not "specifically identifiable property," and, therefore, not within the definition of "delivery account," the Delivery Class should only be comprised of physical commodities.  Including Delivery Credits and Frozen Proceeds in the Delivery Class increases the total claims in that class.  But because the SIPA Trustee has so far been unable to recover all of the cash associated with Delivery Credits and Frozen Proceeds, the inclusion of Delivery Credits and Frozen Proceeds in that Class dilutes the potential recovery of customers with claims to property in the Delivery Class, as the amount of claims is increased but the amount available to satisfy these claims remains fixed.  The objectors also assert that the inclusion of Delivery Credits and Frozen Proceeds within the Delivery Class does not follow the intent of the Commodity Futures Trading Commission

---

[9]    The Zunshine Objection (ECF Doc. #1190), Stern Objection (ECF Doc. #1208), and Paradigm Objection 2 (ECF Doc. #1217) deal with the assignment provision of the DRA.  The Trustee has withdrawn his request for the assignments and the Court concludes below that the assignments obtained by the Trustee without court approval are void.  *See* Part B.2, *infra*.  At the hearing, Jill Zunshine's counsel also objected to the propriety of the release itself, but the Court overruled the objection during the hearing.  The Court concludes that the Third Amended Release is fully appropriate and warranted in the circumstances.  *See* Part B.1, *infra*.

In addition to objecting to the Assignment provision in the DRA, the Stern Objection requested that the Court set a deadline for the completion of the Trustee's determination of all claims.  The Court overruled the objection, finding that Trustee and his team have been working expeditiously to resolve claims.  Any deadline the Court sets would be arbitrary and detrimental to a fair and accurate determination of net equity claims.

("CFTC") regarding the creation of the "delivery account" class—shielding customers holding specifically identifiable property from the otherwise dilutive effect of the Part 190 Regulations' *pro rata* distribution scheme. The objectors note that Delivery Credits and Frozen Proceeds were not required to be segregated nor in fact segregated and should not be allowed to be part of a "delivery account" class.

### 3. Legal Standard

Liquidation of an FCM is subject to two separate regulatory regimes: the Securities Investor Protection Act ("SIPA") and the Commodities Exchange Act (the "CEA"). Under both regimes, customers are entitled to a *pro rata* share of the applicable pools of customer property from separate customer account classes. Within the context of a SIPA liquidation, determining the claims of, and allocating customer property to, former MFGI commodity customers incorporates the interplay of subchapter IV of title 11 of the Bankruptcy Code, the CEA, and, as discussed below, 17 C.F.R. Part 190 (the "Part 190 Regulations"). *See In re MF Global Inc.*, No. 11-2790, 2012 WL 1146019, at *5 (Bankr. S.D.N.Y. Apr. 6, 2012).

The CFTC has enacted a set of procedures to guide trustees and assist courts in implementing the CEA and subchapter IV of title 11 of the Bankruptcy Code. *See* 17 C.F.R. § 190 *et seq.* Those regulations: (1) define what constitutes customer property, *see id.* § 190.08; (2) establish a system of customer classes and account classes, which ensures a fair and orderly process of *pro rata* distribution, *id.* §§ 190.01(a), (m), (bb), & (hh); and (3) provide a formula for calculating allowable "net equity claims," *id.* § 190.07.

In establishing a system of customer and account classes, the Part 190 Regulations identify six potential account classes: futures accounts, foreign futures accounts, leverage

11

accounts, commodity option accounts, delivery accounts, and cleared OTC derivatives accounts.

*See id.* § 190.01(a).  "Delivery accounts" are defined as

> any account prominently designated as such in the records of the debtor which contains only the specifically identifiable property associated with delivery set forth in § 190.01(kk)(3), (4), and (5), except that with respect to § 190.01(kk)(4) and (5), delivery need not be made or taken and exercise need not be effected for such property to be included in a delivery account.

*Id.* § 190.05(a)(2).[10]

---

[10]    "Specifically identifiable property" is defined as

> (3) With respect to warehouse receipts, bills of lading or other documents of title, or physical commodities received, acquired, or held by or for the account of the debtor for the purpose of making or taking delivery or exercise from or for the account of a customer, any such document of title or commodity which as of the entry of the order for relief can be identified on the books and records of the debtor as received from or for the account of a particular customer as held specifically for the purpose of delivery or exercise.

> (4) Any cash or other property deposited prior to the entry of the order for relief to pay for the taking of physical delivery on a long commodity contract or for payment of the strike price upon exercise of a short put or a long call option contract on a physical commodity, which cannot be settled in cash, in excess of the amount necessary to margin such commodity contract prior to the notice date or exercise date, which cash or other property is identified on the books and records of the debtor as received from or for the account of a particular customer on or after three business days before the first notice date or three calendar days before the exercise date specifically for the purpose of payment of the notice price upon taking delivery or the strike price upon exercise, respectively, and such customer takes delivery or exercises the option in accordance with the applicable contract market rules.

> (5) The cash price tendered for any property deposited prior to the entry of the order for relief to make physical delivery on a short commodity contract or for exercise of a long put or a short call option contract on a physical commodity, which cannot be settled in cash, to the extent it exceeds the amount necessary to margin such contract prior to the notice date or exercise date, which property is identified on the books and records of the debtor as received from or for the account of a particular customer on or after three calendar days before the first notice date or three calendar days before the exercise date specifically for the purpose of a delivery or exercise, respectively, and such customer makes delivery or exercises the option in accordance with the applicable contract market rules.

17 C.F.R. § 190.01(*ll*)(3)-(5) (2012) (effective April 9, 2012).  This definition was previously located in section 190.01(kk)(3)-(5) in the prior version of the Code of Federal Regulations.

The Court finds that Delivery Credits, Delivery Debits, and Frozen Proceeds properly belong in the Delivery Class pursuant to 17 C.F.R. §§ 190.05(a)(2) (defining "delivery account") and 190.01(*ll*)(3)-(5) (defining "specifically identifiable property" to include cash or other property identified on the books and records of the debtor as related to delivery of Physical Customer Property or exercise of the related contracts), along with Physical Customer Property, despite the effect that they may have on the shortfall of that class.  To the extent that Delivery Credits, Delivery Debits, and Frozen Proceeds were identified on the books and records of MFGI as related to the delivery of Physical Customer Property or exercise of the related contracts, the SIPA Trustee has properly classified this category of property.

There is no requirement in the applicable statutes or regulations that Delivery Credits and Frozen Funds be segregated.  MFGI's failure to segregate this property does not exclude it from the definition of "specifically identifiable property" under 17 C.F.R. §§ 190.01(*ll*)(3)-(5). Section 190.08(c)(1) states that

> property held by or for the account of a customer, which is segregated on behalf of a specific account class, or readily traceable on the filing date to customers of such account class, *must be allocated to the customer estate of the account class for which it is segregated or to which it is readily traceable.*

17 C.F.R. § 190.08(c)(1) (emphasis added).  The SIPA Trustee concluded that the Delivery Credits, Delivery Debits, and Frozen Proceeds are traceable to Physical Customer Property and are, therefore, properly classified in the Delivery Class even though the property was not segregated.  Indeed, if they are excluded from the Delivery Class, their presence in another class would create a shortfall in that class.[11]

---

[11]    The CFTC's comments in the *Federal Register* on the final rules for the Part 190 Regulations state:

> Delivery Accounts.  The question remains in most cases as to how to mitigate the dilution effect of the pro rata provisions of the Code with respect to property

During the hearing, counsel for the O'Malley objectors argued that 17 C.F.R. § 1.21

mandates that trading proceeds not required to be segregated be allocated across customer

classes rather than allocated to a single customer class.  That argument was not contained in the

O'Malley written objection, but counsel asserted that the argument was made in response to the

SIPA Trustee's Omnibus Reply.  The Court allowed counsel to file a sur-reply (ECF Doc.

#1374), limited to the impact of section 1.21 on the determination of the Claim Distribution

Motion.  The sur-reply mentions section 1.21 largely in passing and unpersuasively.  Instead, the

sur-reply improperly raises new and untimely arguments.  The Court specifically concludes that

section 1.21 is inapplicable to the issues here.

Section 1.21, entitled "Care of money and equities accruing to customers," states:

> All money received directly or indirectly by, and all money and
> equities accruing to, a futures commission merchant from any
> clearing organization or from any clearing member or from any
> member of a contract market incident to or resulting from any
> trade, contract or commodity option made by or through such
> futures commission merchant on behalf of any commodity or
> option customer shall be considered as accruing to such
> commodity or option customer within the meaning of the Act and
> these regulations.  Such money and equities shall be treated and

---

or cash captured by the estate in the absence of any category of property which
can be reclaimed in full.  In this connection, the Commission believes that the
best solution—and the one suggested by the commentators—is the creation of a
separate class of accounts denominated "Delivery Accounts."  The Commission
is, therefore, adding in § 190.05(a)(2), an account class denominated "delivery
accounts," to the other account classes.  This account class contains only the
property referred to in §§ 190.01(kk)(3), (4), and (5).

Property segregated on behalf of a delivery account, under the allocation
provisions, will be allocated only to that account class.  This means that
although this property will not be distributed to the extent its value exceeds a
claimant's net equity claim and will be distributed pro rata among claimants
with delivery claims with are of the same class, it will not be diluted by other
types of customer claims.  This solution reduces the dilution effect of proration
without offending the basic principles of proration of equivalent claims.  The
Commission's broad authority with respect to deliveries should be noted in this
connection.

Final Rules, Commodity Futures Trading Commission, 17 CFR Part 190, 48 Fed. Reg. 8716, 8731 (Mar. 1, 1983)
(codified at 17 C.F.R. Part 190) (footnotes omitted).

> dealt with as belonging to such commodity or option customer in accordance with the provisions of the Act and these regulations. Money and equities accruing in connection with commodity or option customers' open trades, contracts, or commodity options need not be separately credited to individual accounts but *may* be treated and dealt with as belonging undivided to all commodity or options customers having open trades, contracts, or commodity option positions which if closed would result in a credit to such commodity or option customers.

17 C.F.R. § 1.21 (emphasis added). That provision does not deal with the distribution of specifically identifiable property in an FCM liquidation. Moreover, the language in section 1.21 is permissive, stating that money and equity incident to a trade or contract "may be treated and dealt with as belonging undivided to all commodity or options customers"; it does not require that property to be treated as such. For these reasons, the Court overrules the O'Malley Objection.

### 4. Conclusion

Because the Part 190 Regulations include Delivery Credits and Frozen Proceeds in the definition of "specifically identifiable property," the SIPA Trustee has correctly included them in the Delivery Class.

### B.      The Amended Stipulation

Without seeking Court approval or disclosing the condition, the SIPA Trustee required claimants to sign a "Declaration, Release and Assignment" form (the "DRA") before receiving any distribution of allowed net equity claims. *See* Paradigm Obj., ¶¶ 2, 9; Resp., ¶ 5. To date, the SIPA Trustee has sent individual claim determination letters to over 21,000 claimants and has received in excess of 7,500 executed DRAs in response. Resp., ¶ 5. Neither the Claims Process Order nor any of the Bulk Transfer Orders provided for any release or assignment agreement; nor did the Claim Distribution Motion seek approval of a mandatory release and assignment agreement.

The DRA required claimants to release their claims against the estate and assign their

claims against third parties to the SIPA Trustee before receiving payment of their allowed

claims.  Only the numerous objections filed by claimants brought this issue to the Court's

attention.  The SIPA Trustee Response did not provide any legal authority for requiring

commodities customers to assign the customers' claims against third parties to the SIPA Trustee.

The objectors argued that customers receiving distributions required by applicable statutes and

regulations cannot be compelled to transfer their claims in return for the distributions.  The Court

took the Motion under submission at the hearing.  Several days after the hearing, the SIPA

Trustee advised the Court that he withdraws his request for approval for the assignments.

Further negotiations with the objectors have largely resolved the issues concerning the proposed

release.

### 1.  The Release Provision

The SIPA Trustee initially submitted for the Court's approval a proposed Amended

Stipulation that modified the original release language.  The Amended Stipulation attempted to

clarify that some claims are "carved out" of the DRA; namely the DRA shall not release

> any claims against any current or former employee, officer, or director
> of MF Global Holdings, Ltd., or any of its subsidiaries or affiliates,
> including MFGI, except with respect to any work performed by such
> employee, officer, or director in connection with the Liquidation
> Proceeding under the supervision of the Trustee.

Resp., ¶ 21; Am. Stipulation, ¶ 3.

Nevertheless, some objections remained.  During the hearing the scope of the

disagreement between the SIPA Trustee and objectors narrowed further, and the parties agreed to

confer in an effort to find acceptable language, resulting in the proposed Third Amended Release

that is now before the Court.[12]

The Third Amended Release clarifies that claimants receiving a distribution based on

their net equity claims must agree to release the SIPA Trustee, the Securities Investor Protection

Corporation ("SIPC"), and MFGI from any net equity claim in any amounts other than as

approved in the claim determination and agreed to by the claimant.  The principle is simple: once

the SIPA Trustee and a claimant reach agreement on a net equity claim, the claimant cannot later

---

[12]    The Third Amended Release provides, in pertinent part:

> (ii) The release language contained in the prior Declaration, Release and Assignment form shall be deemed amended for all purposes as reflected in Exhibit A to releasing claims for actual payments or distributions to a commodities customer only to the extent of funds such commodities customer actually receives on account of the customer's allowed commodities net equity claim from the Trustee in connection with this proceeding.

> (iii) the prior Declaration, Release and Assignment and the amended form of the Declaration and Release shall not release any claims against any current or former employee, officer, or director of MF Global Holdings, Ltd., or any of its subsidiaries or affiliates, including MFGI, except with respect to any work performed by such employee, officer, or director in connection with this proceeding under the supervision of the Trustee.

> (iv) There are and shall be no third-party beneficiaries of the prior Declaration, Release and Assignment form and/or the amended Declaration and Release and only Released Persons (as defined therein) may assert any release contained therein.

> (v) The Declaration, Release and Assignment form and the amended Declaration and Release will not alter or limit any rights a commodities customer has, or any standing the commodities customer has, to assert claims against third parties other than the Released Persons (as defined therein), and to recover against such third parties on such claims.

> (vi) The Declaration, Release and Assignment form and the amended Declaration and Release will not alter the relative priority of a commodities customer and the Trustee to assert or recover on any claims against third parties other than the Released Persons (as defined therein).

> (vii) The Declaration, Release and Assignment form and the amended Declaration and Release shall not release or extend to any general unsecured claims asserted by a commodities customer in this proceeding in addition to the commodities net equity claim subject to the form.

Third Am. Release, at 2–3.

contest that determination.  Any claimant that objects to the SIPA Trustee's claim determination

remains free to contest it in accordance with the procedures set forth in the Claims Process

Order; it is only where the claimant agrees with the claim determination and will receive a *pro

rata* distribution based on the net equity claim that a release is required.

The Court concludes the proposed release is fully appropriate and warranted in the

circumstances; no one really argues to the contrary.  The objections to the release focused on the

specific language used, not to the concept.  But still remaining is the issue of how to deal with

signed DRAs already received by the SIPA Trustee from claimants containing language the

SIPA Trustee has now agreed to change.  The Third Amended Release attempted to address

those 7,500-plus customers who signed and returned the earlier version of the DRA to the SIPA

Trustee:

> [T]hose commodities claimants who already signed and returned
> the prior Declaration, Release and Assignment form to the Trustee
> or filed it with the Court need not take further measures as the
> prior Declaration, Release and Assignment form which is hereby
> modified and clarified by this Order shall be in full force and effect
> in such modified form upon entry of this Order . . . .

Third Am. Release, at 3.  The clarification of the Release language benefits the claimants, and

the SIPA Trustee agrees that the modified Release provisions apply to all claimants who agree

upon the claim determination.  But must the SIPA Trustee have claimants sign new releases, or

may the Release language be deemed changed and effective as to all claimants who executed the

prior Release?

If this were the only issue concerning the document containing the release, the Court

might be prepared simply to deem the release modified.  But the same document contains the

Assignment provision, which as explained below, is void and unenforceable.  The Court,

therefore, concludes that the SIPA Trustee must obtain new releases from all claimants that will

18

receive a distribution, even though imposing this requirement will add to the SIPA Trustee's administrative burden and expense.  This requirement is, in short, a self-inflicted wound.

### 2.    The Assignment Provision

During oral argument, considerable colloquy focused on the Assignment provision in the DRA that the SIPA Trustee required all claimants receiving a distribution to sign.  The original assignment language in the DRA provided:

> Further, Claimant hereby assigns and transfers to the Trustee and SIPC all rights, including any and all claims and causes of action, and any proceeds derived therefrom, that Claimant may have against any party, arising out of or relating to the Claim, the circumstances that gave rise to the Claim and the Account, to the extent of the Consideration.

Resp., Ex. A.  The Amended Stipulation sought to make clear that the SIPA Trustee is permitted to take assignments of the portion of a customer's claims against third parties in the amount of actual payments received from the SIPA Trustee in satisfaction of those claims.  *See* Resp., ¶ 20; Am. Stipulation, ¶ 4.  The Amended Stipulation also stated that the DRA would not limit a customer's right to assert claims against third parties (other than the SIPA Trustee, his agents and professional, MFGI, and SIPC and its agents, employees, and professionals) and to recover against such third parties on any such unsatisfied claims.  *See* Resp., ¶ 20; Am. Stipulation, ¶ 7.  But the SIPA Trustee still maintained that customers' assignment of their claims would be a prerequisite to receiving any payment in satisfaction of net equity claims.

The argument in the written objections and at the hearing focused on whether the SIPA Trustee can condition receipt of distributions required by SIPA, the Bankruptcy Code, the CEA, and the Part 190 Regulations on claimants' assigning their rights to assert claims against third parties for any losses the claimants suffered.  Numerous class actions have already been filed by MFGI commodities customers against third parties seeking recovery of the claimants' losses.  At

19

the conclusion of the hearing, the Court took the matter under submission. Several days later, however, the SIPA Trustee's counsel advised the Court that the SIPA Trustee withdraws the requirement that claimants execute the assignment.[13] Because the SIPA Trustee has withdrawn his demand that claimants assign their claims against third parties to the SIPA Trustee, it is unnecessary for the Court to decide whether such a requirement could be imposed by the SIPA Trustee with Court approval before customers can receive distributions on otherwise agreed claims. The issue remains, however, about the status of the assignments already received by the SIPA Trustee. As explained below, the Court concludes that the assignments already received are void and shall be of no further force or effect.

A SIPA trustee's standing to assert claims that belong to customers of a defunct firm has been a subject of contention and decisions by other courts. *See, e.g.*, *Picard v. HSBC Bank PLC*, 454 B.R. 25 (S.D.N.Y. 2011). That issue has not been presented to this Court, and nothing in this Opinion addresses that issue. No doubt seeking to avoid that issue, the SIPA Trustee apparently imposed the requirement that claimants assign their claims against third parties to the SIPA Trustee. Whether the Assignment provision drafted by the SIPA Trustee would avoid the problem that SIPA trustees have had in other cases is a question that need not be addressed here.[14]

---

[13]     The Third Amended Release states that "[a]ny and all assignments to the Trustee contained in the prior Declaration, Release and Assignment form are and shall be null and void and given no force and effect by any court of competent jurisdiction." Third Am. Release, at 2.

[14]     In *Bankruptcy Services, Inc. v. Ernst & Young (In re CBI Holding Co., Inc.)*, 529 F.3d 432 (2d Cir. 2008), the Second Circuit addressed whether a distribution trust under a confirmed chapter 11 plan could assert an assigned claim that had belonged to a creditor against a third party and that had been assigned to the trust as part of the plan. The court stated:

> Allowing a debtor's creditors to assign their claims for the benefit of the debtor's estate permits debtors, creditors, and bankruptcy courts the flexibility in reorganizing or liquidating a debtor's assets necessary to achieve efficient administration of the reorganization or liquidation. Indeed, the voluntary and court-approved assignment at issue in this case perfectly illustrates how both a

Although the Court need not decide whether the SIPA Trustee can compel an assignment, it is clear that the SIPA Trustee could not obtain the assignments of claims belonging to commodity customers in exchange for distributions from the estate without first obtaining court approval.  Section 363 of the Bankruptcy Code provides that a debtor "after notice and hearing, may use, sell, or lease, *other than in the ordinary course of business*, property of the estate."  11 U.S.C. § 363(b)(1) (emphasis added).   Section 363(b)(1) applies because the SIPA Trustee is acquiring commodity customers' claims using property of the estate "other than in the ordinary course of business."  *See, e.g.*, *In re The Colad Grp., Inc*., 324 B.R. 208, 215 (Bankr. W.D.N.Y. 2005) (requiring bankruptcy court approval for use of estate resources outside the ordinary course of the debtor's business pursuant to section 363(b)(1)).  Because the SIPA Trustee obtained the assignments without first obtaining Court approval, all of the assignments already obtained are void and of no further force or effect.  To avoid any confusion or uncertainty arising from the approximately 7,500 DRA forms already returned to the SIPA Trustee, containing release language that has now been changed and an assignment of claims that is void, the SIPA Trustee must obtain new signed forms from all claimants.

---

debtor and its creditors can benefit from the flexibility that § 541(a)(7) of the Bankruptcy Code facilitates.  The *Barnes [v. Schatzkin*, 215 A.D. 10, 212 N.Y.S. 536 (1st Dep't 1925)] view would unnecessarily hamstring those parties on the basis of an outdated version of the Bankruptcy Code.

*Id*. at 459.  Whether the *CBI* holding applies to a SIPA trustee need not be decided, but it is important to recognize that the court in *CBI* dealt with "the voluntary and court-approved assignment," *id.,* rather than a compelled assignment that was not presented to the Court for approval before insisting on the assignments from claimants.

It should also be noted that in *CBI* a significant claim of a single creditor was assigned as part of a settlement with that creditor resolving the amount of the creditor's allowed claim against the estate.  Here, MFGI has approximately 23,000 commodity customer claims.  If fewer than all claimants voluntarily assign their claims, questions would then arise whether estate assets should be used by the Trustee to prosecute claims of only some claimants.  Whether the Trustee can compel claimants to assign their claims is now moot as the Trustee has withdrawn the request for the assignments.

## CONCLUSION

For the reasons explained above, the Court GRANTS the Claims Distribution Motion.

The Court also finds that the proposed Third Amended Release is appropriate and warranted in

the circumstances, but finds that the Assignments executed by claimants to be void and without

effect.   The SIPA Trustee should submit proposed orders to the Court consistent with this

Opinion.


Dated: April 24, 2012
       New York, New York


_____**/s/Martin Glenn**_____
MARTIN GLENN
United States Bankruptcy Judge