# EXHIBIT A

## CUSTOMER AGREEMENT BETWEEN CONOCOPHILLIPS COMPANY AND MF GLOBAL INC.

# CUSTOMER AGREEMENT

*This agreement ("Agreement") sets forth the terms and conditions under which we, E. D. & F. Man International Inc., will open and maintain one or more accounts (collectively, the "account") in your name and on your behalf and otherwise transact business with you. If this account has been introduced to us, all references to us in this Agreement shall include your broker, and your broker shall enjoy all benefits and rights hereunder.*

## 1. PARTIES.

You agree that the parties to this Agreement shall consist of us and you. If this is a joint account (including a community property account), the term "you" refers to each account holder. Except as disclosed in writing to us, no person other than you has any interest in the account. If this is a joint account, each account holder has full authority to act on behalf of the account and you authorize us to follow the instructions of any account holder as if such person were the sole account holder. All obligations arising hereunder are joint and several and may be enforced by us against any or all account holders. Notwithstanding the foregoing, we may require joint action by all account holders with respect to any matter concerning the account, including the giving or cancellation of orders, and the withdrawal of monies, securities or other property. In the event of the death of either or any of the joint account holders, the surviving joint account holder(s) shall immediately give us written notice thereof, and we may, before or after receiving such notice, take such action, require such papers and inheritance or estate tax waivers, retain such portion of and/or restrict transactions in the account as we may deem advisable. The surviving joint account holder(s) and the estate of the deceased joint account holder shall be jointly and severally liable to us for any net debit balance or loss in the account in any way resulting from transactions initiated prior to the receipt by us of the written notice of the death or incurred in the liquidation of the account or the adjustment of the interests of the respective parties.

Laws governing joint ownership of property vary from jurisdiction to jurisdiction. Generally, however, for joint tenants with rights of survivorship, in the event of the death of either tenant, the entire interest in the joint account shall be vested in the surviving joint tenant(s) on the same terms and conditions. For tenants in common, the interest in the tenancy shall be equal unless specified and in the event of death of either tenant, the interest in their share of the tenancy shall vest in the decedent's legal representative. State laws regulating community property vary. Consult your own legal adviser.

## 2. APPLICABLE LAW AND REGULATIONS; MARKETS.

All transactions shall be subject to all applicable law and the rules and regulations of all federal, state and self-regulatory agencies including, but not limited to, the Board of Governors of the Federal Reserve System and the constitution, rules and customs of the exchange or market (and clearing house) where executed. Unless you provide us with specific instructions, we may use our discretion in selecting the market in which to place your orders.

## 3. DEPOSITS ON TRANSACTIONS.

You agree to maintain, without demand from us, such margin, cash or other acceptable collateral as we in our discretion require from time to time and you agree to pay on demand any debit balances in your account. You will make deposits of such margin or collateral immediately upon our request. You will provide us with any information we may require for immediate confirmation of wire transfers.

## 4. SECURITY INTEREST AND LIEN.

As security for the payment of all of your obligations and liabilities to us or any of our affiliates through whom you conduct business, we shall have a continuing security interest in all property in which you have an interest held by or through us or any our affiliates including, but not limited to, securities, futures contracts, cash commodities, commercial paper, monies, and after-acquired property and all rights you may have against us or any of our affiliates. In addition, in order to satisfy any such outstanding liabilities or obligations, we may, at any time and without prior notice to you, use, apply or transfer any of such securities or property interchangeably (including cash and fully paid securities). In the event of a breach or default under this Agreement or any other agreement you may have with us or one of our affiliates, we shall have all rights and remedies available to a secured creditor under any applicable law in addition to the rights and remedies provided herein.

## 5. DEFAULT.

Should we deem it desirable for our protection, or should we feel insecure, or should you be in breach of or violate any of the terms of this Agreement, we are authorized to declare (and without the necessity of a call for additional capital) you in default under this and any other agreement you may then have with us or our affiliates, whether heretofore or hereafter entered into. In the event of default, each of us and our affiliates reserves the right to sell, without prior notice to you, any and all property in which you have an interest held by or through us or our affiliates, to buy any or all property which may have been sold short, to cancel any or all outstanding transactions and/or to purchase or sell any other property to offset market risk, and to offset any indebtedness or position you may have, including by means of an exchange for physicals transaction, after which you shall be liable to us, for any remaining deficiencies, losses, costs or expenses sustained by us in connection therewith. Such purchases and/or sales may be effected publicly or privately without notice or advertisement in such manner as we may in our sole discretion determine. At any such sale or purchase, we may purchase or sell the property free of any right of redemption. In addition, we shall have the right to set off and apply any amount owing from our affiliates to you against any indebtedness in your account, whether matured or unmatured. You are unconditionally obligated to pay to us the amount of any debit balance in your account, however incurred, at the lesser of the highest rate permitted by applicable law or two percent above the current prime rate as announced from time to time by the banking institutions with which we normally do business.

## 6. FEES AND CHARGES.

You understand that we will charge commissions and other fees for clearing, execution, custody, storage, delivery or any other service furnished to you and you agree to pay such commissions, fees and interest on monies owed to us at our then-prevailing rates. You understand further that such commissions, fees and interest rates may be changed from time to time. You will also be charged a fee

9

# CUSTOMER AGREEMENT

for positions transferred to another broker. We may receive remuneration for directing orders to a particular broker or dealer or market center for execution. Such remuneration is considered compensation to us. We may pay a portion of fees and commissions charged to your Account to third-parties that have introduced your account to us or serviced your account. You understand that we or an affiliate may act as principal in certain transactions with you, including but not limited to, cash market transactions, forward contracts, or exchanges of physicals for futures ("EFPs").

## 7. MAKING DELIVERY; LIQUIDATION INSTRUCTIONS.

You agree to give us timely notice if you intend to make or take delivery under a contract or to exercise any option contract. If so requested by us, you shall satisfy us that you can fulfill your obligations to make or take delivery and shall furnish us with property deliverable by you under any contract in accordance with our directions. We shall not have any obligation to exercise any long option contract unless you have furnished us with timely exercise instructions and sufficient initial margin with respect to each underlying contract. If we sell any property at your direction and you fail for any reasons to supply us with such property, we may (but shall not be obligated to) borrow or buy for you any property necessary to make such delivery. Under no circumstances shall we be obliged to make any payment or delivery to you except against receipt of payment or delivery by you of monies or other property requested by us. You shall be responsible for providing insurance coverage for any deliveries made or accepted by you. We do not provide any insurance coverage. If you do not provide insurance coverage, you agree to bear the risk of loss.

## 8. CONSENT TO LOAN OR PLEDGE.

Within the limits of applicable law and regulations, you hereby authorize us to lend either to ourselves or to others any securities or other property held by us in your margin account together with all attendant rights of ownership, and to use all such property as collateral for our general loans. Any such property, together with all attendant rights of ownership, may be pledged, repledged, hypothecated or rehypothecated either separately or in common with other such property for any amounts due to us thereon or for a greater sum, and we shall have no obligation to retain a like amount of similar property in our possession and control.

## 9. REPORTS.

Reports of execution of orders sent by us to you shall be binding and conclusive on you unless, in the case of a verbal report, you object at the time the report is received by you or your agent; and in the case of a written report, you object in writing prior to the opening of trading on the business day following the day you have received the report. In addition, if after you have placed an order with us and have not received a written or verbal confirmation thereof in accordance with our practice, you immediately shall notify us thereof. If you fail to notify us as set forth in this section, you agree that you shall be deemed estopped to object and to have waived any objection to our execution or failure to execute any transaction. Nothing contained in this section, however, shall bind us with respect to any transaction or price reported (whether verbal or in writing) in error, or prevent us,

upon discovery of any error or omission, from correcting the error or omission, and putting the account in the same position it would have been in if the error or omission had not occurred. *

## 10. WAIVER, ASSIGNMENT AND NOTICES.

Neither our failure to insist at any time upon strict compliance with this Agreement or with any of the terms hereof nor any continued course of such conduct on our part shall constitute or be considered a waiver by us of any of our rights or privileges hereunder. We may assign this Agreement and your account upon notice to you. Any assignment of your rights and obligations hereunder or interest in any property held by or through us without obtaining the prior written consent of an authorized representative of ours shall be null and void. Notices or other communications, including margin calls, delivered or mailed, including by facsimile or electronic transmission, to the address provided by you, shall, until we have received notice in writing of a different address, be deemed to have been personally delivered to you.

## 11. CLEARANCE ACCOUNTS.

If your account has been introduced to us by another broker, that broker is acting as your agent and your broker in this relationship is not an agent of or affiliated with us. You agree that your broker and its employees are third-party beneficiaries of this Agreement. Unless we receive from you prior written notice to the contrary, we may accept from such other broker, without any inquiry or investigation: (a) orders for the purchase or sale of securities and other property in your account on margin or otherwise; and (b) any other instructions concerning your account or the property therein. **You understand and agree that our role is limited to execution, clearing and bookkeeping for transactions made pursuant to instructions from you or your broker, and we generally will not inquire into the circumstances surrounding any transaction for your account. We are not responsible for any acts or omissions of your broker, including, but not limited to, sales practices, trading practices or recommendations. You agree to look solely to your broker for redress of any loss or damage arising out of circumstances other than our own gross negligence or willful misconduct in the execution, clearance or bookkeeping of transactions for your account. You understand and agree that we will pay a substantial portion of the brokerage commissions charged to your account in consideration of introducing and servicing your account.**

## 12. INDEMNIFICATION; COSTS OF COLLECTION.

You agree to indemnify and hold harmless each of us, our affiliates and our respective shareholders, directors, officers, employees and agents from and against any liability, damage, cost or expense (including, without limitation, legal fees and expenses, amounts paid in settlement of any claims, interest and any fines or penalties imposed by any exchange, self-regulatory organization or governmental agency) any of them may incur or be subjected to with respect to you or your Account or any transaction or position therein or as a result of your violation of any of your representations, agreements or obligations under this Agreement. You agree to pay and authorize us to charge you for any direct or indirect costs of collection, defense and enforcing

---

* By "written report" is meant that written confirmation report forwarded by us on the next business day subsequent to the execution of an order. "Matching reports" or e-mail communications shall not constitute a "written report" for purposes of your right to object.

# CUSTOMER AGREEMENT

any of our rights under this Agreement including, but not limited to, interest, legal fees, court costs and other expenses.

### 13. FREE CREDIT BALANCES; TRANSFER ARRANGEMENTS.

You hereby direct us to use any free credit balance in your account in accordance with all applicable rules and regulations and you authorize us, in our discretion, to transfer any free credit balances and cash in your account daily to a non-regulated account.

### 14. RESTRICTIONS.

You understand that we may restrict or prohibit trading in, or close, your account.

### 15. CREDIT INFORMATION AND INVESTIGATION.

You authorize us and, if applicable, your broker, in our or their discretion, to make and obtain reports concerning your credit standing and business conduct.

### 16. LEGALLY BINDING.

This Agreement shall be binding upon the parties hereto and their respective successors and assigns and supersedes any prior agreements between the parties with respect to the subject matter hereof. You further agree that all purchases and sales shall be exclusively for your account in accordance with your oral or written instructions. You hereby waive any and all defenses that any such instruction was not in writing as may be required by the statute of frauds or any similar law, rule or regulation.

### 17. AMENDMENT.

You agree that we may modify the terms of this Agreement at any time upon prior written notice to you. By continuing to accept services from us, you will have indicated your acceptance of any such modification. If you do not accept any such modification, you must notify us thereof in writing and your account may then be terminated, but you will still be liable thereafter to us for all remaining liabilities and obligations. Otherwise, this Agreement may not be waived or modified absent a written instrument signed by an authorized representative of ours. No oral agreements or instructions purporting to amend this Agreement will be recognized or enforceable.

### 18. SEVERABILITY.

If any provision hereof is or should become or be deemed to be inconsistent with any present or future law, rule or regulation of any court, arbitral body, sovereign government or regulatory body having jurisdiction over the subject matter of this Agreement, such provision shall be deemed to be rescinded or modified in accordance with any such law, rule or regulation. In all other respects, this Agreement shall continue to remain in full force and effect.

### 19. LIMITATION OF LIABILITY.

You shall have no claim against us or any of our affiliates for any loss, damage, liability, cost, charge, expense, penalty, fine or tax caused directly or indirectly by: (a) any law, regulation, rule or order; (b) suspension, or termination of trading; (c) war, civil or labor disturbance; (d) any delays or inaccuracies in the transmission or reporting of orders or other information due to a breakdown or failure of any transmission or communication facil-

ities for any reason; (e) failure or delay for any reason of an_ ker, bank, depository or custodian to fulfill its obligations pay in full any amounts owed to us; (f) failure or delay b entity which, consistent with applicable regulations, is hc customer segregated funds, securities or other property, to p deliver same to us; or (g) any other causes beyond our contr

We will execute your transactions solely as your agent. In exe ing transactions on an exchange, we may use floor brokers may be our employees or other agents of ours), but we will r responsible to you for negligence or misconduct of an indep ent floor broker if, at the time the floor broker was selected, floor broker was authorized to act as such under the rules of relevant exchange and the appropriate regulatory agency. We not be responsible to you in the event of error, failure, neglige or misconduct on the part of any intermediary, commodity t ing advisor or other person acting on your behalf and, witł limitation, we have no obligation to investigate the facts rounding any transaction in your Account(s) which is introdu by such intermediary, commodity trading advisor or other pers You will indemnify us and hold us harmless from and against and all liabilities, penalties, losses and expenses, including le expenses and attorneys' fees, incurred by us as a result of ɛ error, failure, negligence or misconduct on the part of any st intermediary, commodity trading advisor or other person act on your behalf. We shall only be liable for actions or inactions us which amount to gross negligence or fraud. You also agree tł we shall not be liable to you for any losses, costs, expenses other damages sustained by you in the event of any failure delay by any exchange, market, clearing house, bank or otł depository institution where any of your funds or other assets ₹ maintained, or a failure or delay by any member, bank or agent any of the foregoing, or a failure or delay by any of the foregoi to enforce its rules, to fulfill its obligations or to make any pa ment, for any reason whatsoever. You waive any claim, cause action or right as against us, our employees or agents that m arise or occur as a result thereof.

### 20. TELEPHONE CONVERSATIONS.

For the protection of both you and us, and as a way of correctir misunderstandings, you hereby authorize us, at our discretic and without prior notice to you, to monitor and/or record (wit or without tone warning devices) any or all telephone conversa tions between you and any of our employees or agents.

### 21. ADDITIONAL RIGHTS AND REMEDIES.

The rights and remedies granted herein to us are in addition t any other rights and remedies provided to us in any other agree ment you may have with us, and you hereby appoint us as you agent to take any action necessary to perfect ourselves wit respect to the security interest granted to us in this Agreement.

### 22. AUTHORITY.

You represent that this Agreement has been duly authorized anc executed by you and that you have full power and authority tc trade futures, physical commodities, currencies, securities anc options on the foregoing and related instruments. By signing thi Agreement on behalf of an entity, you represent that the entity or whose behalf you are acting is authorized to enter into thi

# CUSTOMER AGREEMENT

Agreement and that you are duly authorized to sign this Agreement in its name.

## 23. CUSTOMER'S REPRESENTATIONS AND WARRANTIES.

You represent to us that all information supplied by you in connection with the opening of your account, including the Customer Account Application, is accurate and complete, and that we are legally entitled to rely on such information, and you agree to report promptly to us any material change in such information. You represent to us that you have read and understand all risk disclosure statements that we have provided to you, and understand that all transactions effected for your account are at your risk, and that you are solely liable therefor under all circumstances. You acknowledge that futures trading is only suitable for persons who are financially able to withstand losses. Such losses may substantially exceed margins or other funds you have deposited with us. You agree to inform us immediately if you cease to be willing or financially able to sustain such losses.

## 24. PENSION ACCOUNTS.

If you are a Keogh Plan, Pension and Profit Sharing Trust, or other employee benefit plan as defined by Section 3(3) of the Employee Retirement Income Security Act (Collectively a "Plan"; "ERISA"), the undersigned trustee ("Trustee") acknowledges that the establishment of the account and all transactions executed through the account are subject to certain restrictions under Section 404(a) of ERISA, including the requirement that such transactions be prudent, that the investments be diversified, and that there are certain transactions which the Plan is prohibited from entering into under Section 406 of ERISA and Section 4975 of the Internal Revenue Code ("Code"), regardless of whether such transactions are prudent; and Trustee further acknowledges that certain transactions if entered into by the Plan may result in the recognition of taxable income under Section 511 of the Code. Trustee represents and warrants that, with respect to each transaction to be executed through the account, the determination as to whether such transaction complies with the standards of Section 404(a) of ERISA, will constitute a transaction prohibited under Section 406 of ERISA, or Section 4975 of the Code, or will result in the recognition of taxable income, will be made either by Trustee or by another person who has been determined by Trustee to be either a fiduciary or an investment manager properly delegated the authority to make, or to advise the Plan as to, such determinations. Trustee understands and agrees that the individual account plan permits participant-directed investments pursuant to Section 404(c) of ERISA. In no event shall we have any responsibility or authority to make, or to advise the Plan or Trustee as to, such determinations. Trustee understands and agrees that we are neither a fiduciary nor an investment manager with respect to the Plan as defined in Sections 3(21) and 3(38) of ERISA. Nevertheless, if, contrary to the expectations of the parties, it is ever finally determined that we are a fiduciary or investment manager, our responsibility and authority in acting in such capacity shall be limited to performing our obligations as specifically set forth herein, and Trustee represents and warrants that such allocation of fiduciary responsibility is authorized under the instrument pursuant to which you maintained in accordance with Section 402(c) of ERISA.

By signing this Agreement, Trustee agrees to indemnify us for liability which may be imposed on us including, but not limited to, Section 409 of ERISA or any tax which may be assessed against us under Section 4975 of the Code, or any other damage or expense which may be suffered by us by reason of your being subject to the provisions of ERISA, including all costs and expense (including attorneys' fees) incurred by us in defending against the foregoing. The foregoing provision shall also apply to any federal or state fiduciary law governing the investments of employee benefit plans which is supplementary to, or in lieu of, the specific provisions of ERISA referred to herein.

## 25. CURRENCY EXCHANGE RATES.

If any transaction is effected in a foreign currency, any profit or loss arising as a result of a fluctuation in the exchange rate affecting such currency will be entirely for your account and risk. All deposits shall be made in United States currency, unless we request any such deposit in the currency of some other country, in which case such deposit shall be made in such currency. When any position is liquidated, we shall debit or credit your account in United States currency at the rate of exchange determined by us in our sole discretion on the basis of the then prevailing money rates for such foreign currency, unless you shall have given us specific written instruction to make such debit or credit in the foreign currency involved.

## 26. FUNDS ON DEPOSIT IN NON-U.S. BANKING INSTITUTIONS.

Funds of customers trading on United States contract markets may be held in accounts denominated in a foreign currency with depositories located outside the United States or its territories if you are domiciled in a foreign country or if the funds are held in connection with contracts priced and settled in a foreign currency. Such accounts are subject to the risk that events could occur which would hinder or prevent the availability of these funds for distribution to you. Such accounts may also be subject to foreign currency exchange rate risks.

You authorize the deposit of funds into such foreign depositories. For customers domiciled in the United States, this authorization permits the holding of funds in regulated accounts offshore only if such funds are used to margin, guarantee, or secure positions in such contracts or accrue as a result of such positions.

In order to avoid the possible dilution of other customer funds, if you have funds held outside the United States, you further agree that your claims based on such funds will be subordinated in the unlikely event both of the following conditions are met: (1) Your futures commission merchant is placed in receivership or bankruptcy; and (2) there are insufficient funds available for distribution denominated in the foreign currency as to which you have a claim to satisfy all claims against those funds.

You agree that if both of the conditions listed above occur, your claim against our assets attributable to funds held overseas in a particular foreign currency may be satisfied out of segregated customer funds held in accounts denominated in dollars or other foreign currencies only after each customer whose funds are held in dollars or in such other foreign currencies received its pro-rata portion of such funds. You further agree that in no event may a customer whose funds are held overseas receive more than its pro-rata share of the aggregate pool consisting of funds held in

## CUSTOMER AGREEMENT

dollars, funds held in the particular foreign currency, and non-segregated assets of the company.

### 27. CFTC REGULATIONS.

You are aware that CFTC Regulation 1.35(a-2)(2) requires you to create, retain and produce upon the request of the CFTC, the United States Department of Justice and the applicable exchange, documentation of cash transactions underlying exchanges of futures for cash commodities or exchanges of futures in connection with cash commodity transactions and, if you effect any such exchange of futures, you will comply with Regulation 1.35 (1-2)(2). If you maintain separate accounts in which, pursuant to CFTC Regulation 1.46(d)(6), offsetting positions are not closed out, you understand that, if held open, offsetting long and short positions in the separate accounts may result in the charging of additional margins even though offsetting positions will result in no additional market gain or loss. If you are a non-United States person, you acknowledge that: (a) CFTC Regulation 15.05 designates us as the agent of foreign brokers, customers of foreign brokers, and foreign traders for certain purposes; and (b) CFTC Regulation 21.03 authorizes the CFTC to request, when unusual market circumstances exist, certain account information from us as well as foreign brokers and traders.

### 28. ONLINE SERVICES/ELECTRONIC STATEMENTS.

If we provide you with access to online brokerage service facilities, you agree to our posted terms of use, privacy statement and service agreement and the Electronic Order Entry & Account Access Agreement as if the same were set forth in this Agreement. We do not guarantee access to your account at all times, nor do we guarantee the receipt, acceptance and entry of any order transmitted to us electronically. You further agree that any market data or information provided to you will not be broadcast, retransmitted or commercially exploited and you acknowledge that exchanges and markets have a proprietary interest in this data and information. If you have agreed to the electronic transmission of information, you understand that we do not guarantee delivery.

### 29. GOVERNING LAW; JURISDICTION AND VENUE; SERVICE OF PROCESS; LIMITATION ON ACTIONS; WAIVER OF JURY TRIAL.

In order to induce us to accept this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, you hereby agree to the following:

A. This Agreement is made, upon acceptance by us, State of Illinois, and shall be governed by, and the right liabilities of the parties shall be determined in accor with, the laws of the State of Illinois, without regard of its conflicts of laws, principles or rules, and by the l the United States.

B. If you have not entered into an arbitration agreeme if arbitration is unavailable, all actions or procee whether initiated by you or us, with respect to any troversy arising out of or related to this agreement, be litigated only in courts whose situs is in the Sta Illinois. You hereby submit to the jurisdiction of United States District Court of the Northern Distri Illinois, Eastern Division, and any other court of co tent jurisdiction whose situs is in Chicago, Illinois. If bring any arbitration (including, but not limited to, I arbitrations), administrative or reparations proceed against us, you hereby authorize and direct such arb tors, administrative law judges, or judgment office: hold any such proceedings in Chicago, Illinois. hereby waive any right you may have to transfe change the venue of any litigation you may bring aga us, or that such litigation is brought in an inconven forum or that forum is improper.

C. You agree to accept court service of process by registere certified mail addressed to you at the address you provi in your customer application, or to such other addresse: you have supplied to us in writing, and such service sl constitute personal service of process.

D. No judicial, administrative, arbitration or reparations p ceeding may be commenced by you or us more than one year after any claim arises, directly or indirectly, out of t Agreement or the transactions contemplated thereby. Y hereby waive any statutes of limitation, including, but n limited to, the Commodity Exchange Act's and the Nation Futures Association's two (2) year limitation on actions.

E. You hereby waive any right you may have to a trial by jury.

### 30. HEADINGS.

The headings of the provisions hereof are for descripti purposes only and shall not modify or qualify any of the righ or obligations set forth in such provisions.

### CUSTOMER AGREEMENT

I acknowledge that this is a contractual agreement. I have read it carefully and, by signing, I agree to be bound by ever term and condition, including the consents relating to jurisdiction, venue, service and limitations on actions set forth in Paragraph 29. No modification of this Agreement is valid unless accepted by us in writing as provided in Paragraph 17.

CONOCO INC.

| | | |
|---|---|---|
| Signature of Customer _James E. White_ | Title _Manager, Crude & Prodist Tradis_ | Date _6/18/2001_ |
| Signature of Customer _____ | Title _____ | Date _____ |
| Signature of Customer _____ | Title _____ | Date _____ |
| Signature of Customer _____ | Title _____ | Date _____ |

IF A PARTNERSHIP ACCOUNT, EACH GENERAL PARTNER MUST SIGN; IF A CORPORATE ACCOUNT, AN AUTHORIZED OFFICER MUST SIGN; IF AN L.L.C. ACCOUNT, EACH MANAGING MEMBER MUST SIGN; IF A TRUST ACCOUNT, EACH TRUSTEE MUST SIGN.

Rev. 12/17/99



Corporation and Partnership
Customer Agreement

# E. D. & F. Man International Futures Inc.

**E. D. & F. Man International Futures Inc.**
Two World Trade Center, Suite 3050
New York, New York 10048

Account
Number

Gentlemen:

In consideration of your agreeing to act as broker and maintain one or more accounts for the undersigned (hereinafter, the "Customer"), the Customer hereby agrees with you as follows:

**(1)  Definitions.**

As used in this Agreement, the following terms shall have the meanings indicated:

**(a)**  "Affiliate" shall mean any corporation, partnership, or other organization which controls, is controlled by, or is under common control with, you.

**(b)**  "Exchange" shall mean any contract market, exchange, board of trade or other market on or subject to the Rules of which transactions are effected under this Agreement, as well as any clearing house associated with any such contract market, exchange, board of trade or other market.

**(c)**  "Governmental Regulations" shall mean any rule, regulation, ruling or order of the Commodity Futures Trading Commission or any other governmental body (federal, state or local), and any interpretation thereof rendered by such body or by the staff thereof.

**(d)**  "Property" shall mean property of every kind and nature, real and personal, and shall include without limitation cash (in either U.S. or foreign currency), securities, physical commodities, contracts for the future or forward delivery of any commodity, options on securities, on physical commodities or on contracts for the future or forward delivery of any commodity, and any equity in any of the Customer's accounts with you or your Affiliates.

**(e)**  "Rule" shall mean any provision of the constitution, charter, certificate of incorporation, articles, by-laws, rules, regulations, rulings, interpretations and resolutions, as well as any custom, usage, practice or procedure, of any Exchange or any Self-Regulatory Organization.

**(f)**  "Self-Regulatory Organization" shall mean any commodity or securities self-regulatory organization, including without limitation the National Futures Association, the National Association of Securities Dealers, Inc. and the Municipal Securities Rulemaking Board.

**(2)  Representations.**

The Customer warrants and represents that:

**(a)**  No person has any interest in any of the Customer's accounts with you or your Affiliates except as may be disclosed in writing to you.

**(b)**  All of the information furnished to you in connection with entering into this Agreement is complete, true and accurate.

**(3)  Applicable Rules.**

All transactions shall be subject to the Rules of the Exchange, if any, on or subject to the Rules of which such transactions are executed, and shall also be subject to any law or Governmental Regulations applicable thereto.

**(4)  Contemplation of Delivery.**

All orders for transactions to be executed on or subject to the Rules of an Exchange shall be made, received and executed with the intent that delivery, liquidation, exercise or final settlement will be made in accordance with the Rules of that Exchange. All other orders for the purchase or sale of any commodity shall be made, received and executed with the intent that delivery will be made

**(5)  Relationship of Parties.**

Unless you indicate otherwise, you are acting solely as broker in any transactions made for the Customer. You shall have no obligations other than to act in accordance with the instructions of the Customer and, in particular, shall have no obligation to provide the Customer with any information with respect to any position of the Customer (except as may be explicitly required by law or by any applicable Governmental Regulations or Rule of any Exchange or Self-Regulatory Organization) and shall have no obligation to effect any transaction or (except as directed by the Customer) to close out any position in any account you may carry on behalf of the Customer for any reason

**(6)  Trading Recommendations.**

The Customer retains full responsibility for making all decisions for each account of the Customer, and you will not be held responsible or liable for any losses incurred by the Customer through following your trading recommendations or suggestions.

**(7)  Commissions and Fees.**

~~The Customer understands that you charge commissions for the execution of commodity transactions based on your commission rates in effect at the time of liquidation, and the Customer agrees to pay such brokerage commissions and such other charges as you shall establish from time to time (whether or not others of your customers pay lower commissions or charges) and to pay any costs or expenses incurred in connection with transactions in any account of the Customer, including without limitation any taxes, transaction fees, charges, fines, penalties or other expenses imposed by any Exchange, Self-Regulatory Organization or governmental authority. You may change such commissions or other charges at any time and from time to time, without regard to the commissions or other charges you establish for any other customer. Without limiting the generality of the foregoing, debit balances in any account of the Customer will be charged with interest at a rate equal to the prime rate as quoted by Bankers Trust Company from time to time.~~

**(8)  Margins and Premiums.**

**(a)**  ~~The Customer will maintain original, maintenance and option margin, in such forms and amounts as you may require in your sole and absolute discretion, in any and all accounts the Customer may at any time have with you. If at any time you determine that additional margin is required, the Customer will deposit such additional margin with you upon demand; provided, however, that notwithstanding any such demand, you may at any time proceed in accordance with section 9 of this Agreement. You may change your margin requirements in your sole and absolute discretion at any time and from time to time, irrespective of the margins required by any Exchange, and irrespective of the margins you charge to any other customer. No margin level required at any time shall constitute a precedent for any margin level required at any future time.~~

**(b)**  The Customer will promptly deposit the premium required in connection with the purchase of any option for any account of the Customer.

**(c)**  The Customer will pay in full any debit balance in any account on demand.

**(9)  Security.**

**(a)**  ~~As security for the timely payment and performance in full of all obligations of the Customer to you arising in connection with any account opened or transaction effected under this Agreement, the Customer hereby pledges and assigns to you and grants you a lien on and security interest in, all of the Customer's Property in any account opened pursuant to this Agreement or otherwise in your or any Affiliate's custody or control at any time for any purpose (whether held as margin or for safekeeping or otherwise). The Customer will take such actions and execute and deliver such documents as you may reasonably require from time to time to perfect the lien and security interest granted hereunder.~~

**(b)**  In the event that:

**(i)**  the Customer commences a voluntary case, or an involuntary case is commenced against the Customer, under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or a receiver, liquidator, trustee, custodian, sequestrator, or other similar official is appointed or takes possession (before or after the commencement of any such voluntary or involuntary cases) of the Customer or of any property of the Customer, or the Customer is insolvent, makes any general assignment for the benefit of creditors, or fails generally to pay debts as they become due, or any similar event shall occur;

**(ii)**  the Customer shall take any corporate or other action to effect a dissolution, liquidation, reorganization, winding up of its affairs or any similar event.

(iii)   the Customer shall fail or refuse to pay margin or ~~other sum as and when due to you pursuant to this Agreement or shall breach or default in the performance of any other obligation of the Customer under this Agreement;~~

(iv)   ~~you determine, in your sole and absolute discretion, with or without regard to market quotations, that any collateral or margins deposited with you to secure any account of the Customer is inadequate; or~~

~~(v)   you determine, in your sole and absolute discretion, that it is necessary or appropriate for any other reason;~~

then, and in any such event, you may at your election (but need not) take any one or more of the following actions (in addition to any other rights or remedies you may have at law, in equity, under this Agreement or otherwise):

(A)   sell, exercise, offset or otherwise liquidate any or all securities, commodity futures contracts, commodity options, commodity forward contracts, or physical commodities long in any account of the Customer with you or any Affiliate;

(B)   buy in, offset or otherwise liquidate any or all securities, commodity futures contracts, commodity options, commodity forward contracts, or physical commodities short in any account of the Customer with you or any Affiliate;

(C)   buy or sell securities, commodity futures contracts, commodity options, commodity forward contracts or physical commodities, or enter into and/or liquidate straddle or spread positions, in order to liquidate or reduce the risk associated with carrying any securities, commodity futures contracts, commodity options, commodity forward contracts or physical commodities long or short in any account of the Customer with you or any Affiliate;

(D)   cancel any outstanding orders, close out any or all outstanding contracts, close any account of the Customer with you or any Affiliate, sell, set off against or otherwise dispose of any Property of the Customer in your or any Affiliate's custody or control (whether held as margin, or for safekeeping or otherwise) and satisfy any obligation the Customer may have to you (either directly or by way of guarantee or suretyship) out of any such Property or the proceeds from the sale or other disposition thereof; or

(E)   exercise all rights and remedies of a secured party under the Uniform Commercial Code and under other applicable law.

~~Any action referred to herein may be taken without demand for margin or additional margin, without notice to the Customer (or to the successors or assigns of the Customer) of sale or purchase or other notice or advertisement (except such notice as may be required by law) whether or not the ownership interest shall be solely that of the Customer or jointly with others (all and each of which demands, advertisements and/or notices are hereby expressly waived). In all cases, a prior demand, call or notice of the time or place of sale or purchase shall not be considered a waiver of your right to sell or to buy without demand, call or notice as herein provided. Any purchase, sale, offset or liquidation of securities, commodity futures contracts, commodity options, commodity forward contracts, physical commodities or other Property may be made according to your judgment and in your sole and absolute discretion either by direct sale or purchase in the same market and for delivery in the same month, or in another market or another month, or by spread or straddle transactions, and may be made in your sole and absolute discretion on any Exchange or other recognized market or elsewhere as you deem appropriate. You will not be liable for any losses incurred or any damages suffered by the Customer in taking any such action, whether or not any such loss or damage is occasioned by negligence on your part or on the part of any person acting under your instructions. In the event that the property held and applied by you pursuant to this Agreement is insufficient for the payment in full of all liabilities of the Customer due to you and any Affiliate, the Customer shall remain liable for and shall promptly pay the deficit upon demand, together with interest thereon and all costs of collection (including reasonable attorneys' fees and expenses).~~

~~(c)   All Property of the Customer in any account opened pursuant to this Agreement or otherwise in your or any Affiliate's custody or control at any time for any purpose (whether held as margin, or for safekeeping or otherwise) may be delivered by you to third parties in repurchase transactions, and may be pledged, repledged, hypothecated or rehypothecated, without notice to the Customer and without any obligation to pay to the Customer, or to account to the Customer for any interest, income or benefits that may be derived therefrom, and may be deposited by you in your general bank account and commingled with property of any other person, in any manner consistent with applicable laws, Governmental Regulations and Rules of any Exchange or Self-Regulatory Organization.~~

## (10)   Making Delivery.

In the event you undertake to sell or deliver (pursuant to any commodity futures contract, commodity option, commodity forward contract, or otherwise), or you effect the sale of, any Property on behalf of the Customer, the Customer will supply you with the same at the time, in the manner and under the terms and conditions necessary for you to effect delivery thereof to the purchaser as required. If the Customer fails to so supply you with the same, then, in addition to any other right or remedy you may have, you may purchase or borrow for the account of the Customer (on such terms and conditions as you in your sole and absolute discretion may determine) any Property necessary for you so to do in order to make delivery.

## (11)   Liquidating Instructions.

~~At least five business days (or longer period as may be required by any applicable Rule or Governmental Regulation) prior to the first notice day in the case of long positions in open futures contracts, or prior to the last trading day in the case of short positions in open futures contracts, or prior to the expiration date of long positions in open commodity options. The Customer will either give you instructions to liquidate or make arrangements to take delivery under such futures contracts, or to liquidate, exercise or allow the expiration of such options, and will deliver to you sufficient funds and or any documents required in connection with any such exercise. If such instructions, or funds and or documents, are not received by you by the time hereinbefore specified, you may, without notice to the Customer, either exercise or liquidate the positions of the Customer or make or receive delivery on behalf of the Customer, or allow commodity options to expire, all upon such terms and by such methods as you may determine in your sole and absolute discretion.~~

## (12)   Reports of Executions.

The Customer has the right to repudiate any unauthorized trades or any other trades that mistakenly appear in any account and to have such trades removed from the account without expense. However, the Customer acknowledges a duty to make a complaint at the first opportunity if any such unauthorized or mistaken trade is discovered. If the Customer fails to make such a complaint, the Customer will be deemed to have adopted and ratified any such trades and to have waived any right to have them removed from the account. Accordingly, the Customer agrees that reports of the execution of orders and statements of account shall be conclusive, and any trades appearing therein shall be accepted as belonging to the Customer, if not objected to as follows: ~~immediately, if the report or statement is delivered to the Customer orally; within one business day, if the report or statement is delivered to you by telex or by other telegraphic communication; and, within two days if the report or statement is delivered by mail or by any other unspecified means.~~

## (13)   Transmission of Orders.

You may use, in your sole and absolute discretion, such equipment, methods and procedures in connection with the transmission, handling and processing of orders from the Customer as you may deem to be advisable.

## (14)   Communications.

(a)   ~~All reports of transactions, statements, notices and other communications required or permitted under this Agreement may be transmitted to the Customer at the address or telephone number specified at the end of this Agreement, or at such other address or telephone number as the Customer may hereafter specify by written notice to you, and all such reports, statements, notices and other communications shall be deemed delivered when telephoned, or when delivered in person, or when deposited in the United States mail, or when received by a transmitting agent for telegraphic or other electronic transmission, whether or not actually received by the Customer.~~

(b)   You may, in your sole and absolute discretion, record, on tape or otherwise, any telephone conversation between any of your employees and the Customer or any employees or agents of the Customer. The Customer hereby agrees and consents to such recording and waives any and all rights to object to the admissibility into evidence of any such recording in any legal proceeding between you and the Customer, or any employees or agents of the Customer, or in any proceeding brought by any Exchange, Self-Regulatory Organization or governmental agency to which you are a party or in which your records are subpoenaed.

(c)   You will not be responsible for any delays or inaccuracies in the transmission of orders or in the confirmation of executions due to a breakdown or failure of transmission of communication facilities or to any other cause or causes beyond your control.

(d)   The Customer will notify you in writing if the Customer fails to receive any confirmations, account statements or notices within ten days from the date of a transaction in the Customer's account.

(e)   ~~The Customer acknowledges that all price quotations, trade reports and other commodity information given to the Customer are subject to change and error, as well as delays in reporting, and that reliance on such information is at the Customer's risk. The Customer agrees to be bound by the actual execution of transactions on Exchanges or other markets and agrees that you are not bound by erroneous reports of execution transmitted to the Customer.~~

## (15)   Currency Exchange Rates.

In the event that any transaction is effected on any Exchange in a foreign currency, any profit or loss arising as a result of a fluctuation in the exchange rate affecting such currency will be entirely for the account and risk of the Customer. Initial and subsequent deposits for margin purposes shall be made in United States currency, unless you request any such deposit in the currency of some other country, in which case such deposit shall be made in such currency. When any position is liquidated, you shall debit or credit the account of the Customer in United States currency at the rate of exchange determined by you in your sole and absolute discretion as the basis of the then prevailing money market exchange rates for such foreign currency, unless the Customer shall have given you specific written instructions to make such debit or credit in the foreign currency involved.

**(16) Emergency Actions.**

In addition to any other rights and remedies you have ur...  this Agreement, any Governmental Regulations or the Rules of any Exchange or Self-Regulatory Organization, you are authorized to take such steps as you, in your sole and absolute discretion, consider necessary or appropriate in the event any Exchange, Self-Regulatory Organization or governmental authority orders emergency or other action, including without limitation steps to liquidate futures contracts, commodity options or other Property carried in an account of the Customer, or transferring any such futures contracts, commodity options or other Property in any account of the Customer to another organization.

**(17) Position Limits.**

~~You have the right, in your sole and absolute discretion, to limit the number of open positions in commodity futures contracts, commodity forward contracts, commodity options and physical commodities that may be carried in any of the Customer's accounts (irrespective of position limits that may be set under Governmental Regulations or the Rules of any Exchange or Self-Regulatory Organization), and you may, in your sole and absolute discretion, decline to accept any orders, require that positions in the Customer's accounts be transferred to another firm and liquidate any such positions that are not promptly transferred on your demand. The Customer will not exceed any position limits that may be established by you or by any Governmental Regulations or the Rules of any Exchange or Self-Regulatory Organization, whether the Customer is acting alone or in concert with others. The Customer will promptly notify you of any positions for which the Customer is required to file reports under any Governmental Regulations or the Rules of any Exchange or Self-Regulatory Organization, including any large trader reports filed with the Commodity Futures Trading Commission or any Exchange or Self-Regulatory Organization.~~

~~The Customer acknowledges that you may refuse to accept any instruction to exercise any option if the resulting futures position would either cause the Customer to exceed any such position limits or would cause you to exceed any position limit imposed upon you, unless the Customer at the same time places an order to execute a futures transaction that will offset the futures position to be created by the exercise of the option.~~

**(18) Indemnification, Contribution and Reimbursement.**

~~(a) The Customer hereby agrees to pay, indemnify you and your shareholders, directors, officers, employees and agents against, and save you and your shareholders, directors, officers, employees and agents harmless from, any liability, cost or expense (including without limitation legal fees and expenses, amounts paid in settlement of any claims, interest and any fines or penalties imposed by any Exchange, Self-Regulatory Organization or governmental agency) you or any of them may incur or be subjected to with respect to any account of the Customer or any transaction or position therein, or as a result of any violation by the Customer of any of its obligations under this Agreement.~~

~~(b) If in any circumstance the indemnification provided for in paragraph (a) is held to be unavailable from the Customer for any particular liability, cost or expense, the parties shall contribute to such liability, cost or expense in such proportions as are appropriate to reflect the relative benefits received by the parties from the acts or omissions giving rise thereto and the relative faults of the parties in connection with such acts or omissions~~

~~(c) The Customer agrees to reimburse you and your shareholders, directors, officers, employees and agents on demand for any cost of collection incurred by you in collecting any sums owing by the Customer under this Agreement and any cost incurred by you or any of them in successfully defending against any claims asserted by the Customer, in each case including without limitation legal fees and expenses.~~

**(19) Jurisdiction, Venue, Waiver of Jury Trial:**

~~In any action or proceeding on or in connection with this Agreement, or alleged breach thereof or default thereunder, which is not subject to arbitration as provided in the annexed Arbitration Agreement, the Customer hereby submits and agrees to the jurisdiction and venue of the federal, state and local courts in the City of New York and of the state where the branch office in which any account of the Customer is maintained is located, waives any and all objections to personal jurisdiction within such City or any such state and agrees that process may be served on the Customer in any such action or proceeding by United States registered mail directed to the Customer at the address referred to in section 14 or in accordance with the provisions of any law or rules applicable to the court in which such action or proceeding is brought with respect to process on non-residents. The Customer hereby waives trial by jury in any such action or proceeding.~~

**(20) Termination.**

This Agreement may be terminated by either party at any time by written notice to the other, provided, however, that any such termination shall not affect any transactions theretofore entered into and shall not relieve either party of any obligations in connection with any debit balance or credit balance or other liability or obligation accruing prior to such termination.

**(21) Miscellaneous.**

(a)  No provisions in this Agreement shall in any respect be waived, altered, modified or amended except by a written instrument executed by the party charged with such waiver, alteration, modification or amendment, or by written notice delivered by you to the Customer if after such delivery the Customer places an order or gives any instructions to you pursuant to this Agreement. No waiver, alteration, modification or amendment of this Agreement may be implied or inferred from any course of dealing between the parties.

(b)  This Agreement and th...  ocuments annexed hereto constitute the entire agreement between the parties. The Customer has not relied on any statements, representations, promises or understandings of any kind not embodied therein

(c)  This Agreement is made under and shall be governed by and construed in accordance with the laws of the State of New York.

(d)  This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, personal representatives, successors and assigns

(e)  No waiver of any breach or of default under any provision of this Agreement shall be deemed to constitute a waiver of a breach of or default under any other provision of this Agreement or of any other breach of or default under the same provision. Any failure on your part to exercise any right, privilege or remedy under this Agreement, or applicable laws, Governmental Regulations or the Rules of any Exchange or Self-Regulatory Organization, and any waiver by you of the exercise of any such right, privilege or remedy at any time or with respect to any event, shall not constitute a waiver of your right to exercise that or any other right, privilege or remedy at any other time or with respect to any other event and shall not give rise to any right, privilege or remedy on the part of the Customer, it being understood that such rights, privileges and remedies are for your protection. Without limiting the generality of the foregoing, it is understood that your granting the Customer an extension of time to meet a demand for margin on any occasion or series of occasions shall not entitle the Customer to any other extensions of time with respect to any other demands for margin on any other occasions.

(f)  This Agreement shall be continuous and shall cover each and every account which the Customer may open or reopen with you or any Affiliate and each and every transaction effected or position carried by you with or for the Customer.

(g)  If any term or provision of this Agreement, or the application thereof to any person or circumstance, shall be held invalid or unenforceable by any court, Exchange, Self-Regulatory Organization, arbitrator or arbitration panel, the remainder of this Agreement, or the application of such provision to other persons or circumstances, shall not be affected thereby.

(h)  The captions in this Agreement have been inserted solely for convenience of reference and shall not be deemed to have any bearing on the meaning of any provision of this Agreement.

Customer  CONOCO  INC.

Address  600 N. Dairy Ashford

P.O. Box 2197

Houston, Texas  77079

Date:  June 2, 1989

Telephone  713-293-1167

By:

Title: Assistant Treasurer

M/IG

Edw Mon ...

...

... Finance & Operations

5/1/89

ADDENDUM

E. D. & F. MAN INTERNATIONAL FUTURES INC.

CUSTOMER AGREEMENT

The following changes and additions to the foregoing E. D.
& F. Man International Futures Inc. Customer Agreement
("Customer Agreement") are hereby incorporated by reference
and made a part of the Customer Agreement.  Should the
provisions of this Addendum conflict with the foregoing
provisions of the Customer Agreement, the provisions of this
Addendum shall take precedence, and the provisions of the
Customer Agreement shall be construed in a manner that gives
full force and effect to the provisions of this Addendum.

1.    Section (7), Commissions and Fees, is amended as
      follows:

            Commissions for the execution of commodity
            transactions shall be mutually determined by
            you and the Customer.  The Customer shall pay
            any taxes, transaction fees, charges, fines,
            penalties or other expenses imposed on the
            Customer by any Exchange, Self-Regulatory
            Organization or governmental authority as a
            result of the Customer's actions and trading
            activities.  However, the Customer shall not
            be responsible for any charges, fines, penal-
            ties or other expenses imposed on you by any
            Exchange, Self-Regulatory Organization or
            governmental entity as a result of your
            actions or activities.  Debit balances in any
            account of the Customer will be charged with
            interest at a rate to be mutually agreed by
            you and the Customer.

2.    Section (8)(a), Margins and Premiums, is amended as
      follows:

            The Customer will maintain such margins as are
            required by the applicable Exchange and will
            pay on demand any additional margin required
            by an Exchange with respect to any of its
            accounts.

3.    Section 9(a), Security, is amended as follows:

            As security for timely payment and performance
            in full of all obligations of the Customer to

you arising in connection with any account
opened or transaction effected under this
Agreement, the Customer hereby grants you a
lien on and security interest in all of the
Customer's Property in any account opened
pursuant to this Agreement.  However, said
lien and security interest shall encumber the
Customer's Property only to the extent of the
Customer's indebtedness to you.  To the extent
that the value of the Customer's Property
exceeds the amount of said indebtedness, the
Customer's Property shall be free of said lien
and security interest.

4.   The following sentence is added after Section (9)(b)(E),
Security:

If you take any of the actions listed in
subsections (A) through (E) because of the
Customer's failure to pay margin or any other
sum when due to you under this Agreement, or
the inadequacy of any collateral or margins
deposited with you to secure any account of
the Customer, you shall be entitled to take
the actions listed in subsections (A) through
(E) only to the extent required to discharge
the Customer's delinquent indebtedness to you.

5.   Section (11), Liquidating Instructions, is amended as
follows:

Prior to the close of trading on the last
trading day, in the case of open futures
contracts, or prior to the expiration time on
the expiration date of long positions in open
commodity options, the Customer will either
give you instructions to liquidate or make or
take delivery under such futures contracts, or
to liquidate, exercise, or allow the expira-
tion of such options, and will deliver to you
sufficient funds and/or any documents required
in connection with any such exercise.

6.   Lines 10 through 13 of Section (12), Reports of
Executions, are deleted in their entirety and replaced
with the following:

... with respect to daily reports or state-
ments delivered to the Customer orally or by
telex or other form of telegraphic communica-
tion, within two business days after received

2

by the Customer; with respect to end-of-month
reports or statements, within four business
days after received by the Customer.  If a
report or statement is delivered to the
Customer both orally and in writing, the
objection deadline shall based on the date
the Customer receives the written report or
statement.

7.    Section (14)(a), <u>Communications</u>, is amended as follows:

All reports of transactions, statements,
notices, and other communications required or
permitted under this Agreement may be trans-
mitted to the Customer at the address or
telephone number specified at the end of this
Agreement, or at such other address or tele-
phone number as the Customer may hereafter
specify by written notice to you.  All such
reports, statements, notices, and other
communications shall be deemed delivered when
telephoned, or when delivered in person, or,
in the case of delivery by United States mail
or telegraphic or other electronic trans-
mission, when received by the Customer.

8.  Section 14(e), <u>Communications</u>, is amended as follows:

The Customer acknowledges that all trade reports
and other commodity information, other than price
quotations, given to the Customer are subject to
change and errors and that reliance on such infor-
mation is at the Customer's risk.  The Customer
agrees to be bound with respect to all transactions
executed in accordance with the instructions of the
Customer.

9.  Section 17, <u>Position Limits</u>, is amended as follows:

(17)  <u>Position Limits</u>

The Customer represents and warrants that, in
connection with its combined commodities trading
activities with you and other commodities brokers,
the Customer will not exceed any position limits
that may be established by any Governmental Regu-
lations or the Rules of any Exchange or Self-Regu-
latory Organization, whether the Customer is acting
alone or in concert with others.  The Customer will
promptly notify you of any positions for which the
Customer is required to file reports under any

3

Governmental Regulations or Rules of any Exchange
or Self-Regulatory Organization, including any
large trader reports filed with the Commodity
Futures Trading Commission or any Exchange or
Self-Regulatory Organization.

The Customer acknowledges that you may refuse to
accept any instruction to exercise any option if
the resulting futures position would cause the
Customer to exceed any such position limits, unless
the Customer at the same time places an order to
execute a futures transaction that will offset the
futures position to be created by the exercise of
the option.

10.  Section 18, Indemnification, Contribution and Reim-
     bursement, is amended as follows:

     (18)  Indemnification

     The Customer hereby agrees to indemnify and hold
     harmless you and your shareholders, directors,
     officers, employees and agents from and against any
     and all liability, cost or expense (including, but
     not limited to, reasonable legal fees and expenses,
     amounts paid in settlement of any claims, and any
     fines or penalties imposed by an Exchange, Self-
     Regulatory Organization or governmental agency)
     that you or they may incur or be subjected to as a
     result of the Customer's violation of any Govern-
     mental Regulations or Rules of any Exchange or
     Self-Regulatory Organization in connection with the
     Customer's account or the Customer's commodities
     trading activities with you, including the
     Customer's failure to perform its obligations
     under any commodity contract.  You hereby agree
     to indemnify and hold harmless the Customer and
     the Customer's shareholders, directors, officers,
     employees and agents from and against any and all
     liability, cost or expense (including, but not
     limited to, reasonable legal fees and expenses,
     amounts paid in settlement of any claims, and any
     fines or penalties imposed by an Exchange, Self-
     Regulatory Organization or governmental agency)
     that the Customer or they may incur or be subjected
     to as a result of your violation of any Govern-
     mental Regulations or Rules of any Exchange or
     Self-Regulatory Organization in connection with the
     Customer's account or the Customer's commodities
     trading activities with you.

4

11.    Section 19, <u>Jurisdiction, Venue, Waiver of Jury Trial</u>, is amended as follows:

(19) <u>Jurisdiction and Venue</u>.

In any action or proceeding on or in connection with this Agreement, or alleged breach or default thereunder, both you and the Customer hereby submit and agree to the non-exclusive jurisdiction and venue of the federal, state and local courts of the City of New York and the federal, state and local courts of Harris County, Texas and hereby respectively waive all objections to the personal jurisdiction of such courts.

In addition to the changes to the Customer Agreement set forth in this Addendum, Conoco has deleted certain provisions of the Customer Agreement by direct notation on E. D. & F. Man International Futures Inc.'s printed form. E. D. & F. Man International Futures Inc. hereby agrees to all such deletions from the Customer Agreement by its execution of this Addendum.

CONOCO INC.

MAC  By: _____

Title: _____

Date: _____June 2, 1989_____

E. D. & F. MAN INTERNATIONAL FUTURES INC.

By: _____

Title: _____VP Finance & Operations_____

Date: _____May 11, 1989_____



**E.D.+F.**
**MAN INTERNATIONAL**
**FUTURES INC.**

TWO WORLD TRADE CENTER
SUITE 3050
NEW YORK
N.Y. 10048

Telephone: (212)  912-8700
Telex:      423195 MAN INT
Fax: Grp 3/2. (212) 912-8799

## RISK DISCLOSURE STATEMENT

This statement is furnished to you because rule 1.55 of the Commodity Futures Trading Commission requires it.

The risk of loss in trading commodity futures contracts can be substantial. You should therefore carefully consider whether such trading is suitable for you in light of your financial condition. In considering whether to trade, you should be aware of the following:

(1) You may sustain a total loss of the initial margin funds and any additional funds that you deposit with your broker to establish or maintain a position in the commodity futures market. If the market moves against your position, you may be called upon by your broker to deposit a substantial amount of additional margin funds, on short notice, in order to maintain your position. If you do not provide the required funds within the prescribed time, your position may be liquidated at a loss, and you will be liable for any resulting deficit in your account.

(2) Under certain market conditions, you may find it difficult or impossible to liquidate a position. This can occur, for example, when the market makes a "limit move."

(3) Placing contingent orders, such as a "stop-loss" or "stop-limit" order, will not necessarily limit your losses to the intended amounts, since market conditions may make it impossible to execute such orders.

(4) A "spread" position may not be less risky than a simple "long" or "short" position.

(5) The high degree of leverage that is often obtainable in futures trading because of the small margin requirements can work against you as well as for you. The use of leverage can lead to large losses as well as gains.

This brief statement cannot, of course, disclose all the risks and other significant aspects of the commodity markets. You should therefore carefully study futures trading before you trade.

I hereby acknowledge that I have received a copy of the above Risk Disclosure Statement and that I have read and understood the contents thereof.

MAG _____
Signature

_____6-2-89_____
Date

_____M.W. Espinosa_____
NAME (Please Print)

_____Conoco Inc.____
Company

PLEASE RETURN TOP COPY

## FOREIGN FUTURES AND FOREIGN OPTIONS
### RISK DISCLOSURE STATEMENT

THE RISK OF LOSS IN TRADING FOREIGN FUTURES AND FOREIGN OPTIONS CAN BE SUBSTANTIAL.  THEREFORE, YOU SHOULD CAREFULLY CONSIDER WHETHER SUCH TRADING IS SUITABLE FOR YOU IN LIGHT OF YOUR FINANCIAL CONDITION.  IN CONSIDERING WHETHER TO TRADE FOREIGN FUTURES OR FOREIGN OPTIONS, YOU SHOULD BE AWARE OF THE FOLLOWING:

(1) PARTICIPATION IN FOREIGN FUTURES AND FOREIGN OPTIONS TRANSACTIONS INVOLVES THE EXECUTION AND CLEARING OF TRADES ON OR SUBJECT TO THE RULES OF A FOREIGN BOARD OF TRADE.

(2) NEITHER THE COMMODITY FUTURES TRADING COMMISSION, THE NATIONAL FUTURES ASSOCIATION NOR ANY DOMESTIC EXCHANGE REGULATES ACTIVITIES OF ANY FOREIGN BOARDS OF TRADE, INCLUDING THE EXECUTION, DELIVERY AND CLEARING OF TRANSACTIONS, OR HAS THE POWER TO COMPEL ENFORCEMENT OF THE RULES OF A FOREIGN BOARD OF TRADE OR ANY APPLICABLE FOREIGN LAWS.  GENERALLY, THE FOREIGN TRANSACTION WILL BE GOVERNED BY APPLICABLE FOREIGN LAW.  THIS IS TRUE EVEN IF THE EXCHANGE IS FORMALLY LINKED TO A DOMESTIC MARKET SO THAT A POSITION TAKEN ON THE MARKET MAY BE LIQUIDATED BY A TRANSACTION ON ANOTHER MARKET.  MOREOVER, SUCH LAWS OR REGULATIONS WILL VARY DEPENDING ON THE FOREIGN COUNTRY IN WHICH THE FOREIGN FUTURES OR FOREIGN OPTIONS TRANSACTION OCCURS.

(3) FOR THESE REASONS, CUSTOMERS WHO TRADE FOREIGN FUTURES OR FOREIGN OPTIONS CONTRACTS MAY NOT BE AFFORDED CERTAIN OF THE PROTECTIVE MEASURES PROVIDED BY THE COMMODITY EXCHANGE ACT, THE COMMISSION'S REGULATIONS AND THE RULES OF THE NATIONAL FUTURES ASSOCIATION AND ANY DOMESTIC EXCHANGE, INCLUDING THE RIGHT TO USE REPARATIONS PROCEEDINGS BEFORE THE COMMISSION AND ARBITRATION PROCEEDINGS PROVIDED BY THE NATIONAL FUTURES ASSOCIATION OR ANY DOMESTIC FUTURES EXCHANGE.  IN PARTICULAR, FUNDS RECEIVED FROM CUSTOMERS FOR FOREIGN FUTURES OR FOREIGN OPTIONS TRANSACTIONS MAY NOT BE PROVIDED THE SAME PROTECTIONS AS FUNDS RECEIVED IN RESPECT OF TRANSACTIONS ON UNITED STATES FUTURES EXCHANGES.  THEREFORE, YOU SHOULD OBTAIN AS MUCH INFORMATION AS POSSIBLE FROM YOUR ACCOUNT EXECUTIVE CONCERNING THE FOREIGN RULES WHICH WILL APPLY TO YOUR PARTICULAR TRANSACTION.

(4) YOU SHOULD ALSO BE AWARE THAT THE PRICE OF ANY FOREIGN FUTURES OR FOREIGN OPTIONS CONTRACT AND, THEREFORE, THE POTENTIAL PROFIT AND LOSS THEREON, MAY BE AFFECTED BY ANY VARIANCE IN THE FOREIGN EXCHANGE RATE BETWEEN THE TIME YOUR ORDER IS PLACED AND THE TIME IT IS LIQUIDATED, OFFSET OR EXERCISED.

(C)

I HEREBY ACKNOWLEDGE THAT I HAVE RECEIVED A COPY OF THE ATTACHED
FOREIGN FUTURES AND FOREIGN OPTIONS RISK DISCLOSURE STATEMENT AND
THAT I HAVE READ AND UNDERSTOOD THE CONTENTS THEREOF.

MAG

_____
SIGNATURE

_____6-2-89_____
DATE

M. W. ESPINOSA
_____
NAME (Please Print)

CONOCO INC.
_____
COMPANY



Options On Futures Risk Disclosure Statement

# E. D. & F. Man International Futures Inc.

## OPTIONS ON FUTURES
## RISK DISCLOSURE STATEMENT

## INTRODUCTION

You should read this Risk Disclosure Statement carefully and be sure that you understand all the contents and the concepts of trading options on futures contracts.

If you have any questions or need clarification or further information, please contact your Account Executive.

## PLEASE TEAR OFF AND RETURN THE SIGNED ACKNOWLEDGEMENT AND RETAIN THE FOLLOWING PAGES FOR YOUR RECORDS.

## CFTC Required Options Disclosure Statement

BECAUSE OF THE VOLATILE NATURE OF THE COMMODITIES MARKETS, THE PURCHASE AND GRANTING OF COMMODITY OPTIONS INVOLVE A HIGH DEGREE OF RISK. COMMODITY OPTION TRANS-ACTIONS ARE NOT SUITABLE FOR MANY MEMBERS OF THE PUBLIC. SUCH TRANSACTIONS SHOULD BE ENTERED INTO ONLY BY PERSONS WHO HAVE READ AND UNDERSTOOD THIS DISCLOSURE STATEMENT AND WHO UNDERSTAND THE NATURE AND EXTENT OF THEIR RIGHTS AND OBLIGATIONS AND OF THE RISKS INVOLVED IN THE OPTION TRANSACTIONS COVERED BY THIS DISCLOSURE STATEMENT.

BOTH THE PURCHASER AND THE GRANTOR SHOULD KNOW WHETHER THE PARTICULAR OPTION IN WHICH THEY CONTEMPLATE TRADING IS AN OPTION WHICH, IF EXERCISED, RESULTS IN THE ESTABLISHMENT OF A FUTURES CONTRACT (AN "OPTION ON A FUTURES CONTRACT") OR RESULTS IN THE MAKING OR TAKING OF DELIVERY OF THE ACTUAL COMMODITY UNDERLYING THE OPTION (AN "OPTION ON A PHYSICAL COMMODITY"). BOTH THE PURCHASER AND THE GRANTOR OF AN OPTION ON A PHYSICAL COMMODITY SHOULD BE AWARE THAT, IN CERTAIN CASES, THE DELIVERY OF THE ACTUAL COMMODITY UNDERLYING THE OPTION MAY NOT BE REQUIRED AND THAT, IF THE OPTION IS EXERCISED, THE OBLIGATIONS OF THE PURCHASER AND GRANTOR WILL BE SETTLED IN CASH.

A PERSON SHOULD NOT PURCHASE ANY COM-MODITY OPTION UNLESS HE IS ABLE TO SUSTAIN A TOTAL LOSS OF THE PREMIUM AND TRANSACTION COSTS OF PURCHASING THE OPTION. A PERSON SHOULD NOT GRANT ANY COMMODITY OPTION UN-LESS HE IS ABLE TO MEET ADDITIONAL CALLS FOR MARGIN WHEN THE MARKET MOVES AGAINST HIS POSITION AND, IN SUCH CIRCUMSTANCES, TO SUSTAIN A VERY LARGE FINANCIAL LOSS.

A PERSON WHO PURCHASES AN OPTION SHOULD BE AWARE THAT IN ORDER TO REALIZE ANY VALUE FROM THE OPTION, IT WILL BE NECESSARY EITHER TO OFFSET THE OPTION POSITION OR TO EXERCISE THE OPTION. IF AN OPTION PURCHASER DOES NOT UNDERSTAND HOW TO OFFSET OR EXER-CISE AN OPTION, THE PURCHASER SHOULD REQUEST AN EXPLANATION FROM THE FUTURES COMMISSION MERCHANT OR THE INTRODUCING BROKER. CUSTOMERS SHOULD BE AWARE THAT IN A NUMBER OF CIRCUMSTANCES, SOME OF WHICH WILL BE DESCRIBED IN THIS DISCLOSURE STATEMENT, IT MAY BE DIFFICULT OR IMPOSSIBLE TO OFFSET AN EXISTING OPTION POSITION ON AN EXCHANGE.

THE GRANTOR OF AN OPTION SHOULD BE AWARE THAT, IN MOST CASES, A COMMODITY OPTION MAY BE EXERCISED AT ANY TIME FROM THE TIME IT IS GRANTED UNTIL IT EXPIRES. THE PURCHASER OF AN OPTION SHOULD BE AWARE THAT SOME OPTION CONTRACTS MAY PROVIDE ONLY A LIMITED PERIOD OF TIME FOR EXERCISE OF THE OPTION.

THE PURCHASER OF A PUT OR A CALL IS SUBJECT TO THE RISK OF LOSING THE ENTIRE PURCHASE PRICE OF THE OPTION—THAT IS THE PREMIUM PAID FOR THE OPTION PLUS ALL TRANSACTION COSTS.

THE COMMODITY FUTURES TRADING COM MISSION REQUIRES THAT ALL CUSTOMERS RECEIVE AND ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE STATEMENT BUT DOES NOT INTEND THIS STATEMENT AS A RECOMMENDATION OF ENDORSEMENT OF EXCHANGE-TRADED COMMODITY OPTIONS.

**(1) Some of the risks of option tradin.**

Specific market movements of the underlying future or underlying physical commodity cannot be predicted accurately.

The grantor of a call option who does not have a long position in the underlying futures contract or underlying physical commodity is subject to risk of loss should the price of the underlying futures contract or underlying physical commodity be higher than the strike price upon exercise or expiration of the option by an amount greater than the premium received for granting the call option.

The grantor of a call option who has a long position in the underlying futures contract or underlying physical commodity is subject to the full risk of a decline in price of the underlying position reduced by the premium received for granting the call. In exchange for the premium received for granting a call option, the option grantor gives up all of the potential gain resulting from an increase in the price of the underlying futures contract or underlying physical commodity above the option strike price upon exercise or expiration of the option.

The grantor of a put option who does not have a short position in the underlying futures contract or underlying physical commodity (e.g., commitment to sell the physical) is subject to risk of loss should the price of the underlying futures contract or underlying physical commodity decrease below the strike price upon exercise or expiration of the option by an amount in excess of the premium received for granting the put option.

The grantor of a put option on a futures contract who has a short position in the underlying futures contract is subject to the full risk of a rise in the price of the underlying position reduced by the premium received for granting the put. In exchange for the premium received for granting a put option on a futures contract, the option grantor gives up all of the poten gain resulting from a decrease in the price of the underlying futures contract below the option strike price upon exercise or expiration of the option. The grantor of a put option on a physical commodity who has a short position (e.g., commitment to sell the physical) is subject to the full risk of a rise in the price of the physical commodity which must be obtained to fulfill the commitment reduced by the premium received for granting the put. In exchange for the premium, the grantor of a put option on a physical commodity gives up all of the potential gain which would have resulted from a decrease in the price of the commodity below the option strike price upon exercise or expiration of the option.

**(2) Description of commodity options.**

Prior to entering into any transaction involving a commodity option, an individual should thoroughly understand the nature and type of option involved and the underlying futures contract or physical commodity. The futures commission merchant or the introducing broker is required to provide, and the individual contemplating an option transaction should obtain:

(i) An identification of the futures contract or physical commodity underlying the option and which may be purchased or sold upon exercise of the option or, if applicable, whether exercise of the option will be settled in cash;

(ii) The procedure for exercise of the option contract, including the expiration date and latest time on that date for exercise. (The latest time on an expiration date when an option may be exercised may vary; therefore, option market participants should ascertain from their futures commission merchant or their introducing broker the latest time the firm accepts exercise instructions with respect to a particular option.);

(iii) A description of the purchase price of the option including the premium, commissions, costs, fees and other charges. (Since commissions and other charges

may vary widely among futures commission merchants and among introducing brokers, option customers may find it advisable to consult more than one firm when opening an option account.);

(iv) A description of all costs in addition to the purchase price which may be incurred if the commodity option is exercised, including the amount of commissions (whether termed sales commissions or otherwise), storage, interest, and all similar fees and charges which may be incurred.

(v) An explanation and understanding of the option grantor's initial margin requirement and obligation to provide additional margin in connection with such an option position, or a position in a futures contract, if applicable;

(vi) A clear explanation and understanding of any clauses in the option contract and of any items included in the option contract explicitly or by reference which might affect the customer's obligation under the contract. This would include any policy of the futures commission merchant or the introducing broker or rule of the exchange on which the option is traded that might affect the customer's ability to fulfill the option contract or to offset the option position in a closing purchase or closing sale transaction (for example, due to unforeseen circumstances that require suspension or termination of trading); and

(vii) If applicable, a description of the effect upon the value of the option position that could result from limit moves in the underlying futures contract.

### (3) The mechanics of option trading.

Before entering into any exchange-traded option transaction, an individual should obtain a description of how commodity options are traded.

Option customers should clearly understand that there is no guarantee that option positions may be offset by either a closing purchase or closing sale transaction on an exchange. In this circumstance, option grantors could be subject to the full risk of their positions until the option position expires, and the purchaser of a profitable option might have to exercise the option to realize a profit.

For an option on a futures contract, an individual should clearly understand the relationship between exchange rules governing option transactions and exchange rules governing the underlying futures contract. For example an individual should understand what action, if any, the exchange will take in the option market if trading in the underlying futures market is restricted or the futures prices have made a "limit move".

The individual should understand that the option may not be subject to daily price fluctuation limits while the underlying futures may have such limits, and, as a result, normal pricing relationships between options and the underlying future may not exist when the future is trading at its price limit. Also, underlying futures positions resulting from exercise of options may not be capable of being offset if the underlying future is at a price limit.

### (4) Margin requirements.

Commodity Futures Trading Commission rules require the purchaser of an option to pay the full option premium when the option position is opened.

Before granting an option, an individual should fully understand the applicable margin requirements, and particularly should be aware of the obligation to put up additional margin money in the case of adverse market moves.

### (5) Profit potential of an option position.

An option customer should carefully calculate the price which the underlying futures contract or underlying physical commodity would have to reach for the option position to become profitable. This price would include the amount by which the underlying futures contract or underlying physical commodity would have to rise above or fall

below the strike price to cover the sum the premium and all other costs incurred in entering into and exercising or closing (offsetting) the commodity option position.

Also, an option customer should be aware of the risk that the futures price prevailing at the opening of the next trading day may be substantially different from the futures price which prevailed when the option was exercised. Similarly, for options on physicals that are cash settled, the physicals price prevailing at the time the option is exercised may differ substantially from the cash settlement price that is determined at a later time. Thus, if a customer does not cover the position against the possibility of underlying commodity price change, the realized price upon option exercise may differ substantially from that which existed at the time of exercise.

**(6) Deep-out-of-the-money options.**

A person contemplating purchasing a deep-out-of-the-money option (that is, an option with a strike price significantly above, in the case of a call, or significantly below, in the case of a put, the current price of the underlying futures contract or underlying physical commodity) should be aware that the chance of such an option becoming profitable is ordinarily remote.

On the other hand, a potential grantor of a deep-out-of-the-money option should be aware that such options normally provide small premiums while exposing the grantor to all of the potential losses described in section (1) of this disclosure statement.

**(7) Glossary of terms.**

(i)    *Contract market*—Any board of trade (exchange) located in the United States which has been designated by the Commodity Futures Trading Commission to list a futures contract or commodity option for trading.

(ii)   *Exchange-traded option; put option; call option*—The options discussed in this disclosure statement are limited to those which may be traded on a contract market. These options (subject to certain exceptions)

give an option purchaser the right to buy in the case of call option, or to sell in the case of a put option, a future contract or the physical commodity underlying the option a the stated strike price prior to the expiration date of th option. Each exchange-traded option is distinguished by th underlying futures contract or underlying physica commodity, strike price, expiration date, and whether th option is a put or a call.

(iii)  *Underlying futures contract*—The futures contrac which may be purchased or sold upon the exercise o an option on a futures contract.

(iv)   *Underlying physical commodity*—The commodity of specific grade (quality) and quantity which may be purchased or sold upon the exercise of an option o a physical commodity.

(v)    *Class of options*—A put or a call covering the sam underlying futures contract or underlying physica commodity.

(vi)   *Series of options*—Options of the same class havin the same strike price and expiration date.

(vii)  *Exercise price*—*See* strike price.

(viii) *Expiration date*—The last day when an option may b exercised.

(ix)   *Premium*—The amount agreed upon between th purchaser and seller for the purchase or sale of commodity option.

(x)    *Strike price*—The price at which a person ma purchase or sell the underlying futures contract o underlying physical commodity upon exercise of commodity option. This term has the same meanin as the term "exercise price".

(xi)   *Short option position*—*See* opening sale transaction

(xii)  *Long option position*—*See* opening purchas transaction.

(xiii) *Types of options transactions* —

    (A) *Opening purchase transaction* —A transaction in which an individual purchases an option and thereby obtains a long option position.

    (B) *Opening Sale Transaction* —A transaction in which an individual grants an option and thereby obtains a short option position.

    (C) *Closing Purchase Transaction* —A transaction in which an individual with a short option position liquidates the position. This is accomplished by a closing purchase transaction for an option of the same series as the option previously granted. Such a transaction may be referred to as an offset transaction.

    (D) *Closing Sale Transaction* —A transaction in which an individual with a long option position liquidates the position. This is accomplished by a closing sale transaction for an option of the same series as the option previously purchased. Such a transaction may be referred to as an offset transaction.

(xiv) *Purchase price* —The total actual cost paid or to be paid, directly or indirectly, by a person to acquire a commodity option. The price includes all commissions and other fees, in addition to the option premium.

(xv) *Grantor, writer, seller* —An individual who sells an option. Such a person is said to have a short position.

(xvi) *Purchaser* —An individual who buys an option. Such a person is said to have a long position.

Account
Number _____

Gentlemen:

I hereby acknowledge that I have received from The Broker a copy of the Options Disclosure Statement and that I have read and understand the contents of this Statement.

MAC _____    M.W. Espinosa
Customer's Signature                                    Customer's Name (Please Print)

Conoco Inc.
Company

6-2-89
Date

## OTC ENERGY PRODUCTS CLEARING ADDENDUM
### TO
### MAN FINANCIAL INC
### CUSTOMER AGREEMENT
### AND
### ELECTRONIC ORDER ENTRY & ACCOUNT ACCESS AGREEMENT

This Addendum (the "Addendum") supplements the terms and conditions of the Man Financial Inc Customer Agreement (the "Customer Agreement") and the Electronic Order Entry & Account Access Agreement (together, the "Agreements") entered into by and between the undersigned ("Customer") and Man Financial Inc ("Man"), a futures commission merchant registered with the Commodity Futures Trading Commission ("CFTC"), with respect to the clearance and carrying by Man and/or its affiliates of Cleared Transactions (as defined below) on behalf of Customer.

In consideration of Man carrying one or more accounts of Customer for the submission, clearance and/or carrying of Cleared Transactions, the parties agree as follows:

1.    Definitions.

   (a)    "Cleared Transaction" means an OTC Transaction (as defined below) that has been accepted by a DCO (as defined below) for clearance and settlement in accordance with the rules and procedures of the DCO.

   (b)    "DCO" means a "derivatives clearing organization" as such term is defined in Section 1a(9) of the Commodity Exchange Act ("CEA") or a "multilateral clearing organization" as such term is defined in Section 408(1) of the Federal Deposit Insurance Corporation Improvement Act ("FDICIA") on which Man or its affiliates has clearing privileges and through which Man agrees, from time to time, to provide clearing services.

   (c)    "OTC Energy Product" means an "over-the-counter derivative instrument" as such term is defined in Section 408(2) of FDICIA and qualifying as a "forward contract" and/or a "swap agreement" as each such term is defined in Section 101(25) and Section 101(53B), respectively, of the United States Bankruptcy Code, as amended, in such energy or energy-related products (including, but not limited to oil, gas and electricity) with respect to which Man agrees, from time to time, to provide clearing services.

   (d)    "OTC Transaction" means an agreement, contract, or transaction between Customer and its counterparty to purchase or sell an OTC Energy Product.

All terms used but not otherwise defined in this Addendum shall have the meanings ascribed to them in the Agreements.

2.    Obligations of Customer with respect to OTC Transactions.

Whenever Customer has agreed to submit an OTC Transaction to a DCO for clearing, Customer agrees to use its commercially reasonable efforts to take whatever steps the DCO or Man may require of it pursuant to the DCO's and Man's rules and procedures to clear the OTC Transaction as a Cleared Transaction, including, but not limited to, the timely submission of all necessary

OTC Transaction data. Customer agrees, upon request, to provide to Man all documents and records relating to OTC Transactions that result in Cleared Transactions cleared or carried by Man on behalf of Customer.

3. <u>Acknowledgments</u>. Customer acknowledges and agrees that:

   (a) Man acts only in the capacity of clearing agent for Customer with respect to the Cleared Transactions. Man may clear the Customer's Cleared Transactions through affiliate(s) of Man. Man does not act as a principal or counterparty to Customer's OTC Transactions unless specifically agreed by Man in writing. Accordingly, Man is not a party to, and assumes no contractual liabilities under the OTC Transactions entered into between Customer and Customer's counterparty.

   (b) If for any reason any Customer OTC Transaction submitted by Man on behalf of Customer to a DCO is not accepted by such DCO for clearing, then Man will have no obligations to Customer with respect to such OTC Transaction except that Man shall make commercially reasonable efforts under the circumstances to attempt to notify Customer of any such non-acceptance.

   (c) The execution of OTC Transactions on trading facilities, trading platforms or communication networks is generally not subject to the same level of regulation and protections as is afforded the execution of futures contracts on regulated contract markets. Additionally, the clearing procedures and regulatory protections may differ among DCOs. For example, some DCOs, such as the New York Mercantile Exchange, Inc. ("NYMEX"), convert an OTC Transaction into a Cleared Transaction by effectively replacing the OTC Transaction with a cleared futures contract by means of an exchange for physical ("EFP") or exchange for swap ("EFS") transaction. The futures position resulting from such NYMEX Cleared Transaction and the associated margin funds will be carried in a customer segregated futures account. On other DCOs, however, such as those utilized by the Intercontinental Exchange, Inc. ("ICE"), the OTC Transaction becomes a Cleared Transaction upon acceptance by the DCO, the Cleared Transactions are not converted to regulated futures contracts, and, accordingly, the margin funds associated with such Cleared Transactions will not be held in a customer segregated futures account. All Cleared Transactions shall be governed by the rules of the applicable DCO as in effect from time to time and the terms of this Addendum. Customer confirms that it is familiar with the procedures of each DCO that it chooses to use.

   (d) Man may set limits or otherwise restrict or prohibit Customer from submitting OTC Transactions and Cleared Transactions to Man for clearance as Man deems appropriate in Man's sole and absolute discretion. Customer is aware of and agrees to abide by the rules, regulations and procedures, as may be established from time to time, of: (i) each trading facility, trading platform or other communication network through which Customer effects OTC Transactions, (including, but not limited to, position or credit limits applicable to OTC Transactions and Cleared Transactions); and (ii) to the extent applicable to Customer, any DCO to which Customer has submitted an OTC Transaction for clearance.

4. <u>Relationship to Agreements</u>. Except as otherwise provided in this Addendum, the terms and conditions of the Agreements shall remain in full force and effect, and shall apply to all Cleared Transactions that Man may clear and/or carry on behalf of Customer. If there are any conflicts between the terms and conditions of this Addendum and the Agreements, the terms and

conditions of this Addendum will govern with respect to all Cleared Transactions. Customer hereby acknowledges, adopts and reaffirms with respect to any and all Cleared Transactions, any and all representations, warranties and covenants made by it in the Agreements.

5.    Representations and Warranties. Customer represents and warrants that: (a) Customer and each of Customer's counterparties to the OTC Transactions are members, participants or users, as applicable and as may be required, of each trading facility, trading platform or other communication network on which Customer and its counterparties effect OTC Transactions; (b) Customer and each of Customer's counterparties is an "eligible contract participant" (as defined in Section 1a(12) of the CEA) and/or an "eligible commercial entity" (as defined in Section 1a(11) of the CEA) as applicable, or is registered with the CFTC as a floor broker or floor trader; (c) Customer and the person(s) executing this Addendum on Customer's behalf are authorized to enter into this Addendum and to engage in and effectuate OTC Transactions and Cleared Transactions; and (d) Customer has the capability to evaluate and understand (on its own behalf or through independent professional advice), and does understand, the terms, conditions and risks of such OTC Transactions and Cleared Transactions and is willing to accept those terms and conditions and to assume (financially and otherwise) those risks.

6.    Remedies. In addition to Man's rights set forth in Section 5 of the Customer Agreement and notwithstanding Section 3(a) of this Addendum, in the event of default by Customer, Man or its affiliate(s), as appropriate, shall also have the right to liquidate Customer's Cleared Transactions carried by Man by entering into an offsetting OTC Transaction, Cleared Transaction, futures transaction and/or EFP or EFS transaction, as applicable, acting either as agent for and/or principal opposite the Customer in such transaction(s).

ConocoPhillips
_____
(Print Name of Customer)

By: _____

Name: __Thomas J. Mathiasmeier_____

Title: __Manager, Gas Marketing & Trading__

Date: __January 11, 2003_____

Doc #:CHI02 (310093-00001) 60081264v5;01/15/2003/Time:15:32

# EXHIBIT B

# IRREVOCABLE STANDBY LETTER OF CREDIT NO. 083400-793



Intesa Sanpaolo S.p.A.
One William Street
New York, NY 10004

Tel (212) 607-3500
Fax (212) 607-3537
SWIFT BCITUS33

| Page: 1/1 | Irrevocable Letter of Credit | L/C Number: |
| Place and date of issue:   NEW YORK 4/06/11 | | 083400-793 |
| Date and place of expiry:   11/23/11 NEW YORK | | |

| Applicant: | Beneficiary: |
| CONOCOPHILLIPS COMPANY | MF GLOBAL INC. |
| 600 N. DAIRY ASHFORD, ROOM ML 3082 | 717 FIFTH AVENUE, 9TH FLOOR |
| HOUSTON, TEXAS 77079 | NEW YORK, NEW YORK 10022-8101 |

WE HEREBY AMEND OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO. 083400-793 IN YOUR FAVOR AS FOLLOWS:

NO.1-CREDIT AMOUNT DECREASED BY US$10,000,000.00
   BALANCE NOW TO READ AS US$15,000,000.00.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THIS AMENDMENT IS SUBJECT TO BENEFICIARY'S APPROVAL, PLEASE CONFIRM YOUR AGREEMENT TO THIS AMENDMENT BY
RETURNING DULY SIGNED THE ATTACHED COPY.

KINDLY ACKNOWLEDGE RECEIPT BY MAIL.

KENNETH LEISENRING
ASST. VICE PRESIDENT

DANIEL BRUNO
FIRST VICE PRESIDENT

ACCEPTED BY:


AUTHORIZED SIGNATURE
MF GLOBAL INC.



**Intesa Sanpaolo S.p.A.**
One William Street
New York, NY 10004

Tel (212) 607-3500
Fax (212) 607-3537
SWIFT BCITUS33

| Page: 1/1 | Irrevocable Letter of Credit | L/C Number: |
|---|---|---|
| Place and date of issue: NEW YORK 11/19/10 | | 083400-793 |
| Date and place of expiry: 11/23/11 NEW YORK | | |

| Applicant: | Beneficiary: |
|---|---|
| CONOCOPHILLIPS COMPANY<br>600 N. DAIRY ASHFORD, ROOM ML 3082<br>HOUSTON, TEXAS 77079 | MF GLOBAL INC.<br>717 FIFTH AVENUE, 9TH FLOOR<br>NEW YORK, NEW YORK 10022-8101 |

WE HEREBY AMEND OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO. 083400-793 IN YOUR FAVOR AS FOLLOWS:

NO.1-EXPIRATION DATE EXTENDED TO NOVEMBER 23, 2011.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

KINDLY ACKNOWLEDGE RECEIPT BY MAIL.

KENNETH LEISENRING
ASST. VICE PRESIDENT

DANIEL BRUNO
FIRST VICE PRESIDENT

# INTESA 🔲 SANPAOLO

**Intesa Sanpaolo S.p.A.**
One William Street
New York, NY 10004

Tel (212) 607-3500
Fax (212) 607-3537
SWIFT BCITUS33

| | |
|---|---|
| Page: 1/1 <br><br> Place and date of issue:  NEW YORK 11/09/2009 <br><br> Date and place of expiry:  11/23/2010 NEW YORK | Irrevocable Letter of Credit      L/C Number: <br> 083400-793 |
| Applicant: <br> CONOCOPHILLIPS COMPANY <br> 600 N. DAIRY ASHFORD, ROOM ML 3082 <br> HOUSTON, TEXAS  77079 | Beneficiary: <br> MF GLOBAL INC. <br> 717 FIFTH AVENUE, 9TH FLOOR <br> NEW YORK, NEW YORK 10022-8101 |

WE HEREBY AMEND OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO. 083400-793 IN YOUR FAVOR AS FOLLOWS:

NO.1-EXPIRATION DATE EXTENDED TO NOVEMBER 23, 2010.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

KINDLY ACKNOWLEDGE RECEIPT BY MAIL.

KENNETH LEISENRING
ASST. VICE PRESIDENT

DANIEL BRUNO
FIRST VICE PRESIDENT

# INTESA [mmm] SANPAOLO

**Intesa Sanpaolo S.p.A.**
One William Street
New York, NY 10004

Tel (212) 607-3500
Fax (212) 607-3537
SWIFT BCITUS33

| | |
|---|---|
| Page: 1/1 <br> Place and date of issue: NEW YORK 5/26/09 <br> Date and place of expiry: 11/23/09 NEW YORK | Irrevocable Letter of Credit    L/C Number: <br> 083400-793 |
| Applicant: <br> CONOCOPHILLIPS COMPANY <br> 600 N. DAIRY ASHFORD, ROOM ML 3082 <br> HOUSTON, TEXAS 77079 | Beneficiary: <br> MF GLOBAL INC. <br> 717 FIFTH AVENUE, 9TH FLOOR <br> NEW YORK, NEW YORK 10022-8101 |

WE HEREBY AMEND OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO. 083400-793 IN YOUR FAVOR AS FOLLOWS:

NO.1-CREDIT AMOUNT DECREASED BY US$15,000,000.00
    BALANCE NOW TO READ AS US$25,000,000.00.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THIS AMENDMENT IS SUBJECT TO BENEFICIARY'S APPROVAL, PLEASE CONFIRM YOUR AGREEMENT TO THIS AMENDMENT BY RETURNING DULY SIGNED THE ATTACHED COPY.

KINDLY ACKNOWLEDGE RECEIPT BY MAIL.

KENNETH LEISENRING
ASST. VICE PRESIDENT

DANIEL BRUNO
FIRST VICE PRESIDENT

ACCEPTED BY:

_____
AUTHORIZED SIGNATURE
MF GLOBAL INC.



**INTESA** ⓜ **SANPAOLO**

Intesa Sanpaolo S.p.A.
One William Street
New York, NY 10004

Tel (212) 607-3500
Fax (212) 607-3537
SWIFT BCITUS33

| Page: 1/1 | Irrevocable Letter of Credit | L/C Number: |
|---|---|---|
| Place and date of issue: NEW YORK 11/25/08 | | 083400-793 |
| Date and place of expiry: 11/23/09 NEW YORK | | |

| Applicant: | Beneficiary: |
|---|---|
| CONOCOPHILLIPS COMPANY<br>600 N. DAIRY ASHFORD, ROOM ML 3082<br>HOUSTON, TEXAS 77079 | MF GLOBAL INC.<br>717 FIFTH AVENUE, 9TH FLOOR<br>NEW YORK, NEW YORK 10022-8101 |

GENTLEMEN:

AT THE REQUEST OF OUR CLIENT, CONOCOPHILLIPS COMPANY, 600 N. DAIRY ASHFORD, ROOM ML 3082, HOUSTON, TEXAS 77079 ("APPLICANT"), WE HEREBY ESTABLISH OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO. 083400-793 IN FAVOR OF MF GLOBAL INC., 717 FIFTH AVENUE, 9TH FLOOR, NEW YORK, NEW YORK 10022-8101 ("BENEFICIARY") FOR THE AGGREGATE AMOUNT OF $40,000,000.00 (UNITED STATES DOLLARS FORTY MILLION AND 00/100). THIS LETTER OF CREDIT IS EFFECTIVE IMMEDIATELY AND EXPIRES AT OUR OFFICE LOCATED AT ONE WILLIAM STREET, NEW YORK, NY 10004 ATTENTION LETTER OF CREDIT DEPARTMENT, WITH OUR CLOSE OF BUSINESS ON NOVEMBER 23, 2009.

FUNDS UNDER THIS STANDBY LETTER OF CREDIT ARE AVAILABLE TO THE BENEFICIARY AGAINST THEIR DRAFT(S) DRAWN ON INTESA SANPAOLO SPA, ONE WILLIAM STREET, NEW YORK, NY 10004, AT SIGHT, MENTIONING THEREON OUR LETTER OF CREDIT NO. 083400-793 WHEN ACCOMPANIED BY THE ORIGINAL OF THIS LETTER OF CREDIT AND THE FOLLOWING DOCUMENT:

THE BENEFICIARY'S WRITTEN STATEMENT PURPORTEDLY SIGNED BY ONE OF ITS DULY AUTHORIZED REPRESENTATIVES STATING THAT:

"APPLICANT HAS DEFAULTED IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE CONTRACTING PARTY'S AGREEMENT AS REVISED FROM TIME TO TIME AS EXECUTED AMONG APPLICANT AND BENEFICIARY AND AS A RESULT OF SUCH DEFAULT, BENEFICIARY IS DRAWING UPON STANDBY LETTER OF CREDIT NO. 083400-793 DATED NOVEMBER 25, 2008."

PARTIAL DRAWINGS ARE PERMITTED. THE AMOUNT OF THIS LETTER OF CREDIT SHALL BE AUTOMATICALLY REDUCED BY THE AMOUNT OF ANY DRAWING PAID HEREUNDER.

THIS IRREVOCABLE STANDBY LETTER OF CREDIT SETS FORTH IN FULL THE TERMS OF OUR UNDERTAKING. THIS UNDERTAKING SHALL NOT IN ANY WAY BE MODIFIED, AMENDED, OR AMPLIFIED BY REFERENCE TO ANY DOCUMENTS OR CONTRACT REFERRED TO HEREIN.

WE HEREBY AGREE WITH THE DRAWER OF ALL DRAFT(S) DRAWN UNDER AND IN COMPLIANCE WITH THE TERMS OF THIS STANDBY LETTER OF CREDIT, THAT SUCH DRAFT(S) WILL BE DULY HONORED UPON PRESENTATION TO THE DRAWEE ON OR BEFORE NOVEMBER 23, 2009.

EXCEPT AS FAR AS OTHERWISE EXPRESSLY STATED HEREIN, THIS LETTER OF CREDIT IS SUBJECT TO THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS (2007 REVISION) INTERNATIONAL CHAMBER OF COMMERCE PUBLICATION NO. 600. AS TO MATTERS NOT COVERED BY UCP, THIS LETTER OF CREDIT SHALL BE SUBJECT TO AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

KINDLY ACKNOWLEDGE RECEIPT BY MAIL.

DANIEL BRUNO
FIRST VICE PRESIDENT

# EXHIBIT C

# IRREVOCABLE STANDBY LETTER OF CREDIT NO. 083399-793

# INTESA m SANPAOLO

**Intesa Sanpaolo S.p.A.**
One William Street
New York, NY 10004

Tel (212) 607-3500
Fax (212) 607-3537
SWIFT BCITUS33

| | |
|---|---|
| Page: 1/1<br><br>Place and date of issue:    NEW YORK 4/06/11<br><br>Date and place of expiry:    11/23/11 NEW YORK | Irrevocable Letter of Credit        L/C Number:<br>083399-793 |
| Applicant:<br>CONOCOPHILLIPS COMPANY<br>600 N. DAIRY ASHFORD, ROOM ML 3082<br>HOUSTON, TEXAS  77079 | Beneficiary:<br>MF GLOBAL INC.<br>717 FIFTH AVENUE, 9TH FLOOR<br>NEW YORK, NEW YORK 10022-8101 |

WE HEREBY AMEND OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO. 083399-793 IN YOUR FAVOR AS FOLLOWS:

NO.1-CREDIT AMOUNT DECREASED BY US$10,000,000.00
    BALANCE NOW TO READ AS US$45,000,000.00.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

THIS AMENDMENT IS SUBJECT TO BENEFICIARY'S APPROVAL, PLEASE CONFIRM YOUR AGREEMENT TO THIS AMENDMENT BY
RETURNING DULY SIGNED THE ATTACHED COPY.

KINDLY ACKNOWLEDGE RECEIPT BY MAIL.

KENNETH LEISENRING
ASST. VICE PRESIDENT

DANIEL BRUNO
FIRST VICE PRESIDENT

ACCEPTED BY:

_____
AUTHORIZED SIGNATURE
MF GLOBAL INC.



**INTESA SANPAOLO**

**Intesa Sanpaolo S.p.A.**
One William Street
New York, NY 10004

Tel (212) 607-3500
Fax (212) 607-3537
SWIFT BCITUS33

| | |
|---|---|
| Page: 1/1 | Irrevocable Letter of Credit |
| Place and date of issue: NEW YORK 11/19/10 | L/C Number: 083399-793 |
| Date and place of expiry: 11/23/11 NEW YORK | |

| Applicant: | Beneficiary: |
|---|---|
| CONOCOPHILLIPS COMPANY | MF GLOBAL INC. |
| 600 N. DAIRY ASHFORD, ROOM ML 3082 | 717 FIFTH AVENUE, 9TH FLOOR |
| HOUSTON, TEXAS 77079 | NEW YORK, NEW YORK 10022-8101 |

WE HEREBY AMEND OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO. 083399-793 IN YOUR FAVOR AS FOLLOWS:

NO.1-EXPIRATION DATE EXTENDED TO NOVEMBER 23, 2011.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

KINDLY ACKNOWLEDGE RECEIPT BY MAIL.


KENNETH LEISENRING
ASST. VICE PRESIDENT


DANIEL BRUNO
FIRST VICE PRESIDENT



**INTESA SANPAOLO**

Intesa Sanpaolo S.p.A.
One William Street
New York, NY 10004

Tel (212) 607-3500
Fax (212) 607-3537
SWIFT BCITUS33

| Page: 1/1 | Irrevocable Letter of Credit | L/C Number: |
|---|---|---|
| Place and date of Issue: NEW YORK 5/26/09 | | 083399-793 |
| Date and place of expiry: 11/23/09 NEW YORK | | |

| Applicant: | Beneficiary: |
|---|---|
| CONOCOPHILLIPS COMPANY<br>600 N. DAIRY ASHFORD, ROOM ML 3082<br>HOUSTON, TEXAS 77079 | MF GLOBAL INC.<br>717 FIFTH AVENUE, 9TH FLOOR<br>NEW YORK, NEW YORK 10022-8101 |

WE HEREBY AMEND OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO. 083399-793 IN YOUR FAVOR AS FOLLOWS:

NO.1-CREDIT AMOUNT INCREASED BY US$15,000,000.00
    BALANCE NOW TO READ AS US$55,000,000.00.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

KINDLY ACKNOWLEDGE RECEIPT BY MAIL.

KENNETH LEISENRING
ASST. VICE PRESIDENT

DANIEL BRUNO
FIRST VICE PRESIDENT



# INTESA ☐ SANPAOLO

Intesa Sanpaolo S.p.A.
One William Street
New York, NY 10004

Tel (212) 607-3500
Fax (212) 607-3537
SWIFT BCITUS33

| Page: 1/1 | Irrevocable Letter of Credit | L/C Number: |
| Place and date of issue: NEW YORK 11/25/08 | | 083399-793 |
| Date and place of expiry: 11/23/09 NEW YORK | | |

| Applicant: | Beneficiary: |
| CONOCOPHILLIPS COMPANY | MF GLOBAL INC. |
| 600 N. DAIRY ASHFORD, ROOM ML 3082 | 717 FIFTH AVENUE, 9TH FLOOR |
| HOUSTON, TEXAS 77079 | NEW YORK, NEW YORK 10022-8101 |

GENTLEMEN:

AT THE REQUEST OF OUR CLIENT, CONOCOPHILLIPS COMPANY, 600 N. DAIRY ASHFORD, ROOM ML 3082, HOUSTON, TEXAS 77079 ("APPLICANT"), WE HEREBY ESTABLISH OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO. 083399-793 IN FAVOR OF MF GLOBAL INC., 717 FIFTH AVENUE, 9TH FLOOR, NEW YORK, NEW YORK 10022-8101 ("BENEFICIARY") FOR THE AGGREGATE AMOUNT OF $40,000,000.00 (UNITED STATES DOLLARS FORTY MILLION AND 00/100). THIS LETTER OF CREDIT IS EFFECTIVE IMMEDIATELY AND EXPIRES AT OUR OFFICE LOCATED AT ONE WILLIAM STREET, NEW YORK, NY 10004 ATTENTION LETTER OF CREDIT DEPARTMENT, WITH OUR CLOSE OF BUSINESS ON NOVEMBER 23, 2009.

FUNDS UNDER THIS STANDBY LETTER OF CREDIT ARE AVAILABLE TO THE BENEFICIARY AGAINST THEIR DRAFT(S) DRAWN ON INTESA SANPAOLO SPA, ONE WILLIAM STREET, NEW YORK, NY 10004, AT SIGHT, MENTIONING THEREON OUR LETTER OF CREDIT NO. 083399-793 WHEN ACCOMPANIED BY THE ORIGINAL OF THIS LETTER OF CREDIT AND THE FOLLOWING DOCUMENT:

THE BENEFICIARY'S WRITTEN STATEMENT PURPORTEDLY SIGNED BY ONE OF ITS DULY AUTHORIZED REPRESENTATIVES STATING THAT:

"APPLICANT HAS DEFAULTED IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE CONTRACTING PARTY'S AGREEMENT AS REVISED FROM TIME TO TIME AS EXECUTED AMONG APPLICANT AND BENEFICIARY AND AS A RESULT OF SUCH DEFAULT, BENEFICIARY IS DRAWING UPON STANDBY LETTER OF CREDIT NO. 083399-793 DATED NOVEMBER 25, 2008."

PARTIAL DRAWINGS ARE PERMITTED. THE AMOUNT OF THIS LETTER OF CREDIT SHALL BE AUTOMATICALLY REDUCED BY THE AMOUNT OF ANY DRAWING PAID HEREUNDER.

THIS IRREVOCABLE STANDBY LETTER OF CREDIT SETS FORTH IN FULL THE TERMS OF OUR UNDERTAKING. THIS UNDERTAKING SHALL NOT IN ANY WAY BE MODIFIED, AMENDED, OR AMPLIFIED BY REFERENCE TO ANY DOCUMENTS OR CONTRACT REFERRED TO HEREIN.

WE HEREBY AGREE WITH THE DRAWER OF ALL DRAFT(S) DRAWN UNDER AND IN COMPLIANCE WITH THE TERMS OF THIS STANDBY LETTER OF CREDIT, THAT SUCH DRAFT(S) WILL BE DULY HONORED UPON PRESENTATION TO THE DRAWEE ON OR BEFORE NOVEMBER 23, 2009.

EXCEPT AS FAR AS OTHERWISE EXPRESSLY STATED HEREIN, THIS LETTER OF CREDIT IS SUBJECT TO THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS (2007 REVISION) INTERNATIONAL CHAMBER OF COMMERCE PUBLICATION NO. 600. AS TO MATTERS NOT COVERED BY UCP, THIS LETTER OF CREDIT SHALL BE SUBJECT TO AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK.

KINDLY ACKNOWLEDGE RECEIPT BY MAIL.

KENNETH HENRING
VICE PRESIDENT

DANIEL BRUNO
FIRST VICE PRESIDENT

# EXHIBIT D

## IRREVOCABLE STANDBY LETTER OF CREDIT No. S11038

# Svenska Handelsbanken
### New York Branch

## IRREVOCABLE STANDBY LETTER OF CREDIT NO. S11038
## (Pass-Through)

| | |
|---|---|
| **Applicant:** ConocoPhillips<br>600 N. Dairy Ashford Road<br>Houston, Texas 77079 | **Issuing Bank:** Svenska Handelsbanken, New York Branch<br><br>Letter of Credit Number: S11038<br><br>Issue Date: March 24, 2011 |
| **Account Type:** Customer Segregated | **Governing Law:**<br>[ X ]  State of Illinois **OR**<br>[    ]  State of New York |
| **Joint Beneficiaries:**<br><br>1)   MF Global Inc.<br>      717 Fifth Avenue – 9th Floor<br>      New York, New York 10022<br>      Attention: David Schiller<br>      Telephone Number:      (212) 589-6420<br>      Facsimile Number:       (212) 589-6230<br>      S.W.I.F.T. Bank Identifier Code: _____<br><br>2)   Chicago Mercantile Exchange Inc.<br>      20 South Wacker Drive<br>      Chicago, Illinois  60606<br>      Attn: Clearing House<br>      Telephone Number:      (312) 930-3183<br>      Facsimile Number:       (312) 930-3187<br>      S.W.I.F.T. Bank Identifier Code: XCMEUS4C | This Letter of Credit is intended to replace our Letter of Credit No.: S09048 issued May 29, 2009. |
| **Amount:** $40,000,000.00 (Forty Million United States Dollars and No Cents) | **Expiry Date:**      March 30, 2012 |
| **Issuing Bank**<br>  Primary Office:      875 Third Avenue, 4th Floor<br>                              New York, New York 10022-7218<br><br>Telephone Number: (212) 326-5104/5142<br>Facsimile Number: (212) 326-2725<br>S.W.I.F.T. Bank Identifier Code: HANDUS33 | **Alternative Office1:**      55 Washington Street, Suite 713<br>                              Brooklyn, New York 11201-1036<br><br>Telephone Number: (718) 722-1304<br>Facsimile Number: (212) 722-8429<br>S.W.I.F.T. Bank Identifier Code: _____ |
| **Alternative Office 2:**<br><br>Telephone Number: _____<br>Facsimile Number: _____<br>S.W.I.F.T. Bank Identifier Code: _____ | **Non-U.S. Office for Currency other than USD:**<br><br>Telephone Number: _____<br>Facsimile Number: _____<br>S.W.I.F.T. Bank Identifier Code: _____ |
| As used in this Letter of Credit, "Approved Means" refers to any one of the following as indicated:<br>(i)   [ X ] hand delivery of a manually signed copy of a<br>              document,<br>(ii)  [ X ] S.W.I.F.T. MT 707 message,<br>(iii) [__] tested telex | As used in this Letter of Credit, the term "Cutoff Time" shall mean:<br><br>      [ X  ] 3:00 p.m. or [__] 4:00 p.m. |

The terms of this Letter of Credit shall be the UCG Uniform Letter of Credit (Pass-Through) Terms dated 12/1/99, including paragraphs 1 through 6 thereof and Exhibits A through E thereto, which are incorporated herein by reference.

Very truly yours,

_____                    _____
Authorized Signature                               Authorized Signature

**875 Third Avenue, New York, NY 10022-7218**
**Telephone: (212) 326-5142          Telefax: (212) 326-2725**

DEPARTMENT COPY

# Svenska Handelsbanken

### New York Branch
## AMENDMENT TO STATED AMOUNT OF IRREVOCABLE STANDBY LETTER OF CREDIT NO. S11038
### (Pass-Through)

| | |
|---|---|
| **New Amount:** | **USD 15,000,000.00** |
| **Amendment Date:** | **April 14, 2011** |
| Issuance Date: | March 24, 2011 |
| Current Expiration Date: | March 30, 2012 |
| Applicant: | ConocoPhillips<br>600 N. Dairy Ashford Road<br>Houston, Texas  77079 |
| To Joint Beneficiaries: | MF Global Inc.<br>717 Fifth Avenue – 9th Floor<br>New York, New York 10022 |
| | Chicago Mercantile Exchange Inc.<br>20 South Wacker Drive<br>Chicago, Illinois  60606<br>Attn:  Clearing House |
| Account Type: | Customer Segregated |

### AMENDMENT NO. 1

Please take notice that our Irrevocable Standby Letter of Credit (Pass-Through) No. **S11038** issued March 24, 2011 (the "Letter of Credit") is hereby amended as follows:

**The stated amount is decreased from USD40,000,000.00 by USD25,000,000.00 to a new stated amount of (Fifteen Million United States Dollars and No Cents) USD15,000,000.00.**

This amendment is effective when, and only when, accepted by both of you as provided in the Letter of Credit unless the only effect of this amendment is to increase the stated amount of the Letter of Credit, in which case it is effective upon receipt by both of you following our transmission of it to both of you via Approved Means (as defined in the Letter of Credit).

Very truly yours,
SVENSKA HANDELSBANKEN, NEW YORK BRANCH

By: _____        By: _____
Authorized Signature                Authorized Signature
Name Typed or Printed               Name Typed or Printed
As its: _____                as Its: _____
        Title                              Title

ACCEPTED:                           ACCEPTED:
**MF Global Inc.**                  **Chicago Mercantile Exchange Inc.**

By: _____        By: _____
    Signature                           Signature

Name Typed or Printed               Name Typed or Printed
As Its: _____                As its: _____

875 Third Avenue, New York, NY 10022-7218
Date: Telephone: (212) 326-5142     Date:  Telefax: (212) 326-2725

CUSTOMER COPY

<u>UCG Uniform Letter of Credit Terms – (Pass-Through)</u>

1.    (a)    We, the Issuing Bank, hereby establish, effective immediately, in favor of you, the Joint Beneficiaries (each of you individually a "Beneficiary"), our Irrevocable Standby Letter of Credit numbered as set forth on the Cover Page above ("Letter of Credit"), which is available for payment to one of you at sight upon presentation by one of you of a demand for payment as follows:

(i)    hand delivery of a demand for payment signed by the Beneficiary presenting the Demand and containing the text of Exhibit A attached hereto at our office identified on the Cover Page as the primary office to which a demand is to be made ("Primary Office") or, if such Primary Office is not Open for Business because of an interruption of business as described in Article 36 of the UCP, then at one of the alternative offices (each an "Alternative Office") specified on the Cover Page (if any such office is specified) and, in addition, if such Beneficiary is a clearing member firm, presenting the originally signed Cover Page,; or

(ii)    transmission by facsimile of a demand for payment signed by the Beneficiary presenting the Demand and containing the text of Exhibit A to the facsimile number specified on the Cover Page for our Primary Office or, if such Primary Office is not Open for Business because of an interruption of business as described in Article 36 of the UCP, then to the facsimile number specified on the Cover Page for an Alternative Office (if any such office is specified) and, in addition, if such Beneficiary is a clearing member firm, presenting the originally signed Cover Page; or

(iii)    transmission by the Beneficiary presenting the Demand to us at our Primary Office or, if such Primary Office is not Open for Business because of an interruption of business as described in Article 36 of the UCP, then to an Alternative Office (if any such office is specified), of a S.W.I.F.T. MT 799 message containing the text of Exhibit A and, in addition, if such Beneficiary is a clearing member firm, presenting the originally signed Cover Page; or

(iv)    if the Amount specified on the Cover Page is in a currency other than U.S. Dollars, then a Demand may be made, at the election of the Beneficiary making such Demand, *either* (A) in accordance with paragraph 1(a)(i), (ii) or (iii) hereof *or* (B) at the non-U.S. office specified on the Cover Page ("Non-U.S. Office") by presentation of a demand for payment signed by the Beneficiary presenting the Demand and containing the text of Exhibit A either by hand delivery or transmission by facsimile to the applicable facsimile number specified on the Cover Page for the Non-U.S. Office or by transmission to the Non-U.S. Office of a S.W.I.F.T. MT 799 message containing the text of Exhibit A; provided, however, if such Beneficiary is a clearing member firm, the originally signed Cover Page must also be presented.

Presentation of a demand for payment in accordance with paragraph 1(a)(i), (ii), (iii) or (iv) hereof is hereinafter referred to as a "Demand." In the event that a Demand is made pursuant to the terms of this Letter of Credit by a Beneficiary that is a clearing member firm, such Demand shall include presentation of the originally signed Letter of Credit Cover Page to the Issuing Bank. The Issuing Bank agrees that it will promptly notify the Beneficiaries of any change in the facsimile numbers referred to on the Cover Page via an amendment transmitted by Approved Means (as defined below) substantially in the form of

Exhibit C attached hereto. A Demand made by facsimile transmission or S.W.I.F.T. is effective in accordance with the terms of this Letter of Credit whether or not it is accompanied or followed by a copy of such Demand in any other form. As used throughout this Letter of Credit and the Exhibits hereto, references to specific forms of S.W.I.F.T. messages shall be deemed to include references to any successor forms that may be designated by S.W.I.F.T. from time to time.

(b)    Funds may be drawn under this Letter of Credit in one drawing or from time to time in one or more partial drawings on or before the Expiry Date specified on the Cover Page or in an amendment effected in accordance with paragraph 4 hereof, provided that the aggregate amount drawn shall not exceed the Amount specified on the Cover Page as it may be amended from time to time.

(c)    A Demand in conformity with paragraph 1(a)(i), (ii) or (iv) hereof may be made at any time when our office to which presentation is made is Open for Business on or prior to the Expiry Date. A Demand in conformity with paragraph 1(a)(iii) hereof may be made at any time prior to 11:59 p.m. on the Expiry Date. Notwithstanding the foregoing, if: (i) this Letter of Credit is identified on its face as replacing a letter of credit previously issued by us, or (ii) the Beneficiaries receive a letter of credit issued by us that is identified on its face as replacing this Letter of Credit, then, in either case, you may make a Demand or Demands may be made under only one of the two letters of credit and the other letter of credit shall be terminated upon the making of any such Demand that is honored by us.

2.    (a)    Except to the extent otherwise provided in paragraph 2(f) hereof with respect to payment of currency other than U.S. Dollars, if a Demand is made by you on any Business Day at a time prior to the Cutoff Time (as specified on the Cover Page) when our office to which the Demand is made is Open for Business, we will effect payment in accordance with paragraph 2(c) hereof within 60 minutes after our receipt of such Demand. If Demand occurs after the Cutoff Time on any Business Day or at a time when the office to which your Demand is made is not Open for Business, we will effect payment in accordance with paragraph 2(c) hereof as soon as possible thereafter but in any event within 60 minutes after the earliest time when such office is next Open for Business.

(b)    If on the Expiry Date our Primary Office is not Open for Business for reasons other than an interruption of business as described in Article 36 of the UCP (hereinafter defined), payment will nevertheless be made within 60 minutes following Demand if such Demand is made prior to the Cutoff Time on the third (3rd) Business Day on which such office is next Open for Business. If this Letter of Credit expires at a time when such office is not Open for Business because of an interruption of business as described in Article 36 of the UCP, we will make payment if a Demand that is otherwise in conformity with paragraph 1 is presented to us either: (i) at one of the Alternative Offices of the Issuing Bank specified on the Cover Page (including the Non-U.S. Office, if one is specified) not later than the third (3rd) Business Day on which such office is Open for Business following the Expiry Date, or (ii) at our Primary Office not later than the tenth (10th) Business Day after the date on which such office is again Open for Business.

(c)    Not later than the time specified in paragraph 2(a) or 2(f) hereof, as applicable, we will, irrevocably and without setoff, reserve or other condition, effect payment of the full amount demanded in funds which are immediately available either: (i) by crediting such funds to the account in the name of the Beneficiary making such Demand at our bank that is designated in the Demand; or (ii) by

transmitting such funds by wire transfer to the account in the name of the Beneficiary making such Demand at another bank that is designated in the Demand.

(d)   As used in this Letter of Credit, (i) "Open for Business" shall mean, with respect to an office of the Issuing Bank, open to the public for the transaction of banking business on any day other than a Saturday, a Sunday or a banking holiday in the city where such office is located, and such office shall be deemed to continue to be "Open for Business" until such office is closed to the public for such day without regard to any earlier designated legal cut-off hour for the handling of items and balancing of books, and without regard to any reopening for limited purposes during late afternoon or evening hours on such day, and (ii) a "Business Day" shall mean, with respect to an office of the Issuing Bank, any day that such office is Open for Business.

(e)   All times specified in this Letter of Credit refer to local time in effect at the office of the Issuing Bank at which presentation of a Demand is made.

(f)   In the event that the Amount is in a currency other than U.S. Dollars and is payable at the Non-U.S. Office, the provisions of this paragraph 2(f) shall replace the provisions of paragraph 2(a) hereof. If a Demand is made either at our Primary Office or at the Non-U.S. Office, or at an Alternative Office when permitted under paragraph 2(b) hereof, on any Business Day at a time prior to the Cutoff Time when our office to which the Demand is made is Open for Business, we will, within 60 minutes after our receipt of such Demand, either effect payment or transmit to the Beneficiary presenting the Demand, by facsimile or by Approved Means, our irrevocable and unconditional commitment in the form of Exhibit B attached hereto ("Commitment") to honor your Demand, which Commitment shall specify the latest time by which payment will be effected. If your Demand occurs after the Cutoff Time on any Business Day or at a time when the office to which your Demand is made is not Open for Business, we will either effect such payment or transmit such Commitment as soon as possible thereafter but in any event within 60 minutes after the earliest time when such office is next Open for Business. In the case of any Demand made in accordance with this paragraph 2(f), we will effect payment in accordance with paragraph 2(c) hereof as soon as possible and in any event prior to the close of business at our office at which payment is to be effected on the Business Day next following the day on which such Commitment is due.

3.   We agree that:

(a)   The times set forth herein within which payment must be made by us are reasonable and sufficient to enable us: (i) to examine the text of the presented Demand so as to ascertain that on its face it complies with the terms of this credit; and (ii) thereafter to effect payment in accordance with the provisions of paragraph 2(c) hereof.

(b)   Payment hereunder shall be made regardless of:

(i)   any written or oral direction, request, notice or other communication now or hereafter received by us from the Applicant, or any other person except the presenting Beneficiary, including, without limitation, any communication regarding fraud, forgery, lack of authority or other defect not apparent on the face of the signed Demand presented ;

(ii)    the solvency, existence or condition (financial or other) of, or the pendency of any proceeding under the United States Bankruptcy Code or any other insolvency law or the Securities Investor Protection Act with respect to, the Applicant or any other person or any property from whom or out of which we may be entitled to reimbursement for such payment, or the value of any such property; and

(iii)   without limiting clause (ii) above, whether we are in receipt of or expect to receive funds or other property to use as payment to the presenting Beneficiary or as reimbursement, in whole or in part, for such payment to the presenting Beneficiary or whether the consideration for this Letter of Credit has been performed or has failed.

(c)    We will not take any action, including but not limited to any action to cause the issuance of an order of any court, relieving us of our obligations, or determining whether or not we are obligated, to make payment in accordance with the terms of this Letter of Credit.

(d)    All fees and other costs chargeable by us or otherwise associated with this Letter of Credit and any Demands or payments under this Letter of Credit or amendments thereto shall be for the account of the Applicant and shall not in any manner be a liability of any Beneficiary, and failure of the Applicant or Clearing Member to pay any amount in respect hereof shall not affect our obligation to make payment to you hereunder.

(e)    This Letter of Credit is the complete undertaking of the Issuing Bank and it is not, and shall not be deemed to be, modified by any references to any other document (except only the Exhibits attached hereto and the UCP, referenced below) or any written or oral agreement.

(f)    The Beneficiaries are not bound by, and the rights of the Beneficiaries hereunder shall not be affected in any manner by, the existence of, or your knowledge or notice (whether actual or constructive) of, any written or oral agreement of any type, whether now or hereafter existing, with respect to this Letter of Credit (or otherwise) between us and the Applicant or any other person, or by the existence of, or your knowledge or notice (whether actual or constructive) of, any other matter.

(g)    Failure of the Issuing Bank to make any payment demanded by the presenting Beneficiary in conformity herewith within the times specified herein shall constitute dishonor of such Demand and of this Letter of Credit, notwithstanding any provision of law or any custom or usage of trade that would otherwise permit us to defer payment for a longer period of time without dishonor.

(h)    We will notify either Beneficiary promptly of any drawing (whether partial or in full), and the amount thereof, by the other Beneficiary.

4.    (a)    Subject to all other provisions of this Letter of Credit, certain information on the Cover Page of this Letter of Credit may be amended by our transmission to the Beneficiaries by Approved Means of an amendment containing the text of Exhibit C attached hereto, the stated amount of this Letter of Credit may be increased or decreased by our transmission to the Beneficiaries by Approved Means of an amendment containing the text of Exhibit D attached hereto, and the Expiry Date may be amended by our transmission to the Beneficiaries by Approved Means of an amendment containing the text of Exhibit E attached hereto. Any such amendment having the sole effect of (i) providing notice of

any change in the address, facsimile number or telephone number for our Primary Office, an Alternative Office or the Non-U.S. Office specified on the Cover Page hereof, (ii) increasing the stated amount, or (iii) extending the Expiry Date of this Letter of Credit to an Expiry Date which is later than the then current Expiry Date shall be effective upon receipt by the Beneficiaries. Any amendment that: (i) reduces the stated amount, or (ii) specifies an Expiry Date which is earlier than the then specified Expiry Date, shall be effective when and only when accepted by the Beneficiaries by (i) returning to us an executed counterpart of a manually executed amendment, (ii) delivery of a tested telex indicating acceptance of such amendment, or (iii) delivery of a S.W.I.F.T. 730 message referring to such amendment that does not indicate that such amendment has been rejected.

(b)    Except to the extent expressly provided in paragraph 4(a) hereof, this Letter of Credit may not be amended by us without the consent of the Beneficiaries.

(c)    For purposes of this Letter of Credit, "Approved Means" refers to any one of the means of transmission identified as an "Approved Means" on the Cover Page of this Letter of Credit.

5.    This Letter of Credit is subject to the Uniform Customs and Practice for Documentary Credits (2007 Revision), International Chamber of Commerce Publication No. 600 (the "UCP") and to the law of the jurisdiction selected on the Cover Page hereof including , if the jurisdiction selected is Illinois, the Uniform Commercial Code ("UCC") as in effect in Illinois.  In the event of any conflict between the express terms stated herein and the UCP or the UCC, the terms of this Letter of Credit shall control, and in the event of any conflict between the terms of the UCC and the UCP, the terms of the UCP shall control.

6.    If the jurisdiction selected on the Cover Page hereof is New York, we irrevocably and unconditionally submit to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York or any New York State court sitting in New York County, New York in respect of any action brought against us relating in any way to this Letter of Credit. If the jurisdiction selected on the Cover Page hereof is Illinois, we irrevocably and unconditionally submit to the non-exclusive jurisdiction of the United States District Court for the Northern District of Illinois or any court of the State of Illinois sitting in Cook County, Illinois in respect of any action brought against us relating in any way to this Letter of Credit. We irrevocably and unconditionally waive any objection to the laying of venue in the courts designated in accordance with the foregoing provisions of this paragraph. We agree not to, and irrevocably and unconditionally waive any right we might otherwise have to, bring any action or proceeding against any Beneficiary in any forum other than in one of such courts; provided, however, that in any action or proceeding that any Beneficiary brings against us in any forum, we may bring our responsive proceeding in that same forum.

**Exhibit A**

**Demand for Payment**

To: *[Name of Issuing Bank]*                         Date _____

**NOTICE TO ISSUING BANK: PAYMENT OR, IN THE CASE OF CREDITS PAYABLE IN CURRENCY OTHER THAN USD, IRREVOCABLE COMMITMENT TO HONOR IS DUE WITHIN 60 MINUTES OF RECEIPT OF THIS DEMAND.**

Pursuant to your Irrevocable Standby Letter of Credit (Pass-Through) No. _____, issued _____ (the "Letter of Credit"), established for the account of _____, as Applicant, demand is hereby made that _____ *[specify amount and currency]* be *[deposited in immediately available funds to account number_____ carried in the name of _____(name of the Beneficiary presenting the Demand) at your Bank] [transferred via wire transfer (Fedwire in the case of USD) in immediately available funds to account number _____carried in the name of _____ (name of the Beneficiary presenting the Demand at _____ ]* within 60 minutes of your receipt of this demand or by such later time as may be permitted under paragraph 2(a) or 2(f) of the Letter of Credit.

Very truly yours,

*[Name of Beneficiary]*


By:     *[Signature]*
        *[Name Typed or Printed]*


As its: *[Title]*

**Exhibit B**

**Notice of Commitment to Honor**

To: *[Name of Presenting Beneficiary]*          Date _____

Re:     **Demand for Payment Under Our Irrevocable Letter of Credit (Pass-Through)**
        **No. _____, Issue Date _____.**

          This is notice to you that we irrevocably and unconditionally commit ourselves to honor your Demand and will effect payment of the amount demanded, without presentment of this or any other document or any further action on your part, to the account specified in the Demand no later than:  __:__ local time in _____ on _____, _____ _____
          (Time)            (City and Country)        ( Month and Day)      (Year)

          This document is not an "instrument" governed by Article 3 of the Uniform Commercial Code.

                              Very truly yours,

                              *[Issuing Bank]*

                              By:    *[Signature]*
                                     *[Name Typed or Printed]*

                              As its: *[Title]*

**Exhibit C**

**Amendment of Notice Information**

To: *[Names of Beneficiaries]*              Date: _____

Account Type: ["Proprietary" or "Customer Segregated"]
Current Expiration Date: _____

    Please take notice that certain information on the Cover Page of our Irrevocable Standby Letter of Credit (Pass-Through) No. _____, issued _____, ("Letter of Credit") is hereby amended as follows (leave blank if no change):

Issuing Bank Primary Office:              Alternative Office 1:
Address:                                  Address:
Telephone number:                         Telephone number:
Facsimile number:                         Facsimile number:
S.W.I.F.T. Bank Identifier No.            S.W.I.F.T. Bank Identifier No.

Alternative Office 2:
Address:
Telephone number:
Facsimile number:
S.W.I.F.T. Bank Identifier No.

Non-U.S. Office for Currency other than USD:
Address:
Telephone number:
Facsimile number:
S.W.I.F.T. Bank Identifier No.

    This amendment is effective upon receipt by both of you following our transmission of it to both of you via Approved Means (as defined in the Letter of Credit).

                    Very truly yours,

                    *[Issuing Bank]*

                    By:    *[Signature]*
                            *[Name Typed or Printed]*

                    As its: *[Title]*

**Exhibit D**

**Amendment to Stated Amount of Irrevocable Standby Letter of Credit
(Pass-Through)**

To: *[Names of Beneficiaries]*              Date: _____

              , Account Type: ["Proprietary" or "Customer Segregated"]
              Current Expiration Date: _____

          Please take notice that our Irrevocable Standby Letter of Credit (Pass-Through) No.
_____, issued _____ ("Letter of Credit") is hereby amended as follows:

          The stated amount is increased/decreased (strike one) by _____ to a new stated amount
of_____ (_____).

          This amendment is effective when, and only when, accepted by both of you as provided in the
Letter of Credit unless the only effect of this amendment is to increase the stated amount of the Letter of
Credit, in which case it is effective upon receipt by both of you following our transmission of it to both
of you via Approved Means (as defined in the Letter of Credit).

                         Very truly yours,

                         *[Issuing Bank]*

                         By:    *[Signature]*
                                *[Name Typed or Printed]*


                         As its: *[Title]*


Accepted:                          Accepted:

*[Name of First Beneficiary]*        *[Name of Second Beneficiary]*

By:    *[Signature]*                 By:    *[Signature]*
       *[Name Typed or Printed]*            *[Name Typed or Printed]*

As Its: *[Title]*                    As Its: *[Title]*

Date:                                Date:

**Exhibit E**

**Amendment to Expiry Date of Irrevocable Standby Letter of Credit
(Pass-Through)**

To : *[Names of Beneficiaries*          Date: _____

          Account Type: ["Proprietary" or "Customer Segregated"]
          Current Expiration Date: _____

          Please take note that our Irrevocable Standby Letter of Credit (Pass-Through) No.
_____, issued _____ (the "Letter of Credit"), is hereby amended to amend
the Expiry Date as follows:

          The new Expiry Date is: _____.

          This amendment is effective when, and only when, accepted by both of you as provided
in the Letter of Credit unless the only effect of this amendment is to extend the Letter of Credit
by specifying an Expiry Date which is later than the current Expiry Date, in which case it is
effective upon receipt by both of you following our transmission of it to both of you via
Approved Means (as defined in the Letter of Credit).

                              Very truly yours,

                              *[Issuing Bank]*

                              By:     *[Signature]*
                                      *[Name Typed or Printed]*


                              As its:  *[Title]*


Accepted:                           Accepted:

*[Name of First Beneficiary]*         *[Name of Second Beneficiary]*

By:     *[Signature]*                 By:     *[Signature]*
        *[Name Typed or Printed]*             *[Name Typed or Printed]*

As its:  *[Title]*                    As its:  *[Title]*

Date:                                 Date:

1815.UCGlc.passthrough(08/07)

# EXHIBIT E

## IRREVOCABLE STANDBY LETTER OF CREDIT NO. S11037

# Svenska Handelsbanken
## New York Branch

## IRREVOCABLE STANDBY LETTER OF CREDIT NO. S11037
### (Pass-Through)

| | |
|---|---|
| **Applicant:** ConocoPhillips<br>600 N. Dairy Ashford Road<br>Houston, Texas 77079 | **Issuing Bank:** Svenska Handelsbanken, New York Branch<br><br>Letter of Credit Number: S11037<br><br>Issue Date: March 24, 2011 |
| **Account Type:** Customer Segregated | **Governing Law:**<br>[ X ]  State of Illinois *OR*<br>[    ]  State of New York |
| **Joint Beneficiaries:**<br><br>1)   MF Global Inc.<br>717 Fifth Avenue – 9th Floor<br>New York, New York 10022<br>Attention: David Schiller<br>Telephone Number:     (212) 589-6420<br>Facsimile Number:     (212) 589-6230<br>S.W.I.F.T. Bank Identifier Code: _____<br><br>2)   Chicago Mercantile Exchange Inc.<br>20 South Wacker Drive<br>Chicago, Illinois  60606<br>Attn: Clearing House<br>Telephone Number:     (312) 930-3183<br>Facsimile Number:     (312) 930-3187<br>S.W.I.F.T. Bank Identifier Code: XCMEUS4C | This Letter of Credit is intended to replace our Letter of Credit No.: S09047 issued May 29, 2009. |
| **Amount:**  $50,000,000.00 (Fifty Million United States Dollars and No Cents) | **Expiry Date:**     March 30, 2012 |
| **Issuing Bank**<br>Primary Office:     875 Third Avenue, 4th Floor<br>New York, New York 10022-7218<br><br>Telephone Number: (212) 326-5104/5142<br>Facsimile Number:  (212) 326-2725<br>S.W.I.F.T. Bank Identifier Code: HANDUS33 | **Alternative Office1:**     55 Washington Street, Suite 713<br>Brooklyn, New York 11201-1036<br><br>Telephone Number: (718) 722-1304<br>Facsimile Number: (212) 722-8429<br>S.W.I.F.T. Bank Identifier Code: _____ |
| **Alternative Office 2:**<br><br>Telephone Number: _____<br>Facsimile Number: _____<br>S.W.I.F.T. Bank Identifier Code: _____ | **Non-U.S. Office for Currency other than USD:**<br><br>Telephone Number: _____<br>Facsimile Number: _____<br>S.W.I.F.T. Bank Identifier Code: _____ |
| As used in this Letter of Credit, "Approved Means" refers to any one of the following as indicated:<br>(i)     [ X ] hand delivery of a manually signed copy of a document,<br>(ii)    [ X ] S.W.I.F.T. MT 707 message,<br>(iii)   [__] tested telex | As used in this Letter of Credit, the term "Cutoff Time" shall mean:<br><br>[ X  ] 3:00 p.m. or [__] 4:00 p.m. |

The terms of this Letter of Credit shall be the UCG Uniform Letter of Credit (Pass-Through) Terms dated 12/1/99, including paragraphs 1 through 6 thereof and Exhibits A through E thereto, which are incorporated herein by reference.

Very truly yours,

Authorized Signature                    Authorized Signature

S11037.iss

875 Third Avenue, New York, NY 10022-7218
Telephone: (212) 326-5142        Telefax: (212) 326-2725

DEPARTMENT COPY

## Svenska Handelsbanken

### New York Branch
### AMENDMENT TO STATED AMOUNT OF IRREVOCABLE STANDBY LETTER OF CREDIT NO. S11037
### (Pass-Through)

| | |
|---|---|
| **New Amount:** | **USD 50,000,000.00** |
| **Amendment Date:** | **April 14, 2011** |
| Issuance Date: | March 24, 2011 |
| Current Expiration Date: | March 30, 2012 |
| Applicant: | ConocoPhillips<br>600 N. Dairy Ashford Road<br>Houston, Texas  77079 |
| To Joint Beneficiaries: | MF Global Inc.<br>717 Fifth Avenue – 9th Floor<br>New York, New York 10022 |
| | Chicago Mercantile Exchange Inc.<br>20 South Wacker Drive<br>Chicago, Illinois  60606<br>Attn:  Clearing House |
| Account Type: | Customer Segregated |

### AMENDMENT NO. 2

Please take notice that our Irrevocable Standby Letter of Credit (Pass-Through) No. **S11037** issued March 24, 2011 (the "Letter of Credit") is hereby amended as follows:

> **The stated amount is increased from USD25,000,000.00 by USD25,000,000.00 to a new stated amount of (Fifty Million United States Dollars and No Cents) USD50,000,000.00.**

This amendment is effective when, and only when, accepted by both of you as provided in the Letter of Credit unless the only effect of this amendment is to increase the stated amount of the Letter of Credit, in which case it is effective upon receipt by both of you following our transmission of it to both of you via Approved Means (as defined in the Letter of Credit).

Very truly yours,
SVENSKA HANDELSBANKEN, NEW YORK BRANCH

By: _____    By: _____
Authorized Signature                        Authorized Signature
_____        _____
Name Typed or Printed                     Name Typed or Printed
As its: _____                        as Its: _____
            Title                                              Title
ACCEPTED:                                    ACCEPTED:
**MF Global Inc.**                             **Chicago Mercantile Exchange Inc.**

By: _____    By:_____
       Signature                                          Signature

_____        _____
     Name Typed or Printed                    Name Typed or Printed
As Its: _____                         As its: _____

875 Third Avenue, New York, NY 10022-7218
Date: Telephone: (212) 326-5142          Date:  Telefax: (212) 326-2725

# Svenska Handelsbanken

### New York Branch

## AMENDMENT TO STATED AMOUNT OF IRREVOCABLE STANDBY LETTER OF CREDIT NO. S11037
### (Pass-Through)

| | |
|---|---|
| **New Amount:** | **USD25,000,000.00** |
| **Amendment Date:** | **April 8, 2011** |
| Issuance Date: | March 24, 2011 |
| Current Expiration Date: | March 30, 2012 |
| Applicant: | ConocoPhillips<br>600 N. Dairy Ashford Road<br>Houston, Texas 77079 |
| To Joint Beneficiaries: | MF Global Inc.<br>717 Fifth Avenue – 9th Floor<br>New York, New York 10022 |
| | Chicago Mercantile Exchange Inc.<br>20 South Wacker Drive<br>Chicago, Illinois 60606<br>Attn: Clearing House |
| Account Type: | Customer Segregated |

### AMENDMENT NO. 1

Please take notice that our Irrevocable Standby Letter of Credit (Pass-Through) No.
**S11037** issued March 24, 2011 (the "Letter of Credit") is hereby amended as follows:

**The stated amount is decreased from USD50,000,000.00 by
USD25,000,000.00 to a new stated amount of (Twenty Five Million
United States Dollars and No Cents) USD25,000,000.00.**

This amendment is effective when, and only when, accepted by both of you as provided in
the Letter of Credit unless the only effect of this amendment is to increase the stated
amount of the Letter of Credit, in which case it is effective upon receipt by both of you
following our transmission of it to both of you via Approved Means (as defined in the Letter
of Credit).

Very truly yours,
SVENSKA HANDELSBANKEN, NEW YORK BRANCH

By: _____    By: _____
    Authorized Signature             Authorized Signature

    _____        _____
    Name Typed or Printed            Name Typed or Printed
    As its: _____          as Its: _____
              Title                            Title

ACCEPTED:                          ACCEPTED:
**MF Global Inc.**                 **Chicago Mercantile Exchange Inc.**

By: _____      By: _____
    Signature                          Signature

    _____          _____
    Name Typed or Printed              Name Typed or Printed
As Its: _____            As Its: _____
Date: Telephone: (212) 326-5142    Date: Telefax: (212) 326-2725

875 Third Avenue, New York, NY 10022-7218

<u>UCG Uniform Letter of Credit Terms – (Pass-Through)</u>

1. (a) We, the Issuing Bank, hereby establish, effective immediately, in favor of you, the Joint Beneficiaries (each of you individually a "Beneficiary"), our Irrevocable Standby Letter of Credit numbered as set forth on the Cover Page above ("Letter of Credit"), which is available for payment to one of you at sight upon presentation by one of you of a demand for payment as follows:

(i) hand delivery of a demand for payment signed by the Beneficiary presenting the Demand and containing the text of Exhibit A attached hereto at our office identified on the Cover Page as the primary office to which a demand is to be made ("Primary Office") or, if such Primary Office is not Open for Business because of an interruption of business as described in Article 36 of the UCP, then at one of the alternative offices (each an "Alternative Office") specified on the Cover Page (if any such office is specified) and, in addition, if such Beneficiary is a clearing member firm, presenting the originally signed Cover Page,; or

(ii) transmission by facsimile of a demand for payment signed by the Beneficiary presenting the Demand and containing the text of Exhibit A to the facsimile number specified on the Cover Page for our Primary Office or, if such Primary Office is not Open for Business because of an interruption of business as described in Article 36 of the UCP, then to the facsimile number specified on the Cover Page for an Alternative Office (if any such office is specified) and, in addition, if such Beneficiary is a clearing member firm, presenting the originally signed Cover Page; or

(iii) transmission by the Beneficiary presenting the Demand to us at our Primary Office or, if such Primary Office is not Open for Business because of an interruption of business as described in Article 36 of the UCP, then to an Alternative Office (if any such office is specified), of a S.W.I.F.T. MT 799 message containing the text of Exhibit A and, in addition, if such Beneficiary is a clearing member firm, presenting the originally signed Cover Page; or

(iv) if the Amount specified on the Cover Page is in a currency other than U.S. Dollars, then a Demand may be made, at the election of the Beneficiary making such Demand, *either* (A) in accordance with paragraph 1(a)(i), (ii) or (iii) hereof *or* (B) at the non-U.S. office specified on the Cover Page ("Non-U.S. Office") by presentation of a demand for payment signed by the Beneficiary presenting the Demand and containing the text of Exhibit A either by hand delivery or transmission by facsimile to the applicable facsimile number specified on the Cover Page for the Non-U.S. Office or by transmission to the Non-U.S. Office of a S.W.I.F.T. MT 799 message containing the text of Exhibit A; provided, however, if such Beneficiary is a clearing member firm, the originally signed Cover Page must also be presented.

Presentation of a demand for payment in accordance with paragraph 1(a)(i), (ii), (iii) or (iv) hereof is hereinafter referred to as a "Demand." In the event that a Demand is made pursuant to the terms of this Letter of Credit by a Beneficiary that is a clearing member firm, such Demand shall include presentation of the originally signed Letter of Credit Cover Page to the Issuing Bank. The Issuing Bank agrees that it will promptly notify the Beneficiaries of any change in the facsimile numbers referred to on the Cover Page via an amendment transmitted by Approved Means (as defined below) substantially in the form of

Exhibit C attached hereto. A Demand made by facsimile transmission or S.W.I.F.T. is effective in accordance with the terms of this Letter of Credit whether or not it is accompanied or followed by a copy of such Demand in any other form. As used throughout this Letter of Credit and the Exhibits hereto, references to specific forms of S.W.I.F.T. messages shall be deemed to include references to any successor forms that may be designated by S.W.I.F.T. from time to time.

(b)     Funds may be drawn under this Letter of Credit in one drawing or from time to time in one or more partial drawings on or before the Expiry Date specified on the Cover Page or in an amendment effected in accordance with paragraph 4 hereof, provided that the aggregate amount drawn shall not exceed the Amount specified on the Cover Page as it may be amended from time to time.

(c)     A Demand in conformity with paragraph 1(a)(i), (ii) or (iv) hereof may be made at any time when our office to which presentation is made is Open for Business on or prior to the Expiry Date. A Demand in conformity with paragraph 1(a)(iii) hereof may be made at any time prior to 11:59 p.m. on the Expiry Date. Notwithstanding the foregoing, if: (i) this Letter of Credit is identified on its face as replacing a letter of credit previously issued by us, or (ii) the Beneficiaries receive a letter of credit issued by us that is identified on its face as replacing this Letter of Credit, then, in either case, you may make a Demand or Demands may be made under only one of the two letters of credit and the other letter of credit shall be terminated upon the making of any such Demand that is honored by us.

2.     (a)     Except to the extent otherwise provided in paragraph 2(f) hereof with respect to payment of currency other than U.S. Dollars, if a Demand is made by you on any Business Day at a time prior to the Cutoff Time (as specified on the Cover Page) when our office to which the Demand is made is Open for Business, we will effect payment in accordance with paragraph 2(c) hereof within 60 minutes after our receipt of such Demand. If Demand occurs after the Cutoff Time on any Business Day or at a time when the office to which your Demand is made is not Open for Business, we will effect payment in accordance with paragraph 2(c) hereof as soon as possible thereafter but in any event within 60 minutes after the earliest time when such office is next Open for Business.

(b)     If on the Expiry Date our Primary Office is not Open for Business for reasons other than an interruption of business as described in Article 36 of the UCP (hereinafter defined), payment will nevertheless be made within 60 minutes following Demand if such Demand is made prior to the Cutoff Time on the third (3rd) Business Day on which such office is next Open for Business. If this Letter of Credit expires at a time when such office is not Open for Business because of an interruption of business as described in Article 36 of the UCP, we will make payment if a Demand that is otherwise in conformity with paragraph 1 is presented to us either: (i) at one of the Alternative Offices of the Issuing Bank specified on the Cover Page (including the Non-U.S. Office, if one is specified) not later than the third (3rd) Business Day on which such office is Open for Business following the Expiry Date, or (ii) at our Primary Office not later than the tenth (10th) Business Day after the date on which such office is again Open for Business.

(c)     Not later than the time specified in paragraph 2(a) or 2(f) hereof, as applicable, we will, irrevocably and without setoff, reserve or other condition, effect payment of the full amount demanded in funds which are immediately available either: (i) by crediting such funds to the account in the name of the Beneficiary making such Demand at our bank that is designated in the Demand; or  (ii) by

transmitting such funds by wire transfer to the account in the name of the Beneficiary making such Demand at another bank that is designated in the Demand.

(d)    As used in this Letter of Credit, (i) "Open for Business" shall mean, with respect to an office of the Issuing Bank, open to the public for the transaction of banking business on any day other than a Saturday, a Sunday or a banking holiday in the city where such office is located, and such office shall be deemed to continue to be "Open for Business" until such office is closed to the public for such day without regard to any earlier designated legal cut-off hour for the handling of items and balancing of books, and without regard to any reopening for limited purposes during late afternoon or evening hours on such day, and (ii) a "Business Day" shall mean, with respect to an office of the Issuing Bank, any day that such office is Open for Business.

(e)    All times specified in this Letter of Credit refer to local time in effect at the office of the Issuing Bank at which presentation of a Demand is made.

(f)    In the event that the Amount is in a currency other than U.S. Dollars and is payable at the Non-U.S. Office, the provisions of this paragraph 2(f) shall replace the provisions of paragraph 2(a) hereof. If a Demand is made either at our Primary Office or at the Non-U.S. Office, or at an Alternative Office when permitted under paragraph 2(b) hereof, on any Business Day at a time prior to the Cutoff Time when our office to which the Demand is made is Open for Business, we will, within 60 minutes after our receipt of such Demand, either effect payment or transmit to the Beneficiary presenting the Demand, by facsimile or by Approved Means, our irrevocable and unconditional commitment in the form of Exhibit B attached hereto ("Commitment") to honor your Demand, which Commitment shall specify the latest time by which payment will be effected. If your Demand occurs after the Cutoff Time on any Business Day or at a time when the office to which your Demand is made is not Open for Business, we will either effect such payment or transmit such Commitment as soon as possible thereafter but in any event within 60 minutes after the earliest time when such office is next Open for Business. In the case of any Demand made in accordance with this paragraph 2(f), we will effect payment in accordance with paragraph 2(c) hereof as soon as possible and in any event prior to the close of business at our office at which payment is to be effected on the Business Day next following the day on which such Commitment is due.

3.    We agree that:

(a)    The times set forth herein within which payment must be made by us are reasonable and sufficient to enable us: (i) to examine the text of the presented Demand so as to ascertain that on its face it complies with the terms of this credit; and (ii) thereafter to effect payment in accordance with the provisions of paragraph 2(c) hereof.

(b)    Payment hereunder shall be made regardless of:

(i)    any written or oral direction, request, notice or other communication now or hereafter received by us from the Applicant, or any other person except the presenting Beneficiary, including, without limitation, any communication regarding fraud, forgery, lack of authority or other defect not apparent on the face of the signed Demand presented ;

(ii)    the solvency, existence or condition (financial or other) of, or the pendency of any proceeding under the United States Bankruptcy Code or any other insolvency law or the Securities Investor Protection Act with respect to, the Applicant or any other person or any property from whom or out of which we may be entitled to reimbursement for such payment, or the value of any such property; and

(iii)  without limiting clause (ii) above, whether we are in receipt of or expect to receive funds or other property to use as payment to the presenting Beneficiary or as reimbursement, in whole or in part, for such payment to the presenting Beneficiary or whether the consideration for this Letter of Credit has been performed or has failed.

(c)    We will not take any action, including but not limited to any action to cause the issuance of an order of any court, relieving us of our obligations, or determining whether or not we are obligated, to make payment in accordance with the terms of this Letter of Credit.

(d)    All fees and other costs chargeable by us or otherwise associated with this Letter of Credit and any Demands or payments under this Letter of Credit or amendments thereto shall be for the account of the Applicant and shall not in any manner be a liability of any Beneficiary, and failure of the Applicant or Clearing Member to pay any amount in respect hereof shall not affect our obligation to make payment to you hereunder.

(e)    This Letter of Credit is the complete undertaking of the Issuing Bank and it is not, and shall not be deemed to be, modified by any references to any other document (except only the Exhibits attached hereto and the UCP, referenced below) or any written or oral agreement.

(f)    The Beneficiaries are not bound by, and the rights of the Beneficiaries hereunder shall not be affected in any manner by, the existence of, or your knowledge or notice (whether actual or constructive) of, any written or oral agreement of any type, whether now or hereafter existing, with respect to this Letter of Credit (or otherwise) between us and the Applicant or any other person, or by the existence of, or your knowledge or notice (whether actual or constructive) of, any other matter.

(g)    Failure of the Issuing Bank to make any payment demanded by the presenting Beneficiary in conformity herewith within the times specified herein shall constitute dishonor of such Demand and of this Letter of Credit, notwithstanding any provision of law or any custom or usage of trade that would otherwise permit us to defer payment for a longer period of time without dishonor.

(h)    We will notify either Beneficiary promptly of any drawing (whether partial or in full), and the amount thereof, by the other Beneficiary.

4.    (a)    Subject to all other provisions of this Letter of Credit, certain information on the Cover Page of this Letter of Credit may be amended by our transmission to the Beneficiaries by Approved Means of an amendment containing the text of Exhibit C attached hereto, the stated amount of this Letter of Credit may be increased or decreased by our transmission to the Beneficiaries by Approved Means of an amendment containing the text of Exhibit D attached hereto, and the Expiry Date may be amended by our transmission to the Beneficiaries by Approved Means of an amendment containing the text of Exhibit E attached hereto. Any such amendment having the sole effect of (i) providing notice of

any change in the address, facsimile number or telephone number for our Primary Office, an Alternative Office or the Non-U.S. Office specified on the Cover Page hereof, (ii) increasing the stated amount, or (iii) extending the Expiry Date of this Letter of Credit to an Expiry Date which is later than the then current Expiry Date shall be effective upon receipt by the Beneficiaries.  Any amendment that: (i) reduces the stated amount, or (ii) specifies an Expiry Date which is earlier than the then specified Expiry Date, shall be effective when and only when accepted by the Beneficiaries by (i) returning to us an executed counterpart of a manually executed amendment, (ii) delivery of a tested telex indicating acceptance of such amendment, or (iii) delivery of a S.W.I.F.T. 730 message referring to such amendment that does not indicate that such amendment has been rejected.

      (b)     Except to the extent expressly provided in paragraph 4(a) hereof, this Letter of Credit may not be amended by us without the consent of the Beneficiaries.

      (c)     For purposes of this Letter of Credit, "Approved Means" refers to any one of the means of transmission identified as an "Approved Means" on the Cover Page of this Letter of Credit.

5.     This Letter of Credit is subject to the Uniform Customs and Practice for Documentary Credits (2007 Revision), International Chamber of Commerce Publication No. 600 (the "UCP") and to the law of the jurisdiction selected on the Cover Page hereof including, if the jurisdiction selected is Illinois, the Uniform Commercial Code ("UCC") as in effect in Illinois.   In the event of any conflict between the express terms stated herein and the UCP or the UCC, the terms of this Letter of Credit shall control, and in the event of any conflict between the terms of the UCC and the UCP, the terms of the UCP shall control.

6.     If the jurisdiction selected on the Cover Page hereof is New York, we irrevocably and unconditionally submit to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York or any New York State court sitting in New York County, New York in respect of any action brought against us relating in any way to this Letter of Credit. If the jurisdiction selected on the Cover Page hereof is Illinois, we irrevocably and unconditionally submit to the non-exclusive jurisdiction of the United States District Court for the Northern District of Illinois or any court of the State of Illinois sitting in Cook County, Illinois in respect of any action brought against us relating in any way to this Letter of Credit. We irrevocably and unconditionally waive any objection to the laying of venue in the courts designated in accordance with the foregoing provisions of this paragraph. We agree not to, and irrevocably and unconditionally waive any right we might otherwise have to, bring any action or proceeding against any Beneficiary in any forum other than in one of such courts; provided, however, that in any action or proceeding that any Beneficiary brings against us in any forum, we may bring our responsive proceeding in that same forum.

**Exhibit A**

**Demand for Payment**

To: *[Name of Issuing Bank]*                    Date _____

**NOTICE TO ISSUING BANK: PAYMENT OR, IN THE CASE OF CREDITS
PAYABLE IN CURRENCY OTHER THAN USD, IRREVOCABLE COMMITMENT
TO HONOR IS DUE WITHIN 60 MINUTES OF RECEIPT OF THIS DEMAND.**

     Pursuant to your Irrevocable Standby Letter of Credit (Pass-Through) No.
_____, issued _____ (the "Letter of Credit"), established for the account of
_____, as Applicant, demand is hereby made that _____ *[specify
amount and currency]* be *[deposited in immediately available funds to account
number_____ carried in the name of _____(name of the
Beneficiary presenting the Demand) at your Bank] [transferred via wire transfer (Fedwire
in the case of USD) in immediately available funds to account number
_____ carried in the name of _____ (name of the
Beneficiary presenting the Demand at _____ ]* within 60 minutes of your
receipt of this demand or by such later time as may be permitted under paragraph 2(a) or 2(f) of
the Letter of Credit.

                    Very truly yours,

                    *[Name of Beneficiary]*

                    By:    *[Signature]*
                            *[Name Typed or Printed]*

                    As its:  *[Title]*

**Exhibit B**

**Notice of Commitment to Honor**

To: *[Name of Presenting Beneficiary]*          Date _____

Re:     **Demand for Payment Under Our Irrevocable Letter of Credit (Pass-Through)
No. _____, Issue Date _____.**

     This is notice to you that we irrevocably and unconditionally commit ourselves to honor your Demand and will effect payment of the amount demanded, without presentment of this or any other document or any further action on your part, to the account specified in the Demand no later than: __:__ local time in _____ on _____, _____.
                   (Time)               (City and Country)     ( Month and Day)   (Year)

     This document is not an "instrument" governed by Article 3 of the Uniform Commercial Code.

Very truly yours,

*[Issuing Bank]*

By:    *[Signature]*
       *[Name Typed or Printed]*

As its: *[Title]*

**Exhibit C**

**Amendment of Notice Information**

To: *[Names of Beneficiaries]*          Date: _____

Account Type: ["Proprietary" or "Customer Segregated"]
Current Expiration Date: _____

    Please take notice that certain information on the Cover Page of our Irrevocable Standby Letter of Credit (Pass-Through) No. _____, issued _____, ("Letter of Credit") is hereby amended as follows (leave blank if no change):

Issuing Bank Primary Office:                    Alternative Office 1:
Address:                                        Address:
Telephone number:                               Telephone number:
Facsimile number:                               Facsimile number:
S.W.I.F.T. Bank Identifier No.                  S.W.I.F.T. Bank Identifier No.

Alternative Office 2:
Address:
Telephone number:
Facsimile number:
S.W.I.F.T. Bank Identifier No.

Non-U.S. Office for Currency other than USD:
Address:
Telephone number:
Facsimile number:
S.W.I.F.T. Bank Identifier No.

    This amendment is effective upon receipt by both of you following our transmission of it to both of you via Approved Means (as defined in the Letter of Credit).

Very truly yours,

*[Issuing Bank]*

By:    *[Signature]*
       *[Name Typed or Printed]*

As its:  *[Title]*

**Exhibit D**

**Amendment to Stated Amount of Irrevocable Standby Letter of Credit**
**(Pass-Through)**

To: *[Names of Beneficiaries]*          Date: _____

        Account Type: ["Proprietary" or "Customer Segregated"]
        Current Expiration Date: _____

      Please take notice that our Irrevocable Standby Letter of Credit (Pass-Through) No. _____, issued _____ ("Letter of Credit") is hereby amended as follows:

      The stated amount is increased/decreased (strike one) by _____ to a new stated amount of _____ (_____).

      This amendment is effective when, and only when, accepted by both of you as provided in the Letter of Credit unless the only effect of this amendment is to increase the stated amount of the Letter of Credit, in which case it is effective upon receipt by both of you following our transmission of it to both of you via Approved Means (as defined in the Letter of Credit).

                 Very truly yours,

                 *[Issuing Bank]*

                 By:    *[Signature]*
                         *[Name Typed or Printed]*

                 As its:  *[Title]*

Accepted:                    Accepted:

*[Name of First Beneficiary]*       *[Name of Second Beneficiary]*

By:    *[Signature]*             By:    *[Signature]*
        *[Name Typed or Printed]*            *[Name Typed or Printed]*

As Its: *[Title]*                As Its: *[Title]*

Date:                        Date:

**Exhibit E**

**Amendment to Expiry Date of Irrevocable Standby Letter of Credit
(Pass-Through)**

To : *[Names of Beneficiaries*                    Date: _____

        Account Type:  ["Proprietary" or "Customer Segregated"]
        Current Expiration Date: _____

        Please take note that our Irrevocable Standby Letter of Credit (Pass-Through) No. _____, issued _____ (the "Letter of Credit"), is hereby amended to amend the Expiry Date as follows:

        The new Expiry Date is: _____ .

        This amendment is effective when, and only when, accepted by both of you as provided in the Letter of Credit unless the only effect of this amendment is to extend the Letter of Credit by specifying an Expiry Date which is later than the current Expiry Date, in which case it is effective upon receipt by both of you following our transmission of it to both of you via Approved Means (as defined in the Letter of Credit).

        Very truly yours,

        *[Issuing Bank]*

        By:    *[Signature]*
                *[Name Typed or Printed]*

        As its: *[Title]*

Accepted:                              Accepted:

*[Name of First Beneficiary]*          *[Name of Second Beneficiary]*

By:   *[Signature]*                By:   *[Signature]*
      *[Name Typed or Printed]*                *[Name Typed or Printed]*

As its: *[Title]*                     As its: *[Title]*

Date:                                 Date:

# EXHIBIT F

## IRREVOCABLE STANDBY LETTER OF CREDIT
## NO. 777-52-0101408-L



**Standard Chartered**

<u>Irrevocable Standby Letter of Credit</u>
(Pass-Through)

| Applicant: | Issuing Bank: |
|---|---|
| CONOCOPHILLIPS<br>600N. Dairy Ashford Suite ML3082<br>Houston, TX  77079<br>Telephone number: 281-293-4525<br>Contact Person: MICHELLE BLACKMON<br><br>Account Type:    Customer Segregated | Standard Chartered Bank<br>One Madison Avenue<br>New York, NY 10010<br><br><br>Letter of Credit Number:<br>777-52-0101408-L<br><br>Issue Date:<br>March 30, 2011 |
|  | Governing Law:<br><br>[X]  State of Illinois |
| Beneficiary:<br>Joint Beneficiaries: (1) Name and address of Clearing<br>Member that is a Joint Beneficiary.<br>MF GLOBAL INC.<br>717 Fifth Avenue - 9th Floor<br>New York, New York 10022<br>Attn: Joe Cranston/David Schiller<br><br>Telephone number: ( 312 ) 261-7125<br>Facsimile number: ( 312 ) 902-6058<br><br>(2) Chicago Mercantile Exchange, Inc.<br>30 South Wacker Drive<br>Chicago, IL  60606<br>Attention:  Clearing House / JOE CALIENDO<br>Telephone number: ( 312 ) 930-3193<br>Facsimile number: ( 312 ) 930-3187<br>S.W.I.F.T. Bank Identifier Code:  XCMEUS4C | This Letter of Credit is intended to replace<br>Our Letter of Credit<br><br>No.  777-52-0076132-L<br><br>Issued on:  MAY 29, 2009 |
| Amount:<br>$ 70,000,000.00<br><br><br>Seventy Million and 00/100 U.S. Dollars | Expiry Date:<br>March  30, 2012 |



**Standard**
**Chartered**

### Irrevocable Standby Letter of Credit

| Issuing Bank Primary Office: | Alternative Office 1: |
|---|---|
| One Madison Avenue 3rd Floor | 2 Gateway Center 13th floor |
| New York, NY  10010 | Newark,  New Jersey 07102 |
| Telephone number: (212) 667- 0346 | |
| Facsimile number:  (212) 667- 0593 - 0172 | Telephone number: (201) 706-5325 |
| S.W.I.F.T. Bank Identifier Code: SCBLUS33 | Facsimile number:  (973) 474-5929 |
| | S.W.I.F.T. Bank Identifier Code: |
| Alternative Office 2: | Non-U.S. Office for Currency other than USD: |
| Telephone number: | Telephone number: |
| Facsimile number: | Facsimile number: |
| S.W.I.F.T. Bank Identifier Code: | S.W.I.F.T. Bank Identifier Code: |
| As used in this Letter of Credit, "Approved Means" Refers to any one of the following as indicated:<br>(i) [X] hand delivery of a manually signed copy Of a document.<br>(ii) [X ] S.W.I.F.T. MT707 message<br>(iii) [ ] tested telex | As used in this Letter of Credit, the term "Cutoff Time" shall mean:<br><br>[X] 3:00 p.m. or [  ]  4:00 p.m. |

The terms of this letter of credit shall be the UCG Uniform Letter of Credit (Pass-Through) Terms dated 12/1/99, including paragraphs 1 through 6 thereof and Exhibits A through E thereto, which are incorporated herein by reference.

Very truly yours,

Standard Chartered Bank

**PERCY DOMONDON**
**ASSISTANT VICE PRESIDENT**

Standard Chartered Bank

**Lily Levinzon**
**Director**



**Standard Chartered**

<u>UCG Uniform Letter of Credit Terms – (Pass-Through)</u>

1.      (a)      We, the Issuing Bank, hereby establish, effective immediately, in favor of you, the Joint Beneficiaries (each of you individually a "Beneficiary"), our Irrevocable Standby Letter of Credit numbered as set forth on the Cover Page above ("Letter of Credit"), which is available for payment to one of you at sight upon presentation by one of you of a demand for payment as follows:

(i)      hand delivery of a demand for payment signed by the Beneficiary presenting the Demand and containing the text of Exhibit A attached hereto at our office identified on the Cover Page as the primary office to which a demand is to be made ("Primary Office") or, if such Primary Office is not Open for Business because of an interruption of business as described in Article 36 of the UCP, then at one of the alternative offices (each an "Alternative Office") specified on the Cover Page (if any such office is specified) and, in addition, if such Beneficiary is a clearing member firm, presenting the originally signed Cover Page,; or

(ii)      transmission by facsimile of a demand for payment signed by the Beneficiary presenting the Demand and containing the text of Exhibit A to the facsimile number specified on the Cover Page for our Primary Office or, if such Primary Office is not Open for Business because of an interruption of business as described in Article 36 of the UCP, then to the facsimile number specified on the Cover Page for an Alternative Office (if any such office is specified) and, in addition, if such Beneficiary is a clearing member firm, presenting the originally signed Cover Page; or

(iii)      transmission by the Beneficiary presenting the Demand to us at our Primary Office or, if such Primary Office is not Open for Business because of an interruption of business as described in Article 36 of the UCP, then to an Alternative Office (if any such office is specified), of a S.W.I.F.T. MT 799 message containing the text of Exhibit A and, in addition, if such Beneficiary is a clearing member firm, presenting the originally signed Cover Page; or

(iv)      if the Amount specified on the Cover Page is in a currency other than U.S. Dollars, then a Demand may be made, at the election of the Beneficiary making such Demand, *either* (A) in accordance with paragraph 1(a)(i), (ii) or (iii) hereof *or* (B) at the non-U.S. office specified on the Cover Page ("Non-U.S. Office") by presentation of a demand for payment signed by the Beneficiary presenting the Demand and containing the text of Exhibit A either by hand delivery or transmission by facsimile to the applicable facsimile number specified on the Cover Page for the Non-U.S. Office or by transmission to the Non-U.S. Office of a S.W.I.F.T. MT 799 message containing the text of Exhibit A; provided, however, if such Beneficiary is a clearing member firm, the originally signed Cover Page must also be presented.

Presentation of a demand for payment in accordance with paragraph 1(a)(i), (ii), (iii) or (iv) hereof is hereinafter referred to as a "Demand." In the event that a Demand is made pursuant to the terms of this Letter of Credit by a Beneficiary that is a clearing member firm, such Demand shall include presentation of the originally signed Letter of Credit Cover Page to the Issuing Bank. The Issuing Bank agrees that it will promptly notify the Beneficiaries of any change in the facsimile numbers referred to on the Cover Page via an amendment transmitted by Approved Means (as defined below) substantially in the form of

Standard Chartered Bank
One Madison Avenue
New York, N.Y. 10010-3603                    Tel  (212) 667-0700

Incorporated in England with limited liability by Royal Charter 1853
The Principal Office of the Company is situated in England at 1 Aldermanbury Square London EC2V Reference Number ZC18



Exhibit C attached hereto.  A Demand made by facsimile transmission or S.W.I.F.T. is effective in accordance with the terms of this Letter of Credit whether or not it is accompanied or followed by a copy of such Demand in any other form.  As used throughout this Letter of Credit and the Exhibits hereto, references to specific forms of S.W.I.F.T. messages shall be deemed to include references to any successor forms that may be designated by S.W.I.F.T. from time to time.

(b)    Funds may be drawn under this Letter of Credit in one drawing or from time to time in one or more partial drawings on or before the Expiry Date specified on the Cover Page or in an amendment effected in accordance with paragraph 4 hereof, provided that the aggregate amount drawn shall not exceed the Amount specified on the Cover Page as it may be amended from time to time.

(c)    A Demand in conformity with paragraph 1(a)(i), (ii) or (iv) hereof may be made at any time when our office to which presentation is made is Open for Business on or prior to the Expiry Date.  A Demand in conformity with paragraph 1(a)(iii) hereof may be made at any time prior to 11:59 p.m. on the Expiry Date.  Notwithstanding the foregoing, if: (i) this Letter of Credit is identified on its face as replacing a letter of credit previously issued by us, or (ii) the Beneficiaries receive a letter of credit issued by us that is identified on its face as replacing this Letter of Credit, then, in either case, you may make a Demand or Demands may be made under only one of the two letters of credit and the other letter of credit shall be terminated upon the making of any such Demand that is honored by us.

2.    (a)    Except to the extent otherwise provided in paragraph 2(f) hereof with respect to payment of currency other than U.S. Dollars, if a Demand is made by you on any Business Day at a time prior to the Cutoff Time (as specified on the Cover Page) when our office to which the Demand is made is Open for Business, we will effect payment in accordance with paragraph 2(c) hereof within 60 minutes after our receipt of such Demand.  If Demand occurs after the Cutoff Time on any Business Day or at a time when the office to which your Demand is made is not Open for Business, we will effect payment in accordance with paragraph 2(c) hereof as soon as possible thereafter but in any event within 60 minutes after the earliest time when such office is next Open for Business.

(b)    If on the Expiry Date our Primary Office is not Open for Business for reasons other than an interruption of business as described in Article 36 of the UCP (hereinafter defined), payment will nevertheless be made within 60 minutes following Demand if such Demand is made prior to the Cutoff Time on the third (3rd) Business Day on which such office is next Open for Business.  If this Letter of Credit expires at a time when such office is not Open for Business because of an interruption of business as described in Article 36 of the UCP, we will make payment if a Demand that is otherwise in conformity with paragraph 1 is presented to us either: (i) at one of the Alternative Offices of the Issuing Bank specified on the Cover Page (including the Non-U.S. Office, if one is specified) not later than the third (3rd) Business Day on which such office is Open for Business following the Expiry Date, or (ii) at our Primary Office not later than the tenth (10th) Business Day after the date on which such office is again Open for Business.

(c)    Not later than the time specified in paragraph 2(a) or 2(f) hereof, as applicable, we will, irrevocably and without setoff, reserve or other condition, effect payment of the full amount demanded in funds which are immediately available either: (i) by crediting such funds to the account in the name of the Beneficiary making such Demand at our bank that is designated in the Demand; or (ii) by

Standard Chartered Bank
One Madison Avenue
New York, N.Y. 10010-3603                    Tel    (212) 667-0700

Incorporated in England with limited liability by Royal Charter 1853
The Principal Office of the Company is situated in England at 1 Aldermanbury Square London EC2V Reference Number ZC18



**Standard Chartered**

transmitting such funds by wire transfer to the account in the name of the Beneficiary making such Demand at another bank that is designated in the Demand.

(d)     As used in this Letter of Credit, (i) "Open for Business" shall mean, with respect to an office of the Issuing Bank, open to the public for the transaction of banking business on any day other than a Saturday, a Sunday or a banking holiday in the city where such office is located, and such office shall be deemed to continue to be "Open for Business" until such office is closed to the public for such day without regard to any earlier designated legal cut-off hour for the handling of items and balancing of books, and without regard to any reopening for limited purposes during late afternoon or evening hours on such day, and (ii) a "Business Day" shall mean, with respect to an office of the Issuing Bank, any day that such office is Open for Business.

(e)     All times specified in this Letter of Credit refer to local time in effect at the office of the Issuing Bank at which presentation of a Demand is made.

(f)     In the event that the Amount is in a currency other than U.S. Dollars and is payable at the Non-U.S. Office, the provisions of this paragraph 2(f) shall replace the provisions of paragraph 2(a) hereof. If a Demand is made either at our Primary Office or at the Non-U.S. Office, or at an Alternative Office when permitted under paragraph 2(b) hereof, on any Business Day at a time prior to the Cutoff Time when our office to which the Demand is made is Open for Business, we will, within 60 minutes after our receipt of such Demand, either effect payment or transmit to the Beneficiary presenting the Demand, by facsimile or by Approved Means, our irrevocable and unconditional commitment in the form of Exhibit B attached hereto ("Commitment") to honor your Demand, which Commitment shall specify the latest time by which payment will be effected. If your Demand occurs after the Cutoff Time on any Business Day or at a time when the office to which your Demand is made is not Open for Business, we will either effect such payment or transmit such Commitment as soon as possible thereafter but in any event within 60 minutes after the earliest time when such office is next Open for Business. In the case of any Demand made in accordance with this paragraph 2(f), we will effect payment in accordance with paragraph 2(c) hereof as soon as possible and in any event prior to the close of business at our office at which payment is to be effected on the Business Day next following the day on which such Commitment is due.

3.     We agree that:

(a)     The times set forth herein within which payment must be made by us are reasonable and sufficient to enable us: (i) to examine the text of the presented Demand so as to ascertain that on its face it complies with the terms of this credit; and (ii) thereafter to effect payment in accordance with the provisions of paragraph 2(c) hereof.

(b)     Payment hereunder shall be made regardless of:

(i)     any written or oral direction, request, notice or other communication now or hereafter received by us from the Applicant, or any other person except the presenting Beneficiary, including, without limitation, any communication regarding fraud, forgery, lack of authority or other defect not apparent on the face of the signed Demand presented ;

Standard Chartered Bank
One Madison Avenue
New York, N.Y. 10010-3603                    Tel  (212) 667-0700

Incorporated in England with limited liability by Royal Charter 1853
The Principal Office of the Company is situated in England at 1 Aldermanbury Square London EC2V Reference Number ZC18


Standard
Chartered

(ii)       the solvency, existence or condition (financial or other) of, or the pendency of any proceeding under the United States Bankruptcy Code or any other insolvency law or the Securities Investor Protection Act with respect to, the Applicant or any other person or any property from whom or out of which we may be entitled to reimbursement for such payment, or the value of any such property; and

(iii)  without limiting clause (ii) above, whether we are in receipt of or expect to receive funds or other property to use as payment to the presenting Beneficiary or as reimbursement, in whole or in part, for such payment to the presenting Beneficiary or whether the consideration for this Letter of Credit has been performed or has failed.

(c)       We will not take any action, including but not limited to any action to cause the issuance of an order of any court, relieving us of our obligations, or determining whether or not we are obligated, to make payment in accordance with the terms of this Letter of Credit.

(d)       All fees and other costs chargeable by us or otherwise associated with this Letter of Credit and any Demands or payments under this Letter of Credit or amendments thereto shall be for the account of the Applicant and shall not in any manner be a liability of any Beneficiary, and failure of the Applicant or Clearing Member to pay any amount in respect hereof shall not affect our obligation to make payment to you hereunder.

(e)       This Letter of Credit is the complete undertaking of the Issuing Bank and it is not, and shall not be deemed to be, modified by any references to any other document (except only the Exhibits attached hereto and the UCP, referenced below) or any written or oral agreement.

(f)       The Beneficiaries are not bound by, and the rights of the Beneficiaries hereunder shall not be affected in any manner by, the existence of, or your knowledge or notice (whether actual or constructive) of, any written or oral agreement of any type, whether now or hereafter existing, with respect to this Letter of Credit (or otherwise) between us and the Applicant or any other person, or by the existence of, or your knowledge or notice (whether actual or constructive) of, any other matter.

(g)       Failure of the Issuing Bank to make any payment demanded by the presenting Beneficiary in conformity herewith within the times specified herein shall constitute dishonor of such Demand and of this Letter of Credit, notwithstanding any provision of law or any custom or usage of trade that would otherwise permit us to defer payment for a longer period of time without dishonor.

(h)       We will notify either Beneficiary promptly of any drawing (whether partial or in full), and the amount thereof, by the other Beneficiary.

4.       (a)       Subject to all other provisions of this Letter of Credit, certain information on the Cover Page of this Letter of Credit may be amended by our transmission to the Beneficiaries by Approved Means of an amendment containing the text of Exhibit C attached hereto, the stated amount of this Letter of Credit may be increased or decreased by our transmission to the Beneficiaries by Approved Means of an amendment containing the text of Exhibit D attached hereto, and the Expiry Date may be amended by our transmission to the Beneficiaries by Approved Means of an amendment containing the text of Exhibit E attached hereto.  Any such amendment having the sole effect of (i) providing notice of

Standard Chartered Bank
One Madison Avenue
New York, N.Y. 10010-3603                    Tel   (212) 667-0700

Incorporated in England with limited liability by Royal Charter 1853
The Principal Office of the Company is situated in England at 1 Aldermanbury Square London EC2V Reference Number ZC18



Standard
Chartered

any change in the address, facsimile number or telephone number for our Primary Office, an Alternative Office or the Non-U.S. Office specified on the Cover Page hereof, (ii) increasing the stated amount, or (iii) extending the Expiry Date of this Letter of Credit to an Expiry Date which is later than the then current Expiry Date shall be effective upon receipt by the Beneficiaries. Any amendment that: (i) reduces the stated amount, or (ii) specifies an Expiry Date which is earlier than the then specified Expiry Date, shall be effective when and only when accepted by the Beneficiaries by (i) returning to us an executed counterpart of a manually executed amendment, (ii) delivery of a tested telex indicating acceptance of such amendment, or (iii) delivery of a S.W.I.F.T. 730 message referring to such amendment that does not indicate that such amendment has been rejected.

(b)    Except to the extent expressly provided in paragraph 4(a) hereof, this Letter of Credit may not be amended by us without the consent of the Beneficiaries.

(c)    For purposes of this Letter of Credit, "Approved Means" refers to any one of the means of transmission identified as an "Approved Means" on the Cover Page of this Letter of Credit.

5.    This Letter of Credit is subject to the Uniform Customs and Practice for Documentary Credits (2007 Revision), International Chamber of Commerce Publication No. 600 (the "UCP") and to the law of the jurisdiction selected on the Cover Page hereof including , if the jurisdiction selected is Illinois, the Uniform Commercial Code ("UCC") as in effect in Illinois.  In the event of any conflict between the express terms stated herein and the UCP or the UCC, the terms of this Letter of Credit shall control, and in the event of any conflict between the terms of the UCC and the UCP, the terms of the UCP shall control.

6.    If the jurisdiction selected on the Cover Page hereof is New York, we irrevocably and unconditionally submit to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York or any New York State court sitting in New York County, New York in respect of any action brought against us relating in any way to this Letter of Credit. If the jurisdiction selected on the Cover Page hereof is Illinois, we irrevocably and unconditionally submit to the non-exclusive jurisdiction of the United States District Court for the Northern District of Illinois or any court of the State of Illinois sitting in Cook County, Illinois in respect of any action brought against us relating in any way to this Letter of Credit. We irrevocably and unconditionally waive any objection to the laying of venue in the courts designated in accordance with the foregoing provisions of this paragraph. We agree not to, and irrevocably and unconditionally waive any right we might otherwise have to, bring any action or proceeding against any Beneficiary in any forum other than in one of such courts; provided, however, that in any action or proceeding that any Beneficiary brings against us in any forum, we may bring our responsive proceeding in that same forum.

Standard Chartered Bank
One Madison Avenue
New York, N.Y. 10010-3603                              Tel  (212) 667-0700

Incorporated in England with limited liability by Royal Charter 1853
The Principal Office of the Company is situated in England at 1 Aldermanbury Square London EC2V Reference Number ZC18


Standard
Chartered

**Exhibit A**

**Demand for Payment**

To: *[Name of Issuing Bank]*                    Date _____

**NOTICE TO ISSUING BANK: PAYMENT OR, IN THE CASE OF CREDITS
PAYABLE IN CURRENCY OTHER THAN USD, IRREVOCABLE COMMITMENT
TO HONOR IS DUE WITHIN 60 MINUTES OF RECEIPT OF THIS DEMAND.**

      Pursuant to your Irrevocable Standby Letter of Credit (Pass-Through) No. _____, issued _____ (the "Letter of Credit"), established for the account of _____, as Applicant, demand is hereby made that _____ *[specify amount and currency]* be *[deposited in immediately available funds to account number _____ carried in the name of _____(name of the Beneficiary presenting the Demand) at your Bank] [transferred via wire transfer (Fedwire in the case of USD) in immediately available funds to account number _____carried in the name of _____ (name of the Beneficiary presenting the Demand at_____ ]* within 60 minutes of your receipt of this demand or by such later time as may be permitted under paragraph 2(a) or 2(f) of the Letter of Credit.

                              Very truly yours,

                              *[Name of Beneficiary]*

                        By:    *[Signature]*
                                  *[Name Typed or Printed]*

                        As its: *[Title]*

Standard Chartered Bank
One Madison Avenue
New York, N.Y. 10010-3603                    Tel  (212) 667-0700

Incorporated in England with limited liability by Royal Charter 1853
The Principal Office of the Company is situated in England at 1 Aldermanbury Square London EC2V Reference Number ZC18



**Exhibit B**

**Notice of Commitment to Honor**

To: *[Name of Presenting Beneficiary]*          Date _____

Re:    **Demand for Payment Under Our Irrevocable Letter of Credit (Pass-Through)**
       **No. _____, Issue Date _____.**

       This is notice to you that we irrevocably and unconditionally commit ourselves to honor your Demand and will effect payment of the amount demanded, without presentment of this or any other document or any further action on your part, to the account specified in the Demand no later than: __:__ local time in _____ on _____, _____.
                 (Time)             (City and Country)     (Month and Day)   (Year)

       This document is not an "instrument" governed by Article 3 of the Uniform Commercial Code.

                              Very truly yours,

                              *[Issuing Bank]*

                              By:    *[Signature]*
                                      *[Name Typed or Printed]*

                              As its: *[Title]*

Standard Chartered Bank
One Madison Avenue
New York, N.Y. 10010-3603                    Tel  (212) 667-0700

Incorporated in England with limited liability by Royal Charter 1853
The Principal Office of the Company is situated in England at 1 Aldermanbury Square London EC2V Reference Number ZC18

**Standard Chartered**

### Exhibit C

### Amendment of Notice Information

To: *[Names of Beneficiaries]*                Date: _____

Account Type:  ["Proprietary" or "Customer Segregated"]
Current Expiration Date: _____

Please take notice that certain information on the Cover Page of our Irrevocable Standby Letter of Credit (Pass-Through) No. _____, issued _____, ("Letter of Credit") is hereby amended as follows (leave blank if no change):

Issuing Bank Primary Office:
Address:
Telephone number:
Facsimile number:
S.W.I.F.T. Bank Identifier No.

Alternative Office 1:
Address:
Telephone number:
Facsimile number:
S.W.I.F.T. Bank Identifier No.

Alternative Office 2:
Address:
Telephone number:
Facsimile number:
S.W.I.F.T. Bank Identifier No.

Non-U.S. Office for Currency other than USD:
Address:
Telephone number:
Facsimile number:
S.W.I.F.T. Bank Identifier No.

This amendment is effective upon receipt by both of you following our transmission of it to both of you via Approved Means (as defined in the Letter of Credit).

Very truly yours,

*[Issuing Bank]*

By:     *[Signature]*
        *[Name Typed or Printed]*

As its: *[Title]*

Standard Chartered Bank
One Madison Avenue
New York, N.Y. 10010-3603                    Tel  (212) 667-0700

Incorporated in England with limited liability by Royal Charter 1853
The Principal Office of the Company is situated in England at 1 Aldermanbury Square London EC2V Reference Number ZC18


**Standard
Chartered**

**Exhibit D**

**Amendment to Stated Amount of Irrevocable Standby Letter of Credit
(Pass-Through)**

To: *[Names of Beneficiaries]*                    Date: _____

Account Type: ["Proprietary" or "Customer Segregated"]
Current Expiration Date: _____

Please take notice that our Irrevocable Standby Letter of Credit (Pass-Through) No. _____, issued _____ ("Letter of Credit") is hereby amended as follows:

The stated amount is increased/decreased (strike one) by _____ to a new stated amount of_____ (_____).

This amendment is effective when, and only when, accepted by both of you as provided in the Letter of Credit unless the only effect of this amendment is to increase the stated amount of the Letter of Credit, in which case it is effective upon receipt by both of you following our transmission of it to both of you via Approved Means (as defined in the Letter of Credit).

Very truly yours,

*[Issuing Bank]*

By:     *[Signature]*
        *[Name Typed or Printed]*

As its: *[Title]*


Accepted:                           Accepted:

*[Name of First Beneficiary]*        *[Name of Second Beneficiary]*

By:    *[Signature]*                 By:    *[Signature]*
       *[Name Typed or Printed]*            *[Name Typed or Printed]*

As Its: *[Title]*                    As Its: *[Title]*

Date:                                Date:

Standard Chartered Bank
One Madison Avenue
New York, N.Y. 10010-3603                    Tel  (212) 667-0700

Incorporated in England with limited liability by Royal Charter 1853
The Principal Office of the Company is situated in England at 1 Aldermanbury Square London EC2V Reference Number ZC18



**Exhibit E**

**Amendment to Expiry Date of Irrevocable Standby Letter of Credit
(Pass-Through)**

To : *[Names of Beneficiaries*          Date: _____

Account Type: ["Proprietary" or "Customer Segregated"]
Current Expiration Date: _____

    Please take note that our Irrevocable Standby Letter of Credit (Pass-Through) No. _____, issued _____ (the "Letter of Credit"), is hereby amended to amend the Expiry Date as follows:

The new Expiry Date is: _____.

    This amendment is effective when, and only when, accepted by both of you as provided in the Letter of Credit unless the only effect of this amendment is to extend the Letter of Credit by specifying an Expiry Date which is later than the current Expiry Date, in which case it is effective upon receipt by both of you following our transmission of it to both of you via Approved Means (as defined in the Letter of Credit).

Very truly yours,

*[Issuing Bank]*

By:    *[Signature]*
        *[Name Typed or Printed]*

As its: *[Title]*

Accepted:                          Accepted:

*[Name of First Beneficiary]*        *[Name of Second Beneficiary]*

By:  *[Signature]*             By:  *[Signature]*
     *[Name Typed or Printed]*             *[Name Typed or Printed]*

As its: *[Title]*                   As its: *[Title]*

Date:                               Date:

Standard Chartered Bank
One Madison Avenue
New York, N.Y. 10010-3603                    Tel  (212) 667-0700

Incorporated in England with limited liability by Royal Charter 1853
The Principal Office of the Company is situated in England at 1 Aldermanbury Square London EC2V Reference Number ZC18



1815.UCGlc.passthrough(08/07)

Standard Chartered Bank
One Madison Avenue
New York, N.Y. 10010-3603                    Tel   (212) 667-0700

Incorporated in England with limited liability by Royal Charter 1853
The Principal Office of the Company is situated in England at 1 Aldermanbury Square London EC2V Reference Number ZC18