**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>MF GLOBAL HOLDINGS LTD., *et al.,*<br><br>Debtors. | Case No. 11-15059 (MG)<br>Case No. 11-15058 (MG)<br>(Jointly Administered)<br><br>Case No. 11-02790 (MG) SIPA |
| Todd Thielmann, Pierre-Yvan Desparois, Natalia Sivova, Sandy Glover-Bowles and Arton Sina, Individually, and on behalf of All Other Similarly Situated Former Employees,<br><br>Plaintiffs,<br>versus<br><br>MF Global Holdings Ltd., MF Global Holdings USA, Inc., MF Global Finance USA, Inc., and MF Global Inc., *et al.,*<br><br>Defendants. | Adv. Pro. No.  11-02880 (MG) |

**MEMORANDUM OPINION AND ORDER (I) GRANTING THE SIPA TRUSTEE'S MOTION TO DISMISS WITH PREJUDICE, AND (II) GRANTING THE CHAPTER 11 TRUSTEE'S MOTION TO DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**

*A P P E A R A N C E S:*

OUTTEN & GOLDEN LLP
*Interim Class Counsel for the Putative Class*
3 Park Avenue, 29th Floor
New York, New York 10016
By:    Jack A. Raisner, Esq.

PEPPER HAMILTON LLP
*Counsel for the Chapter 11 Trustee*
The New York Times Building
620 Eighth Avenue, 37th Floor
New York, New York 10018-1405
By:    Robert S. Hertzberg, Esq.

HUGHES HUBBARD & REED LLP
*Counsel for the SIPA Trustee*
One Battery Park Plaza
New York, New York 10004
By:    Ned H. Bassen, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

Pending before the Court are the motions of James W. Giddens (the "SIPA Trustee") as trustee

for the liquidation of MF Global Inc. ("MFGI"), and Louis J. Freeh, as Chapter 11 Trustee (the "Chapter

11 Trustee," and together with the SIPA Trustee, the "Trustees" or "Defendants") for MF Global

Holdings Ltd. ("MFGH"), MF Global Finance USA, Inc. ("MFGF"), and MF Global Holdings USA,

Inc. ("Holdings USA," and together with MFGH and MFGF, "Debtors"), to dismiss the amended class

action complaint (the "Amended Complaint," ECF Doc. # 4) filed by Todd Thielmann, Pierre-Yvan

Desparois, Natalia Sivova, Sandy Glover-Bowles and Arton Sina, individually and on behalf of all other

similarly situated former employees (the "Plaintiffs"). The Amended Complaint alleges claims against

defendants under the federal Worker Adjustment and Retraining Notification Act ("WARN Act"),

29 U.S.C. § 2101, *et seq.*, and the New York Worker Adjustment and Retraining Notification Act ("NY

WARN Act"), N.Y. LAB. LAW § 860, *et seq.*, seeking damages for all former employees of the

Defendants whose employment was terminated with less advance notice than is required under these

statutes.

The SIPA Trustee and the Chapter 11 Trustee submitted separate memoranda of law in support

of their motions. (the "SIPA Trustee Motion," ECF Doc. # 4; the "Chapter 11 Trustee Motion," ECF

Doc. # 44.) Plaintiffs objected to the motions (the "Plaintiffs' SIPA Objection," ECF Doc. # 47; the

"Plaintiffs' Chapter 11 Objection," ECF Doc. # 48), and the Trustees submitted reply briefs (the "SIPA

Trustee Reply," ECF Doc. # 50; the "Chapter 11 Trustee Reply," ECF Doc. # 52). The Court heard

argument on the motions on September 12, 2012, but requested counsel to provide the Court with

2

additional information identifying which of the Defendants employed each of the Plaintiffs.  Further

information was submitted by letters to the Court on September 14, 2012 (ECF Doc. ## 59, 60), at

which point the Court took the motions under submission.

As explained below, the most significant issue in resolving the motions is whether each

defendant is an "employer" within the meaning of the two WARN Acts, and therefore subject to the

Acts' advance notice requirements.  The U.S. Department of Labor ("DOL") and federal courts

addressing WARN Act claims have recognized a "liquidating fiduciary" principle, excepting from the

protection of the WARN Act employee layoffs by liquidating fiduciaries.  The Defendants argue that

MFGI and the Debtors are being liquidated and, therefore, the WARN Act claims should be dismissed

as a matter of law.  Plaintiffs dispute this conclusion, arguing, first, that the Court should not recognize

the "liquidating fiduciary" principle at all, and, second, even if the principle is recognized, it cannot be

applied on a motion to dismiss.

The Court concludes, at least at this stage of the case, that the differences between the SIPA and

chapter 11 cases lead to different results.  The Court finds that the "liquidating fiduciary" principle

applies as a matter of law to the SIPA Trustee's motion to dismiss the Amended Complaint against

MFGI—therefore, the SIPA Trustee's motion to dismiss is granted with prejudice.  With respect to the

Chapter 11 Trustee's motion to dismiss, however, the Court concludes that while the Amended

Complaint is deficient in some respects, it cannot be dismissed with prejudice based on the "liquidating

fiduciary" principle—therefore, the Chapter 11 Trustee's motion to dismiss is granted without prejudice

and with leave to amend.[1]

---

[1]       The Amended Complaint also seeks damages for unpaid accrued vacation time in violation of the New York Wage
Payment Law, N.Y. LAB. LAW § 190, *et seq.* ("NY Wage Payment Law") and the Illinois Wage Payment and Collection Act,
820 ILL. COMP. STAT. 115/1, *et seq.* ("Illinois Wage Payment Act").  The Amended Complaint also states that it seeks to
recover unpaid wages and benefits under New York and Illinois law.  With respect to the claims for unpaid accrued vacation
time and unpaid wages and benefits, Plaintiffs' counsel acknowledged at the hearing that these claims should be asserted in
proofs of claim filed in the SIPA and chapter 11 cases, rather than in an adversary complaint.  September 12, 2012 Tr. 70:24-
71:2.  Plaintiffs' counsel also said they have filed "class proofs of claim" seeking relief with respect to these claims.  *Id.* at

3

# I.    BACKGROUND

## A.  The SIPA Case

On October 31, 2011, the Honorable Paul A. Engelmeyer of the United States District Court for the Southern District of New York entered an order (the "MFGI Liquidation Order") commencing the liquidation of MFGI pursuant to the provisions of the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa, *et seq.*, in the case captioned *Securities Investor Protection Corp. v. MF Global Inc.*, Case No. 11-Civ-7750 (PAE).  The MFGI Liquidation Order appointed James W. Giddens as SIPA Trustee "for the liquidation of the business" pursuant to SIPA section 78eee(b)(3) and removed the case to this Court as required under SIPA section 78eee(b)(4).[2]  MFGI Liquidation Order ¶¶ I, II, IX.

The SIPA Trustee is statutorily required to liquidate the business of MFGI.  SIPA section 78fff(a) states that:

> The purposes of a liquidation proceeding under this chapter shall be –
>
>> (1) As promptly as possible after the appointment of a trustee in such liquidation proceeding, and in accordance with the provisions of this chapter –

---

47:19-25.  Both Trustees' counsel acknowledged that those claims will be dealt with in the normal claims allowance process. In dismissing the Amended Complaint, this ruling is without prejudice to the assertion of claims for unpaid accrued vacation or unpaid wages and benefits.

[2]    One of the important features of SIPA is that after the filing of the proceeding in the district court and the granting by that court of a "protective decree" and the appointment of a trustee, the "entire liquidation proceeding" is removed to the bankruptcy court.  The bankruptcy court thereafter has "all of the jurisdiction, powers, and duties [of the district court] conferred by this chapter . . . ."  The statute provides:

(4) Removal to bankruptcy court

Upon the issuance of a protective decree and appointment of a trustee, or a trustee and counsel, under this section, the court shall forthwith order the removal of the entire liquidation proceeding to the court of the United States in the same judicial district having jurisdiction over cases under Title 11. The latter court shall thereupon have all of the jurisdiction, powers, and duties conferred by this chapter upon the court to which application for the issuance of the protective decree was made.

15 U.S.C. § 78eee.

       (A) to deliver customer name securities to or on behalf of the customers of the debtor entitled thereto as provided in section 78fff-2(c)(2) of this title; and

       (B) to *distribute customer property* and (in advance thereof or concurrently therewith) otherwise satisfy net equity claims of customers to the extent provided in this section;

    (2) to *sell or transfer offices and other productive units of the business* of the debtor;

    (3) to enforce rights of subrogation as provided in this chapter; and

    (4) *to liquidate the business of the debtor*.

15 U.S.C. § 78fff(a) (emphasis added).

The SIPA Trustee has engaged in the wind-down of MFGI's affairs by effectuating various bulk transfers of commodity customer property to other futures commission merchants in order to assist with the prompt satisfaction of customer claims, and by establishing a claims process by which former customers and creditors of MFGI can submit claims for cash and other property. (*See* ECF Doc. ## 14, 316, 423, 717.) The Plaintiffs' employment was terminated on November 11, 2011.[3] *See* SIPA Trustee Motion ¶ 7.

## B. The Chapter 11 Case

On the same day the SIPA proceeding was removed to the bankruptcy court, MFGH and MFGF filed voluntary chapter 11 petitions for relief.[4] The only purpose of the SIPA proceeding is liquidation; conversely, the chapter 11 cases were filed at least initially with the hope of reorganization, according to

---

[3]    According to the SIPA Trustee's motion, "the [SIPA] Trustee, on behalf of MFGI, informed MFGI's employees on November 11, 2011 that they were terminated, effectively immediately." SIPA Trustee Motion ¶ 7. However, based on the information provided by counsel in their letters addressed to the Court and dated September 14, 2012, it appears the SIPA Trustee may have only terminated one of the employees; the other employees may have been terminated by other MF Global entities. Whether those other employees were terminated at the direction of the SIPA Trustee has not been factually established.

[4]    Holdings USA filed its chapter 11 bankruptcy petition on March 2, 2012. The Chapter 11 Trustee describes Holdings USA as "essentially a pass-through entity that merely 'provided certain administrative services to MF Ltd and its domestic subsidiaries.'. . . In the period immediately following the commencement of the October 31, 2011, chapter 11 petitions, the Holdings/Finance Defendants, including Holdings USA, began the 'wind down of their former operations, rapidly reducing employee headcount and other costs. . . . After all, if the various MF Global constituent entities were liquidating, than so too was Holdings USA, which only provided administrative services to those liquidating entities." Chapter 11 Trustee Motion at 3-4. These facts alleged by the Chapter 11 Trustee are not contained in the Amended Complaint and may not be considered on the motions to dismiss.

counsel for the debtors-in-possession. As Plaintiffs note in their opposition briefs (but not in their Amended Complaint), Peter Abelow, President and Chief Operating Officer of MFGH and Executive Vice President and Chief Operating Officer of MFGF at the time the chapter 11 petitions were filed, submitted a first-day affidavit (the "Abelow Affidavit," ECF Doc. # 9), representing, among other things:

> 37. . . . . I believe that the relief sought in each of the First-Day Motions (a) is vital to enable to Debtors *to make the transition to, and operate in, chapter 11 with a minimum interruption or disruption to their businesses or loss of productivity or value* and (b) constitutes a critical element in *achieving the Debtors' successful reorganization.*
>
> . . . .
>
> 43. The use of Cash Collateral is necessary for the Debtors to maintain sufficient liquidity *so that the Debtors may continue to operate their businesses in the ordinary course of business during the chapter 11 cases.* The Debtors' access to the Cash Collateral is necessary in order to ensure that the Debtors have sufficient working capital and liquidity *to operate their businesses* and thus preserve and maintain the going concern value of the Debtors' estates, which, in turn, is integral to maximizing recoveries for the Debtors' stakeholders. Moreover, *in the absence of the use of Cash Collateral, the continued operation of the Debtors' business, even for a limited period of time, would not be possible*, and serious and irreparable harm to the Debtors and their estates would occur.
>
> . . . .
>
> 50. . . . . I believe that closing the existing Bank Accounts and opening new accounts inevitably would disrupt the Debtors' businesses and result in delays *that would impede the Debtors' ability to transition smoothly into chapter 11*, and would likewise *jeopardize the Debtors' efforts to successfully reorganize* in a timely and efficient manner.
>
> . . . .
>
> 67. *The Debtors' ultimate goal is to reorganize their financial affairs under the terms of a confirmed chapter 11 plan.* In the near term, however, to minimize any loss of value of their business during their restructuring, the Debtors' immediate objective is to maintain a business-as-usual atmosphere during the pendency of these chapter 11 cases, with as little interruption or disruption to the Debtors' operations as possible.

6

Abelow Affidavit ¶¶ 37, 43, 50, 67 (emphasis added).

During the court hearing on the so-called first day motions on November 1, 2011, proposed

counsel for the chapter 11 debtors-in-possession stated that the chapter 11 Debtors hoped to "survive," at

least for the short term:

> What we're asking today is for a little bit of latitude, both from our holder
> of cash collateral and from Your Honor, *to have a little bit of a lifeline to
> do some work to see if we can survive outside of the regulated business.*
> That's really what today is about.

Nov. 1, 2011 Tr. 30:14-21 (ECF Doc. # 396) (emphasis added).

> *I think we have a fairly good sense that for a ten-day period, between
> salaries, keeping the lights on, health and benefits, insurance, the things
> that are essential for these debtors to keep going*, is approximately 2.7 to 3
> million dollars and that the 5, Your Honor, we talked about that makes up
> to the 8 is sort of that discretionary 'Can we use some money to save some
> other asset that will go down to the benefit of these assets.'

*Id*. at 51:3-10 (emphasis added).

In response to the Court's observation that "[w]hat [the cash collateral motion] bridges you to

may be the bridge to nowhere," Debtors' counsel replied:

> Well, Your Honor, and that's the risk; I think you just captured it.  I mean,
> that's the risk to JPMorgan; that's the risk to the enterprise.  We have no
> bridge without it.  *And what we're hoping for is that we can find . . . a
> lender who's willing to step in and do that, a third-party lender*.

*Id*. at 49:21-50:7 (emphasis added).

On November 22, 2011, the Joint Emergency Motion of the Debtors and the Creditors

Committee for the appointment of a chapter 11 trustee was granted (ECF Doc. # 156).  That motion

requested the appointment of a chapter 11 trustee "to reorganize and/or liquidate the Debtors' assets for

the benefit of the Debtors' estates, their creditors, and other stakeholders" and that "[t]he primary

objective for the duration of these chapter 11 cases is the orderly wind-down of the Debtors' various

7

assets including, in particular, the Debtors' intercompany claims (including customer claims) against, and indirect equity interests in, the Company's regulated subsidiaries." Motion for Appointment of Chapter 11 Trustee ¶ 4-5 (ECF Doc. # 131). The motion also argued that "[c]onsolidating roles of the Debtors' governance within a single chapter 11 trustee would reduce administrative cost and facilitate the orderly wind-down of the estate." *Id.* ¶ 14. On November 25, 2011, the U.S. Trustee selected Louis J. Freeh as the Chapter 11 Trustee (ECF Doc. # 169), and on November 28, 2011, the Court approved that selection (ECF Doc. # 170). With the appointment of the Chapter 11 Trustee on November 28, 2011, it became clear that the only possible outcome for the chapter 11 Debtors was liquidation. But between October 31, 2011 and November 22, 2011, there is nothing in the record to establish that the chapter 11 Debtors intended to liquidate.

### C. The Plaintiffs' Claims

Between November 11, 2011 and November 14, 2011, three adversary class action complaints were filed on behalf of the employees terminated by the Defendants. After a hearing, on January 30, 2012, this Court appointed Plaintiffs' counsel as interim counsel and consolidated the adversary proceedings. (ECF Doc. # 35.)

On December 12, 2011, a consolidated Amended Complaint was filed on behalf of the Plaintiffs. (ECF Doc. # 4.) The Amended Complaint does not specify which Defendant employed each Plaintiff, alleging only that each Plaintiff "was employed by Defendants." Amend. Compl. ¶¶ 7-11, 16. The Amended Complaint also alleges that Plaintiffs were "terminated without cause on or about November 11, 2011, due to the mass layoffs and/or plant closings ordered by Defendants." *Id.* ¶ 23; *see also* ¶ 83 ("On or about November 11, 2011, the Defendants ordered a mass layoff or plant closing at the Facilities, as that term is defined by 29 U.S.C. § 2101(a)(2).") In an effort to extend liability to all defendants, no matter which Defendant employed each Plaintiff, the Amended Complaint includes

allegations that "Defendants" are a "single employer." *See id.* ¶ 41 ("The Defendants constituted a

'single employer' of the Plaintiffs and the Class Members under the WARN Act.")

At the Court's direction at the September 12, 2012 hearing, counsel for the Chapter 11 Trustee

provided additional information about the Plaintiffs' employment, asserting that each of the five named

Plaintiffs was employed by MFGI, but received his or her paychecks from Holdings USA. *See* Letter

from Counsel for the Chapter 11 Trustee, dated September 14, 2012 (ECF Doc. # 59). Plaintiffs'

counsel likewise submitted a letter which included information about the named Plaintiffs, but ignored

the Court's request for information about the specific entity at which each Plaintiff worked, stating only

that each plaintiff received his or her paycheck from Holdings USA.[5] *See* Letter from Counsel for

Plaintiffs, dated September 14, 2012 (ECF Doc. # 60).

In the Amended Complaint, Plaintiffs assert claims under the federal WARN Act and the NY

WARN Act based on the termination of Plaintiffs' employment on November 11, 2011 without

providing the required advance notice.[6] Plaintiffs also assert claims for vacation pay under New York

and Illinois wage payment laws, but those claims are more appropriately handled as part of the claims

allowance process. *See supra* n.1.

---

[5]    Plaintiffs' counsel also improperly included legal arguments in the letter attempting to support the "single employer" theory. Briefing was long since closed on the motions to dismiss and none of the briefs of any of the other parties addressed the "single employer" arguments. The "single employer" arguments in the letter will be disregarded. Because the Court dismisses the Amended Complaint with prejudice against MFGI based on the "liquidating fiduciary" principle, and dismisses the Amended Complaint against the remaining defendants with leave to amend, the Plaintiffs are free to allege their "single employer" theory (but also include information about where each plaintiff worked) in an effort to sustain the complaint against the other defendants. Since the Chapter 11 Trustee asserts that all Plaintiffs were employed by MFGI (alleged facts that are not considered or necessary to the Court's decision), the Chapter 11 Trustee is, of course, free to argue that the "single employer" argument cannot be used as a basis for claims based on layoffs of employees by or on behalf of MFGI. That issue is not ripe for decision at this time.

[6]    In their brief in opposition to the motions to dismiss (but not in the Amended Complaint), Plaintiffs also assert a claim under the Illinois Working Adjustment and Retraining Notification Act (the "IL WARN"). Since the claim is not included in the Amended Complaint, it will not be considered here. *See infra* at n.13.

## II.    DISCUSSION

### A.  Rule 12(b)(6) Standard Applicable to Motions to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6), made applicable here by FED. R.

BANK. P. 7012, "a complaint must set out only enough facts to state a claim for relief that is *plausible* on

its face." *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v.

Iqbal*, 129 S.Ct. 1937, 1949 (2009) (emphasis in original)).  "Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (citation and internal quotation marks

omitted).  Plausibility "is not akin to a probability requirement," but rather requires "more than a sheer

possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation marks omitted).

Courts use a two-prong approach when considering a motion to dismiss. *McHale v. Citibank,

N.A. (In re the 1031 Tax Group, LLC)*, 420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009).[7]  First, the court

must accept all factual allegations in the complaint as true, discounting legal conclusions clothed in

factual garb.  *See, e.g., Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating

that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be

true") (citing *Iqbal*, 129 S.Ct. at 1949–50).[8]  Second, the court must determine if these well-pleaded

factual allegations state a "plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (citation omitted).

---

[7]        *See also Weston v. Optima Commc'ns Sys., Inc.*, No. 09 Civ. 3732 (DC), 2009 WL 3200653, at *2 (S.D.N.Y. Oct. 7, 2009) (Chin, J.) (acknowledging a "two-pronged" approach to deciding motions to dismiss); *S. Ill. Laborers' and Employers Health and Welfare Fund v. Pfizer, Inc.*, No. 08 CV 5175 (KMW), 2009 WL 3151807, at *3 (S.D.N.Y. Sept. 30, 2009) (same); *Inst. for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, No. 08 Civ. 6195 (PKC), 2009 WL 2850230, at *3 (S.D.N.Y. Aug. 28, 2009) (same).

[8]        *See also Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009) (stating that the court must "accept as true all of the factual allegations set out in the plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally") (quoting *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)); *Boykin v. KeyCorp*, 521 F.3d 202, 204 (2d Cir. 2008) ("In reviewing a motion to dismiss, we accept the allegations in the complaint as true") (citation omitted); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) ("Although we construe the pleadings liberally, bald assertions and conclusions of law will not suffice.") (internal quotation marks omitted).

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citation omitted). A complaint that only pleads facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool*, 520 F.3d at 183 (citation omitted).

Courts deciding motions to dismiss must draw all reasonable inferences in favor of the nonmoving party and must limit their review to facts and allegations contained in (1) the complaint, (2) documents either incorporated into the complaint by reference or attached as exhibits, and (3) matters of which the court may take judicial notice. *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (citation omitted); *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993).

**B.  The Federal WARN Act and Corresponding Regulations**

The Federal WARN Act is codified at 29 U.S.C. §§ 2101-2109. In general terms, it requires "employers" (defined below) with more than 100 employees to provide sixty calendar days' advance notice of "plant closing" or "mass layoffs" (both terms are defined in section 2101(a)). There are three exceptions to the full sixty-day requirement; however, employers must still provide notice as soon as practicable. The exceptions are: (1) when an employer is actively seeking capital or business and

reasonably believes that advance notice would preclude its ability to garner capital or business (known as the "faltering company" exception); (2) unforeseeable business circumstances; and (3) natural disasters. 29 U.S.C. § 2102(b). When section 2102 is violated, the employer is liable for damages, including employee back pay and benefits under an employee benefit plan. 29 U.S.C. § 2104. The first two of these WARN Act exceptions might be applicable to the defendants in these actions. However, these defenses are fact intensive and are thus not conducive to the motion to dismiss stage.

Nevertheless, the Trustees argue that, as a matter of law, they do not fit the definition of "employer" in either the federal or NY WARN Act. The WARN Act defines "employer" as "any business enterprise that employs (A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)[.]" 29 U.S.C. § 2101(a)(1). The Secretary of the Department of Labor issued regulations on the WARN Act that further expand upon the definition of "employer" (the "WARN Act Regulations"). 20 C.F.R. § 639.3(a).

In seeking to exclude themselves from the definition of "employer," the Trustees rely on the preamble to the WARN Act Regulations (the "DOL Preamble"), which states:

> Another commenter suggested that "fiduciaries" in bankruptcy proceedings should be excluded from the definition of employer. Since adequate protections for fiduciaries are available through the bankruptcy courts, the Department does not think it appropriate to change the regulations to address this situation. *Further, DOL agrees that a fiduciary whose sole function in the bankruptcy process is to liquidate a failed business for the benefit of creditors does not succeed to the notice obligations of the former employer because the fiduciary is not operating a "business enterprise" in the normal commercial sense.* In other situations, where the fiduciary may continue to operate the business for the benefit of creditors, the fiduciary would succeed to the WARN obligations of the employer precisely because the fiduciary continues the business in operation.

54 Fed. Reg. 16042-01(4)(a) (Apr. 20, 1989) (emphasis added).[9]

The SIPA Trustee argues that as of the date the SIPA proceeding was initiated, it could do nothing else other than to liquidate MFGI's assets.  Similarly, the Chapter 11 Trustee claims that, at the time Plaintiffs' employment was terminated, "MFGH and MFGF were not operating as a going concern and were not engaging in their everyday functions—they were shutting down and liquidating their operations."  Chapter 11 Trustee Motion at 11-12.  Furthermore, "[a]ny argument that MFGH and MFGF were continuing to operate as a going concern at the time of the 'mass layoff or plant closing' would be inconsistent with the allegations in the Complaint."  *Id*. at 12.

As for Holdings USA, which filed for bankruptcy in March 2012, months after the Plaintiffs' employment was terminated, the Chapter 11 Trustee argues that Holdings USA was a "pass-through entity" and "merely provided various administrative services to other MF entities."  *Id*.  According to the Chapter 11 Trustee, "[Holdings USA] stopped acting in the normal course of its business when the chapter 11 and SIPA proceedings commenced on October 31, 2011.  Those proceedings 'negatively impacted' Holdings USA . . . . If the various MF Global constituent companies for which Holdings USA

---

[9]      Plaintiffs argue that the DOL's reference to a "former employer" "demonstrates an inherent confusion between the 'employer' and the representative of the 'employer' who implements its legal obligations."  Plaintiffs' Chapter 11 Objection at 10.  Plaintiffs rely heavily on an article written by Professor Laura B. Bartell—*see* Bartell, *Why Warn?  The Worker Adjustment and Retraining Notification Act in Bankruptcy*, 18 Bankr. Dev. J. 243 (2002)—which states:

> if the Department had properly focused on the employer rather than the bankruptcy 'fiduciary' (who merely becomes the representative of the employer) and had looked at the activities of the bankrupt commercial enterprise, it would have properly concluded that the business enterprise remains an 'employer' until the company ceases to engage in commercial activity, notwithstanding that the bankruptcy 'fiduciary' is liquidating the company.  In most cases that point will be reached when there are no more employees.

*Id*. at 266-67.

        Professor Bartell's argument would raise the issue whether *all* of the MF Global entities, and not just MFGI, must have been liquidating their assets to fall outside the statutory definition of "employer."  The Court concludes that the argument cannot save the claims against MFGI, a party to the separate SIPA proceeding as to which the chapter 11 Debtors could exercise no control.  But Bartell's argument, similar to the arguments involving the "single employer" theory, may raise issues with any further amended complaint asserting liability against the remaining defendants from the layoffs of MFGI employees: against which entities may WARN Act claims be asserted?  For now, the Court concludes only that the claims cannot be asserted against MFGI.

exclusively provided administrative services were liquidating, than [*sic*], by definition, so too was

Holdings USA." *Id.*  In making this argument, the Chapter 11 Trustee asserts facts that are not found in

the Amended Complaint, and may well be contradicted by the statements of the debtor-in-possession's

counsel before the Chapter 11 Trustee was appointed.  The asserted facts may ultimately support an

affirmative defense to recovery, on which the Chapter 11 Trustee will have the burden of proof, but the

asserted facts may not be considered on a motion to dismiss.

The DOL Preamble—found at 54 Fed. Reg. 16042-01—articulates what has been described by

several courts as the "liquidating fiduciary" principle.  The DOL Preamble counsels, and courts have

held, that a liquidating fiduciary in a bankruptcy case does not fit the definition of an employer for

purposes of the WARN Act.  The DOL was given authority to adopt regulations implementing the Act,

but the DOL Preamble is not the end-result of the rulemaking process.  *See* 54 Fed. Reg. 16042-01

("This advice is for guidance only and should not be interpreted to impose any new or additional

standards or requirements on employers.").

The WARN Act states that, for coverage of the Act, the term "employer" is defined to include

"any business enterprise" that employs more than 100 people.  29 U.S.C. § 2101(a)(1)(i).  The

regulations include within the definition public and quasi-public entities, and with respect to such

entities, the regulations add language that helps elucidate the words "any business enterprise"—"entities

which engage in business (i.e., take part in a commercial or industrial enterprise, supply a service or

good on a mercantile basis . . . )."  20 C.F.R. § 639.3(a)(1).  The operative portion of the DOL Preamble

provides that the "DOL agrees that a fiduciary whose sole function in the bankruptcy process is to

liquidate a failed business for the benefit of creditors does not succeed to the notice obligations of the

former employer because the fiduciary is not operating a 'business enterprise' in the normal commercial

sense."  54 Fed. Reg. 16042-01(4)(a).

14

Plaintiffs argue that the DOL Preamble does not have the force of law under *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984). In addition, Plaintiffs argue that, "[i]n the district courts of the Second Circuit, preambles at most may have the 'power to persuade' and agency interpretations found in them are not entitled to receive deference under *Chevron*." Plaintiffs' Chapter 11 Objection at 15. The Court need not decide whether the DOL Preamble is entitled to *Chevron* deference because, along with the decisions from courts applying the same principle, the Court concludes that the DOL Preamble is persuasive and should be applied here. Indeed, Plaintiffs' counsel has not cited any cases adopting a contrary view.

The "liquidating fiduciary" principle has been recognized by courts throughout the country. *See, e.g., Official Comm. of Unsecured Creditors of United Healthcare Sys., Inc. v. United Healthcare Sys., Inc. (In re United Healthcare Sys., Inc.),* 200 F.3d 170, 177-79 (3d Cir. 1999); *Chauffeurs, Sales Drivers, Warehousemen & Helpers Union Local 572 v. Weslock Corp.,* 66 F.3d 241, 244 (9th Cir. 1995) ("WARN's obligations . . . can apply . . . only where the [secured] creditor operates the debtor's asset as a 'business enterprise' in the 'normal commercial sense' . . . ; Where the creditor does no more than exercise that degree of control over the debtor's collateral necessary to protect the security interest, and acts only to preserve the business asset for liquidation or sale, the notice requirement of WARN will not apply."); *Walsh v. Diamond (In re Century City Doctors Hospital, LLC),* BAP No. CC-09-1235-MkJaD, 2010 WL 6452903, at *6-7 (B.A.P. 9th Cir. 2010) (affirming motion to dismiss WARN Act claim against liquidating fiduciary); *Barnett v. Jamesway Corp. (In re Jamesway Corp.),* 235 B.R. 329, 343 (Bankr. S.D.N.Y. 1999) ("*Jamesway II*"); *Bailey v. Jamesway Corp. (In re Jamesway Corp.),* Nos. 95-B-44821 (JLG), 96/8389A, 1997 WL 327105, at *12 (Bankr. S.D.N.Y. June 12, 1997) ("*Jamesway I*") (stating that "liquidating fiduciaries need not provide notice to terminated employees under the WARN Act").

The *United Healthcare* case is particularly instructive.  In *United Healthcare*, the Third Circuit relied on the DOL Preamble in determining that debtor United Healthcare Systems, Inc. ("United Healthcare") was not an "employer" under the WARN Act.  *Id.* at 179.  United Healthcare purported to give its employees sixty days' notice of termination required under the WARN Act, but sixteen days after it gave WARN Act notice, it terminated 1,200 of its 1,300 employees.  *Id.* at 173.  By the time that it filed its chapter 11 petition on February 19, 1997, United Healthcare, a medical facility, had surrendered its required medical certificates, stopped treating patients, and negotiated a sale of its assets to another hospital corporation.  *Id.* at 176.  By February 21, 1997, all of United Healthcare's patients had been transferred or sent home; employees were unable to perform their regular duties and, instead, "cleaned, took inventory and prepared the company's assets for sale."  *Id.* at 173.  On March 6, 1997, 1,200 of the 1,300 employees were terminated, with the remaining 100 employees retained to secure the facility and maintain necessary equipment.  *Id.*

The Third Circuit reversed the district court and bankruptcy court and held that United Healthcare's activities at the time it terminated its employees "clearly demonstrate[d] its intent to liquidate" and reflected that it had "ceased operating its business as a going concern."  *Id.* at 178-79.  But the ruling was based on a factual record and not a ruling on a motion to dismiss.  *Id.* at 175 ("Although we review a bankruptcy court's findings of historical or narrative fact for clear error, the parties do not dispute the accuracy of the Bankruptcy Court's findings of fact, which were undisturbed by the District Court.  Instead, the parties dispute whether the facts were sufficient to support the Bankruptcy Court's legal conclusion that United Healthcare was an employer under the WARN Act, and had violated the Act's notice provisions when it terminated its employees on March 6, 1997.").  The court concluded that United Healthcare was not an "employer" under the WARN Act because it was no longer operating a "business enterprise."  *Id.*

16

The *United Healthcare* court further ruled:

> In light of the Department of Labor commentary to the regulations and the cases cited, we believe that whether a bankrupt entity is an "employer" under the WARN Act depends on the nature and extent of the entity's business and commercial activities while in bankruptcy, and not merely on whether the entity's employees continue to work 'on a daily basis.' The more closely the entity's activities resemble those of a business operating as a going concern, the more likely it is that the entity is an 'employer;' the more closely the activities resemble those of a business winding up its affairs, the more likely it is the entity is not subject to the WARN Act. . . .
>
> *       *       *       *       *
>
> We recognize that United Healthcare filed for Chapter 11 bankruptcy, ordinarily used to reorganize, rather than Chapter 7 bankruptcy, generally used to liquidate. But as discussed, United Healthcare's actions from the time it filed its Chapter 11 petition throughout the proceedings clearly demonstrate its intent to liquidate…In conclusion, we do not believe United Healthcare continued as an 'employer' within the meaning of the WARN Act when it assumed the role of fiduciary following the filing for bankruptcy. At that time, it ceased operating its business as a going concern and was simply preparing itself for liquidation.

*Id.* at 178-179.

Other judges have relied on the "liquidating fiduciary" principle, with different results depending on the facts and context in which the issue was raised. For example, the bankruptcy court applied the "liquidating fiduciary" principle in two separate summary judgment motions during the chapter 11 bankruptcy cases of Jamesway Corporation, a discount department store chain. *Jamesway I*, 1997 WL 327105; *Jamesway II*, 235 B.R. 329.[10] Jamesway filed its chapter 11 petition on October 18, 1997. *Jamesway I*, 1997 WL 327105 at *1. Before the chapter 11 filing, between October 12, 1995 and October 17, 1995, approximately 147 employees were terminated. *Id.* On November 3, 1995, the

---

[10]     In *Jamesway II*, the court "did not need to resolve [the] dispute" regarding when Jamesway became a liquidating fiduciary, because "assuming, arguendo, that Jamesway was a liquidating fiduciary as of October 18, 1995, it nevertheless is liable under WARN to the plaintiffs," who were fired on October 12, 1995, approximately six days before Jamesway's chapter 11 petition was filed. *Jamesway II*, 235 B.R. at 343.

17

bankruptcy court authorized the debtor to sell its assets.  *Id.* at *2.  Thereafter, between November 10, 1995 and November 22, 1995, Jamesway fired approximately thirty-five employees.  *Id.*

In *Jamesway I*, the employees who had been terminated post-petition brought WARN Act claims against the debtor.  After plaintiffs sought class certification, Jamesway cross-moved for summary judgment to dismiss the claims of the post-petition employees, arguing that, as a liquidating debtor, it was not an "employer" subject to the WARN Act.  *Id.* at *1.  Neither party disagreed about whether the "liquidating fiduciary" principle applied; rather, plaintiffs argued that Jamesway only became a "liquidating fiduciary" when the court authorized it to sell its assets on November 3, 1997.  To refute plaintiffs' contention, Jamesway submitted several of its first-day motions as evidence that it held itself out to be a liquidating debtor at the relevant time, although it submitted them the day before the hearings on the motions.  *Id.* at *13.

Citing the DOL Preamble in full, the court held that "liquidating fiduciaries need not provide notice to terminated employees under the WARN Act."  *Id.* at *12.  Nonetheless, for summary judgment purposes, the court found that "the extent to which Jamesway operated its business prior to the time that its employees were discharged is a material issue of fact precluding summary judgment as to the 35 employees terminated post-petition."  *Id.* at *13.  As a factual matter, it was not clear to the court whether Jamesway was operating the business as a going concern, or purely engaging in liquidation of its assets, at the time employees were terminated.  *Id.* at *13-14.

What is most significant about the *Jamesway* decisions for present purposes is that both decisions arose on summary judgment motions and both motions were denied.  Dismissing a case based on the "liquidating fiduciary" principle requires the court to conclude as a matter of law that a debtor was liquidating when the layoffs occurred.  That result is only possible here for MFGI, because the

SIPA Trustee was appointed and could do nothing other than liquidate the business.  Disputed issues of fact appear to exist with respect to the chapter 11 Debtors.

Plaintiffs ask this Court to reject the "liquidating fiduciary" principle by arguing that it is not entitled to *Chevron* deference.  The Court does not need to decide this question to make a determination on the motions.  Plaintiffs concede that courts may, and indeed have, turned to the DOL Preamble for "guidance" in interpreting the provisions of the WARN Act.  *See* Plaintiffs' Chapter 11 Objection at 10 ("That courts that have applied the liquidating fiduciary concept have done so obediently, as if it has the force of law, without questioning the level of deference the preamble's words deserve.  Some courts refer to it as guidance."); *see also Century City,* 417 B.R. at 803 ("[T]he Department of Labor comment provides some guidance as to when a bankruptcy may be a 'business enterprise' subject to the WARN Act.").  Looking to the DOL Preamble as guidance, as well as all of the court decisions that have considered the issue, the Court is persuaded that the "liquidating fiduciary" principle is applicable in these proceedings.

Accordingly, applying the "liquidating fiduciary" doctrine to this case, and accepting all factual allegations in Plaintiffs' Amended Complaint as true, Plaintiffs have not put forth any triable issues of fact with respect to its WARN Act claims against MFGI.  From the moment the SIPA proceeding was removed to this Court on October 31, 2011, the SIPA Trustee was unquestionably a "liquidating fiduciary."  The statute governing the appointment of the SIPA Trustee states that the SIPA Trustee's purpose is "to liquidate the debtor's business."  15 U.S.C. § 78fff(a).  The SIPA Trustee immediately began to wind down MFGI's assets and engage in other activities for the purpose of liquidating the estate.  Even if the SIPA Trustee had wanted to continue operating the business as a going concern, he was statutorily prohibited from doing so.

With respect to the Chapter 11 Trustee's motion, the Amended Complaint is silent about whether the chapter 11 Debtors were seeking to reorganize or liquidate. While courts ordinarily do not consider facts outside the complaint in ruling on a motion to dismiss, facts outside the complaint may be relevant to whether a further amendment to the complaint would be futile. In that respect, the statements made in the Abelow Affidavit and in the colloquy with proposed counsel for the chapter 11 debtors-in-possession appear to support a plausible assertion that the chapter 11 Debtors were attempting to reorganize rather than liquidate at the time the Plaintiffs' employment was terminated.[11]

While the Court declines to dismiss the complaint against the chapter 11 Debtors based on the "liquidating fiduciary" principle, the Court concludes that the allegations in the Amended Complaint are nevertheless deficient. As explained above, the Court concludes that the "liquidating fiduciary" principle *may* apply in this case (and does apply as a matter of law with respect to MFGI). The Amended Complaint does not include any allegations whether the Debtors were liquidating or attempting to reorganize when the layoffs occurred. Only during the briefing did Plaintiffs' counsel— while arguing that the fiduciary principle should not be recognized—flesh out the facts from the first-day pleadings. The complaint must be amended to include appropriate allegations. More importantly, the Amended Complaint does not indicate where each Plaintiff worked (at MFGI or at one of the chapter 11 Debtors), who gave each Plaintiff a notice of termination, or when was it given.[12] If the complaint is going to survive, a further amended complaint must be filed setting forth appropriate allegations.

---

[11]    The Abelow Affidavit repeatedly references the goal of a "successful reorganization" of the business, and at the first-day hearing, Debtors' counsel told this Court that "[w]hat we're asking today is . . . to have a little bit of a lifeline to do some work to see if we can survive outside of the regulated business." *See* Nov. 1, 2011 Tr. 30:14-21. Nonetheless, the Abelow Affidavit also acknowledges that the business may not operate perpetually ("in the absence of the use of Cash Collateral, the continued operation of the Debtors' business, even for a limited period of time, would not be possible"), and counsel at the first day hearing agreed that granting the cash collateral motion might "bridge[] you to . . . the bridge to nowhere." *Id.* at 49:19-20. Disputed facts do not support granting a motion to dismiss if fair inferences are consistent with Plaintiffs' assertions of liability.

[12]    Requiring the Plaintiffs to plead these facts is not intended to preclude their "single employer" theory. But if the Plaintiffs worked for MFGI (even if their payroll checks came from MF Global USA) and were terminated at the direction of

### C.  Plaintiffs' NY WARN Act Claims

The NY WARN Act's definition of employer differs from the federal WARN Act.  Unlike the

federal WARN Act, the NY WARN Act contains a statutory exception in the definition of "employer"

for "*the federal or state government or any of their political subdivisions, including any unit of local*

*government or any school district.*"  N.Y. LAB. LAW. § 860-a(3) (emphasis added).  Plaintiffs apply the

canon expression *unius est exclusion alterius* and claim that this statutory exception, included in the NY

WARN Act but not in the federal WARN Act, indicates that the legislature intended to exclude other

alternative exceptions.

The regulations implementing the NY WARN Act provide that "[a] trustee, debtor-in-

possession, or other fiduciary . . . under the provisions of the U.S. Bankruptcy Code (Title 11 of the

United States Code), or any other provision of federal or state law *where such party is responsible for*

*continuing operations of the business entity*, is considered an employer . . . ."  N.Y. COMP. CODES R. &

REGS. tit. 12, § 921-1.1(e)(3) (2010) (emphasis added).  Using this regulatory language, the Trustees

argue that the Defendants "were no longer continuing their normal operations at the time Plaintiffs'

employment was terminated," and therefore were no longer "responsible for continuing operations of the

business entity" on the dates Plaintiffs were terminated.  *See* Chapter 11 Trustee Motion at 13-14; *see*

*also* SIPA Trustee Motion ¶ 19-22.

For the same reasons the Court dismisses the federal WARN Act claims against MFGI, the Court

also dismisses the NY WARN Act claims against MFGI.  The SIPA Trustee was not responsible for

"continuing operations of the business entity"; rather, the SIPA Trustee was required by law to liquidate

the assets.  With respect to the chapter 11 Debtors, the issues cannot be resolved as a matter of law.  For

---

the SIPA Trustee, it is not clear on what basis their claims can survive against the chapter 11 Debtors.  Plaintiffs cannot hide
behind vague allegations to avoid confronting the issues.

the reasons discussed above that apply to the federal WARN Act claims, there may be facts sufficient to

sustain the NY WARN Act claims, but a further amended complaint must be filed.[13]

### D. New York and Illinois Wage Payment Law Claims

New York's Wage Payment Law requires employers to pay their employees for their accrued but

unused vacation time within thirty days of their termination.  N.Y. LAB. LAW § 198-C (2008).  Similarly,

the Illinois Wage Payment and Collection Act requires employers to pay their employees in full for their

accrued but unused vacation time, "at the time of separation, if possible, but in no case later than the

next regularly scheduled payday for such employee."  820 ILL. COMP. STAT. 115/5 (1984).  Section

507(a)(4) of the Bankruptcy Code permits claims such as these (*i.e.*, claims for "wages, salaries, or

commission, including vacation"); the claims become part of the claims allowance process.  Plaintiffs

explained that these claims were brought in this adversary proceeding for "administrative convenience,"

*see* September 12, 2012 Tr. 69:23-24; Plaintiffs also filed proofs of claims concerning their vacation pay

prior to the June 2, 2012 bar date in this case.  These claims should be handled as part of the claims

allowance process and, accordingly, these causes of action in the adversary complaint are dismissed

without prejudice.  Plaintiffs have filed timely proofs of claims and should not now be allowed to jump

to the front of the line by virtue of attaching these claims to its WARN Act claims in the adversary

complaint.

### E. Leave to Amend Complaint

Rule 15(a) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by

Federal Rule of Bankruptcy Procedure 7015, states that leave to amend a complaint must be "freely

given when justice so requires."  Nonetheless, a court should deny leave when amendment would be

---

[13]      As already noted, *see supra* n.6, in their objection to the Trustees' motions to dismiss, Plaintiffs assert a claim, for the first time, under the Illinois WARN Act.  The Amended Complaint does not include an Illinois WARN Act claim. Therefore, the Court will not address the argument, except to say that the definition of "employer" under the Illinois WARN Act is identical to the definition of "employer" under the federal WARN Act.

futile.  *See, e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962); *TechnoMarine S.A. v. Giftports, Inc.,* No. 11 Civ. 9643, 2012 WL 3964734, at *9 (S.D.N.Y. Sept. 10, 2012) ("Here, TechnoMarine's claims are barred by res judicata.  Accordingly, amending the Complaint would be futile.")

The Court has already concluded that it appears Plaintiffs may be able to state facts sufficient to survive a motion to dismiss with respect to the chapter 11 Debtors—MFGH, MFGF, and Holdings USA. The Court concludes that any amendment of the federal and NY WARN Act claims against MFGI would be futile; therefore, those claims are dismissed with prejudice.  The Court concludes that the federal and NY WARN Act claims against the chapter 11 Debtors are dismissed without prejudice and with leave to amend within thirty days; the Chapter 11 Trustee shall file a response to any further amended complaint within thirty days after an amended complaint is filed.  The remaining causes of action contained in the Amended Complaint for wages, benefits and accrued but unpaid vacation pay are dismissed without prejudice in favor of the assertion of those claims in the claims allowance process.

### III.    CONCLUSION

The motions of the SIPA Trustee and the Chapter 11 Trustee are resolved in the manner described above.  The Court will enter a separate order setting a date for a case management conference to deal with other scheduling issues.

**IT IS SO ORDERED.**

Dated:    October 23, 2012
             New York, New York

_Martin Glenn_____
MARTIN GLENN
United States Bankruptcy Judge