| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK**<br>In re:<br><br>    MF GLOBAL INC.,<br><br>                              Debtor. | NOT FOR PUBLICATION<br><br>Case No. 11-2790 (MG) SIPA |

**MEMORANDUM OPINION AND ORDER DENYING MOTION OF**
**PRICEWATERHOUSECOOPERS LLP FOR STAY PENDING APPEAL**

Pending before the Court is the motion of PricewaterhouseCoopers LLP ("PwC") for a stay pending appeal. ("Motion," ECF Doc. # 3821) PwC has appealed to the district court the Order approving the assignment of certain claims by the SIPA Trustee to the Customer Representatives who are plaintiffs in class actions pending in the U.S. District Court for the Southern District of New York. The SIPA Trustee filed an Objection to the Motion (ECF Doc. # 4008) and the Customer Representatives filed a Joinder in the objection (ECF Doc. # 4009).

For the reasons discussed below, PwC has failed to meet its burden of establishing that it is entitled to a stay pending appeal pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the motion is **DENIED**.

**I.    BACKGROUND**

A full history of MF Global's collapse has been set forth in this Court's previous opinions and need not be recounted here. The following background is limited to those facts relevant to the motion at issue. On August 15, 2012, the Trustee for the SIPA liquidation (the "SIPA Trustee") of MF Global Inc. ("MFGI" or the "Debtor") filed a motion (the "Assignment Motion") (ECF Doc. # 2906) seeking approval of a Continuing Cooperation and Assignment Agreement (the "Agreement") between the SIPA Trustee

1

and Kay P. Tee, LLC, Paradigm Global Fund I and certain additional parties, including such Class Representatives as are appointed or as will be appointed by the District Court (the "Customer Representatives"). The Customer Representatives are former customers of MFGI who filed class actions against former directors and officers of MFGI in the District Court (the "District Court Actions") arising out of MFGI's estimated $1.6 billion shortfall of customer funds.

The Agreement assigned to the Customer Representatives the SIPA Trustee's potentially viable claims against the former directors and officers as well as potential claims against PwC, MFGI's former auditor (collectively, the "Assigned Claims"). PwC filed a limited objection to the Assignment Motion (the "Limited Objection") (ECF Doc. # 3084), alleging that claims held by the SIPA Trustee against PwC were not assignable because PwC's engagement letter (the "Engagement Letter") with the Debtors included an anti-assignment provision. The relevant portion of the Engagement Letter provides that the parties "will not . . . agree to assign or transfer . . . any rights, obligations, claims or proceeds from claims against [PwC] arising under this engagement letter . . . ." Engagement Letter, dated June 24, 2010 (ECF Doc. # 3082, Ex. 1 at 5). The SIPA Trustee filed a reply to the Limited Objection (ECF Doc. # 3144) on September 4, 2012.

The Court held a hearing on the Assignment Motion on September 5, 2012. The Court concluded that, other than with respect to claims against PwC, the assignment of claims to the Customer Representatives reflected an appropriate exercise of business judgment by the SIPA Trustee pursuant to section 363(b)(1) of the Bankruptcy Code. *See* Transcript, Sept. 5, 2012, at 89-92 (ECF Doc. # 3266). The Court requested additional briefing from the SIPA Trustee and PwC regarding the assignment of claims

against PwC, and each party submitted supplemental briefs (ECF Doc. ## 3282, 3283, 3348).

On October 2, 2012, this Court entered an opinion (the "Assignment Motion Opinion") (ECF Doc. # 3581), followed by an order (the "Assignment Order") (ECF Doc. # 3764), overruling PwC's Limited Objection and granting the SIPA Trustee's motion to assign certain claims against PwC to the Customer Representatives. Upon a close analysis of the Engagement Letter and applicable law, the Court found that the Engagement Letter only precluded the SIPA Trustee from assigning breach of contract claims against PwC that arose under the Engagement Letter; tort claims that arose independent of any contractual obligation, such as the malpractice claims at issue, could be assigned. *See* Assignment Motion Opinion at 17. PwC filed an appeal of this decision with the District Court.

## II.    DISCUSSION

### A. Legal Standard

The decision whether to grant a stay pending appeal from an order of a bankruptcy court is within the court's sound discretion. *See In re Adelphia Commc'ns Corp.,* 361 B.R. 337, 346 (S.D.N.Y. 2007). There are four factors courts consider in making this determination:

> (1) whether the movant will suffer irreparable injury absent a stay;
> (2) whether the movant has demonstrated a substantial likelihood of success on the merits;
> (3) whether another party will suffer substantial injury if a stay is issued; and
> (4) the public interests at stake.

3

*See id.* The movant must show satisfactory evidence on all four factors. *See Rally Auto Group, Inc. v. Gen. Motors LLC (In re Motors Liquidation Co.),* 2010 U.S. Dist. LEXIS 118166, at *7 (S.D.N.Y. Oct. 29, 2010).

### B. PwC Has Failed to Meet the Standard for a Stay Pending Appeal

#### 1. *PwC Will Not Suffer Irreparable Injury Absent a Stay*

PwC has not met its burden of showing that it will suffer "actual and imminent" irreparable harm if this Court does not stay enforcement of the Assignment Order. *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). In fact, PwC is unable to show any true harm absent a stay.

As an initial matter, the SIPA Trustee would be entitled to bring the potential malpractice claims against PwC if the Customer Representatives could not. As this Court emphasized in its opinion overruling PwC's Limited Objection, "PwC's challenge to the Agreement is an obvious attempt to nip-in-the-bud any effort to permit the Customer Representatives to pursue the Assigned Claims as part of the pending class action." Assignment Motion Opinion at 12. Allowing the Customer Representatives to more efficiently pursue potential claims against PwC would not cause PwC to suffer irreparable injury; it would merely prevent the burden and expense of pursuing these claims from falling on the SIPA Trustee and the MFGI Estate—PwC would incur the costs of defending the actions either way.

PwC argues that absent a stay, section 363(m) of the Bankruptcy Code would effectively moot PwC's ability to pursue appellate relief from the assignment of any malpractice claims, regardless of whether they are tort or contract claims.[1] *See* Motion at

---

[1] Section 363(m) provides: "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or

4

¶ 15.  However, the Court specifically held that breach of contract claims based on the Engagement Letter were not, and could not be, assigned to the Customer Representatives. *See* Assignment Motion Opinion at 20-21.  In any event, most courts have held that that the risk that an appeal may become moot absent a stay, by itself, does not constitute irreparable harm.  *See, e.g., In re Best Prods. Co.,* 177 B.R. 791, 808 (S.D.N.Y. 1995), *aff'd on other grounds,* 68 F.3d 26 (2d Cir. 1995); *In re Moreau,* 135 B.R. 209, 215 (N.D.N.Y. 1992); *In re Sunflower Racing, Inc.,* 223 B.R. 222, 225 (D. Kan. 1998); *In re 203 N. LaSalle St. P'ship*, 190 B.R. 595, 598 (N.D. Ill. 1995).

In *In re Adelphia Commc'ns Corp.,* 361 B.R. 337 (S.D.N.Y. 2007), the court acknowledged that it is the majority view that a risk of mootness, on its own, does not constitute irreparable injury, but it held that the irreparable harm factor may be satisfied if denying a stay pending appeal risked "mooting *any* appeal of *significant* claims of error." *Id.* at 347 (emphasis in original).  Even applying this more lenient standard, PwC has failed to establish that it is entitled to a stay pending appeal.  The SIPA Trustee could pursue the potential claims against PwC if they were not assigned to the Customer Representatives, and a dispute about which party may pursue viable claims does not constitute the type of "*significant* claim of error" referred to by the *Adelphia* court, particularly where the dispute is an obvious delay tactic to prevent a lawsuit from proceeding in the first place.  *See id.* (ordering a stay of the confirmation order of a chapter 11 plan where noteholders with claims valued at approximately $5 billion objected to the plan and denying a stay would permit the plan to be substantially

---

lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." 11 U.S.C. § 363(m).  The relevant claims were assigned pursuant to section 363(b)(1).

5

consummated, thus mooting the noteholders' ability to appeal the confirmation order). Moreover, if PwC prevails on appeal and the District Court finds that the SIPA Trustee's assignment of claims to the Customer Representatives was in error, PwC can move to dismiss any actions filed against it by the Customer Representatives.[2] Or, more likely, the SIPA Trustee could simply move to be added as a plaintiff in the District Court Actions and continue to pursue the claims without delaying the District Court Actions.

*2. PwC Has Not Shown a Substantial Likelihood of Success on the Merits*

PwC has similarly failed to meet its high burden of demonstrating a substantial likelihood of success on the merits. "The 'requisite showing' of substantial possibility of success is 'inversely proportional to the amount of irreparable injury [plaintiff] will suffer absent the stay.'" *Adelphia,* 361 B.R. at 349 (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)). PwC has failed to show it would suffer irreparable injury without a stay and it therefore must "clearly establish" a substantial likelihood of success on the merits. *In re Taub*, 470 B.R. 273, 278 (E.D.N.Y. 2012).

As set forth in detail in this Court's opinion overruling PwC's Limited Objection, the Engagement Letter only prevents the assignment of potential claims against PwC that "arise under" the Engagement Letter, such as breach of contract claims based on the Engagement Letter. *See* Assignment Motion Opinion at 20-21. The claims assigned to the Customer Representatives were based on PwC's potential malpractice as MFGI's auditor. Professionals, such as auditors, who owe a fiduciary duty to act in accordance with certain standards of practice may be subject to tort liability for violating that duty, regardless of any contractual obligation between the parties. *See Sommer v. Fed. Signal*

---

[2] The SIPA Trustee asserted alternative grounds in support of the motion to assign the claims against PwC. The Court did not reach those arguments in approving the assignment. Those alternative grounds would also have to be considered in the event of a reversal.

6

*Corp.,* 79 N.Y.2d 540, 551-52 (N.Y. 1992) ("[I]t is policy, not the parties' contract, that gives rise to a duty of care."). Accordingly, and as this Court previously held, the Assigned Claims arose pursuant to the independent legal duty that PwC owed to MFGI, meaning they did *not* "arise under" Engagement Letter, and the anti-assignment provision therefore did not prevent the SIPA Trustee from assigning the claims.

PwC has not set forth any arguments showing that it is likely to prevail on appeal other than those that were already considered and rejected by this Court. It has therefore failed to "clearly establish" a likelihood of success on the merits.

> 3. *The SIPA Trustee, Customer Representatives and the MFGI Estate Will Suffer Substantial Injury If a Stay is Issued*

As previously explained, the Agreement assigning claims to the Customer Representatives provides many legal and practical benefits to the Estate:

> [It] provides the claims to one set of plaintiffs in one proceeding hopefully eliminating the whipsaw argument otherwise likely to be made in separate proceedings that the claims belong exclusively to the customers and cannot be asserted by the SIPA Trustee, or that the claims belong exclusively to the SIPA Trustee and cannot be asserted by the customers; narrows the risk of inconsistent results; avoids the risk of a "double recovery," with different plaintiffs in multiple cases recovering damages for the same injury; promotes a complete resolution of all claims at one time through settlement or judgment; and is more efficient and cost effective for plaintiffs and defendants. The Agreement provides that the MFGI estate will not have to bear any of the costs of prosecuting the Assigned Claims, thereby reducing expenses of the estate, redounding to the benefit of all creditors (including commodities customers).

Assignment Motion Opinion at 10-11.

Preventing the Customer Representatives from being able to pursue claims against PwC pending the appeal would eviscerate the benefits and efficiencies created by assigning claims to one party for prosecution in one venue. If the Customer

Representatives are not able to simultaneously investigate and prosecute the claims against PwC with the remaining Assigned Claims, the time and cost of pursuing claims against PwC will increase exponentially—the exact result the parties and this Court sought to avoid by creating and enforcing the Agreement. The effect of a stay would increase potential litigation costs and minimize the return to the Estate, causing substantial injury – which could otherwise be avoided – to the SIPA Trustee, the Customer Representatives, and, most importantly, the Estate.

*4. The Public Interest Weighs Against Issuing a Stay*

Lastly, it would not be in the public interest for this Court to issue a stay of enforcement of the Assignment Motion pending PwC's appeal. There is a strong public interest in maximizing the return to creditors in a bankruptcy. *See Toibb v. Radloff*, 501 U.S. 157, 163 (1991). As discussed *supra*, allowing the Customer Representatives to continue pursuing potential claims for the benefit of the Estate, including those against PwC, in one venue and with shared resources, increases efficiencies and decreases litigation costs, therefore maximizing the value of the Estate and the return to its creditors.

### III. CONCLUSION

For the reasons discussed above, PwC's motion for a stay of enforcement of the Assignment Order pending appeal is **DENIED**.

DATED:    November 1, 2012
          New York, New York

                                    ___*Martin Glenn*_____
                                       MARTIN GLENN
                                    United States Bankruptcy Judge

8