**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MF GLOBAL INC.,<br>Debtor. | **FOR PUBLICATION**<br><br>Case No. 11-2790 (MG) SIPA |

**MEMORANDUM OPINION AND ORDER UPHOLDING SIPA TRUSTEE'S
DETERMINATION OF CLAIMS**

*A P P E A R A N C E S:*

HUGHES HUBBARD & REED LLP
*Counsel for James W. Giddens, Trustee for the SIPA Liquidation of MF Global Inc.*
One Battery Park Plaza
New York, New York 10004
By:   James B. Kobak, Esq.
        Christopher K. Kiplok, Esq.
        Gregory C. Farrell, Esq.

PAUL HAMANN
*Pro Se*
511 Beverly Place
Lake Forest, Illinois 60045

VINCENZA DILELLA
*Pro Se*
372 Jefferson Avenue
Staten Island, New York 10306

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Trustee's Motion for an Order Upholding the Trustee's Determination of Certain Commodities Claims and Expunging Related Objections Thereto* (the "Motion," ECF Doc. # 6195). The Motion seeks to resolve eight unsettled objections by commodities customers to the Trustee's determination of their claims. In support, the Trustee filed the Declaration of Erin Diers ("Diers Declaration," ECF Doc. # 6196). Two responses were filed to the motion. The first was filed by Paul Hamann ("Hamann Objection," ECF Doc. #

6262) and the second, a letter, was filed by Vincenza DiLella ("DiLella") on behalf of her deceased husband (ECF Doc. # 6237).  For the following reasons, the Court grants the Motion, upholding the Trustee's determination of claims and expunging the objections of Hamann and DiLella.

## I.    BACKGROUND

On November 23, 2011, the Court entered the Order Granting Trustee's Expedited Application Establishing Parallel Customer Claims Processes and Related Relief ( "Claims Process Order," ECF Doc. # 423), which *inter alia*, approved the procedures for filing, determining, and adjudicating claims, and established January 31, 2012 as the bar date for filing commodity futures customer claims in the SIPA Proceeding ( "Commodities Claim Bar Date") and June 2, 2012 as the date by which all claims must be received by the Trustee (the "Final Bar Date").  Consistent with SIPA § 78fff- 2(a)(1), 17 C.F.R. § 190.02(b)(4) and (d), and the Claims Process Order, the Trustee provided formal notice of the claims process to more than 74,000 potential customer and general creditor claimants.  Mot. ¶ 9.

Beginning in December, 2011, the Trustee began examining all commodities customer claims.  The Trustee identified several claims that it believed were improperly asserted and notified each of the affected claimants of his determination by a Letter of Determination, which set forth the procedure for filing a written objection if the claimant disagreed with the Trustee's determination and wished to have a hearing before the Court.

The Trustee received a total of 478 objections to his determination of the status of commodities customer claims.  Through further discussions, the Trustee consensually resolved all but approximately fifty commodities claim objections.  This Motion seeks to uphold eight of

2

the Trustee's determinations and expunge objections related thereto. The eight objections are the only remaining objections in each respective category defined below.

A.     **Allowed Commodities Claims**

Paul Hamann ("Hamann") and Dharam Surana ("Surana") are the only two claimants with unresolved "Allowed Commodities Claims." These claimants dispute the Trustee's determination that their claims are commodities customer claims, as opposed to securities claims entitled to a Securities Investor Protection Corporation ("SIPC") advance to make up any shortfall between their net equity claim and their pro rata share of the fund of commodities customer property.

MFGI was both a futures commission merchant ("FCM") and a securities broker-dealer, which are each subject to separate regulatory regimes providing for different customer protections. The Trustee asserts that commodities customers are protected by sections 761–767 of the Bankruptcy Code ("Commodity Broker Liquidation Subchapter") and 17 C.F.R. §§ 190.01–190.10 ("Part 190 Regulations"), whereas securities customers are protected by SIPA. While both SIPA and the Commodity Broker Liquidation Subchapter provide that customers shall share pro rata in a fund of customer property, only securities customers are entitled to an advance from SIPC. *See* SIPA § 78fff-3(a). No similar protection is available for customers of MFGI's commodities business.

*1.   Hamann*

As of the filing date, Hamann held five palladium certificates and $16,389.43 in cash in a commodities account at MFGI, a second empty commodities account, and no securities accounts. Diers Decl. ¶ 11. On December 30, 2011, Hamann asserted a commodities customer claim seeking futures and delivery account class customer property that was held in his commodities

3

account. On the same date, Hamann filed a duplicative securities customer claim seeking return of the same property.

On May 25, 2012, the Trustee issued a determination notice to Hamann allowing his commodities customer claim for $16,389.43 in the futures account class and $341,205.97 in the delivery account class ("Hamann Determination"). *See* Mot, Ex. B at B021-23. The Hamann Determination also noted that Hamann received approximately 72 percent of his net equity commodities claim during the Bulk Transfers. *See id*. at B022.

On June 14, 2012, Hamann filed an objection to the Trustee's determination of his claim ("Hamann Objection," ECF Doc. # 2034). In his objection, Hamann argues, among other things, that he was led to believe his claim was protected by SIPC, and thus should be entitled to SIPA protections. *See* Hamann Obj. at 2.

The Trustee's Motion argues that Hamann was not a securities claimant because, after reviewing MFGI's books and records, Hamann had only two commodities customer accounts— one was empty and the other held five palladium certificates and $16,389 in cash—and no securities accounts.

Hamann filed a response to the Trustee's Motion. Hamann appears to argue that the five palladium certificates in his account—one of which he believes he is still entitled to compensation for at present market rates—constituted a security, as defined under SIPA, entitling him to SIPC protections.[1] Hamann believes he is entitled to the current market value of his fifth palladium certificate that was liquidated by the Trustee.

---

[1] The other four palladium certificates were transferred to Hamann on January 31, 2012, while the fifth was liquidated pursuant to the Third Bulk Transfer Order. Trustee's Reply ¶ 8.

4

The Trustee filed a reply arguing that the Court has already determined, in the context of the Court's approval of a section 363 sale to liquidate former customer property for the purpose of a pro rata distribution among all creditors, that Hamann's palladium certificates are not entitled to SIPA protection. *See In re MF Global Inc.*, 467 B.R. 726, 733-34 (Bankr. S.D.N.Y. 2012) ("Furthermore, Hamann's property is not entitled to protection or insurance under SIPA."). The Trustee also refutes Hamann's contention that he is still owed the present value of his palladium certificate, arguing that Hamann is only entitled to the net proceeds of the sale pursuant to 17 C.F.R. § 190.07(e)(5). The Trustee also notes that the Court approved the liquidation of Hamann's certificate in its prior opinion, overruling Hamann's objection to the Third Bulk Transfer. *MF Global*, 467 B.R. at 728-29.

   2. *Surana*

On January 30, 2012, Surana asserted a securities customer claim for $5,047.55. The Trustee's professionals assert that Surana held three commodities customer accounts—two of which were empty and the other held $5,047.55— and no securities accounts. Diers Decl. ¶ 12. On July 26, 2012, the Trustee issued a notice of determination reclassifying Surana's claim as a commodities customer claim and allowing it for $5,047.55 in the futures account class (the "Surana Determination"). *See* Mot., Ex. C at C005-08. The Surana Determination also noted that Surana received approximately 72 percent of his net equity commodities claim during the Bulk Transfers. *See id.*

On August 9, 2012, Surana objected to the Trustee's determination of his claim ("Surana Objection," ECF Doc. # 2808). In the objection, Surana stated he had not received the above mentioned transfer and also asserted that the cash in his account is "fully protected and guaranteed to be paid in full by [the] Securities Investor Protection Corporation." *See* Surana

5

Obj. at 1. The Trustee's professionals have since contacted Surana and helped him locate the funds that were transferred to him during the Bulk Transfers. The only remaining issue raised in the Surana Objection is whether Surana is entitled to a SIPC advance on the remaining balance of his commodities customer claim.

### B. The Non-MFGI Claims

The Non-MFGI Claims seek customer protection for accounts held with entities other than MFGI.

#### 1. Lenmore

Lenmore Inc. ("Lenmore") submitted a commodities customer claim for $9,779.00 related to an account at MF Global UK Limited ("MFG UK"). Upon the Trustee's review of MFGI's books and records, the Trustee's professionals identified one account that Lenmore held directly with MFGI; however, that account was empty. *See* Diers Decl. ¶13. On July 26, 2012, the Trustee issued a determination denying Lenmore's claim. *See* Mot, Ex. D at D010-13. On August 21, 2012, Lenmore filed an objection ("Lenmore Objection," ECF Doc. # 3072) reasserting its claim and attaching as support an account statement clearly issued by MFGUK. *See* Lenmore Obj. at 2.

#### 2. Southwest Georgia Oil

Southwest Georgia Oil Co. Inc. ("Southwest Georgia Oil") filed a late commodities customer claim for $213,960. The Trustee issued a determination notice denying customer status to the claim but reclassifying it against the general estate. Mot., Ex. E. at E020-22. After an objection was filed by Southwest Georgia Oil (ECF Doc. # 2675) explaining the late filing, and upon further investigation, the Trustee determined the claim was improperly asserted against

6

MFGI. Diers Decl. ¶14. The Trustee believes that the statement submitted by Southwest Georgia Oil lists an account number typical of those held at MFG Market Services. Mot. ¶ 23.

      3. *DiLella*

On October 29, 2012, DiLella submitted a securities customer claim seeking return of $4,122. In support, DiLella attached a statement for a commodities account held in her late husband's name from 1987 issued by GNP Commodities, Inc., an FCM acquired by ED&F Man (a predecessor of MFGI) in 1989.

On November 30, 2012, the Trustee issued a determination notice reclassifying the claim as a commodities customer claim because it appeared to seek the return of property from a commodities account, but also denying the claim as time-barred since it was received after the Final Bar Date. On December 10, 2012, DiLella filed an objection to the denial of her claim ("DiLella Objection," ECF Doc. # 4863). In response to DiLella's Objection, the Trustee's professionals searched MFGI's books and records for accounts held in DiLella's late husband's name or associated with his taxpayer ID number, but did not locate any accounts. *See* Diers Decl. ¶15. DiLella filed a handwritten letter (ECF Doc. # 6237) to the Court merely "requesting a hearing on April 18, 2012."

      **C.**    **The Prepetition Damage Claims**

The Prepetition Damages Claims seek customer protection for losses alleged from wrongdoing by MFGI or its former employees.

      1. *Gorman*

On January 5, 2012, John C. Gorman ("Gorman") asserted a commodity futures customer claim seeking $126,381.84 in damages based on alleged prepetition misconduct by a former MFGI employee. The Trustee's professionals reviewed MFGI's books and records and found

7

that Gorman had an account with MFGI that was empty as of the Filing Date. See Diers Decl. ¶ 16.  On June 4, 2012, the Trustee issued a notice of determination denying the claim.  *See* Mot., Ex. G at G040-43.

On June 26, 2012, Gorman filed an objection ("Gorman Objection," ECF Doc # 2285). In his objection, Gorman argued that he would have had funds in the account but for claims he is asserting against an MF Global employee for lack of disclosure, breach of fiduciary duty, and lack of account supervision.  *See* Gorman Obj. at 1.  The Gorman Objection does not dispute the Trustee's determination that his account was empty as of the filing date, but requests that the determination be postponed until after the Commodities Futures Trading Commission hearing. *See id.*

        2.  *Violetta Azaryan*

On February 6, 2012, Violetta Azaryan ("Azaryan") asserted a commodity futures customer claim seeking $230,000.  The Trustee's professionals reviewed MFGI's books and records and found that Azaryan had an account with a balance of $1,395.20 in the futures account class.  *See* Diers Decl. ¶17.  On August 6, 2012, the Trustee issued a determination allowing the claim for the net equity in the account.  *See* Mot., Ex. H at H027-30.

On August 30, 2012, Azaryan filed an objection ("Azaryan Objection," ECF Doc. # 3247).  Azaryan's objection reiterated that her claim is for $230,000, which is comprised of an initial $30,000 investment provided to MFGI in 2004 and $200,000 in "moral damages."  *See* Azaryan Obj. at 1.  Azaryan does not dispute the Trustee's determination that she is owed $1,395, which is the correct balance of the account, but rather asserts that she is entitled to the entirety of her investment ($30,000) plus $200,000 for moral damages premised on a letter written to Judge Engelmayer titled "Claim."  *See id.* at 2.

8

    **D.**    **The Empty Accounts Claim**

The Empty Accounts Claim seeks customer protection for MFGI accounts that were empty as of the filing date.

    *1.  MSS Futures Fund 1 LP ("MSS")*

On October 1, 2012, approximately eight months after the Commodities Claim Bar Date, and four months after the Final Bar Date, MSS Futures Fund 1 LP ("MSS") submitted a commodity customer claim seeking the return of $638,483.48.  On November 26, 2012, the Trustee issued a determination notice denying MSS' claim as time-barred. *See* Mot., Ex. I at I016-18.

On January 7, 2013, MSS filed an objection to the Trustee's determination alleging that its claim was timely filed ("MSS Objection," ECF Doc. # 5329).  Upon receipt of the MSS Objection, the Trustee's professionals reviewed MFGI's books and records and the MSS Claim and determined that the account claimed by MSS was empty as of the Filing Date.  *See* Diers Decl. ¶18.

        **II.**    **DISCUSSION**

**A.  SIPC Advances**

SIPA section 78fff-3(a) provides:

> In order to provide for prompt payment and satisfaction of net equity claims of *customers* of the debtor, SIPC shall advance to the trustee such moneys, not to exceed $500,000 for each *customer*, as may be required to pay or otherwise satisfy claims for the amount by which the net equity of each customer exceeds his ratable share of customer property . . .

SIPA § 78fff-3(a) (emphasis added).  If "assets are insufficient to compensate 'customers' for their investment losses, each recognized 'customer' can seek to have its remaining losses compensated by the Securities Investor Protection Corporation ('SIPC')—subject to a cap of

9

$500,000 per 'customer'—out of a special fund capitalized by the general brokerage community." *In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422, 426 (2d Cir. 2013).

Section 78lll(2)(A) defines a customer as:

> any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral, security, or for purposes of effecting transfer.

SIPA § 78lll(2)(A). The term customer includes "any person who has deposited cash with the debtor for the purpose of purchasing securities," "any person who has a claim against the debtor for cash, securities, futures contracts, or options on futures contracts received, acquired, or held in a portfolio margining account carried as a securities account pursuant to a portfolio margining program approved by the Commission," and "any person who has a claim against the debtor arising out of sales or conversions of such securities." SIPA § 78lll(2)(A)(i)-(iii). The Second Circuit has identified the "critical aspect" of the customer definition to include "the entrustment of cash or securities to the broker-dealer for the purposes of trading securities." *Madoff Inv. Sec. LLC*, 708 F.3d at 426.

"Whether a creditor will qualify as a 'customer' is construed narrowly." *In re Lehman Bros. Inc.*, 474 B.R. 139, 145 (Bankr.S.D.N.Y. 2012) (citing *In re MV Secs., Inc.,* 48 B.R. 156, 160 (Bankr.S.D.N.Y.1985)). Furthermore, "[i]t is well-established in the Second Circuit that a claimant bears the burden of proving that he or she is a 'customer' under SIPA." *Id*. (quoting *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.),* 277 B.R. 520, 557 (Bankr.S.D.N.Y.2002)). "A claimant must make such a showing on a transaction-by-transaction basis." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 285, 295 (Bankr.

10

S.D.N.Y. 2011), *aff'd*, *In re Aozora Bank Ltd. v. Sec. Investor Prot. Corp.*, 480 B.R. 117

(S.D.N.Y. 2012), *aff'd*, *In re Bernard L. Madoff Inv. Sec. LLC*, 708 F.3d 422 (2d Cir. 2013).

### B. Commodity Broker Liquidation Subchapter and Accompanying Part 190 Regulations

In relevant part, section 761(9) of the Bankruptcy Code provides that a "customer" is:

> (A) with respect to a futures commission merchant--
>
> (i) [an] entity for or with whom such futures commission merchant deals and that holds a claim against such futures commission merchant on account of a commodity contract made, received, acquired, or held by or through such futures commission merchant in the ordinary course of such futures commission merchant's business as a futures commission merchant from or for a commodity contract account of such entity; or
>
> (ii) [an] entity that holds a claim against such futures commission merchant arising out of -
>
>   (I) the making, liquidation, or change in the value of a commodity contract of a kind specified in clause (i) of this subparagraph;
>
>   (II) a deposit or payment of cash, a security or other property with such futures commission merchant for the purpose of making or margining such a commodity contract
>
>   (III) the making or taking of delivery on such a commodity contract . . .

11 U.S.C. § 761(9)(A). Section 190.01(l) of the Code of Federal Regulations incorporates the meaning of a customer defined by section 761(9) of the Bankruptcy Code. 17 C.F.R. § 190.01(l) ("Customer shall have the same meaning as that set forth in section 761(9) of the Bankruptcy Code").

Section 190.08(a)(2)(i) states that customer property will not include "Claims against the debtor for damages for any wrongdoing of the debtor, including claims for misrepresentation or

11

fraud, or for any violation of the Act or of the regulations thereunder." 17 C.F.R. 190.09(a)(2)(i).

### C.    Each of the Claims Has Been Properly Determined by the Trustee

*1. Hamann and Surana*

The Trustee argues that neither Hamann nor Surana have met their burden to establish that they are securities customers under SIPA, especially since MFGI's books and records reflect that each held a commodities account as opposed to a securities account. Furthermore, both have benefited from distributions under sections 761–767 as commodities customers. The Trustee asserts that their objections seeking SIPC advances should be expunged.

Neither Hamann nor Surana have put forth evidence to show they had a valid securities account with MFGI that would entitle them to SIPA protection. Thus, they failed to meet their burden to establish that they are securities customers under SIPA. Both claimants will be entitled to the protections afforded by Commodity Broker Liquidation Subchapter and the Part 190 Regulations up to the value of their commodities accounts at the time of filing.[2]

Furthermore, with regards to Hamann, the Court has already determined, in the context of Hamann's objection to the Trustee's Motion to Approve Section 363 Purchase Agreement in Furtherance of Court-Ordered Bulk Transfers (ECF Doc. # 1147), that Hamann's property is not entitled to protection under SIPA. *See In re MF Global Inc.*, 467 B.R. 726, 733-34 (Bankr. S.D.N.Y. 2012) ("Hamann's property is not entitled to protection or insurance under SIPA. Property qualifying for protection or insurance under SIPA is defined differently from property

---

[2]    Based on recent developments in the two MF Global cases, it appears reasonably likely that all domestic commodities customers of MF Global Inc. will recover the full amount of properly asserted claims.

12

held by an FCM for its commodities customers . . . . Hamann's warehouse receipts fall under the definition of a commodity under the CFTC Regulations and not as a security.")

The Court has also already determined that the Trustee's sale of Hamann's palladium certificates was proper. *See id.* ("Given the broad definition of 'customer property' and the fact that Hamann's warehouse receipts were identified on the books and records of MFGI as of October 31, 2011, Hamann's Physical Customer Property is considered to be property of the MFGI estate, under the Trustee's control, and therefore, eligible for distribution pursuant to the Part 190 regulations."). Under 17 C.F.R § 190.07(e)(5), if property is sold in compliance with applicable statues, rules, and orders of any court with jurisdiction, "its value for purposes of the calculations required by this part shall be the net proceeds of such sale." Thus, Hamann's further contention that he is owed the present value of the certificate is also baseless.

 2. *Lenmore, Southwest Georgia Oil, Dilella, and MSS*

With respect to Lenmore, Southwest Georgia Oil, Dilella, and MSS, the Trustee argues that, pursuant to the Trustee's books and records, these claimants did not have funded commodities accounts with MFGI at the time of the filing, and have failed to prove otherwise. Because the Trustee has no records showing that these claimants had any value in commodities accounts held by MFGI at the time of filing, and because no documents were attached to the claimants' objections to prove otherwise, the Court **UPHOLDS** the Trustee's determination that these claimants should be denied a customer priority under the Commodity Broker Liquidation Subchapter and the Part 190 Regulations.

Lenmore, Southwest Georgia Oil, and MSS did not file a response to this Motion. While DiLella did file a response, she has not provided the Court with any evidence of a commodities

13

claim, aside from a statement from 1987 issued by GNP Commodities, Inc, which had been acquired by a predecessor of MF Global.

   3. *Gorman and Azaryan*

With respect to Gorman and Azaryan, both of whom assert claims based on alleged pre-petition misconduct, the Trustee argues that such claims should not be entitled to customer priority protection under the Commodity Broker Liquidation Subchapter and the Part 190 Regulations because 17 C.F.R. § 190.08(a)(2)(i) specifically excludes claims against MFGI for misconduct and fraud. As Gorman and Azaryan are both asserting misconduct claims on behalf of MFGI and/or its former employees, the Court **UPHOLDS** the Trustee's determination of these claims.

### III.    CONCLUSION

For the reasons explained above, the Motion to uphold the Trustee's claim determinations is **GRANTED** and the objections are **EXPUNGED**.

**IT IS SO ORDERED.**

Dated: April 18, 2013
       New York, New York.

                                        ____*Martin Glenn*_____
                                         MARTIN GLENN
                                         United States Bankruptcy Judge