| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| In re:<br><br>        MF GLOBAL INC.,<br><br>                            Debtor. | Case No. 11-2790 (MG) SIPA |

**MEMORANDUM OPINION AND ORDER DENYING BEDROCK'S MOTION FOR DISTRIBUTION**

*A P P E A R A N C E S:*

FOTIS GEORGIADIS
*Pro se*
23 Twin Lakes Drive
Waterford, CT 06389
By:    Fotis Georgiadis[1]

HUGHES HUBBARD & REED LLP
*Counsel for James W. Giddens, Trustee for the SIPA Liquidation of MF Global Inc.*
One Battery Park Plaza
New York, New York 10004
By:    Marlena Frantzides, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

        Pending before the Court is the *Motion for Distribution* ("Motion," ECF Doc. # 6812),

filed by Fotis Georgiadis, on behalf of Bedrock Ventures, Inc. (together, "Claimants"). The

Motion seeks a distribution from the MFGI estate in the amount of $292,500.00. James W.

Giddens, the Trustee, filed an opposition to the Motion ("Trustee's Opp.," ECF Doc. # 6990). In

support of his opposition, the Trustee also filed the Declaration of Marlena C. Frantzides

---

[1]    At the hearing held on September 12, 2013, the Court informed Mr. Georgiadis that a corporation may only appear in court by counsel. *See* FED. R. BANKR. P. 9010(a). Georgiadis is not a licensed attorney, and, therefore, may not act for Bedrock Ventures, Inc. But as it is not clear whether Georgiadis may hold a claim in his own name, the Court will resolve the issues raised by the Motion on the merits.

("Frantzides Decl.," ECF Doc. # 6991). The Securities Investor Protection Corporation ("SIPC") filed a memorandum of law in support of the Trustee's Opposition ("SIPC Br.," ECF Doc. # 6992). For the following reasons, the Court denies the Motion.

## BACKGROUND

On October 31, 2011 (the "Filing Date"), the Honorable Paul A. Engelmayer, United States District Court Judge for the Southern District of New York, entered an order commencing the liquidation of MFGI pursuant to the provisions of the Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. §§ 78aaa et. seq. On November 23, 2011, the Court entered the *Order Granting Trustee's Expedited Application Establishing Parallel Customer Claims Processes and Related Relief* (the "Claims Process Order," ECF Doc. # 423), which *inter alia*, (i) approved the procedures for filing, determining, and adjudicating claims, and (ii) established January 31, 2012, as the bar date for filing securities customer claims in the SIPA Proceeding (the "Securities Claim Bar Date") and June 2, 2012 as the date by which all claims must be received by the Trustee (the "Final Bar Date").

Bedrock Ventures, Inc. ("Bedrock") was an MFGI securities customer. As of the Filing Date, Bedrock's account at MFGI held cash in the amount of $25,724.50, and 300,000 shares of one security (Dryships Inc., CUSIP Y2109Q101, "Dryships") with a market value of $795,000 as of the Filing Date. *See* Frantzides Decl. at Ex. A. On November 29, 2011, Bedrock submitted a timely securities customer claim, which was assigned claim number 700000033. *See id.* at Ex. B. In its claim, Bedrock asserted that it was entitled to cash in the amount of $25,724.50 and 300,000 shares of Dryships, which it valued as of October 28, 2011 at $870,000. *See id.*

On December 12, 2011, the Court entered the *Order Granting Motion Authorizing the Sale, Transfer and Assignment of Certain Customer Securities Accounts* (the "Securities Transfer

2

Order," ECF Doc. # 718), approving the sale and transfer of approximately 318 active retail securities accounts, comprising substantially all of the securities accounts at MFGI. On December 23, 2011, pursuant to the Securities Transfer Order, Bedrock received $25,724.50 and 300,000 shares of Dryships into its account at Lek Securities Corporation ("Lek Securities"). *See* Frantzides Decl. at ¶ 3; Motion at Ex. A.

On August 22, 2012, the Trustee allowed Bedrock's claim for $820,724.50, the net equity of the cash and Dryships shares in Bedrock's MFGI account on the Filing Date. *See* Motion at 4. On that same day, the Trustee sent a notice of determination (the "Notice of Determination") to Bedrock, informing Bedrock that it would not be receiving any additional property and that it had thirty days from the date of the Notice of Determination to file an objection. *See id.* at 4–5 ("If you disagree with this determination and desire a hearing before Bankruptcy Judge Martin Glenn, you **MUST** file your written opposition . . . within THIRTY DAYS of the date of this notice.") Bedrock did not file any such objection, but Georgiadis filed this Motion on July 22, 2013, seeking additional property from the MFGI estate.

A.    Motion

In the Motion, Georgiadis argues that Bedrock is entitled to recover an additional $292,500.00 from the MFGI estate—the difference between the value of the Dryships shares on the Filing Date ($795,000) and on December 23, 2011 when the shares were transferred into Bedrock's Lek Securities account ($502,500). In the August 22, 2012 Notice of Determination, the Trustee allowed Bedrock's claim based on the Filing Date value of $795,000.00, even though the value had declined to $502,500 on December 23, 2011. *See* Motion at 1. Georgiadis attached the account statement to the Motion. *See* Motion at Ex. A.

3

### B. Trustee's Opposition

In his opposition, the Trustee first argues that "SIPA does not protect customers from market losses suffered between the filing date and the date of the distribution." Trustee's Opp. at ¶ 15. The Trustee relies on *In re Lehman Brothers Inc.*, 433 B.R. 127, 133 (Bankr. S.D.N.Y. 2010), and *In re Adler, Coleman Clearing Corp.*, 195 B.R. 266, 270 (Bankr. S.D.N.Y. 1996); both cases concluded that net equity calculations are based on a customer's account value as of the filing date. The Trustee argues that the value of securities returned to a customer is also determined as of the filing date and that SIPA does not protect from market losses during the pendency of a liquidation. Trustee's Opp. at ¶ 15 (citing SIPA § 78fff-2(b); *Adler*, 195 B.R. at 273–74; *Hill v. Spencer Sav. & Loan Ass'n (In re Bevill, Bresler, & Schulman, Inc.)*, 83 B.R. 880, 892 (D.N.J. 1988)).

Second, the Trustee argues that Bedrock failed to object to the Trustee's determination of its claim within the thirty days after the Notice of Determination, and that this failure constitutes an additional, sufficient ground to deny the motion. *Id.* at ¶ 18.

Third, the Trustee notes that the account in question was held in the name of Bedrock Ventures, Inc., and was not in Georgiadis's name. The Trustee therefore argues Georgiadis violated FED. R. BANKR. P. 9010(a) and the *Amended Order Implementing Certain Notice and Case Management Procedures and Related Relief* (ECF Doc. # 3062) because he is not an attorney and may not represent Bedrock in court. *Id.* at 5 n.2.

Finally, the Trustee disputes Georgiadis's calculation of the difference in value of the Dryships shares between the Filing Date the date of distribution. According to the Trustee, the Claimants' calculation is based on an account statement for December 28—when the value of Dryships shares was lower than on December 23 when the shares were transferred—and includes

4

only the value of 250,000 Dryships shares, not the 300,000 that were distributed. Therefore, the Trustee contends that even if Georgiadis's argument has any legal merit, Bedrock is entitled to less than the full $292,500.00 sought in the Motion. *Id.* at n.3.

### C. SIPC's Brief

In its brief, SIPC states that, where possible, a SIPA trustee should try to return actual securities to claimants. SIPC cites to SIPA § 78fff-2 to show that such securities should be valued as of the filing date. Thus, explains SIPC, when a securities customer receives the securities it held on the filing date, that customer's net equity claim has been satisfied in full, even if the securities have declined in value. *See* SIPC Br. at 3. According to SIPC, "the courts have long recognized that SIPA does not protect customers against a loss in market value that occurs during this period." *Id.* (citing *S.E.C. v. Aberdeen Secs. Co.*, 480 F.2d 1121, 1124 n. 3 (3d Cir. 1973), *cert. denied sub nom. Seligsohn v. S.E.C.*, 414 U.S. 11 (1973); *Adler,* 211 B.R. at 496–97; *Lehman Bros.*, 433 B.R. at 133–35; 1 COLLIER ON BANKRUPTCY ¶ 12.14[1][a] (16th ed. 2013)).

### DISCUSSION

In SIPA proceedings, customer claims are determined by the trustee based on the "net equity" of the claimant's account with the liquidating broker. "Net equity" is determined under SIPA by "calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated, by sale or purchase *on the filing date*" all of the customer's securities positions, less "any indebtedness of such customer to the debtor on the filing date . . . ." SIPA § 78*lll*(11) (emphasis added). "As is clear from the definition, net equity is calculated as of the filing date." *Lehman* 433 B.R. at 133; *see also Adler* 195 B.R. at 270 ("A customer's account is valued as of the date the SIPA liquidation is commenced."); 1 COLLIER ON BANKRUPTCY ¶

5

12.14[1][a] ("SIPA requires, and courts have consistently held, that net equity is calculated as of the filing date.").

Under SIPA, the trustee endeavors to deliver securities to customers holding claims for such securities, rather than the cash equivalent. SIPA § 78fff-2(b). And, "[f]or purposes of distributing securities to customers, all securities shall be valued as of the close of business on the filing date." *Id.* A customer's net equity claim is fully satisfied upon receipt of the securities held on the filing date, regardless of any drop in value of such securities between the filing date and the date of the distribution. SIPA does not protect customers against the diminution in value of the securities. *See Adler*, 195 B.R. at 273 ("Congress did not include compensation for market losses suffered by a customer during the pendency of a SIPA liquidation proceeding within the definition of net equity."); *Bevill Bresler*, 83 B.R. at 892 ("By use of a uniform filing date, SIPA is designed to insulate the calculation of net equity claims and distributions made on the basis thereof from market fluctuation."); 1 COLLIER ON BANKRUPTCY ¶ 12.14[1][a] (stating that "courts have consistently held that SIPA does not protect customers against market loss accruing during the period between the filing date and the date on which a claim is determined or paid, regardless of which way the market has moved").

Customers awaiting distribution of securities in a SIPA liquidation may be hurt by downward market fluctuations; but customers may also benefit from any upward movement in the value of their stock. As explained in Collier:

> This asymmetry is a result of the underlying assumption that customers desire to retain the securities in which they have invested. Accordingly, SIPA exposes the customer to the same risk and rewards that otherwise would exist if the broker-dealer were still in operation, with the exception that, during the period from the filing date to the distribution date, the customer has no power to sell or otherwise dispose of securities to which the customer has a claim.

1 COLLIER ON BANKRUPTCY ¶ 12.14[1][a].

The statute and the case law make clear that both net equity and the value of distributed securities in a SIPA case are calculated as of the filing date. A customer has no claim for a decline in the value of securities between the filing date and the date on which such securities are returned to him. Therefore, because Bedrock received the full contents of its MFGI account, its net equity claim has been satisfied in full. For this reason, Georgiadis has not presented a valid legal argument why he (or Bedrock) is entitled to any additional distribution from the MFGI estate.

Additionally, the Motion was filed well after the thirty day period to object to the Trustee's claim determination. The thirty day time limit was clearly stated in the Notice of Determination. "If a claimant fails to file a written opposition within thirty days of the mailing of the Trustee's determination in accordance with the procedures established by [the Claims Process] Order, or if the claimant fails to appear at a scheduled hearing, then the Trustee's determination shall be final." Claims Process Order at 5. Because no timely objection was filed in this matter, the Trustee's claim determination is considered final.

## CONCLUSION

For the reasons set forth above, the Motion is **DENIED**. The Trustee's counsel shall serve a copy of this Memorandum Opinion and Order on Bedrock and Mr. Georgiadis by first class mail and file an affidavit of service establishing such service.

**IT IS SO ORDERED.**

Dated: Sept 17, 2013
      New York, New York.

                                              ___*Martin Glenn*___
                                                MARTIN GLENN
                                     United States Bankruptcy Judge