**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FOR PUBLICATION**

In re:

            MF GLOBAL INC.,

                                Debtor.

Case No. 11-2790 (MG) SIPA

---

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART KNIGHTHEAD CAPITAL'S MOTION FOR ORDER REQUIRING DISCLOSURE AND APPROVAL OF PAYMENTS TO TRUSTEE'S <u>NON-ATTORNEY PROFESSIONALS</u>

*A P P E A R A N C E S :*

HUGHES HUBBARD & REED LLP
*Counsel for James W. Giddens, Trustee for the SIPA Liquidation of MF Global Inc.*
One Battery Park Plaza
New York, New York 10004
By:    James Kobak, Esq.
        William Maguire, Esq.

QUINN EMANUEL URQUHART & SULLIVAN LLP
*Counsel for Knighthead Capital Management LLC*
51 Madison Avenue
22nd Floor
New York, New York 10010
By:    Susheel Kirpalani, Esq.

SECURITIES INVESTOR PROTECTION CORP.
605 15th Street NW
Suite 600
Washington, D.C. 20005
By:    Christopher Larosa, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

       Knighthead Capital Management LLC ("Knighthead") filed the *Motion for Order*

*Requiring Costs and Expenses of Persons Hired by SIPA Trustee Pursuant to Section 78fff-*

*1(a)(1) of SIPA to be Disclosed and Subject to Court Approval* (the "Motion," ECF Doc.

# 7503).  The Motion is supported by a Memorandum of Law (the "Mem.," ECF Doc. # 7504)

and the Declaration of Susheel Kirpalani (the "Kirpalani Decl.," ECF Doc. # 7505).[1]

Knighthead seeks an order requiring disclosure and court approval of the fees and expenses

incurred by the non-attorney professionals hired by James W. Giddens (the "Trustee"), who

serves as the trustee for the liquidation of MF Global Inc. ("MFGI") under the Securities Investor

Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. § 78aaa *et seq.*  Knighthead is a large

indirect creditor of MF Global Holdings, Ltd. ("Holdings"), a debtor in a chapter 11 proceeding

before this Court, Case No. 11-15059.  On January 15, 2014, Knighthead purchased a $75,000

portion of an allowed claim against MFGI, and two weeks later, Knighthead filed the Motion.

The Trustee filed an opposition (the "Trustee's Opposition," ECF Doc. # 7541), and so did the

Securities Investor Protection Corporation ("SIPC") (the "SIPC Opposition," ECF Doc. # 7539).

Knighthead filed a reply (the "Reply," ECF Doc. # 7568).  The Court held a hearing on February

27, 2014, after which the Court took the matter under submission.

This is the first time in the forty-three year history of SIPA that a creditor of a failed

broker-dealer has asked for this relief.  For the reasons that follow, the Motion is **GRANTED IN

PART** and **DENIED IN PART**.  SIPA does not require court approval of payments to a SIPA

trustee's non-attorney professionals.  Only SIPC need authorize those payments.  But the Court,

in assessing the reasonableness of the Trustee's own fees and expenses, must consider the

Trustee's oversight of his non-attorney professionals.  In that context, the Trustee is required to

---

[1]     Knighthead also filed a Request for Judicial Notice (ECF Doc. # 7506), requesting judicial notice of two interim reports filed by the SIPA trustee in *In re Lehman Brothers Inc.*, Case No. 08-01420 (JMP) SIPA (Bankr. S.D.N.Y.).  The reports are attached to the Request as Exhibits A and B.  The reports are a matter of public record, their contents are relevant to the Motion, and their authenticity is readily verifiable.  No objection was made to this request.  The Court therefore grants the Request for Judicial Notice.  *See, e.g.*, FED. R. EVID. 201(b); *Roe v. Johnson*, 334 F. Supp. 2d 415, 419–20 & n.6 (S.D.N.Y. 2004) ("A court may take judicial notice of a public record pursuant to Rule 201(b).").

disclose the fees and expenses of his non-attorney professionals in this case, with sufficient detail

to enable the Court to assess the reasonableness of the Trustee's fee applications.

## I.    BACKGROUND

Before its bankruptcy, MF Global[2] was one of the world's leading brokerage firms in

markets for commodities and listed derivatives.  The history of MF Global's collapse has been

abundantly covered by the media and fully recounted in previous opinions of this Court.  The

Court will recount only those facts relevant to this Opinion.

On October 31, 2011 (the "Filing Date"), the Honorable Paul A. Engelmayer, of the

United States District Court for the Southern District of New York, entered an Order (the "MFGI

Liquidation Order") commencing the liquidation of MFGI pursuant to the provisions of SIPA in

the case captioned *Securities Investor Protection Corp. v. MF Global Inc.*, Case No. 11-cv-

07750 (PAE).  The MFGI Liquidation Order:  (1) appointed James W. Giddens as the Trustee for

the liquidation of the business of MFGI pursuant to 15 U.S.C. § 78eee(b)(3); (2) appointed

Hughes Hubbard & Reed LLP ("HHR") as counsel to the Trustee pursuant to 15 U.S.C.

§ 78eee(b)(3); and (3) removed the case to this Court pursuant to 15 U.S.C. § 78eee(b)(4).

Under SIPA, this Court has "all of the jurisdiction, powers, and duties conferred by [SIPA] upon

the court to which the application for the issuance of the protective decree was made."  15 U.S.C.

§ 78eee(b)(4).

Within days of the commencement of this SIPA proceeding, "the Trustee transferred

approximately three million open commodity futures contracts, with notional values exceeding

$100 billion, and associated clearing level margin for tens of thousands of accounts, or about 40

percent of the total futures market volume."  (Trustee's First Interim Report, ECF Doc. # 1864,

---

[2]       As used herein, MF Global refers to Holdings, together with all affiliates and subsidiaries, including MFGI.

¶ 15.)  "Within eight weeks of the Filing Date, approximately $4 billion in customer margin had been transferred on a pro rata basis to nearly all former MFGI commodity futures customers, allowing these former customers, during the eighth largest bankruptcy in United States history, to receive a seventy-two cent on the dollar recovery before they had even filed claims."  (*Id.*)

By the one-year mark, the Trustee had:  (1) effected transfers and distributions of billions of dollars of customer property; (2) completed many of his investigative and recovery efforts; (3) substantially completed processing more than 27,000 customer claims—which involved determining the validity of claims and their net equity in accordance with SIPA, the commodity broker liquidation provisions of chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 761–67), and 17 C.F.R. §§ 190.01–190.10; (4) responded to hundreds of third-party document requests, including those by Congress, the Securities and Exchange Commission ("SEC"), the Commodity Futures Trading Commission ("CFTC"), and others investigating MFGI's collapse; and (5) begun processing thousands of general estate claims.  (Trustee's Second Interim Report, ECF Doc. # 4763, at 1–3, ¶¶ 71–72, 106.)

Throughout this SIPA proceeding, the Trustee and HHR have sought compensation through interim fee applications ("Interim Fee Applications").[3]  The Interim Fee Applications— filed periodically by HHR—contain hourly fee breakdowns for both the Trustee and other HHR professionals, including attorneys, paralegals, and litigation support personnel.  For each Interim Fee Application, HHR totals all fees for services rendered and expenses incurred, and then applies a ten percent public interest discount from HHR's standard rates, per SIPC's request. The requested compensation in the Interim Fee Applications reflects this discounted rate in

---

[3]    *See* HHR First Interim Fee Application, ECF Doc. # 1866; HHR Second Interim Fee Application, ECF Doc. # 4270; HHR Third Interim Fee Application, ECF Doc. # 6217; HHR Fourth Interim Fee Application, ECF Doc. # 6456; HHR Fifth Interim Fee Application, ECF Doc. # 7141; HHR Sixth Interim Fee Application, ECF Doc. # 7706.

addition to other fee reductions.  As of the March 14, 2014 filing date for HHR's Sixth Interim

Fee Application, the Court had previously approved $48,074,620.12 in fees and expenses

requested by the Trustee and HHR.  (*See* Summary Sheet, HHR Sixth Interim Fee Application,

ECF Doc. # 7706.)

According to the Trustee, his success in this case, especially during the first year, "would

not have been possible without significant support from the Trustee's teams of accountants and

non-attorney professionals."  (Trustee's Opp. ¶ 53.)  But while the Interim Fee Applications

detail services rendered and expenses incurred by HHR, the Applications do not disclose fees

and expenses incurred by non-attorney professionals hired by the Trustee, such as the accounting

firms of Deloitte & Touche LLP ("Deloitte") and Ernst & Young LLP ("Ernst & Young").  The

Trustee does not submit to the Court separate applications or reports disclosing expenses for

these non-attorney professionals.[4]

Knighthead contends that the fees and expenses paid to the Trustee's non-attorney

professionals in this case are disproportionate compared to other major SIPA liquidations, such

as Lehman Brothers Inc., *In re Lehman Brothers Inc.*, Case No. 08-01420 (JMP) SIPA (Bankr.

S.D.N.Y.).  (Mem. ¶ 10.)  Despite lacking specific information about total administrative

expenses disbursed to date, Knighthead estimated those expenses by reviewing publicly filed

documents.  (*Id.*)  Knighthead asserts that, when compared to *Lehman*,  the costs and expenses of

non-attorney professionals in this case represent a much larger share of both assets marshaled

---

[4]         Not disclosing fees and expenses of non-attorney professionals in this case is a departure from Mr.
Giddens' practice in his capacity as SIPA trustee in the liquidation of Lehman Brothers Inc. ("LBI").  Interim
reports submitted to the court in that case disclose the specific amounts paid to Deloitte, the accounting firm
engaged by Mr. Giddens.  (*See, e.g.*, LBI Trustee's Ninth Interim Report ¶ 81, attached as Ex. A to Kirpalani Decl.)
The court in LBI was not asked to approve, and did not approve, payments to Deloitte or other non-attorney
professionals.

(5.38% vs. 1.08%) and total assets (2.59% vs. 0.20%).[5] (*See id.* at 10, Fig. 1.) Without

additional disclosure, Knighthead argues, it is unclear why these funds are being paid.

Knighthead therefore seeks the entry of an order directing that the fees and expenses of the

Trustee's non-attorney professionals be disclosed in public court filings *and* subject to this

Court's approval.

The Trustee asserts that he has never refused to disclose the administrative expenses

incurred by non-attorney professionals in this case—he simply was not asked. (Trustee's Opp.

¶ 4.) The Trustee's Opposition discloses the total compensation paid to non-attorney

professionals, including to Deloitte and Ernst & Young:

> Through 2013, professional compensation to Deloitte—at highly
> discounted rates negotiated by the Trustee and SIPC—has totaled
> approximately $76 million related almost entirely to accounting, account
> transfers, and claims processing (commodity, securities, and general
> creditor claims, including affiliate claims), and approximately $29 million
> related to technology and systems operating costs . . . .  Approximately
> eighty percent of all Deloitte costs were incurred in the first year of the
> liquidation. . . .  Through 2013, Ernst & Young's fees are approximately
> $39 million.  Approximately $34 million of this total is attributable to the
> long-concluded necessary forensic and analytical work in support of
> producing [a] June 2012 Investigation Report with its extensive flow of
> funds exhibits.  The remainder of Ernst & Young's compensation pertains
> to responses to additional regulatory and third-party requests, and
> managing electronic data storage.

(*Id.* ¶¶ 54–55.)

The Court must decide whether the disclosure of payments to non-attorney professionals

contained in the Trustee's Opposition is sufficient and whether the Trustee should be required to

seek Court approval before making such payments.

---

[5]    Knighthead estimated the total fees paid by the Trustee to non-attorney professionals in this case as
$207,309,162.08.  (Appendix to Mem. at 1.)  The Trustee's Opposition places that number closer to $175 million.
(*See* Trustee's Opp. ¶¶ 54–58.)  The Court is not persuaded by this cross-case comparison of the ratios of fees to
assets, so the exact calculations are not necessary for the decision reached in this Opinion.

## II.    DISCUSSION

The Motion presents an issue of first impression for the Court.  In the forty-three years since SIPA was enacted, and after 328 SIPA liquidations conducted under the statute, SIPC states that Knighthead's Motion is the first of its kind.  (SIPC Opp. at 2.)  The Motion is premised on the interpretation of several SIPA provisions and the interplay between SIPA and the Bankruptcy Code.  Knighthead argues that the Trustee should be required to disclose and seek Court approval of compensation paid to non-attorney professionals because (1) fees and expenses of professionals hired by the Trustee pursuant to 15 U.S.C. § 78fff-1(a)(1) are "allowances" subject to court approval under 15 U.S.C. § 78eee(b)(5); (2) the Trustee has a duty to disclose, and seek court approval of, those fees and expenses under 15 U.S.C. § 78fff-1(b) and 11 U.S.C. § 704; (3) this Court has the power under 15 U.S.C. § 78fff-1(b) to grant the relief requested even if inconsistent with SIPA; and (4) where fees and expenses of professionals hired by the Trustee are to be paid either directly or indirectly from the general estate, court approval should be required pursuant to 11 U.S.C. § 105(a).  The Court rejects each of these arguments to the extent they would require Court approval of payments to the Trustee's non-attorney professionals.  But the Court concludes that to assess the reasonableness of the Trustee's own fees and expenses, the Trustee must disclose payments to non-attorney professionals and the services provided by those professionals.  During the argument of the Motion, the Trustee's counsel acknowledged that requiring disclosure for purposes of evaluating the Trustee's fees is appropriate.  (Feb. 27, 2014 Tr. 48:12–54:5, 62:9–13.)

### A. SIPA Does Not Require Court Authorization for Payment of the Trustee's Non-Attorney Professionals

> 1. *The Trustee's Powers Under SIPA Section 78fff-1(a)(1) Are Not Limited by Section 78eee(b)(5)*

SIPA section 78fff-1(a), titled "Trustee powers," provides that "[a] trustee shall be vested with the same powers and title with respect to the debtor and the property of the debtor . . . as a trustee in a case under Title 11." Under that section,

> a trustee may, with the approval of SIPC but without any need for court approval—
>
> (1) hire and fix the compensation of all personnel (including officers and employees of the debtor and of its examining authority) and other persons (including accountants) that are deemed by the trustee necessary for all or any purposes of the liquidation proceeding . . . .

15 U.S.C. § 78fff-1(a)(1).

Knighthead argues that, while the Trustee is granted authority under section 78fff-1(a)(1) to "hire and fix the compensation" of any persons necessary for the liquidation, the provision does not authorize the Trustee to pay those persons with estate funds. The Trustee disagrees with this reading of the statute and argues that if SIPA granted trustees the power to negotiate compensation under section 78fff-1(a)(1), but not the power to pay that compensation, that would be no power at all. According to the Trustee, Knighthead's position effectively reads "without any need for court approval" out of section 78fff-1(a)(1), which by its clear terms (at least according to SIPC and the Trustee) authorizes the Trustee to make payments to non-attorney professionals.

Knighthead contends that Bankruptcy Code sections 327, 328 and 330 support its argument. According to Knighthead, the Bankruptcy Code treats the hiring and fixing of compensation as distinct from the allowance and payment from the general estate of such

compensation.  *Compare* 11 U.S.C. §§ 327, 328, *with* 11 U.S.C. §§ 330, 503.  Knighthead asserts

that these concepts should also be treated as distinct under SIPA.  (Mem. ¶ 4.)

As the Court explains below, the legislative history and statutory framework of SIPA

make clear that Congress intended section 78fff-1(a)(1) to grant the Trustee authority, with the

approval of SIPC, to fix the compensation of *and* pay non-attorney professionals.  The

Bankruptcy Code is therefore of limited utility in interpreting that provision, since the

Bankruptcy Code is applicable only to the extent not inconsistent with SIPA.  *See* 15 U.S.C.

§ 78fff(b).[6]

Knighthead also argues that requests for payment or reimbursement of the fees and

expenses of professionals who provide services to a SIPA trustee must comply with the

requirements of SIPA section 78eee(b)(5).  Section 78eee(b)(5), which establishes the process

for "Compensation for services and reimbursement of expenses," states, in relevant part:

(A) Allowances in general

> The court shall grant reasonable compensation for services rendered
> and reimbursement for proper costs and expenses incurred (hereinafter
> in this paragraph referred to as 'allowances') by a trustee, and by the
> attorney for such a trustee, in connection with a liquidation
> proceeding. . . .

(B) Application for allowances

---

[6]     Analysis of a separate but related argument advanced by Knighthead bolsters the Court's holding that section 78fff-1(a)(1) grants trustees the authority to pay non-attorney professionals out of the general estate. Immediately following that provision, SIPA authorizes trustees to utilize SIPC employees. *See* 15 U.S.C. § 78fff-1(a)(2).  The power to pay those SIPC employees out of the general estate is explicitly authorized in a separate section of SIPA, but that section omits mention of non-attorney professionals. *See id.* § 78fff(e).  Knighthead contends that the Trustee must therefore find the power to pay non-attorney professionals in a different provision of SIPA—the section dealing with payment of the Trustee and his counsel. *See id.* § 78eee(b)(5)(E).  The Court disagrees.  Section 78fff-1(a) specifically grants trustees the authority to "hire and fix the compensation" of non-attorney professionals, but does not use similar language when it authorizes trustee retention of SIPC employees. *Compare* 15 U.S.C. § 78fff-1(a)(1), *with* 15 U.S.C. § 78fff-1(a)(2).  Congress therefore, in a separate provision, explicitly authorized payments to SIPC employees out of the general estate, but did not do so for payments to non-attorney professionals—the language "hire and fix the compensation" embedded in section 78fff-1(a)(1) was sufficient to grant trustees the authority to pay their non-attorney professionals out of the general estate.

9

> *Any person* seeking allowances shall file with the court an application
> which complies in form and content with the provisions of Title 11
> governing applications for allowances under such title. . . .

(C) Recommendations of SIPC and awarding of allowances

> Whenever an application for allowances is filed pursuant to
> subparagraph (B), SIPC shall file its recommendation with respect to
> such allowances with the court prior to the hearing on such application
> and shall, if it so requests, be allowed a reasonable time after such
> hearing within which to file a further recommendation.  In any case in
> which such allowances are to be paid by SIPC without reasonable
> expectation of recoupment thereof as provided in this chapter and there
> is no difference between the amounts requested and the amounts
> recommended by SIPC, the court shall award the amounts
> recommended by SIPC.  In determining the amount of allowances in
> all other cases, the court shall give due consideration to the nature,
> extent, and value of the services rendered, and shall place considerable
> reliance on the recommendation of SIPC

*Id.* § 78eee(b)(5)(A)–(C) (emphasis added).

Knighthead contends that the use of the words "any person" in subsection (B) indicates

that the requirements of section 78eee(b)(5) apply not only to the Trustee and his counsel, but

also to the Trustee's non-attorney professionals.  SIPC and the Trustee disagree.  They argue that

the language "any person" is a vestige of an earlier version of the statute, possibly left in current

section 78eee(b)(5)(B) to allow for the compensation of certain professionals that may have

played a pre-commencement role in the broker-dealer's liquidation.[7]  The Trustee maintains that

this language in section 78eee(b)(5)(B) was in no way meant to override the specific provision in

---

[7]      Before the commencement of a SIPA liquidation, a SIPC-member may have already been the subject of
another proceeding, and the broker-dealer's estate may have been administered by a third party such as a court-
appointed receiver.  *See* 15 U.S.C. § 78eee(b)(2)(B) (providing for a stay of other proceedings during the pendency
of SIPC's application for a protective decree); *id.* § 78eee(b)(1)(B) (stating that the pendency of a proceeding in
which a receiver, trustee, or liquidator has been appointed for the debtor is grounds for commencement of a SIPA
liquidation).  According to the Trustee and SIPC, Congress therefore included the language of "any person" in
section 78eee(b)(5)(B) to bring the compensation of non-trustee liquidation administrators within the scope of that
section and allow such persons to seek compensation after the commencement of the SIPA proceeding.

section 78fff-1(a)(1) dealing with payment of the Trustee's non-attorney professionals.  The

Court agrees with the Trustee.

           a.    <u>The Legislative History Supports the Trustee's Reading of the Statute</u>

SIPA establishes two separate systems for the compensation of persons who have

rendered services to a SIPA estate—one applicable to the SIPA trustee and the trustee's counsel

(section 78eee(b)(5)), and the other applicable to non-attorney professionals engaged by the

trustee (section 78fff-1(a)(1)).  In section 78eee(b)(5), Congress expressly divided between SIPC

and the bankruptcy courts responsibility for approving compensation of a SIPA trustee and his

counsel.  *See* 15 U.S.C. § 78eee(b)(5).  SIPC conducts a review of those requests and makes a

recommendation to the court.  The court then either follows SIPC's recommendation (in cases

where compensation will be paid by SIPC) or places considerable reliance on that

recommendation (in cases where funds will come from the general estate).  *See id.*  But Congress

did not provide for similar court oversight in the payment of non-attorney professionals under

section 78fff-1(a)(1), choosing instead to place this responsibility solely in the hands of SIPC.[8]

*See* 15 U.S.C. § 78fff-1(a)(1).  That section operates independently of section 78eee(b)(5), and

the legislative history makes clear that Congress did not intend to impose the requirements of

section 78eee(b)(5) on section 78fff-1(a)(1).

---

[8]     This is consistent with other areas of the SIPA liquidation process, over which Congress granted SIPC exclusive oversight and supervision.  For example, SIPC has the exclusive authority to select the persons who will serve as the trustee and counsel in a SIPA liquidation, subject only to a court's finding of disinterestedness, 15 U.S.C. § 78eee(b)(3) and (6), *In re MF Global Inc.*, 464 B.R. 594, 596–97 (Bankr. S.D.N.Y. 2011); a SIPA trustee may sell or otherwise transfer the accounts or customer property allocable to securities customers to another SIPC-member broker-dealer with the prior approval of SIPC, but without any obligation to secure approval from either the presiding bankruptcy court or the affected customer, 15 U.S.C. § 78fff-2(f); and a SIPA trustee may also "margin and maintain" customer securities accounts "with the approval of SIPC but without any need for court approval," 15 U.S.C. § 78fff-1(a)(3).

i.      *The Use of "Any Person" in Section 78eee(b)(5)(B) Does Not Include
Non-Attorney Professionals Dealt With in Section 78fff-1(a)(1)*

SIPA's legislative history confirms the position taken by SIPC and the Trustee that "any person" in section 78eee(b)(5)(B) does not include non-attorney professionals addressed in section 78fff-1(a)(1).  Congress added section 78eee(b)(5) as part of its 1978 revision of SIPA. *See* Securities Investor Protection Act Amendments of 1978, Pub. L. No. 95-283, § 7(b), 92 Stat. 249, 257 (1978) ("1978 SIPA Amendments").  As originally enacted, section 78eee(b)(5) included a separate subsection—interposed between current subsections A and B—providing for "allowances" for a referee in bankruptcy or a special master.[9]  *Id.*  To bring referees and special masters, among other administrators, within the scope of section 78eee(b)(5), Congress made the compensation procedures specified in that section applicable to "any person," not just the trustee and counsel.

When Congress enacted the Bankruptcy Code later in 1978, it eliminated the original subsection (B) to section 78eee(b)(5)—since the Code does not provide for bankruptcy referees or special masters—but retained the reference to "any person" in the procedures subsection of section 78eee(b)(5) (currently subsection (B)).  *See* Enactment of Title 11 of the United States Code, Pub. L. No. 95-598, § 308(f), 92 Stat. 2549, 2674–75 (1978).  SIPC suggests that this could have been an oversight.  (SIPC Opp. at 7.)  But it also may be that Congress wanted to provide a mechanism within the framework of the statute to compensate professionals, aside

---

[9]      That section stated as follows:

> (B)  Allowances to referee in bankruptcy of special master.—In the event a proceeding has been referred to a referee in bankruptcy or special master, the district judge may grant reasonable allowances to such referee in bankruptcy or a special master, in the manner provided for in a case filed under chapter X of the Bankruptcy Act, as now in effect or as amended from time to time.

Securities Investor Protection Act Amendments of 1978, Pub. L. No. 95-283, § 7(b), 92 Stat. 249, 257 (1978).

from the trustee, who played a pre-commencement role in the administration of the debtor's

estate, *e.g.*, an equity receiver appointed at the request of the SEC.  Whatever the reason for its

inclusion, it is clear from this legislative history that, although seemingly broad, "any person" in

section 78eee(b)(5)(B) was never meant to encompass payment to non-attorney professionals for

their work during a SIPA liquidation, which is addressed in a different provision of the statute.

Knighthead relies heavily on *In re Lloyd Sec., Inc.*, 163 B.R. 242 (Bankr. E.D. Pa. 1994)

("*Lloyd I*"), *aff'd in part & rev'd in part*, 183 B.R. 386 (E.D. Pa. 1995) ("*Lloyd II*"), *aff'd*, 75

F.3d 853 (3d Cir. 1996) ("*Lloyd III*"), to support its argument that "any person" in section

78eee(b)(5)(B) should be read broadly, encompassing all professionals, not just trustees and their

counsel.  But while the *Lloyd* line of decisions acknowledged that "any person" could include

others besides trustees and their counsel, it did not hold that a trustee's non-attorney

professionals were also included within that language.  In *Lloyd I*, the bankruptcy court found

that customers of a failed broker-dealer were "conceivably eligible" for compensation of their

attorneys' fees and costs as allowances under section 78eee(b)(5).  *Lloyd I*, 163 B.R. at 245.  But

before receiving any attorneys' fees, the customers would need to satisfy either Bankruptcy Code

section 503(b)(3)(D) or 506(c).  *Id.* at 245, 255.  The bankruptcy court found that the customers

were entitled to some of the attorneys' fees, but only under section 506(c).  *Id.* at 258.  On

appeal, the district court agreed that the customers had failed to meet the standards for

compensation under 11 U.S.C. § 503(b)(3)(D).  *Lloyd II*, 183 B.R. at 395–97.  But the district

court found that the bankruptcy court had erred when it applied Bankruptcy Code section 506 to

a SIPA proceeding, reversing the bankruptcy court's award of compensation.  *Id.*  The Third

Circuit affirmed the district court's judgment.  *Lloyd III*, 75 F.3d at 855.

13

The issues decided in the *Lloyd* opinions centered on a request for compensation by customers of the failed broker-dealer in that case—not (as in this case) by the SIPA trustee's non-attorney professionals.  Although the courts in that case held that customers could conceivably be included in the language of "any person" under 78eee(b)(5)(B)—and were therefore subject to the requirements for compensation under that section—it does not follow that "any person" literally means any person seeking compensation through the statute.  Specifically, because compensation for the trustee's non-attorney professionals is explicitly covered by section 78fff-1(a), it would make no sense for that compensation to be subject to section 78eee(b)(5)'s strictures.  This reading of the statute comports with the legislative history recounted above.  Further, accepted principles of statutory interpretation dictate that a court should not rely on a more general provision of a statute when a specific provision mandates a contrary interpretation.  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) ("To eliminate the contradiction, the specific provision is construed as an exception to the general one.") (citing *Morton v. Mancari,* 417 U.S. 535, 550–51 (1974)); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384–85 (1992) (stating that "it is a commonplace of statutory construction that the specific governs the general") (citations omitted).  Accordingly, the Court holds that "any person" in section 78eee(b)(5)(B) is broader than just trustees and their counsel, but does not include a trustee's non-attorney professionals, explicitly addressed in section 78fff-1(a).[10]

---

[10]    SIPC concedes the point that "any person" encompasses persons other than the SIPA trustees and their counsel.  (SIPC Opp. at 12 n.3.)  But the issue before the Court is whether "any person" encompasses non-attorney professionals retained by the Trustee.  SIPC argues that it does not, and the Court agrees.  But that is not to say that a SIPA trustee is precluded from seeking, on his own initiative, court approval of the fees paid to his non-attorney professionals.  The section governing compensation to such individuals merely states that the trustee *may* pay their compensation without court approval.  15 U.S.C. § 78fff-1(a)(1).  And, as Knighthead points out, the SIPA trustee in *Lloyd* did in fact seek court approval for fees of his accounting firm, which the bankruptcy court approved based on

> ii.     *Section 78fff-1(a) Grants the Trustee the Authority to Pay Non-*
> *Attorney Professionals out of Estate Funds*

Knighthead also argues that section 78fff-1(a)(1)—which grants trustees the authority to hire professionals and fix their compensation—does not authorize trustees to pay those professionals from estate funds without court approval. But the legislative history makes clear that Congress granted SIPA trustees the authority to pay the compensation of non-attorney professionals from estate funds under section 78fff-1(a)(1) by empowering trustees to "hire and fix the compensation" of those professionals.

Congress enacted the predecessor to section 78fff-1(a)(1) as part of section 6(b) to the original 1970 version of SIPA, and the language of that section is nearly identical to current section 78fff-1(a)(1). *See* Securities Investor Protection Act of 1970, Pub. L. No. 91-598, § 6(b)(1)(A), 84 Stat. 1636, 1647 (1970) ("1970 Act"). In 1974, SIPC created a special task force (the "Task Force") to study possible amendments to SIPA, including section 6(b) of the 1970 Act. (SIPC Opp. at 9.) In its report, the Task Force proposed amending section 6(b)(1) of the 1970 Act to eliminate the differences between the provisions governing the compensation of SIPA trustees and their counsel and those governing the compensation of non-attorney professionals. In making this recommendation, the Task Force noted that:

> At present, the [1970] Act contains an anomaly in that accountants may be compensated without court approval, while trustees and their counsel must seek court approval for their compensation and must carry time on their books for long periods without compensation.

*Securities Investor Protection Act Amendments of 1975: Hearings on H.R. 8064 Before the Subcomm. on Consumer Protection and Finance of the H. Comm. on Interstate and Foreign Commerce*, 94th Cong. 78 (1975) (Report to the Board of Directors of the

---

the recommendation of SIPC. *Lloyd I*, 163 B.R. at 252. But nothing in the statute required the trustee to seek that approval.

Securities Investor Protection Corporation of the Special Task Force to Consider Possible
Amendments to the Securities Investor Protection Act of 1970) at 78.

Also before the 1978 SIPA Amendments, a string of decisions were issued in one case,
recognizing the power of a SIPA trustee to pay non-attorney professionals without court
approval. *See Securities Investor Protection Corp. v. Charisma Securities Corp.*, 352 F. Supp.
302, 307 (S.D.N.Y. 1972) ("*Charisma I*"); *Securities Investor Protection Corp. v. Charisma
Secs. Corp.*, 371 F. Supp. 894, 899 (S.D.N.Y. 1974) ("*Charisma II*"), *aff'd*, 506 F.2d 1191 (2d
Cir. 1974) ("*Charisma III*"). In *Charisma I*, 352 F. Supp. at 307, the court stated that fees for
accountants employed by SIPA trustees are not subject to court approval, signaling different
treatment under SIPA than under chapter X of the Bankruptcy Act of 1898. The court explained
that "[t]he fees for such services are paid directly by SIPC and there is no requirement that the
amounts thereof be passed upon or approved by the Courts . . . ."[11] *Id.* In *Charisma II*, the court
once again recognized that compensation of accounting professionals in a SIPA case was not
subject to court review, but expressed disagreement with SIPA's departure from the Bankruptcy
Act's requirement that *all* expenses be subject to court approval. *Charisma II*, 371 F. Supp. at
899 (noting this departure as an example of "the probable need for legislative readjustment of the
SIPA and the functions of its administrators"). The Second Circuit affirmed the *Charisma II*
decision. *Charisma III*, 506 F.2d at 1196.

When Congress enacted the revised SIPA, it adopted the language of section 6(b) of the
1970 Act with no meaningful change, despite the recommendations of the Task Force and the

---

[11]      Contrary to Knighthead's contention, this holding of *Charisma I* was not premised on the fact that the
accountants were being paid by SIPC, rather than the general estate. The court explicitly held that it had a duty to
review the fees and expenses of the trustee and his counsel, which were also being paid by SIPC in that case.
*Charisma I*, 352 F. Supp. at 307 (stating that it was not "the congressional intent to utilize the fund created to
salvage the interest of misused customers to pay lucrative fees beyond the criteria generally employed in awards
under Chapter X" of the Bankruptcy Act).

*Charisma* court.   And although Congress also enacted current section 78eee(b)(5) as part of the

same legislation, Congress made no effort to link the two provisions or to indicate that the

specific grant of authority in section 78fff-1(a)(1) was in any way restricted by the general

compensation provisions in section 78eee(b)(5).   Since Congress previously had been advised of

the scope of the predecessor to section 78fff-1(a)(1), that silence shows that Congress agreed

with the interpretation of the statute reached by the Task Force and the *Charisma* court.   *See*,

*e.g.*, *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (stating the axiom of statutory

construction that, when Congress enacts a statute, it is presumed to do so with full knowledge of

existing law).   Even without this rule of statutory interpretation, the Court sees no reason to

disagree with the conclusions reached by the Task Force and the *Charisma* court.

Thus, the Court holds that section 78fff-1(a)(1) grants the trustee the authority to pay

non-attorney professionals without court approval.   That section provides for a different form of

oversight than section 78eee(b)(5), which applies to payments to trustees and their counsel, and

which requires court approval.   This holding is consistent with the other provisions of section

78fff-1(a), which authorize a SIPA trustee, without court approval, to "utilize SIPC employees

for all or any purposes of a liquidation proceeding" and to "margin and maintain customer

accounts."   *See* SIPA § 78fff-1(a)(2) and (3).   Nothing in any other part of SIPA suggests that,

notwithstanding this authorization, the trustee must still secure court approval for those activities.

Congress's decision to pair the trustee's authority to "hire and fix the compensation" of non-

attorney professionals with two other activities that unequivocally may proceed without court

approval indicates that Congress intended the trustee's compensation authority to be equally

unconstrained.   Likewise, section 78fff-1(a)(1) itself includes the authority to hire and fix the

compensation of not only accountants, but "of all personnel (including officers and employees of

the debtor and of its examining authority) . . . ."  15 U.S.C. § 78fff-1(a)(1).  It is clear that

payments to a debtor's officers and employees do not require court approval; neither should

payments to other non-attorney professionals.

The reduced degree of court oversight in SIPA proceedings is also consistent with

Congressional policy underlying the statute.  Requiring only SIPC authorization allows a trustee

to act quickly and efficiently to return customer property and make customers whole, and avoids

costly, duplicative layers of review.  As explained by SIPC, this system of "expedited review has

enabled SIPA trustees to attract the best available non-attorney talent and to operate with the

speed often critical in SIPA liquidations."  (SIPC Opp. at 1.)  Indeed, Congress has reiterated and

reemphasized the importance of trustee flexibility and efficiency since SIPA's enactment.  *See*

H.R. Rep. No. 95-746, at 22–23 (1977) (explaining that the stated goals of the 1978 SIPA

Amendments included to "reduce administrative expenses where possible and add speed and

flexibility"; "minimize[e], in specific situations, excessive reliance on judicial procedures"; and

"expedite the liquidation by minimizing cumbersome administrative procedures which have

proven to be time-consuming and by eliminating certain procedures which have proven to be

unnecessary").

      b.      <u>The Trustee Does Not Have Unfettered Authority to Make Payments</u>

Knighthead suggests that if the Trustee were truly allowed under section 78fff-1(a) to

compensate non-attorney professionals without court approval, such unchecked discretion could

lead to misuse and abuse at the expense of the general estate.[12]  But what Knighthead ignores is

that any payments made by the Trustee, even if not subjected to court scrutiny, are still subject to

---

[12]      Under SIPA, "[a]ll costs and expenses of administration of the estate of the debtor and of the liquidation
proceeding shall be borne by the general estate of the debtor to the extent it is sufficient therefor . . . ."  15 U.S.C.
§ 78fff(e).  Thus, where possible, the trustee's personnel are compensated out of the general estate.

review and approval by SIPC.  The Trustee does not have free reign to incur unreasonable

expenses or to pay his non-attorney professionals as he alone sees fit.[13]  Rather, (as the Court has

often observed in approving interim fee applications) SIPC takes its responsibility in reviewing

fee applications very seriously and engages in a detailed, multi-level review.  (SIPC Opp. at 1.)

In overseeing a SIPA liquidation, SIPC performs the role that would normally be performed by

the United States Trustee in a bankruptcy case, including conducting a thorough review of all fee

requests.  SIPC's role is particularly appropriate in the fee review process because SIPC is often

the creditor with the largest financial stake in the liquidation due to its advancement of funds and

duty to pay administrative expenses if the general estate is not sufficient.  And as an additional

stopgap, SIPC itself is subject to oversight by Congress and the SEC.[14]  *See* 15 U.S.C.

§ 78ggg(c).

    The bulk of the work performed by the Trustee's non-attorney professionals was

completed in the early stages of this proceeding, assisting the Trustee in numerous time-

sensitive, labor intensive tasks that included:  (1) reviewing and reconciling MFGI's books and

records; (2) assessing the estate's liabilities to customers and other creditors; (3) arranging for

the transfer of customer accounts and assets; and (4) tracing MFGI's disposition of customer and

other property.  (*See* SIPC Opp. at 2.)  In this case, the general estate happens to be sufficient to

cover all administrative expenses and costs.  But no one could have predicted this outcome at the

commencement of the proceeding; it was far from clear on the Filing Date whether there would

be enough money in the estate to pay back customers, let alone to administer the case.

---

[13]     As explained below, the Court will consider the fees and expenses of the Trustee's non-attorney
professionals in considering the reasonableness of the Trustee's own compensation.

[14]     The Court is unpersuaded by Knighthead's argument that the regulatory oversight of SIPC's actions is
insufficient.  (*See* Reply ¶¶ 19–21.)  Even if the system of oversight set up by the statute was flawed, any change to
that system would need to come from Congress, not the Court.

At the request of SIPC and the Trustee in this case, the Trustee's non-attorney consultants agreed to significant reductions in their customary rates of compensation to reflect the public interest nature of this assignment.  Further, SIPC states that it "has reviewed the invoices submitted by these professionals with its customary care and thoroughness, and has negotiated further reductions in many of these invoices."  (SIPC Opp. at 2.)  The Court is satisfied that the interests of the general estate are protected by SIPC's careful review of all fees in this case.

2.      *The Fees and Expenses of the Trustee's Non-Attorney Professionals Are Not Costs and Expenses Incurred by the Trustee Under Section 78eee(b)(5)(A)*

Knighthead argues that even if non-attorney professionals hired by the Trustee were not required to independently seek court approval for allowances under 15 U.S.C. § 78eee(b)(5), the fees and expenses of these professionals would nonetheless be costs and expenses of the Trustee that are expressly subject to section 78eee(b)(5).  Section 78eee(b)(5)(A) requires the Trustee to provide sufficient details concerning expenses, in accordance with Bankruptcy Code section 330, so that a court can determine whether the expenses were "actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).  Thus, notwithstanding the Trustee's authority to "hire and fix the compensation" of his professionals, Knighthead contends that the fees and expenses of those persons should be considered costs and expenses of the Trustee under SIPA section 78eee(b)(5)(A).  Knighthead argues that the Court should review these expenses pursuant to section 78eee(b)(5)(C) since all costs and expenses will be paid out of the general estate.

Interpreting section 78eee(b)(5)(A) in that manner would contravene Congress's intent not to alter the scope of the trustee's authority to "hire and fix the compensation" of non-attorney professionals under section 78fff-1(a)(1).  Further, under established rules of statutory construction, the mandate of the specific provision must prevail over the provision of general applicability.  *See*, *e.g.*, *RadLAX*, 132 S. Ct. at 2071.  Therefore, the general compensation

20

provisions of section 78eee(b)(5) cannot override the specific exemption from those provisions embodied in section 78fff-1(a)(1).

### 3.    *Bankruptcy Code Section 503(b) Does Not Apply*

The Bankruptcy Code applies in SIPA proceedings only to the extent it is not inconsistent with SIPA.  15 U.S.C. § 78fff(b) ("To the extent consistent with the provisions of [SIPA], a [SIPA] liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of Title 11."). Knighthead contends that if, as the Court holds, the requirements of section 78eee(b)(5) do not apply to a SIPA trustee's non-attorney professionals, then SIPA lacks a provision dealing directly with payment of those professionals, and the general requirements of Bankruptcy Code section 503(b) would therefore govern.  This argument fails because it assumes that section 78fff-1(a)(1) does not grant the Trustee the authority to compensate his non-attorney professionals.  As explained above, however, section 78fff-1(a)(1) grants precisely that power. General provisions of the Bankruptcy Code are therefore inapplicable in this regard.

### 4.    *This Court Does Not Have the Power under 15 U.S.C. § 78fff-1(b) to Grant the Relief Requested to the Extent Inconsistent With SIPA*

Knighthead also argues that even if the Court were to find that section 78fff-1(a) authorized the Trustee to pay his non-attorney professionals without seeking Court review or approval, the Court still has the express authority under SIPA to grant the relief sought. Knighthead relies on SIPA section 78fff-1(b), titled "Trustee duties," which states:  "To the extent consistent with the provisions of [SIPA] *or as otherwise ordered by the court*, a trustee shall be subject to the same duties as a trustee in a case under chapter 7 of Title 11 . . . ."  15 U.S.C. § 78fff-1(b) (emphasis added).  Based on the language "or as otherwise ordered by the court," Knighthead argues that the Court can impose any additional duties of a chapter 7 trustee

upon the SIPA trustee, even if inconsistent with other provisions of SIPA, including the duty to disclose and seek court approval of non-attorney professionals' fees.

The context in which that language appears warrants the opposite inference. The introductory paragraph of section 78fff-1(b) otherwise restricts when a SIPA trustee is bound by the same duties as a chapter 7 trustee, stating that a SIPA trustee has the same duties as a chapter 7 trustee, only "to the extent consistent with" SIPA. *See id.* § 78fff-1(b). Likewise, the statute dictates that a SIPA trustee has chapter 7 duties unless "otherwise ordered by the court"; *i.e.*, unless the court elects to relieve the trustee of those duties. *Id.* At most, section 78fff-1(b) empowers the court to restrict or eliminate duties otherwise imposed upon the trustee by the Bankruptcy Code, not to impose new ones. Section 78fff-1(a)—the section dealing with payment to non-attorney professionals—addresses the trustee's "powers," not his "duties," and confers upon the trustee "powers" not otherwise provided by the Bankruptcy Code. Nothing in section 78fff-1(b)—addressing the trustee's "duties"—authorizes the court to restrict the "powers" granted to the trustee in section 78fff-1(a).

5.    *The Court May Not Use Its Power Under 11 U.S.C. § 105(a) to Require Court Approval of Fees and Expenses of Trustee Non-Attorney Professionals, Even When Paid from the General Estate*

Knighthead argues that where, as here, the fees and expenses of professionals hired pursuant to section 78fff-1(a)(1) are to be paid from the general estate, there is an even greater need for court approval. Knighthead contends that this Court should therefore use its equitable powers under 11 U.S.C. § 105(a) to require that fees and expenses of the professionals hired by the Trustee be subject to Court review and approval before disbursements are made from the general estate.

22

But the Court's equitable powers are limited "and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988); s*ee also In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 91–92 (2d Cir. 2003)). Bankruptcy Code section 105 "does not 'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" *Dairy Mart*, 351 F.3d at 92 (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)). This Court cannot use its equitable powers under Bankruptcy Code section 105(a) to "contravene specific statutory provisions." *Law v. Siegel*, No. 12-5196, slip op. at 5, 571 U.S. __ (Mar. 4, 2014). Because the Court has already held that Congress, in section 78fff-1(a)(1), granted authority to the Trustee to pay his non-attorney professionals without seeking Court approval, the Court lacks authority to contravene this Congressional directive. Even if the Trustee had not been granted that power in section 78fff-1(a)(1), there would be no statutory basis for the relief requested, and the Court does not have the power to create substantive rights on its own. To the extent Knighthead seeks an order requiring Court approval of payments to the Trustee's non-attorney professionals, the requested relief has no statutory basis and is contrary to SIPA, so the Court cannot use Code section 105(a) to grant the relief.

**B.      The Trustee Has a Duty Under 15 U.S.C. § 78fff-1(b) and 11 U.S.C. § 704 to Disclose Fees and Expenses Paid to Non-Attorney Professionals; the Court Can Consider Those Fees and Expenses in Connection With the Trustee's Request for Compensation**

Pursuant to SIPA section 78fff-1(b), the Trustee is "subject to the same duties as a trustee in a case under chapter 7 of Title 11," to the extent not inconsistent with SIPA. 15 U.S.C. § 78fff-1(b). In a chapter 7 proceeding, the chapter 7 trustee is required, among other things, to "be accountable for all property received" and "furnish such information concerning the estate and the estate's administration as is requested by a party in interest." 11 U.S.C. § 704(a)(2) and

23

(7).  The duties imposed by Bankruptcy Code section 704 are not inconsistent with any

provisions of SIPA, and the Trustee is therefore obligated to fulfill them.  These provisions

support Knighthead's request for disclosure of information about the services provided and

amounts paid to the Trustee's non-attorney professionals.  Disclosure in this sense does not

necessarily mandate the same detail required in attorney fee applications.  As the Trustee's

counsel argued, there may be some information, *e.g.*, hourly rates and discounts negotiated by

the Trustee and SIPC, that is confidential and entitled to protection from public disclosure.  (Feb.

27, 2014 Tr. 50:4–54:5.)  To be clear, however, the disclosure of payments in paragraphs 54 and

55 of the Trustee's Opposition does not provide sufficient information for the Court to evaluate

the reasonableness of the Trustee's fees.

The Court is also sensitive to Knighthead's argument that without adequate disclosure,

parties in interest are unable to determine the reasonableness of the fees of the Trustee and his

attorneys, and whether objections to applications for approval of those fees are warranted.  The

Court itself, in assessing fee applications filed by the Trustee and his attorneys, must be able to

assess the necessity and reasonableness of the payments made by the Trustee to his non-attorney

professionals.  As the Trustee's counsel acknowledged during argument, the Trustee's

responsibilities include overseeing the work of all his professionals.  (Feb. 27, 2014 Tr. 48:17–

24.)  The Trustee also cannot properly be paid for work that was, *or could have been*, performed

by non-attorney professionals.  *See Charisma II*, 371 F. Supp. at 899–90 (reducing fee award to

SIPA trustee and counsel where review of all services rendered in the case showed that work

done by attorneys was duplicative and could have been performed by non-attorney professionals

working at lower hourly rates).  Thus, in connection with reviewing fee applications of the

Trustee and his counsel, the Court must take into account payments made by the Trustee to his

non-attorney professionals.  *See, e.g., id.* at 897; *see also SEC v. Kelly Andrews & Bradley, Inc.*,

423 F. Supp. 645, 646 (S.D.N.Y. 1976); *SEC v. G.M. Stanley & Co., Inc.*, 424 F. Supp. 1352,

1354 (S.D.N.Y. 1976).  As the Second Circuit found in *Charisma III*, there is no basis for

concluding that Congress intended to limit the role of the Court to assess the fees awarded to

trustees and their counsel in SIPA proceedings.  *Charisma III*, 506 F.2d at 1194 (noting SIPC's

failure "to establish that Congress had the slightest intention to limit the judicial scrutiny of fee

awards to trustees and their counsel under SIPA").  Thus, the portion of the Motion requesting

disclosure of the fees and expenses paid to non-attorney professionals in this case is granted,

subject to resolving the level of detail that must be provided.[15]

---

[15]      The Court has no reason to believe that the Trustee and SIPC have not carefully and prudently exercised
their respective oversight roles in monitoring the work, fees, and expenses of all attorney and non-attorney
professionals.  Mr. Giddens and his team are among the most experienced groups of professionals overseeing SIPA
liquidation proceedings.  The MF Global failure was one of the largest and most complicated in the history of
securities and commodities businesses.  The regulatory firewall intended to keep customer property segregated and
sacrosanct was breached and approximately $1.6 billion of customer property seemingly evaporated in a matter of
days.

         The challenges for Giddens and his team of liquidating the businesses, compensating customers and
creditors, and unraveling the mess left behind by prior management were enormous.  Commodity customer accounts
are not protected by any insurance, so MF Global's commodities and futures customers—both large and small—
faced the very real prospect of very substantial losses.  While the securities and commodities customers in this case
should be repaid in full—something that appeared doubtful at the start of the case—general estate creditors (and
shareholders) stand to suffer very large losses.  Knighthead only recently acquired a general estate claim and it is,
perhaps, least in a position to complain about the costs of administering this case; but every dollar spent on
administration potentially reduces the recovery for general estate creditors.

         The final tally of the costs of the MF Global failure will be difficult to determine, particularly in light of
multiple foreign administration proceedings.  It would make for an interesting business school case study, and
subject of congressional or regulatory review.  Fees and costs for the Trustee and his attorney and non-attorney
professionals already exceed $225 million and will continue to grow, but at a much reduced pace.  Some of the
amounts so far paid to the Trustee, HHR, Deloitte, and Ernst & Young are a substitution for expenses that would
have been incurred in any event by MFGI if the business had not failed.

         Under the SIPA statutory framework, the Court has not been assigned the role of policing and approving all
costs of administration of a SIPA liquidation proceeding.  In requiring disclosure of fees and costs of the Trustee's
non-attorney professionals, and in considering the services they performed and amounts they were paid in the
context of reviewing the Trustee's compensation, the Court has no intention of expanding the role that Congress and
prior court decisions have assigned to it.

### III.    CONCLUSION

Congress divided oversight of SIPA liquidations between the courts and SIPC.  While the Court has a role in reviewing and approving the compensation of the Trustee and his counsel, Congress authorized the Trustee to compensate his non-attorney professionals without court approval.  Only the approval of SIPC is required for those payments.  Therefore, the portion of the Motion requesting an order requiring Court approval of payments to the Trustee's non-attorney professionals is **DENIED**.

The Court is not precluded, however, from requiring the Trustee to disclose the amount of compensation paid to non-attorney professionals and the nature of the services rendered by those professionals.  The Court must be able to review payments made by the Trustee to his non-attorney professionals when assessing the reasonableness of the Trustee's own fee applications. In our adversary system, parties in interest are likewise entitled to disclosure of information about payments to non-attorney professionals necessary to evaluate whether to object to the Trustee's fees.  Some details about the services and compensation arrangements for non-attorney professionals that should be protected from public disclosure may be subject to *in camera* review by the Court alone.  The Court does not expect that the disclosures will be in the form or detail required for fee applications by attorneys.  Therefore, the portion of the Motion seeking an order requiring the Trustee to disclose compensation paid to non-attorney professionals is **GRANTED** to the extent provided herein.

At this time, it is not necessary for the Court to specify the exact parameters of the required disclosure—in the first instance, the Court will rely on the Trustee and SIPC to compile information on the services provided, hours worked and amounts paid to the Trustee's non-attorney professionals, broken down by time periods that mark major milestones in the case, with

26

a narrative summary of the services requested by the Trustee and performed by the non-attorney professionals. The Trustee should also provide an explanation of the oversight of such services carried out by the Trustee or his counsel. The information provided must include sufficient detail to allow for a meaningful review of the reasonableness of the Trustee's (and his counsel's) own request for compensation. Limited redaction to protect confidential information will be permitted in the publicly-filed information, with unredacted information provided to the Court. After receiving the submissions, the Court will determine whether more information is needed. The information should be provided with the Seventh Interim Fee Application (the Sixth Interim Fee Application was filed on March 14, 2014) filed by the Trustee and his attorneys.

> **IT IS SO ORDERED.**

Dated: March 21, 2014
     New York, New York

                             *Martin Glenn*
                             MARTIN GLENN
               United States Bankruptcy Judge