**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FOR PUBLICATION

In re

MF GLOBAL HOLDINGS LTD., *et al.,*

Case No. 11-15059 (MG)
(Jointly Administered)

Debtors.

In re

MF GLOBAL INC.,

Case No. 11-2790 (MG) SIPA

Debtor.

**MEMORANDUM OPINION AND ORDER LIFTING AUTOMATIC STAY TO PERMIT**
**PAYMENTS OF DEFENSE COSTS UNDER CERTAIN INSURANCE POLICIES**

*A P P E A R A N C E S :*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
*Attorneys for Bradley Abelow*
1177 Avenue of the Americas
New York, New York 10036
By:    Arthur H. Aufses III, Esq.

JONES DAY
*Counsel for MF Global Holdings Ltd.,*
*as Plan Administrator*
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
By:    Bruce Bennett, Esq.

222 East 41st Street
New York, NY 10017
By:    Scott J. Greenberg, Esq.

HUGHES HUBBARD & REED LLP
*Attorneys for James W. Giddens,*
*Trustee for the SIPA Liquidation of MF Global Inc.*
One Battery Park Plaza
New York, New York 10004
By:    James B. Kobak, Jr., Esq.

ENTWISTLE & CAPPUCCI LLP
*Co-Lead Counsel for the Customer Representatives*
*in the Customer Class Action*
280 Park Avenue, 26th Floor West
New York, New York 10017
By:    Andrew J. Entwistle, Esq.

BERGER & MOTAGUE, P.C.
*Co-Lead Counsel for the Customer Representatives*
*in the Customer Class Action*
1622 Locust Street
Philadelphia, Pennsylvania 19103
By:    Merrill G. Davidoff, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Once again, former MF Global directors and officers (the "Individual Insureds"[1]) ask the

Court for relief so they can access proceeds of certain directors and officers liability insurance

policies ("D&O Policies") to fund their mounting defense costs on various legal actions.  The

Individual Insureds previously requested access to proceeds of the D&O Policies and to certain

errors and omissions insurance policies ("E&O Policies") to pay for defense costs.  Rather than

give the Individual Insureds unfettered access to the policy proceeds, the Court issued a written

opinion in April 2012 lifting the automatic stay and setting a $30 million limit (the "Soft Cap")

on the amount of policy proceeds that the Insureds could access.  The Court did not determine

whether the policy proceeds were part of the estates of either MF Global Inc. ("MFGI," a debtor

---

[1]    The "Individual Insureds" are Bradley I. Abelow, David P. Bolger, Jon S. Corzine, David Dunne, Eileen S.
Fusco, David Gelber, Martin J.G. Glynn, Edward L. Goldberg, John R. MacDonald, Vinay Mahajan, Edith O'Brien,
David I. Schamis, Robert S. Sloan, and Henri Steenkamp.

in Case No. 11-02790) or MF Global Holdings Ltd. ("MFGH") and its subsidiaries (debtors in

Case No. 11-15059, collectively the "MFGH Debtors").  The answer to that question was far

from clear because the D&O Policies and E&O Policies were not identical and implicated

different property interests.  The requests came early in these bankruptcy cases before it was

clear what claims would or could be made against the insurance proceeds.

The Individual Insureds exhausted the Soft Cap in short order, leading them to ask the

Court to increase the Soft Cap in May 2013.  The Court denied that request without prejudice

because of a pending appeal in the Second Circuit, so the Individual Insureds renewed the

request in April 2014.  After the Second Circuit dismissed the appeal, the Court granted the

Individual Insureds' motion to increase the Soft Cap to $43.8 million, while expressing concern

over the rate at which the policy proceeds were being spent.  Now, the Individual Insureds ask

the Court to hold that proceeds of the D&O Policies—but not the E&O Policies—are not

property of the MFGI or MFGH estates and should not be subject to the Soft Cap any longer.  By

limiting their requests to the D&O Policies, the Individual Insureds have advanced compelling

arguments that the proceeds should not be subject to further bankruptcy court oversight or

limitation.  Additionally, the passage of time has allowed the Court to conclude that MFGI and

MFGH are unlikely to be named in any lawsuits that would give rise to coverage under the D&O

Policies, and similarly, purported MFGI or MFGH indemnification obligations that could give

rise to a claim against the D&O Policies (other than certain claims already filed) are also

unlikely.

The Court remains concerned about the rate at which the proceeds of the D&O Policies

(the "D&O Proceeds") are being spent—more than $48 million in defense costs and expenses

have been incurred so far and not a single deposition has been taken in the MDL proceedings

3

pending in the district court. But the Individual Insureds are entitled to D&O Proceeds in which

MFGI and MFGH have no property interest. The Court therefore **GRANTS** the Motion to allow

payment of D&O Proceeds for all covered claims up to the full Policy amounts, less $13.06

million. That $13.06 million represents the amount MFGH could claim against the D&O

Policies if it pays the indemnification claims of three Individual Insureds (Jon Corzine, Bradley

Abelow, and Henri Steenkamp, the "Indemnification Claimants"), now estimated at $15 million,

and certain additional estimated indemnification claims totaling $560,000 for other claimants

(the "Stipulated Claimants"[2]) in a stipulation with the Plan Administrator that was approved by

the Court (*see* ECF Doc. # 1986, Ex. 1[3]). Payment of those indemnification claims is far from

assured, but the Court granted a motion to estimate the claims at $15 million and also approved

the stipulation (*see* ECF Doc. # 1986); therefore, $15.56 million should be reserved for potential

payment to Indemnification Claimants and Stipulated ClaimantsMFGH seeks to estimate the

Indemnification Claimants' claims at $15 million and the Stipulated Claimants' claims at

$560,000. If MFGH paid those claims in full, it could make a $13.06 million claim against the

D&O Policies (accounting for $2.5 million self-retention provisions in the Policies). So for now,

MFGH has an interest in $13.06 million of the D&O Proceeds, and that portion of the Proceeds

should not be spent absent further relief from the Court.

## I.   <u>BACKGROUND</u>

### A.   **Procedural History**

Pending before the Court is the *Motion of the Individual Insureds to Lift Automatic Stay*

*and Modify Plan Injunction as to Proceeds of Certain MF Global Policies of Directors and*

---

[2]        These Stipulated Claimants are Alison Carnwath, Rick Leesley, Bernard Dan, Ira Polk, Michael
Wiezcorek, Stephen Hood, Michael Stockman, Stephen Grady, Jeremy Skule, Palllavi Rayan, Tracy Whille, Richard
Gill, Thomas Connolly, David Simons, Frederick Demler, and Talha Chaudhry.

[3]        References to "ECF Doc. # ___" refer to filings in Case 11-15059.

*Officers' Liability Insurance* (the "Motion," ECF Doc. # 1956). Certain of the Individual

Insureds seek an order (1) lifting the automatic stay in the MFGI case, and (2) modifying the

Plan injunction (the "Plan Injunction") in the MFGH case regarding D&O Proceeds for the

2011–2012 policy year. The Individual Insureds ask the Court to authorize the insurers to pay

defense costs with the D&O Proceeds and resolve claims consistent with the D&O Policies'

terms. The Individual Insureds previously sought relief regarding D&O and E&O Policies, but

this Motion only seeks relief as to the D&O Policies. The MFGH Plan Administrator filed an

opposition (the "Opp.," ECF Doc. # 1964), joined by the representatives (the "Customer

Representatives") in the class action on behalf of former MFGI commodity customers (ECF Doc.

# 1965) and James W. Giddens (the "SIPA Trustee"), who serves as the trustee for the

liquidation of MFGI under the Securities Investor Protection Act of 1970, as amended ("SIPA"),

15 U.S.C. § 78aaa *et seq.* (ECF Doc. # 1966). The Individual Insureds filed a reply (ECF Doc. #

1974).

   Since November 2011, numerous directors, officers, and employees of MF Global have

been named as defendants in lawsuits filed by securities holders, commodity customers, and

other plaintiffs. Some have also been the subject of various government investigations. (Motion

¶ 8.) Many of the civil actions have been consolidated under the caption, *DeAngelis v. Corzine*,

No. 11 Civ. 7866 (VM) (S.D.N.Y. filed Nov. 3, 2011), pending before Judge Victor Marrero.

(*Id.* ¶ 9.) Today, the principal lawsuits still pending are (1) two securities class actions involving

MFGH-issued securities, (2) a class action brought on behalf of MFGI commodity customers

(the "Customer Class Action"), (3) an action by Sapere CTA Fund L.P. ("Sapere"), an MFGI

institutional trading customer that opted out of the Customer Class Action, (4) a suit by the

MFGH Liquidating Trustee asserting breach of fiduciary duty claims (the "Litigation Trust

Lawsuit"), and (5) a suit by the CFTC alleging violations of the Commodity Exchange Act

(collectively, the pending cases will be referred to as the "Underlying Cases").  Together, the

cases seek to hold the Individual Insureds jointly and severally liable for more than $1 billion in

damages.  (Motion ¶ 10.)

     Before the Petition Date, MFGH obtained a primary D&O Policy from U.S. Specialty

Insurance Company (the "Specialty Policy") with coverage up to $25 million, (*id.* ¶ 12) and

excess D&O Policies providing up to an additional $200 million in coverage.  (*Id.* ¶ 13.)  The

excess policies follow the same form as the Specialty Policy.  The Specialty Policy contains

three insuring agreements.  First, Insuring Agreement A provides coverage for losses incurred by

the Individual Insureds if the covered losses are not indemnified by MFGH or its subsidiaries.

(*Id.* ¶ 15.)  Second, Insuring Agreement B(1) provides coverage to MFGH or its subsidiaries to

the extent they indemnify the Individual Insureds for covered losses.  (*Id*.)  Third, Insuring

Agreement B(2) provides coverage to MFGH or its subsidiaries for defense costs and losses

resulting from securities claims made against them.  (*Id.*)  The Specialty D&O Policy specifically

covers the Individual Insureds' defense costs.  (*Id.*¶ 14.)

     The Specialty Policy also contains a "Priority of Payment" provision, providing that the

coverage potentially afforded to the Individual Insureds under Insuring Agreement A must be

paid before the payment of any loss on behalf of MFGH or its subsidiaries under Insuring

Agreements B(1) or (B)(2) for amounts they might pay as indemnification to the Individual

Insureds or for claims made against MFGH or its subsidiaries themselves.  Specifically, the

Specialty D&O Policy provides:

> If the Insurer is obligated to pay Loss, including Defense Costs, under more than
> one INSURING AGREEMENT, whether in connection with a single Claim or
> multiple Claims, the Insurer will first pay any Loss payable under INSURING
> AGREEMENT (A) and, if the Insurer concludes that the amount of all Loss,

including Defense Costs, is likely to exceed the Insurer's Limit of Liability, the Insurer shall be entitled to withhold some or all of any Loss payable under INSURING AGREEMENT (B)(l) or (B)(2) to ensure that as much of the Limit of Liability as possible is available for the payment of Loss under INSURING AGREEMENT (A). If no Loss is payable under INSURING AGREEMENT (A), or if the Insurer's obligations under INSURING AGREEMENT (A) have been satisfied, then, subject to the Insurer's Limit of Liability as set forth in Item 3 of the Declarations, the Insurer will pay such Loss as it is required to pay under INSURING AGREEMENT (B)(l) or (B)(2) in such manner and, in the event of multiple Claims, apportioned among such Claims as the Named Corporation shall direct in writing.

(Motion ¶ 16.)

Since the commencement of the Underlying Cases and government investigations, MFGH's insurance providers have received numerous notices seeking coverage under MFGH's insurance policies on behalf of the Individual Insureds.  In response to these requests, the insurance providers filed two motions in 2012 seeking a determination that the proceeds of the D&O and E&O Policies are not property of the MFGI or MFGH estates.  (*Id.* ¶ 18.) Alternatively, the insurance providers sought to lift the automatic stay to permit them to advance or reimburse defense costs on behalf of the Individual Insureds in connection with the Underlying Cases and pending investigations.  (*Id.*)  The Court decided the motions in a written opinion (the "2012 Opinion").  *In re MF Global Holdings Ltd.*, 469 B.R. 177 (Bankr. S.D.N.Y. 2012).  Familiarity with that decision is assumed.  The Court lifted the stay, permitting payment or advancement of defense costs subject to a $30 million Soft Cap on the amount of defense costs to be reimbursed to the Individual Insureds from the D&O and E&O Policies combined. *Id.* at 197.  Sapere appealed that ruling.  The district court affirmed, and on May 19, 2014, the Second Circuit dismissed the appeal as moot.  (Motion ¶¶ 22–23.)  On April 28, 2014, the Individual Insureds filed a request to further modify the automatic stay to permit additional funds to be added to the Soft Cap.  (*Id.* ¶ 24.)  The Court approved this request, increasing the Soft Cap to $43.8 million.  (*See id.* ¶¶ 25–26.)

### B.    The Motion

The Individual Insureds now raise the D&O Policies issue again, asserting that each

Individual Insured "has an urgent need to draw on the D&O Policies to cover mounting costs of

defending against [various lawsuits]." (*Id.* ¶ 1.)  According to the Individual Insureds, even

though the Motion implicates the separate proceedings and estates in the MFGI and MFGH

cases, the question that the Motion raises is identical for both entities:  Do MFGI and MFGH

have "legal or equitable interests in the proceeds of the D&O Policies[?]"  (*Id.* ¶ 2.)

For MFGH, the confirmed liquidation Plan defines the MFGH Debtors' property by

reference to Bankruptcy Code section 541.  That section states that a debtor's estate includes

"[a]ll legal or equitable interests of the debtor in property as of the commencement of the case."

11 U.S.C. § 541(a)(1).  According to the Individual Insureds, MFGI and the MFGH Debtors

could only have an interest in the D&O Proceeds in two instances:  (1) if a party lodges a

securities claim (as defined in the Policies) against MFGI or the MFGH Debtors, or (2) if MFGI

or the MFGH Debtors owe indemnification obligations to the directors and officers regarding

covered claims.  (*Id.* ¶ 3.)  The Individual Insureds assert that the first category will never be

satisfied because no parties have filed any securities claims against MFGI or the MFGH Debtors,

and the statute of limitations to do so has since expired.  (*Id.*)  Moreover, MFGI never issued any

securities.  (*Id.*)  Additionally, the Plan now permanently enjoins all MFGH securities holders

from asserting securities claims against the MFGH Debtors.  (*Id.*)  And any claims that may have

existed before Plan Confirmation would have been subordinated under the Plan consistent with

Bankruptcy Code section 510(b).  (*Id.* ¶ 30.)

As for indemnification, the Individual Insureds argue that no parties, other than certain

Individual Insureds themselves, have asserted indemnification obligations, so obligations to other

parties are merely speculative and do not give rise to a protectable interest in the policies.
(*Id.*¶ 4.)  Allowing the D&O Proceeds to be paid to the Individual Insureds—the only parties
who have made indemnification claims—only reduces indemnification claims from the
Individual Insureds, so it cannot possibly harm MFGI or MFGH.  (*Id.*)  Moreover, the possibility
that MFGI or MFGH could pay indemnification payments to the Individual Insureds does not
give rise to a property interest in the D&O Proceeds because, so far, MFGI and MFGH have
refused to pay the Individual Insured's indemnification claims and have disavowed any intent to
do so.  (*Id.* ¶ 35.)  Additionally, the D&O Policies have self-retention provisions that would
render the first $2.5 million of indemnification payments non-reimbursable under the D&O
Policies.  (*Id.*)

Citing the Court's earlier opinion on insurance proceeds, the Individual Insureds assert
that courts generally hold that insurance policies that provide exclusive coverage to directors and
officers are not estate property.  (*Id.* ¶ 32 (citing *MF Global Holdings*, 469 B.R. at 190).)  If the
policy extends to debtors as well, courts generally only construe insurance proceeds as estate
property "if depletion of the proceeds would have an adverse effect on the estate to the extent
that the policy actually protects the estate's other assets from diminution."  (*Id.* ¶ 33 (quoting *MF
Global Holdings*, 469 B.R. at 191).)  The Individual Insureds argue that, based on these
precedents, the Court can conclude that the D&O Proceeds are not estate property because there
are no direct claims against the Debtors, nor can any claims now be asserted, and any
indemnification obligations are merely speculative.  (*Id.*)

C.    **The Oppositions**

The Plan Administrator argues that nothing has changed since the last time the Individual
Insureds raised this issue, other than the fact that the Individual Insureds continue to burn

9

through the D&O Proceeds for their defense costs at a high rate.  (Opp. ¶ 2.)  Exhausting the

D&O Proceeds has a direct impact on creditors' recoveries under the MFGH Plan, according to

the Plan Administrator, because at least some of the D&O Proceeds are estate property.  (*Id.* ¶ 3.)

And money paid for defense costs will no longer be available to satisfy judgments or settlements

in (1) the Litigation Trust Lawsuit, which is being prosecuted solely for the benefit of MFGH

creditors, and (2) the Customer Class Action.  (*Id.*)  The Plan Administrator concedes that the

Individual Insureds are entitled to pay for the adequate defense of their interests, but the

Administrator argues that the Individual Insureds should not be permitted to spend freely absent

any Court oversight given the impact this would have on creditors.  (*Id.* ¶ 4.)

In support of its request for continued oversight, the Plan Administrator argues that the

Court has authority to continue to impose a cap even if the D&O Proceeds are not estate property

(*id.* ¶ 5.), though the Plan Administrator does not concede that the D&O Proceeds are not part of

the MFGH Debtors' estates.  (*Id.* ¶ 5 n.5.)  The Plan Administrator argues that the Court does not

need to reach this issue because it can continue to impose the Soft Cap.  (*Id.* at n.5)  According to

the Plan Administrator, Second Circuit precedent provides that this Court has jurisdiction over a

proceeding if the outcome "might have any conceivable effect on the bankruptcy estate."  (*Id.* ¶ 6

(citing *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)).)

Moreover, the Bankruptcy Code grants the Court authority to issue any order necessary for the

implementation of a confirmed plan, so long as the order is consistent with the Code.  (*Id.* (citing

11 U.S.C. § 105(a)).)

The Plan Administrator argues that courts in this circuit have applied the "conceivable

effect" test to find bankruptcy court jurisdiction over matters related to (1) debtor-owned

insurance policies, and (2) insurance matters affecting creditor distributions.  (*Id.* ¶ 7.)  The cases

that that the Plan Administrator cites involve subject matter jurisdiction over separate civil actions related to bankruptcy proceedings. The Plan Administrator also relies on an Illinois case finding that a bankruptcy court could restrict spending of proceeds of directors and officers liability insurance policies because that spending could impact creditor recoveries under the debtor's plan. (*Id.* ¶ 8 (citing *Megliola v. Maxwell*, 293 B.R. 443 (N.D. Ill. 2003)).) In *Megliola*, the chapter 7 trustee sued the debtor's officers, and then a separate putative class action was initiated against those same officers, alleging identical claims as the trustee. *Megliola*, 293 B.R. at 448. The chapter 7 trustee filed an adversary proceeding to enjoin the class action because that action could exhaust the insurance proceeds. *Id.* at 445–46. Even though the bankruptcy court found that the proceeds were not estate property, the court still enjoined the class action under Bankruptcy Code section 105(a). *Id.* The district court affirmed, partly because a judgment for the class plaintiffs could leave no funds for a judgment in favor of the chapter 7 trustee, which in turn would affect "the allocation of property among creditors." *Id.* at 449.

Additionally, the Plan Administrator argues that the Plan Injunction provides for Court oversight of matters that do not directly affect estate property. (Opp. ¶ 10 (citing Plan § XI.D (enjoining actions "against or affecting the Protected Parties or the property of the Debtors")).) Under the Plan, any proceeds from the Litigation Trust Lawsuit will be available for distribution to creditors. (*Id.* ¶ 13 (citing Plan § IX-2.B; Litigation Trust Agreement §§ 1.3, 3.3).) Proceeds from the Customer Class Action would also benefit MFGH's creditors because MFGH is one of the largest holders of a general estate claim in the MFGI case, and any recovery in the Customer Class Action becomes proceeds of the MFGI SIPA estate. (*Id.* ¶ 16.) If the D&O Policies are exhausted by defense costs, any potential recovery in either the Litigation Trust Lawsuit or the Customer Class Action would be drastically reduced, thereby diminishing creditor recoveries.

The Plan Administrator also argues that at least $15 million from the D&O Policies is undoubtedly estate property due to the Court's recent order estimating certain proofs of claim asserting indemnification rights.  (*Id.* ¶¶ 19–20; ECF Doc. # 1986 ).  The Indemnification Claimants each filed proofs of claim seeking a right to indemnification from MFGH.  (*Id.* ¶ 20.) The Plan Administrator filed a motion (ECF Doc. # 1907) to estimate those claims at $5 million each.  (Opp. ¶ 20.)   The Indemnification Claimants did not object to the estimation motion.  (*Id.* (citing ECF Doc. # 1960).)  After filing the estimation motion, the Plan Administrator entered into a stipulation with the Stipulated Claimants that would estimate their claims at $560,000. (*See* ECF Doc. # 1970.)  The Court granted the motion to estimate the claims and also approved the stipulation (*see* ECF Doc. # 1986); therefore, $15.56 million should be reserved for potential payment to Indemnification Claimants and Stipulated Claimants, according to the Plan Administrator; and payment of those indemnification claims would give rise to a claim by the Plan Administrator against the D&O Policies.  The Plan Administrator does not address the $2.5 million self-retention provisions identified by the Individual Insureds.

The Customer Representatives also filed an opposition to the Motion.  That opposition largely repeats arguments made by the Plan Administrator, arguing that the Court should not give the Individual Insureds a blank check to burn through the remaining D&O Policies' coverage.  Even if the Court lifts the stay, the Customer Representatives ask the Court to use its general equitable authority under Bankruptcy Code section 105(a) to impose certain controls over spending the D&O Proceeds.  (ECF Doc. # 1965 ¶ 5.)  The Customer Representatives also argue that the Motion is premature because the parties still have not resolved how to allocate the defense costs between the D&O and E&O Policies, and they have not entered into a reservation of rights regarding MFGH's ability to challenge the allocation that was in place earlier.  (*Id.* ¶ 6.)

12

The SIPA Trustee filed a limited joinder to the Plan Administrator's Opposition.  (ECF Doc. # 1966.)  The SIPA Trustee asserts that continued Court oversight does not deprive the Individual Insureds of a right to reasonable defense costs.  (*Id.* ¶ 3.)  Rather, the Individual Insureds can continue to ask the Court for increases in the Soft Cap as they become necessary. (*Id.*)  The SIPA Trustee also states his willingness to negotiate a reasonable resolution of the defense costs and D&O Proceeds that would avoid asking the Court to determine whether the D&O Proceeds are estate property, but the Individual Insureds have not asked for a specific increase in the Soft Cap.  (*Id.*)

## II.    DISCUSSION

### A.    Case Dynamics

Although the Court has addressed insurance proceeds several times in this case, the issue arises now under different circumstances.  This Motion involves the D&O Policies but not the E&O Policies. The Individual Insureds agree that MFGH and MFGI have claims to insurance proceeds from the E&O Policies, and the E&O Policies have no priority of payment provisions. Also, the actual and potential claims for indemnification under the D&O Policies are more defined and limited.  To the extent that the Debtors stand to benefit from any litigation recoveries against the Individual Insureds, the Debtors have no greater rights than any other plaintiffs to recoveries from the D&O Policies.

### B.    Estate Property

As this Court explained in its 2012 Opinion, "it is well-settled that a debtor's liability insurance is considered property of the estate."  *MF Global Holdings*, 469 B.R. at 190.  But courts disagree "'over whether the proceeds of a liability insurance policy are property of the estate.'"  *Id.* (quoting *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010)).

13

"Courts that have addressed whether the proceeds of a liability insurance policy are property of

the estate are guided by the language and scope of the specific policies at issue." *MF Global

Holdings*, 469 B.R. at 190 (citing *Downey*, 428 B.R. at 603; *In re Medex Reg'l Labs., LLC*, 314

B.R. 716, 720 (Bankr. E.D. Tenn. 2004) ("In making its determination, the court must analyze

the facts of each particular case, focusing primarily upon the terms of the actual policy itself.")

(internal quotation marks omitted); *In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass.

2002) ("Whether the proceeds of a D&O liability insurance policy is [sic] property of the estate

must be analyzed in light of the facts of each case.")).

      In the 2012 Opinion, the Court further explained that "when an insurance policy only

provides direct coverage to a debtor, courts generally rule that the proceeds are property of the

estate." *MF Global Holdings*, 469 B.R. at 190 (citing *In re Allied Digital Techs. Corp.*, 306 B.R.

505, 512 (Bankr. D. Del. 2004)).  But when a policy covers the directors and officers

exclusively, "courts have generally held that the proceeds are not property of the estate." *MF

Global Holdings*, 469 B.R. at 190 (citing *Allied Digital*, 306 B.R. at 510; *La. World Exposition,

Inc. v. Fed. Ins. Co., (In re La. World Exposition, Inc.)*, 832 F.2d 1391, 1399 (5th Cir. 1987)

(holding that the debtor has no ownership interest in proceeds of an insurance policy where the

obligation of the insurance company is only to the directors and officers); *In re Daisy Sys. Sec.

Litig.*, 132 B.R. 752, 755 (N.D. Cal. 1991) (finding that when a D&O insurance policy only

provides direct coverage to the directors and officers the proceeds are not property of the estate)).

      The D&O Policies here provide coverage to both the Individual Insureds and the MFGH

Debtors.  In these instances, "courts have held that 'the proceeds will be property of the estate if

depletion of the proceeds would have an adverse effect on the estate to the extent the policy

actually protects the estate's other assets from diminution.'" *MF Global Holdings*, 469 B.R. at 190–91 (quoting *Downey*, 428 B.R. at 603).

In *Allied Digital*, the debtor could have held an interest in insurance policy proceeds if it had been subject to certain covered litigation claims. *See* 306 B.R. at 511. But after the statute of limitations expired for those litigation claims, and no parties had sued the debtor, the policy proceeds "no longer constitute property of the bankruptcy estate." *Id.* Whatever interest in the proceeds the debtor may have held at one point no longer existed because the debtor could not have faced a lawsuit giving rise to a colorable insurance claim. *Id.*; *see also Downey*, 428 B.R. at 604 ("Where a liability insurance policy includes entity coverage, but there are no covered [claims] outstanding, courts have generally held that the insurance proceeds are not property of the estate.").

The *Allied Digital* court also explained that when a policy "provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate." *Id.* at 512. Here, certain Individual Insureds have filed claims for indemnification against MFGH, and the Court entered an order estimating (1) the Indemnification Claimants' claims at $5 million each and (2) the Stipulated Claimants' claims at $560,000. (*See* ECF Doc. # 1986.) But no indemnification payments have actually been made yet. Given the D&O Policies' $2.5 million self-retention provisions for indemnification claims, MFGH could have a $13.06 million claim against the D&O Policies if the claims of the Indemnification Claimants and Stipulated Claimants are paid to their full estimated amounts. Whether this gives rise to a property interest in the D&O Proceeds depends on "the likelihood that the [Debtors] will pay over" $2.5 million "in indemnification costs." *Downey*, 428 B.R. at 606. MFGI and MFGH have yet to provide any

15

indemnification coverage for any Individual Insured, and the Plan Administrator has stated that it believes the Indemnification Claimants' claims should be disallowed, despite its request for estimation of those claims.  Still, given the reserve that MFGH seeks to establish, it is premature to label a payout purely hypothetical.  The Individual Insureds will not be prejudiced by establishing a $13.06 million reserve in light of the substantial unused amounts available under the D&O Policies.

Even if MFGI or MFGH had a contractual claim to the D&O Proceeds, that claim would be subject to the D&O Policies' priority of payment provision.  That provision requires that the Individual Insureds be advanced defense costs before other payments under the D&O Policies are satisfied.  As the Court explained in its 2012 Opinion, "courts have given effect to priority of payment provisions in authorizing access to policies to advance defense costs to individual insureds." *MF Global Holdings*, 469 B.R. at 193 (citing *In re Enron*, No. 01-16034, Tr. at 13-14 (Bankr. S.D.N.Y. Apr. 11, 2002) (Gonzalez, J.) ("[T]he parties are bound by the contractual provisions of the policy.  MFGH's interest in the policy is limited by its contractual provisions including a priority advancement and payment obligations contained in those policies.  The Court cannot rewrite the provisions of the contract."); *In re LocatePlus Holdings Corp.*, No. 11-15791, 2011 WL 5240279, at *7–9 (Bankr. D. Mass. Oct. 31, 2011)).  The *Downey* court analyzed a similar priority of payment provision, holding that:

> Section 541(a) is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case. Courts generally closely examine the debtor's rights under the terms of the liability insurance policy at issue in order to determine whether holding that the policy proceeds are property of the estate would improperly expand the debtor's rights against others beyond what rights existed at the commencement of the case. In this case, the Policy provides a clear chain of priority among the three types of coverages.

428 B.R. at 607 (footnotes and internal quotation marks omitted).

16

Given the above, it appears that the D&O Proceeds are not property of the MFGI or

MFGH Debtors' estates, except for the $13.06 million related to the Indemnification Claimants

and the Stipulated Claimants.  MFGI and the MFGH Debtors can no longer be named in any

securities actions that would give rise to a claim against the D&O Policies, and other than a

potential payment on the Indemnification Claimants' and Stipulated Claimants' claims, it is

unlikely that MFGI or the MFGH Debtors will indemnify any directors and officers.

### C.    Continued Court Oversight

The Plan Administrator, SIPA Trustee, and Customer Representatives all ask the Court to

continue to exercise oversight on the D&O Proceeds, relying on Bankruptcy Code section 105(a)

and the Plan Injunction.  Section 105(a) permits the Court to issue "any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title."  Although

broad, section 105(a) does not give a court authority "to create substantive rights that are

otherwise unavailable under applicable law."  *In re Dairy Mart Convenience Stores, Inc.*, 351

F.3d 86, 92 (2d Cir. 2003).  Rather, a court can only issue an order under section 105(a) that

would enforce or carry out provisions of the Bankruptcy Code.  *Id.* at 91–92.  The Plan

Administrator did not identify any specific provisions of the Code that ongoing oversight of the

D&O Proceeds would enforce.

The Plan Administrator cited *Megliola*, where the bankruptcy court exercised its section

105(a) authority to enjoin a class action that could diminish proceeds available to creditors in the

bankruptcy.  In *Megliola*, the court found that an injunction was appropriate because the

competing class action would "defeat or impair [the bankruptcy court's] jurisdiction over the

case before it."  293 B.R. 443 (citations omitted).  The Second Circuit has recognized the

authority of a bankruptcy court to *stay* third-party actions that could jeopardize a successful

17

reorganization proceeding. *See In re Quigley Co.*, 676 F.3d 45, 58 (2d Cir. 2012) (affirming

bankruptcy court's injunction under section 105 of separate litigation that could deplete

insurance funds that would otherwise be "used to fund [a] pre-negotiated plan of reorganization"

(internal quotation marks omitted)).    And this Court has exercised that power in the past. *See*

*McHale v. Alvarez (In re 1031 Tax Grp., LLC)*, 397 B.R. 670, 687 (Bankr. S.D.N.Y. 2008)

(enjoining state court actions in Colorado under section 105(a) where those Colorado actions

"threaten[ed] the reorganization efforts of the Debtor estates").  But MF Global is well past the

point where enjoining third-party actions would aid reorganization.  And no party is actually

seeking an injunction, nor is any party arguing that this Court's jurisdiction over the MFGI or

MFGH matters would be impaired by allowing actions against the Individual Insureds to

proceed.  Under these circumstances, the Individual Insureds are entitled to receive D&O

Proceeds for their defense costs.  Indeed, the Customer Class Action is actively being litigating,

including claims assigned by the SIPA Trustee.  It would be fundamentally unfair to allow the

litigation to proceed while denying the Individual Insureds coverage for defense costs. *See MF*

*Global Holdings*, 469 B.R. at 194 (describing importance of access to insurance funds for the

Individual Insureds).

     The Plan Administrator cites several cases discussing subject matter jurisdiction and the

"conceivable effect" test.  (*See* Opp. ¶¶ 6–7.)  But these cases are not relevant because they

discuss whether a court has jurisdiction to hear separately-filed civil actions, not authority to

control insurance payments in the main bankruptcy action itself.  Additionally, the Plan

Administrator cites two cases allowing bankruptcy court jurisdiction or oversight of matters

involving insurance proceeds, but those cases construed insurance proceeds as estate property.

*See In re Rusty Jones, Inc.*, 124 B.R. 774, 778 (Bankr. N.D. Ill. 1991) (referring to insurance

proceeds as "estate property"); *In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413 (Bankr.

E.D. Pa. 1995) (construing "indemnification interest in [insurance] proceeds" to be "sufficient to

bring those proceeds into the estate"). Here, the Court has not determined that the proceeds are

estate property, so those cases are not persuasive on this point.

     As for the argument that continued Court oversight is appropriate because payment of

defense costs reduces potential plaintiff recoveries in the Litigation Trust Lawsuit and Consumer

Class Action, the Court already rejected a similar argument in the 2012 Opinion. *See MF Global*

*Holdings,* 469 B.R. at 196. The Court relied in part on *Allied Digital*, where the court explained

that:

> [T]he Trustee brought the action against the directors and officers. The policy in
> question provides direct coverage to the directors and officers for claims and
> defense costs (which are real), and indemnification coverage to the company for
> amounts paid to the directors and officers (which is hypothetical). . . . The
> Trustee's real concern is that payment of defense costs may affect his rights as a
> plaintiff seeking to recover from the D&O Policy rather than as a potential
> defendant seeking to be protected by the D&O Policy. In this way, Trustee is no
> different than any third party plaintiff suing defendants covered by a wasting
> policy. No one has suggested that such a plaintiff would be entitled to an order
> limiting the covered defendants' rights to reimbursement of their defense costs.
>
> The bottom line is that the Trustee seeks to protect the amount he may receive in
> his suit against the directors and officers while limiting coverage for the defense
> costs of the directors and officers. This is not what the directors and officers
> bargained for. In bringing the action against the directors and officers, the
> Trustee knew that the proceeds could be depleted by legal fees and he took that
> chance. The law does not support the Trustee's request to regulate defense costs.

306 B.R. at 512–13 (authorizing the payment of defense costs under a D&O Policy over the

objection of a trustee who sought to preserve policy proceeds to satisfy his own claims against

the insureds); *see also In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (Bankr.

D.S.C. 2011) ("[The individual insureds] cannot now be prevented from using the Policy for its

intended purpose simply because Debtor wishes to save the policy limit for any potential claims

of his own."); *In re First Cent. Fin. Corp.*, 238 B.R. 9, 21 (Bankr. E.D.N.Y. 1999) (rejecting

argument that trustee as a claimant against the directors and officers has a superseding right to recover insurance proceeds before all others).

Aside from Bankruptcy Code section 105(a) and case law regarding bankruptcy court jurisdiction, the Plan Administrator relies on Plan section XI(D)(i) to request continued oversight. That Plan provision enjoins parties from "commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind . . . against or affecting the Protected Parties or the property of the Debtors." (Plan § XS(D)(i).) The Plan defines Protected Parties as

> the Debtors and, solely with respect to acts or omissions subsequent to the applicable Petition Date, and with respect to the Claims of the Securities Plaintiffs solely with respect to acts or omissions subsequent to November 21, 2011, their respective officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, and representatives . . . .

(Plan § I.A.135.) This provision could be read broadly to apply to payment of the D&O Proceeds because that payment would affect the MFGH Debtors by reducing the funds available for distribution to creditors. But this would be an unwarranted reading of the provision given that the relative size of the MFGH Debtors' estates available for distribution to creditors only has an attenuated effect on the MFGH Debtors themselves; the MFGH Debtors will need to make distributions regardless. The amount of funds available for distribution has a significant impact on creditors, but Plan section XI(D)(i) does not apply to actions affecting creditors. Also, even though Plan section XI(D)(i) applies to the MFGH Debtors' property, this Court has not determined that the D&O Proceeds are estate property.

The Plan Administrator also cites Plan section XI(D)(vi), which bars parties from "taking any actions to interfere with the implementation or consummation of this Plan." The Plan Administrator argues that this provision should be read broadly to apply to the payment of

defense costs with D&O Proceeds because Plan section IX-2.B contemplates payment of

proceeds of the Litigation Trust Lawsuit to creditors, and exhaustion of the D&O Proceeds could

interfere with the implementation of that provision.  This is a strained interpretation of Plan

section XI(D)(vi).  First, it is unlikely that defense costs would entirely exhaust the D&O

Proceeds.  Second, the D&O Policies include a priority of payment provision that requires that

payments for the benefit of the Individual Insureds be paid ahead of other claims on the policies.

Third, even if the D&O Proceeds are entirely exhausted on defense costs, exhaustion would not

interfere with Plan section IX-2.B because there would simply be no funds to distribute.  That

unfortunate circumstance would be different from a party taking an action to withhold or prevent

transfer of funds that would otherwise be available for payment to creditors under Plan section

IX-2.B.  The Plan Administrator did not identify any other provisions of the Plan that could be

implicated by payment of the D&O Proceeds for defense costs.

  The Court retains jurisdiction to interpret the Plan.  *See In re Residential Capital, LLC*,

508 B.R. 838, 849–50 (Bankr. S.D.N.Y. 2014) ("All courts retain jurisdiction to interpret and

enforce their own orders." (quoting *In re Charter Commc'ns*, No. 09-11435, 2010 WL 502764,

at *4 (Bankr. S.D.N.Y. Feb. 8, 2010))); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137,

151 (2009) ("[A]s the Second Circuit recognized . . . the Bankruptcy Court plainly had

jurisdiction to interpret and enforce its own prior orders.").  While a bankruptcy court's

jurisdiction diminishes in importance following plan confirmation, *see In re Gen. Media, Inc.*,

335 B.R. 66 (S.D.N.Y. 2005), "a bankruptcy court has post-confirmation jurisdiction over

matters that bear on the interpretation or execution of the debtor's plan."  *In re MPF Holding*

*U.S. LLC*, 444 B.R. 719, 724 (Bankr. S.D. Tex. 2011) (internal quotation marks omitted).

Exercising its authority to interpret the Plan, the Court concludes that the Plant Administrator's

proposed construction of the Plan language is unreasonable insofar as the application of D&O

Proceeds for the Individual Insureds is concerned.

### III.    CONCLUSION

The amount of insurance proceeds expended to date for the defense of the Individual

Insureds has been staggering, even before the first deposition has been taken.  This fact is of

great concern to the Court.  The defense can obviously work to make the plaintiffs' costs in

prosecuting the cases more expensive, particularly where insurance money is footing the tab.[4]

But it is not the proper role of the bankruptcy court to police litigation in other courts that does

not directly affect the property of the estates.  With respect to the D&O Policies, the Court does

not believe the law supports placing the bankruptcy court as the overseer of defense costs.  The

Debtors negotiated the insurance policies that provide their former officers, directors and

employees with protection against the kinds of litigation claims that have been asserted.

The Individual Insureds have cited persuasive authority that the D&O Proceeds are not

estate property given that (1) MFGI and MFGH are not defendants and can no longer be named

in any lawsuits that would give rise to covered insurance claims, and (2) indemnification claims

against the D&O Policies are mostly speculative, except for the Indemnification Claimants' and

Stipulated Claimants' claims.  At least with respect to insurance policies to which the Debtors

have no direct claims to policy proceeds, the Court has no legal basis to limit or restrict claims

by the Individual Insureds that are within the coverage.  The Court concludes the Individual

Insureds are entitled to access the full amount of the D&O Proceeds for defense costs, except for

$13.06 million.

---

[4]     The losses created by the MF Global debacle are truly staggering.  The potential liability of the Individual
Insureds in the pending litigation is enormous.  The more they spend for defense, the less insurance proceeds are
available to pay for covered settlements or judgments.  The longer the litigation takes, the more the defense will cost
and the less insurance will remain available.

Given that MFGI and MFGH do not have a property interest in the D&O Proceeds (except for the $13.06 million discussed above), and the opponents of the Motion did not identify any case law or Plan language that compels or permits continued oversight of the D&O Proceeds by the bankruptcy court, the Individual Insureds' Motion is **GRANTED**.

**IT IS SO ORDERED**.

Dated:  September 4, 2014
         New York, New York

                                    _____*Martin Glenn*_____
                                         MARTIN GLENN
                                  United States Bankruptcy Judge