**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>MF GLOBAL INC.,<br><br>Debtor. | Case No. 11-2790 (MG) SIPA |

**JOINT PRETRIAL ORDER**

The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

**I.    NATURE OF THE CASE**

This is a contested matter arising from the Trustee's Objection to the General Creditor Claim of Robert Charles Class A, L.P. ("RCA") (Claim No. 500000143) (ECF No. 8609, the "Objection").

RCA claims that MF Global Inc. ("MFGI") is liable to RCA for unauthorized trading and failing to follow RCA's instructions in connection with the transfer of its commodities account from Morgan Stanley Smith Barney ("MSSB") to MFGI in November 2010.  RCA alleges that MFGI's acts with respect to the transfer violated sections 4d(2) and 4b of the Commodities Exchange Act ("CEA").  7 U.S.C. §§ 6d(2), 6(b).  The Trustee denies these allegations and objects to RCA's claim in its entirety.

This contested matter is now before the Court for a merits hearing on the Trustee's Objection to RCA's claim.  Through the Objection, the Trustee's seeks to have RCA's claim disallowed and expunged.  RCA opposes the Trustee's objection and seeks to have it overruled.

1

## II. BASIS FOR JURISDICTION, WHETHER THE CASE IS CORE OR NON-CORE, AND WHETHER THE BANKRUPTCY JUDGE MAY ENTER FINAL ORDERS OR JUDGMENT

Following removal to this Court for all purposes as required for SIPA cases by section 78eee(b)(4) of SIPA, this Court has "all of the jurisdiction, powers, and duties conferred by [SIPA] upon the court to which the application for the issuance of the protective decree was made." Venue is proper in this Court pursuant to SIPA section 78eee(a)(3) and section 78aa of title 15 of the United States Code.

This is a core proceeding pursuant to section 157(b)(2)(B) of title 11 of the United States Code. 11 U.S.C. § 157(b)(2)(B). The Court may enter final orders or judgment in this matter, and the parties consent to the Court doing so.

## III. STIPULATED FACTS

The Parties hereby stipulate to the following facts:

1. RCA is a California limited partnership that was formed for the purpose of holding investments, trading futures contracts and options on futures contracts, and other financial endeavors.

2. At all times relevant to RCA's claim, Robert Teel was a co-general partner of RCA and solely responsible for managing RCA's trading in futures contracts and options on futures contracts.

3. At all times relevant to RCA's claim, MFGI was registered with the Commodity Futures Trading Commission ("CFTC") as a futures commission merchant ("FCM").

4. At all times relevant to RCA's claim, MFGI was a member of the National Futures Association ("NFA").

5.  At all times relevant to RCA's claim, Alaris Trading Partners LLC ("Alaris") was registered with the CFTC as an introducing broker.

6.  At all times relevant to RCA's claim, Alaris was a member of the NFA.

7.  At all times relevant to RCA's claim, Alaris was an introducing broker to MFGI.

8.  Before November 3, 2010, RCA maintained a futures trading account with MSSB that was cleared by Citigroup Global Markets, Inc. ("Citi") and designated account number N 532 28695.

9.  In 2010, Mr. Teel began to explore alternatives to transfer RCA's account from MSSB to another FCM.

10. On July 8, 2010, RCA entered into a brokerage agreement with Alaris. In the brokerage agreement, RCA requested that Alaris introduce RCA to an FCM.

11. On October 12, 2010, Mr. Teel, on behalf of RCA, executed MFGI's standard account application and customer agreement for business entities, including MFGI's standard customer account transfer authorization form (the "Transfer Authorization").

12. MFGI assigned account number ATP 30000 to RCA's account.

13. On October 20, 2010, Alaris employee Peter Newcomb sent the Transfer Authorization to MFGI.

14. On November 3, 2010, MFGI employee Michael O'Rourke sent an email to Citi employee Angelito Abrera referencing "ATP 30000 Transfer," and stating: "Lito, I will accept today. Original trade date and zero premium on options and original trade date and settlement (11/02) on futures. Im 287 on this, you? Thanks Mike."

15. The transfer of RCA's account from Citi to MFGI occurred on November 3, 2010 (the "Transfer").

3

16. The transfer of RCA's open futures positions at their most recent settlement prices—as opposed to their original trade prices—resulted in an approximately $23 million increase in RCA's open trade equity and a corresponding decrease in RCA's ending, or cash, balance.

17. The transfer of RCA's open futures positions at their most recent settlement price—as opposed to their original trade prices—did not affect the net liquidation value or margin requirements of RCA's account.

18. On January 31, 2012, RCA timely filed an unsecured general creditor claim in the amount of $23,358,342.12. The claimed amount is comprised of $23,030,696.62—which is the amount of RCA's negative open trade equity that became realized as a result of the transfer—and $327,645.50 in commissions and fees MSSB charged RCA for the transfer.

19. RCA has since recovered the $327,645.50 in commissions and fees from MSSB as the result of an arbitration award.

## IV. PARTIES' CONTENTIONS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

### A. Claimant's Contentions

1. It is a violation of CFTC Regulation 166.2, 17 C.F.R. § 166.2, to effect transactions in commodity interests for the accounts of customers before the customers, or persons designated by the customers to control the accounts, specifically authorized the transactions or authorized in writing the effecting of transactions for the accounts without the customers' specific authorization. *CFTC v. Brown*, 00 C 7344, 2002 U.S. Dist. LEXIS 16971, *11 (ND Ill Mar. 27, 2002).

2. Section 4d(a)(2) of the CEA, 7 U.S.C. § 6d(a)(2), requires FCM's to treat and deal with a customer's money and property as belonging to the customer. *Id.* "In practice, this duty requires an FCM to follow customers' instructions regarding their money and property." *Lee v. Lind-Waldock & Company*, [1999-2000 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 28,173 at 50,159 (CFTC June 29, 2000).

3. NFA Compliance Rule 2-27 provides

**RULE 2-27. TRANSFER OF CUSTOMER ACCOUNTS.**
*[Adopted effective January 24, 1985.]*

(a) Upon receipt of a signed instruction from a customer to transfer an account from one Member to another, and provided that such instruction contains the customer's name, address and account number (and, if the transfer is not of the entire account, a description of which portions are to be transferred) and the name and address of the receiving Member, the carrying Member shall confirm to the receiving Member all balances in the account, whether money, securities or other property, and all open positions, within two business days or within such further time as may be necessary in the exercise of due diligence. Within three business days of the day such confirmation is due, or within such further time as may be necessary in the exercise of due diligence, and provided that the receiving Member agrees to accept the account, the carrying Member shall effect the transfer of the balances and positions to the receiving Member.

4. Because there is no evidence that Teel expressly authorized the transfer of RCA's open futures positions at their most recent settlement price, and there is evidence that Teel authorized and MFGI approved the transfer of RCA's open futures positions at their original trade prices, MFGI violated 17 C.F.R. § 166.2, 7 U.S.C. § 6d(a)(2) and NFA Compliance Rule 2-27.

5. CME Rule 853 is irrelevant to the question of whether MFGI failed to follow its customer's instructions. MFGI was bound by the Transfer Authorization. CME Rule 853 did not give MFGI discretionary authority to choose whether to transfer RCA's open futures positions at original trade price or the most recent settlement price. That choice belonged only to RCA.

5

6. Section 4b(a)(1)(A) of the CEA, 7 U.S.C. ¶ 6b(a)(1)(A), makes it unlawful

(1) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person;

* * *

(A) to cheat or defraud or attempt to cheat or defraud the other person;

(B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record;

(C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract . . . .

7. RCA's account included cash and open futures positions on November 3, 2010. When O'Rourke told CGMI to transfer RCA's open futures positions at their most recent settlement price— as opposed to their original trade prices— he caused an unwanted recognition of unrealized losses in RCA's futures account and simultaneous reduction in RCA's cash balance and thereby altered MFGI's relationship with RCA in a fundamental manner. This change amounted to a material fact that MFGI had a duty to disclose under Section 4(b) of the CEA. *See Lee*, ¶ 28,173 at 50,159 (citing *Sudol v. Shearson Loeb Rhoades, Inc.*, [1984-1986 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 22,748 at 31,119 (CFTC Sept. 30, 1985)). A statement or omitted fact is material if it is substantially likely that a reasonable investor would consider the matter important in making an investment decision. *Id*.

8. O'Rourke told Newcomb on November 5, 2010 that "[t]he future positions had to be transferred at settlement price because the client had APS prices on his books at Citi" and that "[u]nfortunately Citi was performing APS pricing for the client and you are not allowed to transfer them at APS." O'Rourke's statement is demonstrably false. It directly contradicts the fact, known to MFGI at the time of the Transfer, that CGMI had the details of the original trade

6

date price at which each futures contract was established, which data could have readily been used to effect the ex-pit transfer as RCA intended.

9. On November 9, 2010, O'Rourke sent Newcomb a document titled "CME AND CBOT ADOPT AMENDMENTS TO RULES 853 AND 854" in response to Newcomb's request for a copy of the "rule from the exchange that say's you cannot transfer AP[S] positions." Newcomb, in turn, sent the document to Teel. What O'Rourke sent is a CME rule notice that does not say anything about the transfer of APS prices.

10. O'Rourke's intentional misrepresentations and omissions of material facts are actionable under Section 4(b) of the CEA.

11. Each of the futures transactions entered into on November 3, 2010 and credited to RCA's account at MFGI were done without Teel's prior authorization or consent and thus were done in violation of Section 4(b) of the CEA. *See Sherwood v. Madda Trading Co.*, [1977-1980 Transfer Binder] Comm. Fut. L. Rep. (CCH) P 20,728 at 23,018 (CFTC January 5, 1979).

12. Teel became caught in MFGI's web of finger pointing, excuses, contradictions and outright lies over the trading days of November 3, 4, 5 and 8, 2010. Friday, November 5, 2010 was an option expiration Friday which is known to cause above average volume and added market volatility. Due to MFGI's dilatory and ultimate unwillingness and/or inability to "bust out the settlement prices on the futures and book at the original prices and . . . put through a P&L reversal adjustment on OTE" as O'Rourke promised he could do on November 5, 2010, Teel was unable to execute trades he had planned for his delta hedge strategy.

13. The need for cash working capital in the futures trading business is no different than for any other business. Cash serves as working capital for trading in a way that NLV, or equity, cannot. The delta neutral hedge strategy works when there is enough cash to purchase a

7

sufficient amount of options to hedge against material changes in market direction and volatility. Options can only be purchased with cash, not with equity value. Without enough cash, a trader cannot buy enough options. It is that simple.

14. MFGI's wrongful conduct was the direct and proximate cause of RCA's damages. *See Modlin v. Cane*, CFTC Docket No. 97-R083, slip op. at 17 (CFTC Mar. 15, 2000) (proof of proximate cause includes evidence that the wrongful conduct was a substantial factor in bringing about complainant's loss.).

### B. Trustee's Contentions

1. Because the Trustee's Objection refuted at least one of RCA's claim's essential allegations, RCA bears the burden of demonstrating that its claim is valid. *See In re LBHI*, 519 B.R. 47, 53-54 (Bankr. S.D.N.Y. 2014) ("Once the objecting party has met its initial burden, it is up to the claimant to 'prove by a preponderance of the evidence that under applicable law the claim should be allowed.'" (quoting *In re Arcapita Bank B.S.C.(c)*, 508 B.R. 814, 817 (S.D.N.Y. 2014)).

2. In order to prevail on its claim, RCA bears the burden to prove that MFGI (1) placed trades in its account, (2) without RCA's authorization, (3) while knowing, or at least being reckless to the fact, that the trades were unauthorized, and (4) that RCA was damaged as a result. *See Herman v. T. & S. Commodities, Inc.*, 578 F. Supp. 601, 603 (S.D.N.Y. 1983) ("It is enough that [the broker] acted deliberately, knowing that his acts were unauthorized and contrary to instructions. Such knowing, intentional conduct ma[kes] his acts wil[l]ful, and therefore his violations of the statutory prohibition against cheating or defrauding the customer [are] wil[l]ful . . . .") (quoting *Haltmier v. CFTC*, 554 F.2d 556, 562 (2d Cir. 1977)); (June 2, 2015 Opinion, "June Opinion," ECF No. 8775) at 11 ("Both theories depend on MFGI having (1) traded the

8

positions in RCA's account, and (2) failed to follow RCA's instructions in the method in which the trades were recorded.").

3. RCA cannot meet its burden with respect to any of the elements of its claim because the evidence demonstrates that (i) no trades were placed in RCA's account during, or as a result of, the transfer, (ii) MFGI followed the instructions provided by RCA with respect to the transfer, (iii) MFGI reasonably believed that its actions with respect to the transfer were authorized, (iv) RCA ratified the transfer, and (v) RCA suffered no damages as a result of the transfer.

4. On October 12, 2010, Mr. Teel, on behalf of RCA, executed the Transfer Authorization, which instructed MFGI to transfer RCA's account subject to its own approval and compliance with applicable law and regulation.

5. On October 20, 2010, Mr. Newcomb sent the Transfer Authorization form to MFGI on RCA's behalf.

6. CME Rule 853 is the exchange rule which governed the transfer of RCA's account from Citi to MFGI. In 2010, CME Rule 853 provided that open futures positions must be transferred at their original trade dates, and may be transferred at either their original trade prices or most recent settlement prices.

7. On November 3, 2010, Mr. Teel, on behalf of RCA, spoke with Mr. Newcomb and approved the transfer occurring that day. Mr. Newcomb then communicated RCA's approval to MFGI.

8. In compliance with CME Rule 853 and the Transfer Authorization, on November 3, 2010, MFGI instructed Citi to transfer RCA's account to MFGI, and to transfer RCA's open futures positions at their original trade dates and most recent settlement prices.

9.      On November 3, 2010, Citi transferred RCA's account to MFGI. RCA's open futures positions were transferred to MFGI using their original trade dates and most recent settlement prices.

10.     The transfer of RCA's open future positions at their most recent settlement price did not affect the overall value, margin requirements or buying power of RCA's account. Thus, the transfer of RCA's open futures positions at their most recent settlement prices had no impact on RCA's ability to trade.

11.     In its June Opinion, the Court determined that "[w]hether trades of RCA's futures positions were actually executed is a disputed issue of fact." (June Opinion at 17.) The evidence developed through discovery has confirmed that, in fact, no trades were executed in RCA's account during, or as a result of, the transfer. All of RCA's open futures positions were transferred to MFGI during the transfer. None of RCA's open futures positions were closed out or liquidated during, or a result of, the transfer.

12.     The Court also determined that "whether RCA's instructions on how to book the transferred positions were disregarded" is a disputed issue of fact. (June Opinion at 3.) The Transfer Authorization was the only instruction that RCA provided to MFGI with respect to the transfer of its account. Through the Transfer Authorization, RCA instructed MFGI to transfer its account subject only to its own approval and compliance with applicable law and regulation. MFGI transferred RCA's account in compliance with CME Rule 853 and thus in accordance with RCA's instructions in the transfer authorization.

13.     Further, MFGI reasonably believed that its action with respect to the transfer of RCA's open futures positions were authorized because they complied with CME Rule 853 and were thus within the authority RCA granted MFGI in the Transfer Authorization. *Cf. Haltmier*,

554 F.2d at 562 ("It is enough that he acted deliberately, knowing that his acts were unauthorized and contrary to instructions.").

14. After the transfer, on November 5, 2010, MFGI offered to adjust RCA's account to restore the original trade prices to RCA's open futures positions. Mr. Newcomb communicated MFGI's offer to RCA and explained that the adjustment would not change the overall value, margin requirements or buying power of RCA's account.

15. With full knowledge of MFGI's proposal, RCA declined it and ratified the transfer. *See Herman v. T. & S. Commodities, Inc.*, 592 F. Supp. 1406, 1417-18 (S.D.N.Y. 1984).

16. On November 5, 2010, Mr. Newcomb communicated RCA's acceptance of the transfer to MFGI on RCA's behalf.

17. RCA suffered no damages as a result of the Transfer. RCA's account had the same positions, margin requirements, buying power, and overall value before and after the transfer.

18. RCA executed trades in its MFGI account on November 5, 2010.

19. RCA executed trades in its MFGI account on November 8, 2010.

20. The transfer had no impact on RCA's ability to trade.

21. RCA cannot meet its burden to prove that MFGI executed trades in its account or knowingly failed to follow its instructions with respect to the transfer. Further, even if the transfer were unauthorized, RCA ratified the transfer by declining MFGI's offer to adjust RCA's open futures positions back to their original trade prices. Finally, RCA has failed to demonstrate that it suffered any damages as a result of its open futures positions being transferred at their most recent settlement prices, as opposed to their original trade prices.

### V.  ISSUES TO BE TRIED

The parties agree that the issues to be tried include whether RCA has met its burden to prove that:

1. MFGI failed to execute the Transfer in accordance with the Transfer Authorization and made unauthorized trades in RCA's account;

2. RCA did not ratify the Transfer; and

3. If the Transfer was unauthorized, did RCA suffer any damages as a result thereof?

RCA also contends that an issue to be tried is whether MFGI made intentional misrepresentations and omissions of material fact to Teel with respect to RCA's account. The Trustee disagrees that this is an issue to be tried because, in its June Opinion, the Court sustained the Trustee's objection to RCA's claim based on alleged nondisclosure of the method that MFGI would use to effectuate the Transfer in the absence of a specific contrary instruction. *See* June Opinion at 19 (rejecting claim for fraudulent failure to disclose "unless RCA establishes that it specifically instructed that the positions be recorded at the original trade prices").

**CLAIMANT'S EXHIBITS**

RCA hereby identifies the following exhibits it intends to use:

| Exhibit | Bates No. | Description/Title | Document Date | Trustee's Objection |
|---|---|---|---|---|
| 1 | | RCA Proof of Claim | January 31, 2012 | No objection |
| 2 | CLAIMANTS 00011990-00012018 [FINRA ARB] | RCA MF Global Application and Customer Agreement Information and Disclosures | October 12, 2010 | No objection |
| 3 | | RCA Citigroup Daily Statement | November 2, 2010 | No objection |
| 4 | MSSB 030606-620 | RCA Citigroup Daily Statement | November 3, 2010 | No objection |
| 5 | CCM 001748 | RCA Citigroup Daily Statement | November 4, 2010 | No objection |
| 6 | | RCA MFG Confirmation | November 3, 2010 | No objection |

| **Exhibit** | **Bates No.** | **Description/Title** | **Document Date** | **Trustee's Objection** |
|---|---|---|---|---|
| 7 | | RCA MFG Confirmation | November 4, 2010 | No objection |
| 8 | | RCA MFG Confirmation | November 5, 2010 | No objection |
| 9 | | RCA MFG Confirmation | November 8, 2010 | No objection |
| 10 | | RCA MFG Confirmation | November 9, 2010 | No objection |
| 11 | | RCA MFG Confirmation | November 10, 2010 | No objection |
| 12 | | RCA MFG Confirmation | November 11, 2010 | No objection |
| 13 | | RCA MFG Confirmation | November 12, 2010 | No objection |
| 14 | CLAIMANTS 00012787-00012788 [FINRA ARB] | RCA MFG 1099-B | December 31, 2010 | No objection |
| 15 | CLAIMANTS 00012790-00012804 [FINRA ARB] | RCA Citigroup 1099-B | December 31, 2010 | No objection |
| 16 | DOC 205 | Email from David Fox to Kiara Mundt, *et al.* | October 20, 2010 | No objection |
| 17 | DOC 219 | Email from Marty Malone to Chuck Palumbo *et al.* with attachment | October 20, 2010 | No objection |
| 18 | DOC 241 | Email from Pete Newcomb to Michael O'Rourke with attachment | October 21, 2010 | No objection |
| 19 | DOC 602 | Email from Marty Malone to Pete Newcomb and Todd Brown | November 2, 2010 | No objection |
| 20 | DOC 610 | Email from Marty Malone to Stephen Hood and Tom Mitchell | November 2, 2010 | No objection |
| 21 | DOC 635 | Email from Marty Malone to Dave Earley, Stephen Hood, Tom Mitchell and Michael O'Rourke with attachment | November 3, 2010 | No objection |
| 22 | DOC 666 | Email from Jared Plutzer to Marty Malone, Stephen Hood | November 3, 2010 | No objection |
| 23 | DOC 668 | Email from Marty Malone to Jared Plutzer | November 3, 2010 | No objection |
| 24 | DOC 684 | Email from Jared Plutzer to Michael O'Rourke, et al. | November 3, 2010 | No objection |
| 25 | DOC 690 | Email from Donna Stroder to Michael O'Rourke | November 3, 2010 | No objection |
| 26 | MFGI_RCA_000738 | Email from Daniel Brecher to Michael O'Rourke *et al.* | November 4, 2010 | FRE 602 (lack of foundation), 802 (hearsay) |

| **Exhibit** | **Bates No.** | **Description/Title** | **Document Date** | **Trustee's Objection** |
|---|---|---|---|---|
| 27 | MFGI_RCA_000783 | Email from Michael O'Rourke to Daniel Brecher, *et al.* | November 4, 2010 | FRE 106 (incomplete), 802 (hearsay) |
| 28 | MFGI_RCA_000927 | Email from Michael O'Rourke to Pete Newcomb | November 4, 2010 | FRE 602 (lack of foundation), 802 (hearsay) |
| 29 | MFGI_RCA_000971 | Email from Daniel Brecher to Michael O'Rourke, *et al* | November 4, 2010 | FRE 106 (incomplete), 802 (hearsay) |
| 30 | MFGI_RCA_000921 | Email from Daniel Brecher to Robert Teel | November 4, 2010 | FRE 602 (lack of foundation), 802 (hearsay)* |
| 31 | MFGI_RCA_000923 | Email from Michael O'Rourke to Daniel Brecher | November 4, 2010 | FRE 602 (lack of foundation), 802 (hearsay) |
| 32 | MFGI_RCA_000938 | Email from Daniel Brecher to Michael O'Rourke | November 4, 2010 | FRE 106 (incomplete), FRE 802 (hearsay) |
| 33 | MFGI_RCA_000979 | Email from Michael O'Rourke to Daniel Brecher | November 4, 2010 | FRE 106 (incomplete), 802 (hearsay) |
| 34 | MFGI_RCA_000990 | Email from Daniel Brecher to Michael O'Rourke | November 4, 2010 | FRE 106 (incomplete), 602 (lack of foundation), 802 (hearsay) |
| 35 | HHR_MFGI_RCCA_000675-676 | Email from Michael O'Rourke to Smith Barney with attachment | October 20, 2010 | No objection |
| 36 | MFGI_RCA_001079 | Email from Michael O'Rourke to Pete Newcomb | November 5, 2010 | FRE 106 (incomplete) |
| 37 | MFGI_RCA_001022 | Email from Michael O'Rourke to Pete Newcomb | November 5, 2010 | No objection |
| 38 | CCM-002550 | Email from Pete Newcomb to Robert Teel | November 5, 2010 | No objection |
| 39 | MFGI_RCA_001099 | Email from Pete Newcomb to Michael O'Rourke | November 8, 2010 | No objection |

| **Exhibit** | **Bates No.** | **Description/Title** | **Document Date** | **Trustee's Objection** |
|---|---|---|---|---|
| 40 | MFGI_RCA_001100 | Email from Michael O'Rourke to Pete Newcomb | November 8, 2010 | No objection |
| 41 | MFGI_RCA_001101 | Email from Pete Newcomb to Michael O'Rourke | November 9, 2010 | No objection |
| 42 | MFGI_RCA_001102-1104 | Email from Michael O'Rourke to Pete Newcomb with attachment | November 9, 2010 | No objection |
| 43 | CCM-002564 | Email from Pete Newcomb to Robert Teel with attachment | November 9, 2010 | No objection |
| 44 | RCACLAIM0000001, 5-7, 35, 52-54, 68-69 | Excerpts from MFG Futures Compliance and Supervisory Procedures Manual | a/o August 2010 | No objection |
| 45 | HHR_MFGI_RCCA_002484 | Email from Marty Malone to Tom Mitchell, CC to Michael O'Rourke | November 5, 2010 | No objection |
| 46 | MFGI_RCA_001066-1070 | Email from Pete Newcomb to Michael O'Rourke | November 5, 2010 | FRE 602 (lack of foundation), 802 (hearsay) |
| 47 | HHR_MFGI_RCCA_003424-25 | Email from Michael O'Rourke to Pete Newcomb | November 15, 2010 | No objection |
| 48 | MFGI_RCA_000690 | Email from Michael O'Rourke to Angelito Abrera et al. | November 3, 2010 | FRE 106 (incomplete) |
| 49 | MFGI_RCA_000712 | Email from Daniel Brecher to Michael O'Rourke et al. | November 4, 2010 | FRE 106 (incomplete), 602 (lack of foundation), 802 (hearsay) |
| 50 | CCM-001736 | Email from Robert Teel to Pete Newcomb | November 5, 2010 | FRE 106 (incomplete), 802 (hearsay) |
| 51 | MFGI_RCA_001111 | Email from Pete Newcomb to Michael O'Rourke | November 15, 2010 | No objection |
| 52 | CCM-002524-25 | Email from Pete Newcomb to Robert Teel | November 3, 2010 | No objection |
| 53 | HHR_MFGI_RCCA_002319 | Email from Michael O'Rourke to Pete Newcomb | November 5, 2010 | No objection |
| 54 | CCM-001561 | Email from Robert Teel to Todd Brown | October 20, 2010 | FRE 802 (hearsay) |
| 55 | MSSB-030763-73 | Email from Daniel Brecher to Angelito Abrera | November 3, 2010 | No objection |

15

## VI. TRUSTEE'S EXHIBITS

The Trustee hereby identifies the following exhibits that he intends to use:

| **Exhibit** | **Description** | **Bates Range** | **Deposition Exhibit No.** | **RCA's Objection** |
|---|---|---|---|---|
| A | MFGI Account Opening Documents executed by RCA on 10/12/2010 | CLAIMANTS 00011990-12027 | Teel 19 | No objection |
| B | MFGI Standard Account Agreement for Business Entities | | | FRE 401/402 (relevance), FRE 602 (foundation); FRE 1002 (best evidence) |
| C | Transfer Authorization executed by RCA on 10/12/2010 | CCM-001031 | Teel 20 / Newcomb 2 | No objection |
| D | 10/8/2010 emails between T. Brown and R. Teel re: Citi contact | CCM-002465-66 | Teel 6 | No objection |
| E | 10/20/2010 emails re: ATP 30000 Transfer | HHR_MFGI_RCCA_000675-77 | Newcomb 25 / O'Rourke 2 | No objection |
| F | 11/3/2010 emails between P. Newcomb and R. Teel re: November 140 calls | CCM 0002524-25 | Teel 15 / Newcomb 26 | No objection |
| G | 11/3/2010 emails re: X-Pit: ROBERT CHARLES CLASS A, L.P. | DOC -667 | Newcomb 27 | No objection |
| H | 10/20/2010-11/3/2010 emails re: ATP 30000 Transfer | MSSB 030763-73 | Teel 16 | No objection |
| I | 11/3/2010 emails re: ATP 30000 Transfer – 532-28695 | MFGI_RCA_000690 | O'Rourke 8 | No objection |
| J | 11/4/2010 email from R. Teel to D. Brecher re: Commissions and fees | MSSB 030592 | Teel 17 | No objection |
| K | 11/4/2010 email from D. Brecher to K. Shells et al. re: ATP 30000 Transfer – 532-28695 | MFGI_RCA_000712 | O'Rourke 9 | No objection |
| L | 11/4/2010 email from D. Brecher to K. Shells et al. re: Ex-Pit Transfer of 532-28695 - $327,645.50 in fees and commissions charged and over $23 million in losses realized | MFGI_RCA_000738 | O'Rourke 10 | No objection |
| M | 11/4/2010 emails re: Ex-Pit Transfer of 532-28695 - $327,645.50 in fees and commissions charged and over $23 million in losses realized | MFGI_RCA_000783 | O'Rourke 11 | No objection |
| N | 10/21/2010 & 11/5/2010 emails re: ATP-30000 Transfer | MFGI_RCA_001079 | O'Rourke 21 | No objection |
| O | 11/5/2010 email from M. O'Rourke to P. Newcomb, with a copy to M. Malone and T. Mitchell re: ATP-30000 | HHR_MFGI_RCCA_002319 | Newcomb 28 | No objection |
| P | 11/5/2010 email from P. Newcomb to R. Teel re: OTE | CCM-002550 | Teel 30 / Newcomb 17 / O'Rourke 23 | No objection |

16

| | | | | |
|---|---|---|---|---|
| Q | 11/5/2010 emails re: ATP-30000 | HHR_MFGI_RCCA_002484-85 | Teel 31 / Newcomb 15 / O'Rourke 33 | No objection |
| R | 11/4/2010-11/5/2010 emails re: Ex-pit Transfer of Class A | MFGI_RCA_001066-70 | Teel 32 / Newcomb 30 / O'Rourke 34 | No objection |
| S | 11/5/2010 emails re: ATP-30000 | HHR_MFGI_RCCA_002335 | Teel 33 / Newcomb 29 / O'Rourke 32 | No objection |
| T | 11/5/2010 emails re: ATP-30000 / ROBERT CHARLES CLASS A | CLAIMANTS 00011596-11600 | Teel 27 / Newcomb 31 | No objection |
| U | 11/9/2010 emails between P. Newcomb and M. O'Rourke re: Your favorite broker | MFGI_RCA_001102 - 001104 | Newcomb 21 / O'Rourke 27 | No objection |
| V | 11/9/2010 email from P. Newcomb to R. Teel re: Transfer | CCM-002564-66 | Teel 34 / Newcomb 22 / O'Rourke 28 | No objection |
| W | RCA's 11/2/2010 MSSB Account Statement | MSSB-045606A-14A | Teel 23 | No objection |
| X | RCA's 11/3/2010 MSSB Account Statement | MSSB-045615A-29A | Teel 22 | No objection |
| Y | RCA's 11/3/2010 MFGI Account Statement | HHR_MFGI_RCCA_000094-103 | Teel 24 | No objection |
| Z | RCA's 11/4/2010 MFGI Account Statement | HHR_MFGI_RCCA_000104-08 | Teel 25 | No objection |
| AA | RCA's 11/5/2010 MFGI Account Statement | MFGI_RCA_001432-37 | Teel 29 | No objection |
| BB | RCA's 11/8/2010 MFGI Account Statement | HHR_MFGI_RCCA_000110-15 | Teel 28 | No objection |
| CC | RCA's MSSB Form 1099 dated 12/31/2010 | CLAIMANTS 00012790 - 00012804 | Teel 35 | No objection |
| EE | RCA's MFGI Form 1099 dated 12/31/2010 | CLAIMANTS 00012787 - 00012788 | Teel 36 | No objection |
| EE | RCA's Proof of Claim | | Teel 21 | No objection |
| FF | RCA's Statement of Claim in FINRA arbitration | | Teel 2 | FRE 401/402 (relevance); FRE 403 (misleading) |
| GG | RCA's Objections and Responses to the Trustee's First Set of Interrogatories | | Teel 26 | No objection |
| HH | MF Global Futures Compliance and Supervisory Procedures Manual | RCACLAIM0000001-86 | O'Rourke 30 | No objection |
| II | 7/8/2010 Brokerage Agreement between Alaris Trading Partners LLC and RCA | CCM-000702-707 | Teel 5 | No objection |
| JJ | 10/22/2010 emails between T. Brown and R. Teel re: VaR did not get copied on our original email please approve | CLAIMANTS 00011572-73 | Teel 9 | FRE 401/402 (relevance) |
| KK | 10/25/2010 emails between T. Brown and R. Teel re: MFG | CLAIMANTS 00011581-82 | Teel 10 | FRE 401/402 (relevance) |

17

| | | | | |
|---|---|---|---|---|
| LL | 10/26/2010 email from T. Brown to R. Teel re: Had call with "MF" | CCM-002752 | Teel 11 | FRE 401/402 (relevance) |
| MM | 10/26/2010 email from T. Brown to R. Teel re: MF | CCM-002755 | Teel 12 | FRE 401/402 (relevance) |
| NN | 10/25/ 2010 & 10/29/2010 emails between R. Teel to T. Brown re: MFG | CLAIMANTS 00011586-87 | Teel 13 | FRE 401/402 (relevance) |
| OO | 11/15/2010 emails between M. O'Rourke and P. Newcomb re: ATP 30000 | HHR_MFGI_RCCA_003424 – 003425 | O'Rourke 35 | No objection |
| PP | 11/29/2010 email from P. Newcomb to J. Drake-Brockman re: Bob's personal | CCM-002134-54 | Newcomb 24 | FRE 401/402 (relevance) |
| QQ | 12/3/2010 email from D. Day to R. Teel, with a copy to P. Boyle and T. Brown re: ATP30000 | CCM-002766 | Newcomb 32 | FRE 401/402 (relevance) |
| RR | 12/20/2010 email from R. Teel to D. Day et al. re: Robert Charles Class A, L.P. damages | CCM-001863 | Teel 37 / Newcomb 33 | FRE 401/402 (relevance) |
| SS | 12/21/2010 & 12/22/2010 emails re: Robert Charles Class A, L.p. | CCM-001864-65 | Teel 38 | FRE 401/402 (relevance) |
| TT | 7/31/2013 Settlement Agreement | | Teel 42 | FRE 401/402 (relevance) |
| UU | 11/3/2010 Chicago Mercantile Exchange Daily Trade and Position Register | MSSB-045630A-57A | Malzberg 8 | No objection |

No exhibit not listed by the Trustee or Claimant may be used at the hearing except (a) for cross-examination purposes or (b) if good cause for its exclusion from the pre-hearing order is shown. Each side shall list all exhibits it intends to offer on its case in chief. The list shall include a description of each exhibit. All exhibits shall be pre-marked with each exhibit bearing a unique number or letter (letters for the Trustee and numbers for Claimant). Pursuant to the Court's October 15, 2015 Second Case Management and Scheduling Order Regarding Trustee's Objection to Claim No. 50000143 (the "Second Scheduling Order"), two copies of each exhibit were previously delivered to chambers on November 17, 2015.

**VII.    STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS**

The parties stipulate to the authenticity of all exhibits identified above.

The parties' objections with respect to the exhibits are listed above. Any objections not set forth above will be considered waived absent good cause shown.

**VIII.    CLAIMANT'S WITNESS LIST**

The Claimant's witnesses are

1. Robert L. Teel
2. Howard Malzberg
3. Peter John Newcomb (by deposition designations)
4. Michael O'Rourke (by deposition designations)

**IX.    TRUSTEE'S WITNESS LIST**

The Trustee's witnesses are:

1. Robert L. Teel
2. Michael Burke
3. Peter John Newcomb (by deposition designations)
4. Michael O'Rourke (by deposition designations)

The witnesses listed may be called at the hearing. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown. Each party shall list the witnesses it intends to call on its case in chief and, if a witness's testimony will be offered by deposition, shall designate by page and line numbers the portions of the deposition transcript it intends to offer. Each party shall set forth any objections it has to deposition testimony designated by the other and the basis therefor. Pursuant to the Second Scheduling Order, each

party's deposition designations, and objections and counter-designations to the other party's deposition designations, were previously delivered to chambers on November 17, 2015.

## X. RELIEF SOUGHT

RCA requests judgment in its favor in the amount of $11,661,284.25, plus any and all other relief available to RCA, in law or equity or otherwise which may be granted to them by this Court. The Trustee requests an order disallowing and expunging RCA's claim in its entirety.

Dated:  New York, New York
            November 23, 2015

| | |
|---|---|
| Louis F. Burke P.C. | HUGHES HUBBARD & REED LLP |
| By:  /s/ Louis F. Burke | By:  /s/ Savvas A. Foukas |
|     Louis F. Burke |     James B. Kobak, Jr. |
|     Leslie Wybiral |     Savvas A. Foukas |
| |     Gregory C. Farrell |
| |     Kenneth J. Aulet |
| 460 Park Avenue, 21st Floor | One Battery Park Plaza |
| New York, New York 10022 | New York, New York 10004 |
| Telephone:  (212) 682-1700 | Telephone:  (212) 837-6000 |
| Facsimile:  (212) 808-4280 | Facsimile:  (212) 422-4726 |
| Email:  LouisF.Burke@lfblaw.com | Email:  savvas.foukas@hugheshubbard.com |
| *Attorneys for Robert Charles Class A, L.P., Claimant* | *Attorneys for James W. Giddens, Trustee for the SIPA Liquidation of MF Global Inc.* |

Dated:  **December 3, 2015**

**IT IS SO ORDERED:**

_____ /s/Martin Glenn_____
Martin Glenn
**UNITED STATES BANKRUPTCY JUDGE**